AO 242 (12/11) Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241

# UNITED STATES DISTRICT COURT
for the

_____

BILLY F. STEFFEY JR.
*Petitioner*

v.                                         Case No.  3:19-cv-00093-JR
                                                    *(Supplied by Clerk of Court)*

WARDEN J. SALAZAR
*Respondent*
*(name of warden or authorized person having custody of petitioner)*

## PETITION FOR A WRIT OF HABEAS CORPUS UNDER 28 U.S.C. § 2241

**Personal Information**

1. (a) Your full name: Billy F. Steffey Jr.
   (b) Other names you have used: _____

2. Place of confinement:
   (a) Name of institution: Sheridan FCI
   (b) Address: 27072 SE Ballston Road
               Sheridan, OR 97378
   (c) Your identification number: 68463-097

3. Are you currently being held on orders by:
   ☒ Federal authorities   ☐ State authorities   ☐ Other - explain:

4. Are you currently:
   ☐ A pretrial detainee (waiting for trial on criminal charges)
   ☒ Serving a sentence (incarceration, parole, probation, etc.) after having been convicted of a crime
      If you are currently serving a sentence, provide:
      (a) Name and location of court that sentenced you: District of Nevada Las Vegas
      (b) Docket number of criminal case: 2:12-cr-00083-APG-GWF
      (c) Date of sentencing: August 14, 2014
   ☐ Being held on an immigration charge
   ☐ Other *(explain):* _____

#81889

AO 242 (12/11) Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241

## Decision or Action You Are Challenging

5. What are you challenging in this petition:

   ☐ How your sentence is being carried out, calculated, or credited by prison or parole authorities (for example, revocation or calculation of good time credits)

   ☐ Pretrial detention

   ☐ Immigration detention

   ☐ Detainer

   ☐ The validity of your conviction or sentence as imposed (for example, sentence beyond the statutory maximum or improperly calculated under the sentencing guidelines)

   ☒ Disciplinary proceedings

   ☐ Other (explain): _____

6. Provide more information about the decision or action you are challenging:

   (a) Name and location of the agency or court: _____

   (b) Docket number, case number, or opinion number: _____

   (c) Decision or action you are challenging (for disciplinary proceedings, specify the penalties imposed):
   Disciplinary hearing in which I lost 41 good days

   (d) Date of the decision or action:   February 5, 2018

## Your Earlier Challenges of the Decision or Action

7. **First appeal**

   Did you appeal the decision, file a grievance, or seek an administrative remedy?

   ☒ Yes            ☐ No

   (a) If "Yes," provide:

   (1) Name of the authority, agency, or court:   BOP Regional Office

   (2) Date of filing:   March 19, 2018
   (3) Docket number, case number, or opinion number:   3084272
   (4) Result:   Denied
   (5) Date of result: _____
   (6) Issues raised: _____

AO 242 (12/11) Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241

    (b) If you answered "No," explain why you did not appeal: _____

8. **Second appeal**

    After the first appeal, did you file a second appeal to a higher authority, agency, or court?

    ☒ Yes      ☐ No

    (a) If "Yes," provide:

        (1) Name of the authority, agency, or court: BOP Central Office (D.C.)

        (2) Date of filing: May 1, 2018
        (3) Docket number, case number, or opinion number: _____
        (4) Result: Denied
        (5) Date of result: August 29, 2018
        (6) Issues raised: _____

    (b) If you answered "No," explain why you did not file a second appeal: _____

9. **Third appeal**

    After the second appeal, did you file a third appeal to a higher authority, agency, or court?

    ☐ Yes      ☒ No

    (a) If "Yes," provide:

        (1) Name of the authority, agency, or court: _____

        (2) Date of filing: _____
        (3) Docket number, case number, or opinion number: _____
        (4) Result: _____
        (5) Date of result: _____
        (6) Issues raised: _____

AO 242 (12/11) Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241

(b) If you answered "No," explain why you did not file a third appeal: __Not Available__

10. **Motion under 28 U.S.C. § 2255**

In this petition, are you challenging the validity of your conviction or sentence as imposed?

☐ Yes            ☒ No

If "Yes," answer the following:

(a) Have you already filed a motion under 28 U.S.C. § 2255 that challenged this conviction or sentence?

☐ Yes            ☐ No

If "Yes," provide:
(1) Name of court: _____
(2) Case number: _____
(3) Date of filing: _____
(4) Result: _____
(5) Date of result: _____
(6) Issues raised: _____

(b) Have you ever filed a motion in a United States Court of Appeals under 28 U.S.C. § 2244(b)(3)(A), seeking permission to file a second or successive Section 2255 motion to challenge this conviction or sentence?

☐ Yes            ☒ No

If "Yes," provide:
(1) Name of court: _____
(2) Case number: _____
(3) Date of filing: _____
(4) Result: _____
(5) Date of result: _____
(6) Issues raised: _____

AO 242 (12/11) Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241

    (c)    Explain why the remedy under 28 U.S.C. § 2255 is inadequate or ineffective to challenge your conviction or sentence: _____

11. **Appeals of immigration proceedings**

Does this case concern immigration proceedings?

☐ Yes    ☒ No

If "Yes," provide:

(a) Date you were taken into immigration custody: _____
(b) Date of the removal or reinstatement order: _____
(c) Did you file an appeal with the Board of Immigration Appeals?

☐ Yes    ☐ No

If "Yes," provide:

(1) Date of filing: _____
(2) Case number: _____
(3) Result: _____
(4) Date of result: _____
(5) Issues raised: _____

(d) Did you appeal the decision to the United States Court of Appeals?

☐ Yes    ☒ No

If "Yes," provide:

(1) Name of court: _____
(2) Date of filing: _____
(3) Case number: _____

(4) Result: _____
(5) Date of result: _____
(6) Issues raised: _____

12. **Other appeals**

    Other than the appeals you listed above, have you filed any other petition, application, or motion about the issues raised in this petition?

    ☐ Yes    ☒ No

    If "Yes," provide:

    (a) Kind of petition, motion, or application: _____
    (b) Name of the authority, agency, or court: _____
    (c) Date of filing: _____
    (d) Docket number, case number, or opinion number: _____
    (e) Result: _____
    (f) Date of result: _____
    (g) Issues raised: _____

**Grounds for Your Challenge in This Petition**

13. State every ground (reason) that supports your claim that you are being held in violation of the Constitution, laws, or treaties of the United States. Attach additional pages if you have more than four grounds. State the facts supporting each ground.

    **GROUND ONE:** My DHO Hearing was not fair and impartial

AO 242 (12/11) Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241

(a) Supporting facts *(Be brief. Do not cite cases or law.)*:

The SIS investigator told me to either take the shot on the chin or that I would receive more time and sanctions. Told me if I did not fight, I would get minimal sanctions and that the DHO was also, "on board" and that they communicated via email about it.
Please see attached Affidavit of Truth for more indepth facts

(b) Did you present Ground One in all appeals that were available to you?
X ☒ Yes          ☐ No

**GROUND TWO:** BOP staff are manipulating NIK test results and using the testing kits in ways that the manufacturer specifically states not to in the instruction manual. They are using antiquated tests to try and detect newer, "designer drugs" that the tests are not

(a) Supporting facts *(Be brief. Do not cite cases or law.)*: made for.

I have obtained and attached the instruction manual from the NIK kit manufacturer.
Please see attached Affidavit of Truth for more indepth facts
Please see attached NIK instruction manual (3 pages)

(b) Did you present Ground Two in all appeals that were available to you?
X ☒ Yes          ☐ No

**GROUND THREE:** NIK Testing kits expire after 1 year shelf life, yet BOP keeps no logs of when testing kits expire.

(a) Supporting facts *(Be brief. Do not cite cases or law.)*:

I have requested from several staff members as well as filed FOIA requests for copies of the NIK Kit logs and testing procedures. BOP will not even acknowledge my FOIA's. Local staff are evasive and will not provide documentation or answers.
Please see attached Affidavit of Truth for more indepth facts

(b) Did you present Ground Three in all appeals that were available to you?
☐ Yes          ☐ No

AO 242 (12/11) Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241

**GROUND FOUR:** BOP staff and SIS specifically are aware of the issues with false positives yet refuse to take any action to correct it.

(a) Supporting facts *(Be brief. Do not cite cases or law.)*:

I had an at length conversation with SIS Lt. Bance regarding the false positives for amphetamines when testing multiple types of papers and substances. He confirmed to me that he too knew of the exact same false positives but refused to provide me with a memo to submit with my appeal.
Please see attached Affidavit of Truth for more indepth facts

(b) Did you present Ground Four in all appeals that were available to you?
X ☐ Yes          ☐ No

14. If there are any grounds that you did not present in all appeals that were available to you, explain why you did not: _____

### Request for Relief

15. State exactly what you want the court to do: I am requesting that my write up for a 111 introduction be expunged and that my 41 GCT be restored.

AO 242 (12/11) Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241

## Declaration Under Penalty Of Perjury

If you are incarcerated, on what date did you place this petition in the prison mail system:

January 16, 2019

I declare under penalty of perjury that I am the petitioner, I have read this petition or had it read to me, and the information in this petition is true and correct. I understand that a false statement of a material fact may serve as the basis for prosecution for perjury.

Date: January 16, 2019

_____
Signature of Petitioner

_____
Signature of Attorney or other authorized person, if any

190-541



# SYSTEM OF NARCOTICS IDENTIFICATION

## INSTRUCTIONS FOR USE

## TEST I - LEIBERMAN'S REAGENT

**FOR:** General Screening Test

**Test Function**

1. This reagent system presumptively identifies several drugs when used in conjunction with the other field drug kits included in the NIK® Club Drug Kit. This test is to be used after a Brown result in Test A or a clear result in Test A followed by a no change result in Test G. Please refer to the NIK® Identidrug™ Chart for results.

**How to Use Test I**

1. Remove clip and insert into the test pack an amount of powdered suspect material that would fit inside this circle. ○ Reseal with clip and tap gently to assure material falls to the bottom of the pouch.
2. With the printed side of the test pouch facing you, break ampule by squeezing the center of the ampoule with the tips of the thumb and forefinger. Agitate gently and observe the color or color changes.

**Interpretation of Resulting Colors**

1. Refer to the NIK® Identidrug™ Chart for test results.
2. It is advisable that this test be used in conjunction with the other tests listed on the NIK® Identidrug™ Chart.
3. If the resulting color(s) is not listed on the NIK® Identidrug™ Chart, stop testing. The NIK® Polytesting System has not presumptively identified any controlled substances.

---

**CAUTION**

A. Since these tests contain strong acids, it is suggested that Test F - Acid Neutralizer be used after testing and before disposal.
B. Before discarding used test packs, remove clip and add one measure of acid neutralizer from Test F.
C. Add slowly to prevent bubbling over.
D. DO NOT reseal the test pouch until effervescence has completely stopped.
E. Reseal pouch with clip and discard in a tamper-free disposal unit.
F. No attempt should be made to crush the glass particles after the ampoules are broken.
G. **Antidote:** In case of contact, immediately flush eyes or skin with water for at least 15 minutes while removing contaminated clothing and shoes. If swallowed, do not give emetics. Contact a physician.

---

**WARNING**
These tests are NOT designed for use with liquid samples.

---



13386 International Parkway
Jacksonville, Florida 32218
904.485.1836 FAX: 904.741.5407



## Introduction to the NIK Polytesting System

The NIK® System of Narcotics Identification is based upon a polytesting procedure whereby a suspect material is subjected to a series of progressively discriminating screening tests. The results of individual tests may or may not yield a valid result. However, the sequential results of several tests provide a high degree of certainty that the suspect material is in fact what the NIK® Polytesting System indicates it to be.

Ongoing experiments are conducted with hundreds of licit and illicit chemical compounds in an effort to eliminate false positive results. However, no chemical reagent system for field use exists that is capable of eliminating occasional invalid test results. A complete forensic laboratory would be required to qualitatively identify an unknown suspect substance. In the absence of such a laboratory, utilizing the NIK® Polytesting System is your best assurance that the presumptive results of a positive identification are what they appear to be.

Always begin Polytesting with Test A and continue from test to test until a positive or negative result is obtained. Tests E, L, M, N, P, Q and R are exceptions to this rule and are designed as standalone tests.

EXAMPLE: Beginning with Test A, a suspect material sequences from orange to brown within 10 to 12 seconds. Following the Polytesting Chart, Test U comes next in sequence. A blue result in Test U confirms the presence of Methamphetamine. A reddish-pink or negative result in Test U indicates an Amphetamine-type compound. Only by following the proper sequence of tests from A to U is a positive result obtained.

## General Polytesting Procedures

Before testing can begin, it is important to classify the material using one of the classifications below:

Tablets or other hard materials - Crush a part of the tablet into powder and insert into the test pouch.

Capsules - Open the capsule, remove part of the powder and insert into the test pouch.

Powders - Insert powder directly into the test pouch

Plant material - Begin testing with Test E. Use only a few leaf fragments.

Suspected Brown or Black Tar Heroin - Begin testing with Test L.

Liquid samples - NIK® tests are NOT designed for use with liquid samples. However, liquids may be tested by placing the tip of an NIK® SUBSTANCE LOADING DEVICE or a 1cm square (roughly 1/2" square) piece of paper into the liquid. Remove and allow to air dry. Place the dry paper into the test pack and proceed with the test as instructed. The choice of paper is critical. Unscented, uncolored filter paper is ideal. NEVER use brown paper, hand towels or newsprint.

## Determining the amount of suspect material to use

The amount of suspect material needed to make a successful test varies with the amount and purity of the material. With the exception of plant material, gelatin squares, etc., you should begin by using the loading device to collect an amount of powdered suspect material that would fit inside this circle: ◯ If the resulting colors are too weak, use more material; if too intense, use less.

## Safety Precautions

Many of the tests in the NIK® Polytesting System contain strong acid(s) or bases. Always insert a portion of Pack F (Acid Neutralizer) into the test pack after testing and before disposal of the used test pack. Once an ampoule has been broken, no attempt should be made to further crush the glass or tablet remnants.

In the event that a test pack or chemical is ingested, seek immediate medical attention. If chemicals come into contact with the skin or eyes, wash the skin thoroughly with soap and water. Flush eyes with water and seek immediate medical attention. Call (800) 424-9300 or (202) 483-7616 to obtain additional safety information.

Store NIK® tests in a cool, dark area. Heat will speed up the action of the chemicals in each test, and extreme cold will slow them down. Appropriate care should be exercised. Do NOT store in direct sunlight. Technical Assistance is available during business hours at: (800) 852-0300 or (904) 485-1836

## Breaking the Chemical Ampoules

Care should be taken when breaking the glass ampoules in each test. Each test includes a plastic "harness" that serves to hold the ampoules in place and protect the user from injury. Press firmly in the center of the harness to break each ampoule. Once the glass has broken, do NOT continue to crush the glass ampoules, as a shard may puncture the pouch and result in injury.



## Interpretation of Test Results

For any test, there are three important factors you should look for:

1. The color or lack of color
2. The color change
3. The location of colors in the test pouch



To view the colors correctly, hold the test pack roughly 2 to 3 cm away from a white background. Light must filter through the test pouch to review the desired color results. Viewing test results under non-white light or over a colored surface may result in an incorrect determination of the resulting color. Color results may not match the color on the pouch exactly, but should be viewed as a color family. Blue is always blue, regardless of whether it is dark or light.

RECEIPT - ADMINISTRATIVE REMEDY

DATE: MARCH 23, 2018

FROM: ADMINISTRATIVE REMEDY COORDINATOR
      WESTERN REGIONAL OFFICE

TO  : BILLY STEFFEY, 68463-097
      LOMPOC USP    UNT: FCI    QTR: Z03-154UAD

THIS ACKNOWLEDGES THE RECEIPT OF THE REGIONAL APPEAL
IDENTIFIED BELOW:

REMEDY ID       : 934657-R1
DATE RECEIVED   : MARCH 19, 2018
RESPONSE DUE    : MAY 18, 2018
SUBJECT 1       : DHO APPEAL - COMBINED (PROCEDURES, EVIDENCE & SANCTIONS)
SUBJECT 2       :
INCIDENT RPT NO: 3084272

*RECEIPT FOR 1ST APPEAL TO REGION*

Administrative Remedy No. 934657-A2
Part B - Response

You appeal the February 13, 2018, hearing decision of the Discipline Hearing Officer (DHO) regarding incident report #3084272 in which you were found to have committed the prohibited act of Introduction or Making of any Narcotics, Marijuana, Drugs, Alcohol, Intoxicants, or Related Paraphernalia, Not Prescribed for the Individual by the Medical Staff (Code 111). For relief, you request the incident report be expunged.

Our review of your disciplinary proceedings indicates compliance with Program Statement 5270.09, <u>Inmate Discipline Program</u>. The DHO's decision was based upon the evidence detailed in Section V of the DHO report. We find the determination of the DHO is reasonable and supported by the evidence. Your Due Process rights were upheld during the discipline process. The sanctions imposed were commensurate to the severity level of the offense committed and in compliance with policy.

Accordingly, your appeal is denied.

_8/29/18_
Date

Ian Connors, Administrator
National Inmate Appeals

RESPONSE FOR FINAL APPEAL TO D.C.

```
TRULINCS 68463097 - STEFFEY, BILLY - Unit: SHE-A-R
```
---

FROM: 68463097
TO:
SUBJECT: Affidavit of Truth
DATE: 01/15/2019 08:57:54 PM

>                                   AFFIDAVIT OF TRUTH

I, BILLY STEFFEY JR, being of sound mind and body, do hereby depose and state the following facts to be true and correct to the best of my knowledge and beliefs in accordance with 28 U.S.C., Section 1746. These statements are not designed to be misrepresentations of the truth, nor are they designed to mislead and/or deceive any third party(s) or entity(s). My statements to The Court are as follows;

1. My true and correct name is BILLY FRED STEFFEY JR., and I am of age (40) to make this Affidavit of Truth.

2. Prior to being transferred to FCI Sheridan, Oregon in March of 2018, I was incarcerated at Lompoc FCC Low in California.

3. During my incarceration at Lompoc FCC, I became acquainted with inmate Patrick Johnson (Reg# 68603-065) hereinafter, "Inmate Johnson". Around September 2017, Inmate Johnson and I discussed him suing the Portland Police in regards to his case. I suggested that he use the paralegal, "Lisa" that I had been using and was helping me file my 2255 as well to secure an eviction to have a tenant of mine out of state evicted. I gave Inmate Johnson the phone number and mailing address for Lisa.

4. Inmate Johnson told me that he had contacted Lisa and that she had agreed to help him research his case and had mailed him a retainer agreement. He said she began working on his case.

5. Around Thanksgiving of 2017, Inmate Johnson asked me if I still spoke to Lisa. I said yes, she was still helping me with an eviction process. He told me that they had a falling out because she started on some work for him and drafted a motion on his behalf and he did not provide her with the first payment as agreed, due to one of his friends flaking on him. He asked if she said anything to me about him and I said no. I only talked to her about him the one time I referred him to her.

6. On 11/26/17 I emailed Lisa to give her the USPS tracking number for a $1,000 payment my father sent her office for a payment for me. In response to that email, I received a reply that said, "I see you like to play games, I have a game you are going to love". I had no idea why she would send me a threatening email. I immediately began emailing her back asking what she was talking about and if she had meant to send me that email. I asked if she had the wrong guy. I sent her about 10 unanswered emails over a course of about 10 days.

7. After about 10 days, on 12/5/17 I finally received a one sentence email reply from Lisa that said, "I reached out 70171450000084946239". She did not comment or address the email sent on 11/26/2017. I just let it go and I assumed she had emailed me that threatening email by mistake. I also assumed, as you can see by my attached emails, that she had mailed me copies of the court filing for the eviction and a copy of the papers for my records and that was what the tracking number was for.

8. The following day, 12/6/17, SIS Aguilar escorted me to the SHU for a code 111 Introduction of narcotics. He did not give me any further details of why I was being placed in the SHU, only said to me, "your eviction papers came".

9. The following day 12/7/17 Inmate Johnson arrived in the SHU in a cell across from me where we were able to communicate. He told me that SIS Aguilar locked him up for the same incident. Inmate Johnson told me, "SIS asked me why inmate Steffey would have the tracking number for your legal mail?"

///
Page 1

>

TRULINCS 68463097 - STEFFEY, BILLY - Unit: SHE-A-R

---

10. After being in the SHU for several weeks, I was advised by SIS Aguilar that my case was being referred to the FBI for prosecution. During that interview, SIS Aguilar said that I was in the SHU because inmate Johnson received legal mail that tested positive for amphetamines and that it was "Spice". He said that I had an email that contained the tracking number for the letter inmate Johnson received and that was why I was in the SHU. I denied all wrong doing. I explained I gave him her information, but that there was nothing illegal going on.

11. After several more interviews, over several months, I was told that the package contained "designer drugs" but none were actually identified. I was also told the FBI declined prosecution.

12. At the final interview with SIS Aguilar, he told me that his boss said that someone had to get a shot, and because I had the tracking number, it would be me. I explained that I was not the one who the package was addressed to and that there was no other evidence, conversations or informants linking me to any wrong doing. I explained emphatically that I had no involvement in anything illegal. He then told me, "If you take the shot on the chin and you don't fight it, I will make sure that you don't do any DS time and that you will receive much easier sanctions. If you do fight this, I will make sure that you do 180 days more in the SHU and that you receive the maximum sanctions and I will also personally contact the AUSA and ask them to prosecute you. He said that he had spoken to DHO Chetwood via email and phone and that DHO Chetwood would agree and, "was on board with him".

13. I chose not to fight the charges out of fear of retaliation that I would receive additional punishment and possibly be prosecuted for something that I had no clue about. As you can see by my sanctions, the DHO (Chetwood) was definitely, "on board". I have about 10 examples of other inmates that received the same write up for 111 introduction and received night and day different sanctions, much heavier.

14. When I went into my DHO hearing, DHO Chetwood read the allegations and said to me, "I have already talked to SIS Aguilar and he told me the deal." DHO Chetwood kept the "deal" that he and SIS Aguilar had pre-arranged prior to my hearing. I received a ridiculously lenient punishment. I lost 41 good days and 180 days of commissary. I did not lose my visits, I did not lose my email, I did not lose my phone I did not have to serve any DS time nor did I receive any monetary fine. These sanctions show that there was definitely a pre-arranged "deal" between SIS Aguilar and DHO Chetwood. This also shows that my hearing was not fair and impartial and that it was pre-determined prior to me even having the hearing. Before I walked in there, my guilt and sanctions were already made up. Normally an inmate would complain of the harsh sanctions, in this case it was the opposite, yet it proves my point. I have included several cases of other inmates who received a 111 sanction and you can see the enormous difference in sanctions lost and good time taken.

17. It is common knowledge that the NIK tests that BOP uses are notoriously manipulated by BOP staff and will show false positives for amphetamines if you test a paper towel, toilet paper, ink jet paper, sage, etc. I have personally seen inmates receive shots for the items listed above and then later be cleared of wrong doing when the lab results come back. I have spoken to both SIS Lt. Bance and counselor Rodriguez who both confirmed they were aware of the false positives, but both refused to provide me an affidavit to include with my BP-11. Staff don't want to be the one to blow the whistle. I also have reason to believe further testing was done by a lab and that those results could clear me but were never disclosed to me because the action was over.

18. Even the instruction manual (enclosed) from the manufacturer of the NIK test is clear that the test is not designed to be used with liquid samples and that paper is "critical" to the outcome of the test. The manual stresses that, "the choice of paper is critical. Unscented, uncolored, filtered paper is ideal". The NIK manufacturer sells these approved strips for testing.

19. The NIK test being used by BOP is antiquated and a basic, general test for "classic" drugs (i.e. marijuana, cocaine, heroin, methamphetamines, etc.) and is not even capable of detecting "designer, club drugs". Page 1, paragraph 1 (Test Functions) of the NIK kit states, "This reagent system presumptively identifies several drugs when used "in conjunction (emphasis added)" with other field drug kits". It gives an example of NIK Club Drug Kit (a separate kit) which was not used in my case.

///
Page 2

20. The write up I received specifically states that I was involved in the introduction of "designer drugs" The drug SIS Aguilar accused me of introducing was "K-2" or "Spice". This is a synthetic form of THC. These new breeds of designer drugs are not used or trafficked in the classical sense. These designer drugs are applied to paper in a liquid form and are then later smoked to get high.

21. It has also came to light that the corrosive acids in the NIK kits are only good for one year. These tests have a one year shelf life, yet BOP has not and does not keep any logs of the expiration date on these tests and cannot show that the test that was used was not expired itself.

22. The instruction manual from the manufacturer also makes it very clear that these tests only provide a presumptive result, not a conclusive one. If you look at the instruction manual from the actual manufacturer, page 2 identifies the substances the NIK test can detect. No where in there is K-2 or Spice one of those substances. Not the technical name or the street name is listed. However, they do make a kit that can detect these substances, however it was not used in my case, nor does BOP use them.

23. It is a huge epidemic in BOP that staff misuse these NIK tests and manipulate them to cause false positives. I have read cases from almost every Circuit, of inmates that are claiming the same issue of false positives. In light of this, BOP takes no steps to investigate the issues of these false positives, nor do they keep a record of known false positives. They abuse this, knowing that they don't need a "conclusive" result and that they only need a "presumptive" one provided by the NIK.

24. I would also point out that BOP uses urine sample cups to detect narcotics such as cocaine, marijuana, heroin, opiates, methamphetamines, etc. These cups give an "instant" result as do the NIK test. If you have a positive result on one of these cups, BOP sends out 100% of those for secondary verification. BOP takes no adverse action against the inmate until the sample is sent to the lab and verified. They realize that false positives happen with these urine tests. Why is this different? Even the instructions declare false positives happen and that the NIK is only "presumptive". If BOP doesn't accept the results of the urine drug tests without verification by a lab, why do they accept the result of the NIK kits without a conclusive, verification process? NIK tests are much more complicated and error prone than a standard urine test, and leave a huge margin of interpretation by the administrator of said test.

///
Page 3

TRULINCS 68463097 - STEFFEY, BILLY - Unit: SHE-A-R

---

FROM: 68463097
TO:
SUBJECT: Affidavit of Truth 2
DATE: 01/15/2019 08:16:43 PM

> FURTHER AFFIANT SAYETH NOT.

## ACKNOWLEDGEMENT

I BILLY FRED STEFFEY JR., Reg# 68463-097, hereby declare under the penalty of perjury that the foregoing "Affidavit of Truth" is true and correct to the best of my knowledge and my beliefs.

Executed this 16th day of January 2019

BILLY FRED STEFFEY JR REG#68463-097