**BILLY J. WILLIAMS, OSB #901366**
United States Attorney
**JARED D. HAGER, WSB #38961**
Assistant United States Attorney
U.S. Attorney's Office for the District of Oregon
1000 SW Third Avenue, Suite 600
Portland, Oregon 97204-2902
Phone: 503.727.1120
Email: jared.hager@usdoj.gov
   Attorneys for the Respondent

# UNITED STATES DISTRICT COURT

# DISTRICT OF OREGON

| | |
|---|---|
| **BILLY F. STEFFEY JR.**, | Case No.: 3:19-cv-00093-JR |
| Petitioner, | |
| v. | RESPONSE TO PETITION FOR WRIT HABEAS CORPUS UNDER 28 U.S.C. § 2241 |
| **WARDEN J. SALAZAR**, | |
| Respondent. | |

Respondent Josias Salazar, by Billy J. Williams, U.S. Attorney for the District of Oregon, and through Jared D. Hager, Assistant U.S. Attorney (collectively, "the Government"), hereby responds to Petitioner Billy F. Steffey Jr.'s Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241. The Government asks the Court to dismiss the Petition because Steffey's discipline does not violate procedural or substantive due process.

Steffey is a federal inmate, Register Number 68463-097, currently held by the BOP at FCI Sheridan. Salazar is the Warden at FCI Sheridan's and thus the proper party to this case. *See* 28 U.S.C. § 2241; *Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004).

## INTRODUCTION

The BOP charged Steffey for violating Code 111—Introduction of Narcotics, after intercepting mail arranged by Steffey that contained several pieces of thick paper heavily soaked with liquid narcotics. *See* Declaration of William J. Chetwood (hereinafter "Chetwood Decl."), ¶ 15. Following notice of the charge and a hearing, the BOP disciplined Steffey with 41 days' disallowance of credit for good conduct, 180-day loss of commissary privileges, 60-days in disciplinary segregation (suspended pending 180-days clear conduct), and one year loss of visiting privileges (suspended pending 180-days clear conduct). *See id.* Ex. E, Section VI.

The Petition asserts that Steffey did not commit the offense, and the BOP violated his due process rights in various ways. *See* ECF 1, Petition at 2-4. Steffey asserts that the disciplinary hearing officer ("DHO") was not impartial, *id.* at 6-7, and that the DHO lacked adequate evidence to support the disciplinary findings, *id.* at 16-17. Specifically, Steffey notes that the drugs were contained in an envelope addressed to another inmate (hereinafter "Inmate X"), *id.* at 16; the DHO relied on a Narcotics Identification Kit (NIK) to detect the narcotics, but the NIK is not designed to identify the narcotics at issue, *id.* at 7; the DHO failed to confirm the kit was not expired, *id.*; lab tests were conducted that exonerated Steffey but results were not provided to him, *id.* at 16; and NIK results are rampantly falsified by BOP staff to intentionally generate false positives, *id.* at 17.

The Government asks the Court to deny the Petition because the BOP appropriately disciplined Steffey. The disciplinary hearing comported with due process, and Steffey has not asserted any prejudicial violation warranting habeas relief. *See Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). Moreover, the record reflects that the DHO's decision was supported by sufficient evidence under the governing standard. *See Superintendent v. Hill*, 472 U.S. 445 (1985). The Government respectfully asks the Court to uphold the DHO's discipline and dismiss this case.

# FACTS

Steffey is serving an 84-month sentence at FCI Sheridan for violating 18 USC § 371; § 1029(a)(2); § 1029(c)(1)(A)(i); and § 1028A (conspiracy to traffic in and use one or more counterfeit devices to obtain things in value in excess of $1,000; and aggravated identity theft). *See* Chetwood Decl. at ¶ 3. His projected release date is November 2, 2020. *Id.* Steffey was formerly held in custody at FCI Lompoc in California. The discipline hearing and underlying charge conduct occurred at that facility. *Id.*

In this case, Steffey challenges discipline the BOP imposed for a Code 111 violation for introducing or making prohibited drugs. ECF 1, Petition, at 8, 14-16. Steffey's discipline consists of 41 days' disallowance of credit for good conduct, among other items. *See id.* at 2. Steffey claims the discipline hearing was not fair and impartial. *Id.* at 6. The process and substance of the hearing is spelled out in the declaration of the disciplinary hearing officer ("DHO") William J. Chetwood, and accompanying exhibits.

As on the streets, illegal substances in prison are never discussed in such explicit terms. Chetwood Decl. at ¶ 14. Steffey and an outside contact, corresponding through the BOP inmate email system, used a thinly-veiled code about service upon evicted tenants to describe mailing of drugs to specific individuals. *Id.* ¶¶ 14-15. Specifically, Steffey exchanged several email messages from his BOP inmate email account with "Lisa Rassmussen E S Q," allegedly regarding several eviction notices for various tenants in a series of homes purportedly owned by Petitioner. *Id.* at ¶ 15. Steffey's messages with the sender repeatedly discuss and confirm payment being made to certain individuals. *Id.* The language is suspicious and unrelated to any legal process: "Please resent that eviction again to the exact same tenant as you did last time. Go heavy! . . . Please take care of what I paid you to do and serve the guy." In response to a message from Steffey, the sender states, "I reached out. 70171450000084946239." *Id.*

On December 5, 2017, the FCC Lompoc mailroom received an envelope with the tracking number 70171450000084946239 containing 10 unusually thick pieces of paper that tested positive for amphetamines. *Id.* The paper was heavily soaked with liquid narcotics. After reviewing the extensive communication between Steffey and his outside contact, the NIK test results, and other materials, Special Investigative Support (SIS) Technician S. Aguilar concluded his investigation and delivered an incident report to Steffey on January 31, 2018, at 7:40 pm. *Id.* DHO Chetwood proceeded to comply with notice and documentation requirements. *See id.* ¶¶ 9-13.

On February 5, 2018, the DHO held a hearing. On February 16, the DHO completed his report, finding Steffey committed the Code 111 violation for introducing or making prohibited drugs. *See id.* Ex. E, Section V. As discipline, he received a 41-day loss of credit for good conduct, 180-day loss of commissary privileges, 60-days in disciplinary segregation (suspended pending 180-days clear conduct), and one year loss of visiting privileges (suspended pending 180-days clear conduct). *See id.* Ex. E, Section VI.

On January 18, 2019, Steffey filed a Petition for Writ of Habeas Corpus challenging the discipline as violating procedural and substantive due process. ECF 1, Petition, at 6, 8, 14-16. On January 30, 2019, the Court ordered the Government to respond within 20 days of receiving the Order and Petition. ECF 5, Order. The same day, the Court also appointed the Federal Public Defender to represent Steffey in this case. ECF 4, Order. On January 31, the Government was served with the Order and Petition, resulting in a February 20 due date to file a Response to the Petition. *See* ECF 6, Acceptance and Acknowledgement of Service. On February 19, the Government filed an unopposed Motion for Extension of Time, seeking two additional weeks to respond. ECF 8. The Court granted the request, resulting in a deadline of March 6, 2019. This Response is submitted in accord with the Court's Order.

## ARGUMENT

The Petition should be denied because it fails to allege any prejudicial due process violation warranting habeas relief. Additionally, the DHO properly considered the evidence and made a decision supported by "some evidence." The Court should therefore uphold Steffey's discipline.

### I. Steffey's Disciplinary Hearing Comported with Due Process

It is well established that prison disciplinary proceedings "are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). In such proceedings, due process requires (1) written notice of the charges at least 24 hours before the hearing; (2) a neutral and impartial hearing officer; (3) a right to present documentary evidence; (4) a qualified right to call witnesses; and (5) a written statement of the evidence and reasons supporting the disciplinary action. *Id.* at 563-71. Steffey challenges only challenges the DHO's neutrality and the evidence and reasons supporting the disciplinary action. *Cf.* Chetwood Decl. at ¶¶ 8-13, Exs B, C, D, E.

Even where a due process violation may be found in the context of a prison disciplinary hearing, such a constitutional error is subject to harmless error analysis, which requires that the error has a substantial and injurious effect on the outcome of the proceeding and resulted in "actual prejudice." *See Grossman v. Bruce*, 447 F.3d 801, 805 (10th Cir. 2006) (explaining that harmless error analysis applies in the context of procedural due process challenges to prison disciplinary hearings); *Jones v. Cross*, 637 F.3d 841, 846-47 (7th Cir. 2011) (same); *cf. Fry v. Pliler*, 551 U.S. 112, 121-22 (2007) (setting out harmless error test from *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993)).

#### A. DHO Chetwood was a neutral hearing officer.

Steffey asserts the DHO was not impartial based on dubious conjecture. The DHO's impartiality is determined by his status as one "who was not a victim, witness, investigator, or otherwise significantly involved in the incident." *See* Chetwood Decl. at ¶ 18 & Ex. A at 27. Steffey's

theory is that DHO Chetwood conspired with the reporting officer to give Steffey lighter punishment if he would "take the shot on the chin . . . [and] not fight." *See* ECF 1 at 7. Steffey then argues:

> I received a ridiculously lenient punishment. I lost 41 good days and 180 days commissary. I did not lose my visits. I did not lose my email, I did not lose my phone. I did not have to serve any DS [disciplinary segregation] time nor did I receive any monetary fine. These sanctions show that there was definitely a pre-arranged "deal between SIS Aguilar and DHO Chetwood."

*Id.* at 16.

Steffey's theory is unpersuasive. That DHO Chetwood did not subject him to the full panoply of the harshest allowable sanctions is not evidence of partiality. *See* Chetwood Decl. at ¶ 19. Moreover, Steffey did not "take the shot on the chin," lobbing a host of objections at his hearing. *Id.* Indeed, Steffey disputed his violation with uncommon vigor. *Id.* Also, Steffey's claim that he received no disciplinary segregation contradicts the reality that he was immediately placed in the Special Housing Unit (SHU) and remained there "for several weeks" prior to the hearing. *See* ECF 1, Petition at 16. The DHO imposed a suspended sentence of 60 additional days of disciplinary segregation and an additional suspended sentence of one year of visitation privilege loss pending six months of clear conduct. *See* Chetwood Decl. at ¶ 19 & Ex. E. These sanctions are fair, not "ridiculously lenient" as Steffey claims without evidence. *See* ECF 1 at 16.

**B.     Steffey received a written statement of evidence and reasons for decision.**

DHO Chetwood's declaration and accompanying exhibits address Steffey's objection and provides evidence and reasons supporting his decision. Though not explicitly raised in the Petition, Steffey also claimed at hearing that the BOP had no authority to open the envelope containing the drugs because they were sent to another inmate as legal mail.[1] *See* Chetwood Decl. at ¶ 16. However,

---

[1] The purported sender of the envelope, attorney Leslie R. Ramos, has no knowledge of Steffey or "Lisa Rassmussen." *See* Chetwood Decl. at ¶ 17. Ramos sent no envelope to FCI Lompoc or any federal correctional facility. *Id.* Ramos believes her name is being misused and has contacted the California State Bar Association and law enforcement about this and similar past incidents. *Id.*

Steffey concedes, the mail was not addressed to him; he thus lacks standing to challenge how the mail was handled. It is also undisputed that the envelope in fact contained no legal mail. Most importantly, for purposes of the *Wolff* factors, Steffey received a copy of the DHO Report detailing the evidnecn relied on and reasons for sustaining the Code 111 violation. *See id.* Ex. E, Section IX.

### C. Any procedural shortcoming did not have substantial and injurious effect on the outcome of the proceeding or result in actual prejudice.

Steffey received written notice of the charges days before his hearing. Chetwood Decl. ¶ 8 & Ex. B, Incident Report; Ex. C, Notice of Hearing; Ex. E, DHO Report. Steffey had a neutral hearing officer. *Id.* Ex. A, Program Statement 5270.09, at 27. Steffey had a chance to present evidence in his defense and to be represented by a staff member. *Id.* Ex. D, Notice of Inmate Rights at Discipline Hearing; Ex. E. Steffey received the DHO Report. *Id.* Ex. E. Even if Steffey could show some procedural defect in the hearing, he does not attempt let alone succeed at showing a material effect on the outcome of the hearing. Because any error was harmless, the Government respectfully asks the Court to reject Steffey's procedural due process challenge.

### II. Steffey's Discipline Is Supported by Sufficient Evidence

Steffey challenges the adequacy of the evidence supporting DHO Chetwood's decision to sustain the Code 111 charge. The Court will uphold disciplinary sanctions supported by "some evidence," as required by *Superintendent v. Hill*, 472 U.S. 445 (1985). The "some evidence" standard "is minimally stringent, such that a decision will be upheld if there is *any* evidence in the record that *could* support the conclusion reached by the disciplinary board." *Powell v. Gomez*, 33 F.3d 39, 41 (9th Cir. 1994) (emphases in original).

DHO Chetwood relied upon multiple sources of evidence to make his determination, including detailed communications between Steffey and the supplier of the contraband, including a message where the supplier sent him the exact tracking number of the seized envelope; photographs

documenting the testing process and reflecting a positive result for amphetamines; staff memorandums; and statements by Steffey confirming his relationship with the sender. *See* Chetwood Decl. at ¶¶ 20-24 & Exs. E, F. DHO Chetwood's report responds to Steffey's objections and explains the evidence relied upon. *See id.* Ex. E, Section V. On this record, the *Hill* standard is met, and the Government respectfully asks the Court to reject Steffey's substantive due process challenge.

## CONCLUSION

For the foregoing reasons, the Petition should be denied.

Dated this 6th day of March, 2019.

                                              Respectfully Submitted,

                                              BILLY J. WILLIAMS
                                              United States Attorney
                                              District of Oregon

                                              */s/ Jared D. Hager*
                                              JARED D. HAGER
                                              Assistant United States Attorney
                                              Attorneys for the Respondent