IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

BILLY F. STEFFEY,

               Petitioner,

    v.

WARDEN J. SALAZAR,

               Respondent.

Civil No. 3:19-cv-00093-JR

FINDINGS AND RECOMMENDATION

RUSSO, Magistrate Judge.

Petitioner, an inmate at FCI Sheridan, brings this habeas corpus action pursuant to 28 U.S.C. § 2241. Currently before the Court are petitioner's Motion for Discovery and/or Inspection (ECF No. 20) and the Petition for Writ of Habeas Corpus (ECF No. 1). For the reasons that follow, both motions should be DENIED.

## **BACKGROUND**

Petitioner was convicted in the District of Nevada for conspiracy to traffic and use one or more counterfeit devices to obtain items in value in excess of $1,000 and for aggravated identity

1  - FINDINGS AND RECOMMENDATION

theft.    Declaration of William J. Chetwood ("Chetwood Decl."), ECF No. 12, p. 2.    On August 7, 2014, he was sentenced to 84 months of imprisonment.    Id.    Petitioner is currently housed at FCI Sheridan, but was previously housed at FCI Lompoc, California.    Id.

On December 5, 2017, the FCI Lompoc mailroom received an envelope with the tracking number 70171450000084946239, which was addressed to another inmate.    Chetwood Decl., p. 5.    Correctional Systems Officer B. McDaniel opened the envelope and discovered what appeared to be legal paperwork from an attorney.    Chetwood Decl., Exh. B, p. 1; Exh. F, p. 1. However, the paper felt "unusually thick" and "grainy," and appeared to have stains and discolorations.    Chetwood Decl., Exh. F, p. 1.

SIS Technician S. Aguilar tested the paper for drugs using a NIK brand chemical field-testing kit.    Chetwood Decl., Exh. F, p. 2.    Aguilar cut a small piece of paper from the contents of the envelope and tested it with NIK Test A.    Id.    According to Aguilar's report, the Test A result "had an immediate orange rapidly turning brown color, indicating Amphetamines." Id.    Aguilar cut another small piece of paper and tested it with Test U, which "turned an immediate dark burgundy color, indicating Amphetamines."    Id.

Aguilar reviewed the "TRUVIEW system 1 Degree of Separation," which revealed a "money link" between Petitioner and the inmate to whom the mail was addressed.    Chetwood Decl., Exh. E, p. 2.    Aguilar reviewed emails between Petitioner and an unknown paralegal identified as "Lisa Rasmussen, Esq.," which led Aguilar to believe Petitioner had arranged for the papers to be sent to the other inmate.    Id. The emails did not reference illegal substance explicitly, but Aguilar believed that the emails' references to legal work on behalf of Petitioner for evictions were in code.    Id.    The emails linked Petitioner to the incoming mail because, on

2  - FINDINGS AND RECOMMENDATION

the same day the package was discovered by Officer McDaniel, Ms. Rasmussen sent Petitioner an email with the package's tracking number, saying, "I reached out. 70171450000084946239."[1]   Id.

On January 31, 2018, Aguilar issued an Incident Report charging Petitioner with violation of Prohibited Act Code 111 for the "Introduction or making of any narcotics, marijuana, drugs or related paraphernalia not prescribed for the individual by medical staff."   Chetwood Decl., Exh. B, p. 1.   The narrative in the report stated that Petitioner "facilitated and arranged with an outside person, to have narcotic soaked papers to be sent to another inmate housed at FCC Lompoc-FCI (Low)."   Id.   Upon receipt of the Incident Report, Petitioner stated, "I have no comment due to possible charges being brought by outside law enforcement agencies."   Id.

On February 5, 2018, the United Discipline Committee ("UDC") referred the matter to the Discipline Hearing Officer ("DHO") for further hearing.   Chetwood Decl., Exh. B, p. 3.   In the referral, the UDC recommended that, contingent on a finding of a violation, the DHO impose the following sanctions:   41 days loss of good time credit, 60 days disciplinary segregation, one-year loss of email and phone privileges, and a disciplinary transfer.   Id.   The Notice of Disciplinary Hearing delivered to Petitioner identified the alleged violation as "Introduction or making of any narcotics, marijuana, drugs or related paraphernalia not prescribed for the individual by medical staff."   Chetwood Decl., Exh. C, p. 1.

---

[1]Aguilar also considered other emails exchanged between Petitioner and Rasmussen both before and after the package was received at FCI Lompoc, which appeared to reveal that Petitioner was aware of the package being sent and anticipating its arrival.

On February 13, 2018, DHO William J. Chetwood conducted a disciplinary hearing. Chetwood Decl., Exh. 3.   At the hearing, Petitioner did not request a staff representative and did not call witnesses or present evidence in his defense.   Chetwood Decl., Exh. 3, p. 1.   Petitioner "neither admit[ed] or denie[d] the charge(s)." <u>Id</u>.   Chetwood described that petitioner "acknowledged his rights before the DHO.   After being read the incident report, he stated, 'I talked to Aguilar at length, I didn't think I was going to get a shot. I know of other drug issues.'" <u>Id</u>.   Petitioner also submitted a written statement, as follows:

> Staff should be held to same or higher standard as far as following rules & program statement.  AW Garcia has already told mailroom & SIS to STOP OPENING LEGAL MAIL.

> If package was "suspicious" they could of still opened & inspected in front of inmate per policy, returned to sender or called law office.   Excuse to open legal mail.   NOTHING IN POLICY ALLOWS!

> Aguilar told Lt. Corn he didn't want to write shot, came from over his head.

> Person who was receiving mail got no shot.   Only reason I did was because I got tracking emailed to me.   Both of us communicated with same guy for legal help.   No emails of me asking for drugs or me relaying who to mail to.   Did I get his tracking by mistake?

> What is "designer drugs"??   Has it been tested?   Does anyone even know what it is?   Could be coffee spill for all we know!

> My paralegal has sent real lawyer twice to see me and have me sign documents while at Lompoc to evict people.

> No history of drug sales EVER, nothing found in my property or locker and no money transfers or large deposits.   Only same 4 family members send me money.

> NUMEROUS ERRORS on shot ie (date, emails being sent, emails out of context

> to fit narrative, opening legal mail).

Chetwood Decl., Exh. F (emphasis in original).

4  - FINDINGS AND RECOMMENDATION

On February 16, 2018, DHO Chetwood completed his Disciplinary Hearing Officer Report. Chetwood Decl., Exh. D. DHO Chetwood concluded that Petitioner committed the Prohibited Act as charged. Id. In reaching this decision, he relied upon written statements from Aguilar, Petitioner's statements to the investigator and the UDC, photographic evidence depicting the mail items and NIK polytest, memoranda from Officer McDaniel and Technician Aguilar describing how the mail items were discovered and tested, Petitioner's email communications with Rasmussen (in particular the email containing the tracking number of the package), and Petitioner's statement at the DHO hearing and his written submission. Id. at pp. 2-3. DHO Chetwood rejected Petitioner's claim that the report writer only wrote the incident report because he was ordered to do so and found Petitioner's claim he was emailed the tracking number by mistake to be incredible. Id. at p. 3. The DHO found that Petitioner's claim that he had "no history of drugs" did not have a bearing on the charge against him, and considered Petitioner's statement that he "knew of other drug issues" adversely, as it suggested Petitioner was purposely withholding potentially incriminating information. Id. at p. 4. DHO Chetwood imposed sanctions of 41 days loss of good conduct time, 60 days of disciplinary segregation (suspended pending 180 days of clear conduct), 180 days loss of commissary privileges, and one-year loss of social visiting privileges (suspended pending 180 days of clear conduct). Id.

Petitioner exhausted his administrative remedies. On January 18, 2019, he filed his Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 with this Court asking that the disciplinary action be expunged from his record and that his 41 days of good conduct time be restored. Petitioner alleges the DHO hearing was procedurally flawed because the hearings officer was not fair and impartial. He alleges that DHO Chetwood communicated with

5  - FINDINGS AND RECOMMENDATION

Technician Aguilar in advance of the hearing and agreed to impose "minimal sanctions" if Petitioner did not fight the charges.   Petitioner also alleges he did not receive adequate notice of the charges against him.   Petitioner alleges the NIK tests are not able to detect "designer drugs," including K2 or Spice, that NIK testing kits have a limited "shelf life," and that the Bureau of Prisons ("BOP") has not shown that the kits used in his case were not expired.   Finally, Petitioner alleges that the NIK tests have known reliability issues with respect to testing paper for amphetamines.   Respondent contends that Petitioner is not entitled to habeas corpus relief because the disciplinary proceeding comported with due process requirements and because the DHO's finding was supported by sufficient evidence.

After briefing was completed, Petitioner filed a Motion for Discovery seeking production of 11 categories of documents.   Respondent objects to Petitioner's Motion on the basis that the requests do not meet the threshold for discovery in a habeas case.

## LEGAL STANDARDS

Under 28 U.S.C. § 2241, a district court may grant habeas relief when a petitioner "is in custody in violation of the Constitution or laws or treaties of the United States."   28 U.S.C. § 2241(c) (3). "A necessary predicate for the granting of federal habeas relief [to a petitioner] is a determination by the federal court that [his] custody violates the Constitution, laws, or treaties of the United States."   Rose v. Hodges, 423 U.S. 19, 21 (1975) (citing 28 U.S.C. § 2241).

## DISCUSSION

### I.    Procedural Due Process

"Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply."   Wolff v. McDonnell,

6  - FINDINGS AND RECOMMENDATION

418 U.S. 539, 556 (1974).    Instead, due process requirements are met if the inmate receives:

1) advance written notice of the charges and the evidence against him; 2) an opportunity to

present documentary evidence and witnesses; 3) legal assistance if the charges are complex or the

inmate is illiterate; 4) an impartial decision-maker; 5) a written statement describing the reasons

for the disciplinary action; and 6) a disciplinary decision supported by "some evidence" in the

record.    Id. at 563, 566, 570; Superintendent v. Hill, 472 U.S. 445, 454-55 (1985).

    Petitioner first contends that DHO Chetwood was not impartial.    A fair trial in a fair

tribunal is a basic requirement of due process that applies in prison disciplinary proceedings.    In

re Murchison, 349 U.S. 133, 136 (1955); Wolff, 418 U.S. at 570-71.    Fairness requires an

absence of actual bias and of the probability of unfairness.    Murchison, 349 U.S. at 136.    Bias

may be actual, or it may consist of the appearance of partiality in the absence of actual bias.

Stivers v. Pierce, 71 F.3d 732, 741 (9th Cir. 1995).    A showing that the adjudicator has

prejudged, or reasonably appears to have prejudged, an issue is sufficient.    Kenneally v.

Lungren, 967 F.2d 329, 333 (9th Cir.1992).    There is a presumption of honesty and integrity on

the part of decision makers which may be overcome by evidence of a risk of actual bias or

prejudgment based on special facts and circumstances.    Withrow v. Larkin, 421 U.S. 35, 46-47,

58 (1975).

    Petitioner contends DHO Chetwood was biased because he communicated in advance of

the hearing with Technician Aguilar and agreed to prearrange the result of the hearing and the

sanctions to be imposed.    In an Affidavit attached to his Petition, Petitioner avers that Aguilar

told him that Aguilar's boss required Aguilar to write up a shot on someone, and that because

Petitioner had the tracking number, it would be him.    He states that Aguilar further told him,

7  - FINDINGS AND RECOMMENDATION

"If you take the shot on the chin and you don't fight it, I will make sure that you don't do any DS time and that you will receive much easier sanctions.   If you do fight this, I will make sure that you do 180 days more in the SHU and that you receive the maximum sanctions and I will also personally contact the AUSA and ask them to prosecute you."   Petitioner states he "chose not to fight" the charges.   Petitioner further states that when he went into the disciplinary hearing, DHO Chetwood told Petitioner, "I have already talked to SIS Aguilar and he told me the deal." According to Petitioner, DHO Chetwood kept the deal and imposed "ridiculously lenient punishment."

Petitioner's theory is not persuasive.   First, Petitioner did not "take the shot on the chin" as the alleged agreement with Technician Aguilar required.   While Petitioner did not admit or deny the allegations or present any witnesses, he did provide a lengthy list of objections.   Also, Petitioner's argument that he received no disciplinary segregation is belied by the fact that he was immediately placed in the Special Housing Unit and remained there for several weeks prior to the disciplinary hearing.   The DHO imposed a suspended sentence of 60 additional days of disciplinary segregation and an additional suspended sentence of one year of loss of visitation privileges pending six months of clear conduct.   Under these circumstances, petitioner has not established that DHO Chetwood was not impartial.

## II.    Fair Notice of Charge

Petitioner also contends that he did not receive fair notice of the charges against him. He argues that the record is ambiguous regarding the substance he is alleged to have introduced into the prison.   "In the prison context, the law requires less in the way of notice," and "[f]ederal courts defer to prison authorities' interpretation of prison rules unless fair notice was clearly

lacking." <u>Ely v. McGrew</u>, Case No. CV 12-5266-JFW(OP), 2014 WL 3941578, at *4 (C.D. Cal. June 3, 2014) (internal citations and quotations omitted) <u>report and recommendation adopted as modified by</u> 2014 WL 3941584 (C.D. Cal. Aug. 12, 2014).   The sufficiency of the notice hinges upon whether it allows the prisoner to "marshal the facts" to prepare a defense. <u>Wolff</u>, 418 U.S. at 564.

Here, fair notice was not "clearly lacking."   The Incident Report charged Petitioner with the prohibited act of "[i]ntroduction or making of any narcotics, marijuana, drugs or related paraphernalia not prescribed for the individual by medical staff," and stated that Petitioner "facilitated and arranged with an outside person, to have narcotic soaked papers to be sent to another inmate housed" at the institution.   Chetwood Decl., Exh. 2, p. 1.   This was sufficient notice to Petitioner of the charged prohibited conduct.

## III.   Sufficiency of Evidence

Petitioner also challenges the sufficiency of the evidence supporting DHO Chetwood's decision to sustain the Code 111 charge.   As noted, judicial review of a prison disciplinary decision is limited; this Court cannot overturn the disciplinary decision of prison officials so long as the decision is supported by "some evidence." <u>Hill</u>, 472 U.S. at 455-56.   The "some evidence" standard "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence." <u>Id</u>.   Indeed, in examining the record, a court is not to make its own assessment of the credibility of witnesses or re-weigh the evidence. <u>Hill</u>, 472 U.S. at 455.   Rather, the standard "is minimally stringent, such that a decision will be upheld if there is *any* evidence in the record that *could* support the conclusion reached by the disciplinary board." <u>Powell v. Gomez</u>, 33 F.3d 39, 41 (9th Cir. 1994) (emphasis in original).

9  - FINDINGS AND RECOMMENDATION

Here, Petitioner contends that the result of the NIK chemical testing kit used to identify the paper as containing amphetamines lacked sufficient reliability to support the disciplinary sanction. He argues that chemical field tests of the type used are proven to be unreliable, that there is no evidence that the agent who conducted the NIK test was adequately trained, and that the agent used the test kit improperly.   In essence, Petitioner argues the lack of confirmation testing renders the initial test results void.

Numerous courts have held that a prisoner does not have a constitutional right to an additional drug test to verify the results of an initial positive test.   White v. Stansil, Case No. 2:15-cv-0242-EFB P (TEMP), 2016 WL 4009954, at *6 (E.D. Cal. July 25, 2016) (collecting cases).   Moreover, DHO Chetwood  relied upon multiple sources of evidence to determine Petitioner violated prison rules:    detailed communications between Petitioner and the supplier of the contraband which included a message from the supplier containing the exact tracking number of the sized envelope; photographs documenting the appearance of the papers in question and evidencing the testing process; staff memoranda; the positive test results; and statements from Petitioner confirming his relationship with the sender.   DHO Chetwood also found Petitioner lacked credible explanations and made demonstrably false statements.   Despite Petitioner's contention that the NIK test was not reliable, this Court finds some evidence in the record to support DHO Chetwood's finding that Petitioner committed the prohibited act.   See White, 2014 WL 4009954, at *6 (independent confirmatory testing could, at best, be used to attack the accuracy of the prison's drug testing procedures and would not necessarily discount the fact that "some evidence" supported the conclusion of the disciplinary board).

10  - FINDINGS AND RECOMMENDATION

### III.    Discovery Motion

As noted, after the briefing was completed in this case, petitioner filed a motion for discovery seeking several categories of documents.   "Habeas petitioners are not routinely entitled to discovery."   <u>Bracy v. Gramley</u>, 520 U.S. 899, 904 (1997).    The discovery provisions of the Federal Rules of Civil Procedure do not generally apply.   <u>Harris v. Nelson</u>, 394 U.S. 286, 295 (1969).   "A judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of Civil Procedure and may limit the extent of discovery." See Rule 6(a) of the Rules Governing § 2254 Cases.[2]    Good cause is shown "where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief."   <u>Bracy</u>, 520 U.S. at 908-09 (citing <u>Harris</u>, 394 U.S. 286).   As discussed above, Petitioner has not presented allegations demonstrating that he is entitled to relief.   Accordingly, Petitioner has not shown good cause and is therefore not entitled to the discovery requested.

### IV.    Evidentiary Hearing

Petitioner requests the Court hold an evidentiary hearing.   In habeas proceedings, however, "an evidentiary hearing is not required on issues that can be resolved by reference to the [underlying] record."   <u>Totten v. Merkle</u>, 137 F.3d 1172, 1176 (9th Cir. 1998).    Accordingly, petitioner's request for an evidentiary hearing should be denied.

---

[2]The Rules Governing Section 2254 Cases apply to § 2241 habeas petitions.   <u>See</u> Rule 1(b) of the Rules Governing Section 2254 Cases ("[t]he district court may apply any or all of these rules to a habeas corpus petition not covered by" § 2254).

## <u>CONCLUSION</u>

For these reasons, the Petition for Writ of Habeas Corpus (ECF No. 1) and Petitioner's

Motion for Discovery (ECF No. 20) should be DENIED and a judgment of DISMISSAL should

be entered.

This recommendation is not an order that is immediately appealable to the Ninth Circuit

Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate

Procedure, should not be filed until entry of the district court's judgment or appealable order. The

parties shall have fourteen (14) days from the date of service of a copy of this recommendation

within which to file specific written objections with the court. Thereafter, the parties shall have

fourteen (14) days within which to file a response to the objections. Failure to timely file

objections to any factual determination of the Magistrate Judge will be considered as a waiver of

a party's right to de novo consideration of the factual issues and will constitute a waiver of a

party's right to appellate review of the findings of fact in an order or judgment entered pursuant

to this recommendation.

DATED this 25th day of February, 2020.


 /s/ Jolie A. Russo
Jolie A. Russo
United States Magistrate Judge


12  - FINDINGS AND RECOMMENDATION