**EXHIBIT INDEX**

**Exhibit A:** John Lynn Emails and SIS Advisory (including the January 18, 2017 SIS Advisory and related January 2018 emails).

**Exhibit B:** Video Evidence (link and summary demonstrating baseline burgundy color on NIK Test U).

**Exhibit C:** Clark Bailey Incident Report (FCI Herlong Incident Report No. 3025931, dated Aug. 24, 2017).

**Exhibit D:** Declaration of William J. Chetwood (filed March 6, 2019, in Case No. 3:19-cv-00093-JR).

**Exhibit E:** Safariland, LLC Memorandum of Points and Authorities in Support of Motion to Dismiss (Steffey v. Peters, Case No. 2:25-cv-11105-VBF-SK, Doc. 23-2, filed Dec. 15, 2025).

**Exhibit F:** Plaintiff's Notice of Supplemental Authority (Steffey v. Peters, Case No. 2:25-cv-11105-VBF-SK, filed Dec. 22, 2025).

**Exhibit G:** Verified Complaint (Steffey v. Peters) (verified under penalty of perjury; dated Nov. 16, 2025).

## UNITED STATES DISTRICT COURT
## DISTRICT OF OREGON

BILLY F. STEFFEY,
Petitioner,

Case No.: 3:19-cv-00093-JR

v.

WARDEN J. SALAZAR,
Respondent.

# EXHIBIT A

## JOHN LYNN EMAILS AND SIS ADVISORY

Attached to Petitioner's Rule 60(b) Motion for Relief from Judgment

**Chris Liwag - Fwd: Follow up - Suboxone related Incident Reports**

**From:**    Robert J. Lynn
**To:**     Hernandez, Ismael
**Date:**    1/25/2018 9:39 AM
**Subject:**   Fwd: Follow up - Suboxone related Incident Reports

Can you please send this out to your DHOs as a follow up to your email from yesterday. Thanks

>>> Robert J. Lynn 1/24/2018 9:59 AM >>>

As a follow up conversation with Central Office, I would like to clarify that the first preferred method is to have a pharmacist or any Subject Matter Expert on the identification of medication such as a doctor or other medical staff verify the item is Buprenorphine HCL (Suboxone). They must submit a signed memorandum verifying their identification of the drug, which of course is attached to the IR. Good rule of thumb is if there are identifiers on the strip it should be taken to the SME. However, if the strip is cut up into several pieces and the SME can't identify the item as suboxone, then the NIK testing should take place as addressed below.

R. John Lynn, CSS (SIA)
Western Regional Office
7338 Shoreline Drive
Stockton, Ca
Office: ██████████

"Use your Tools and Resources to ensure success."

>>> Robert J. Lynn 1/23/2018 12:02 PM >>>

WXR SIS and Captains,

As a reminder, if you or your staff write an Incident Report relating to the possession of Buprenorphine (Suboxone is the brand name) that you must test the substance Using NIK Test Kit "A" then "U" then "K." (As outlined in the attached SIS Advisement, and NIK Test chart) A colored photograph of the strips and the NIK tests should also be attached to the Incident Report. If they are full strips with the N8 stamp on them, then you should also have your local pharmacist submit a supporting memorandum identifying it as Buprenorphine (Brand name Suboxone).

In addition ensure you clearly identify who conducted the NIK test in the Incident report. If it is not the author of the IR, then a supporting memorandum should be attached from who did the testing. Furthermore, ensure the staff member who tests the narcotics is certified to do so. (See attached current WXR roster ran today, January 23, 2018. All SIS staff and Lieutenants should be certified.)

We have lost too many Incident Reports to appeals based on staff not being certified,

identifying the drug by the brand name Suboxone instead of the drug name Buprenorphine, not identifying the person who conducted the testing and/or not testing with A, U and K. If you fail to do any of these steps, the inmate will win his appeal because OGC will not support you IR without these steps being followed.

You guys do an outstanding job identifying those inmates introducing, possessing and selling drugs. But we must do all that we must do to hold these inmates accountable.

Please review and use the following attachments and IR examples. Like always, please be sure to communicate with your DHO. They will provide you guidance and advise on what they review on their side of the house (legal side) to ensure all supporting documentation and evidence is present . Remember we are all on one team and at the end of the day, all of us want to make sure we are holding the inmates accountable for their actions.

WXRO appreciates, recognize and thanks you for your hard work on combating our drug problems in our region. But lets not let the inmates beat us based on technicalities.

Contact me if you have any questions. John

R. John Lynn, CSS (SIA)
Western Regional Office
7338 Shoreline Drive
Stockton, Ca
Office: ▮▮▮▮▮▮▮

"Use your Tools and Resources to ensure success."

*Internal emails !!*

## Chris Liwag - Fwd: Follow up - Suboxone related Incident Reports

**From:**    Robert J. Lynn
**To:**      Hernandez Ismael
**Date:**    1/25/2018 9:39 AM
**Subject:** Fwd: Follow up - Suboxone related Incident Reports

Can you please send this out to your DHOs as a follow up to your email from yesterday. Thanks

>>> Robert J. Lynn 1/24/2018 9:59 AM >>>

As a follow up conversation with Central Office, I would like to clarify that the first preferred method is to have a pharmacist or any Subject Matter Expert on the identification of medication such as a doctor or other medical staff verify the item is Buprenorphine HCL (Suboxone). They must submit a signed memorandum verifying their identification of the drug, which of course is attached to the IR. Good rule of thumb is if there are identifiers on the strip it should be taken to the SME. However, if the strip is cut up into several pieces and the SME can't identify the item as suboxone, then the NIK testing should take place as addressed below.

R. John Lynn, CSS (SIA)
Western Regional Office
7338 Shoreline Drive
Stockton, Ca
Office: ███████████

"Use your Tools and Resources to ensure success."

>>> Robert J. Lynn 1/23/2018 12:02 PM >>>

WXR SIS and Captains,

As a reminder, if you or your staff write an Incident Report relating to the possession of Buprenorphine (Suboxone is the brand name) that you must test the substance Using NIK Test Kit "A" then "U" then "K." (As outlined in the attached SIS Advisement, and NIK Test chart) A colored photograph of the strips and the NIK tests should also be attached to the Incident Report. If they are full strips with the N8 stamp on them, then you should also have your local pharmacist submit a supporting memorandum identifying it as Buprenorphine (Brand name Suboxone).

In addition ensure you clearly identify who conducted the NIK test in the Incident report. If it is not the author of the IR, then a supporting memorandum should be attached from who did the testing. Furthermore, ensure the staff member who tests the narcotics is certified to do so. (See attached current WXR roster ran today, January 23, 2018. All SIS staff and Lieutenants should be certified.)

We have lost too many Incident Reports to appeals based on staff not being certified,

identifying the drug by the brand name Suboxone instead of the drug name Buprenorphine, not identifying the person who conducted the testing and/or not testing with A, U and K. If you fail to do any of these steps, the inmate will win his appeal because OGC will not support you IR without these steps being followed.

You guys do an outstanding job identifying those inmates introducing, possessing and selling drugs. But we must do all that we must do to hold these inmates accountable.

Please review and use the following attachments and IR examples. Like always, please be sure to communicate with your DHO. They will provide you guidance and advise on what they review on their side of the house (legal side) to ensure all supporting documentation and evidence is present . Remember we are all on one team and at the end of the day, all of us want to make sure we are holding the inmates accountable for their actions.

WXRO appreciates, recognize and thanks you for your hard work on combating our drug problems in our region. But lets not let the inmates beat us based on technicalities.

Contact me if you have any questions. John

R. John Lynn, CSS (SIA)
Western Regional Office
7338 Shoreline Drive
Stockton, Ca
Office: ████████████

"Use your Tools and Resources to ensure success."



## Chris Liwag - Suboxone related Incident Reports

| | |
|---|---|
| **From:** | Robert J. Lynn |
| **To:** | Captains WXRO;  SIA/SIS LT's;  SIS SHOPS |
| **Date:** | 1/23/2018 12:02 PM |
| **Subject:** | Suboxone related Incident Reports |
| **CC:** | WXR CORR SERV |
| **Attachments:** | NIK IR2.pdf; NIKSISAdvisory (Jan 2017).pdf; NIK IR1.pdf; NIK IR3.pdf; CSV-0660-VXX.pdf |

WXR SIS and Captains,

As a reminder, if you or your staff write an Incident Report relating to the possession of Buprenorphine (Suboxone is the brand name) that you must test the substance Using NIK Test Kit "A" then "U" then "K." (As outlined in the attached SIS Advisement, and NIK Test chart)  A colored photograph of the strips and the NIK tests should also be attached to the Incident Report.  If they are full strips with the N8 stamp on them, then you should also have your local pharmacist submit a supporting memorandum identifying it as Buprenorphine (Brand name Suboxone).

In addition ensure you clearly identify who conducted the NIK test in the Incident report.  If it is not the author of the IR, then a supporting memorandum should be attached from who did the testing. Furthermore, ensure the staff member who tests the narcotics is certified to do so. (See attached current WXR roster ran today, January 23, 2018. All SIS staff and Lieutenants should be certified.)

We have lost too many Incident Reports to appeals based on staff not being certified, identifying the drug by the brand name Suboxone instead of the drug name Buprenorphine,  not identifying the person who conducted the testing and/or not testing with A, U and K. If you fail to do any of these steps, the inmate will win his appeal because OGC will not support you IR without these steps being followed.

You guys do an outstanding job identifying those inmates introducing, possessing and selling drugs. But we must do all that we must do to hold these inmates accountable.

Please review and use the following attachments and IR examples. Like always, please be sure to communicate with your DHO.  They will provide you guidance and advise on what they review on their side of the house (legal side) to ensure all supporting documentation and evidence is present . Remember we are all on one team and at the end of the day, all of us want to make sure we are holding the inmates accountable for their actions.

WXRO appreciates, recognize and thanks you for your hard work on combating our drug



**\*\* SIS ADVISORY \*\***
**January 18, 2017**
**"Buprenorphine HCL (Suboxone) Incident Reports"**

Federal Bureau of Prisons
Intelligence Section
320 First Street, NW – Room 543
Washington, DC 20534

COMM:
FAX:
LAN ID:

Brad Trate, Administrator
Correctional Services Branch

M. Wade Jensen
Operations Intelligence Officer
Intelligence Section

Kevin Schwinn, Chief
Intelligence Section

**TO: Regional Directors/All ROs; BOP-CPD/Assistant Director; Warden/All Insts; SIS/All ROs; Corr Svc/All ROs; SIS/All Insts; Corr Svcs/All Insts; BOP-CPD/SIS; BOP-CPD/SIU; BOP-CPD/CTU; BOP-CPD/PMB Intel**

<u>PURPOSE</u>:    **Update Field Test Kits for Buprenorphine HCL (Suboxone) and Clarify Incident Report Writing:**

<u>DISCUSSION</u>: This is an update to the SIS Advisory dated September 29, 2015.

The SAFARILAND Company has informed Central Office Intelligence Section of an update to the reported color results when testing for Buprenorphine HCL.  In the September 29, 2015 SIS Advisory, the color change in NIK Test U – Methamphetamine Reagent – was reported as BROWN.  The color change should have been reported as BURGANDY.

The NIK Polytesting procedure for the detection of Buprenorphine HCL is a combination of A, U, K tests.

NIK Test A – Marquis Reagent – results are purple
NIK Test U – Methamphetamine Reagent – results are **<u>BURGANDY</u>**
NIK Test K – Opiates Reagent – results are purple

It should be noted Heroin and Buprenorphine HCL will result in a similar purple color, but Heroin will change from green to purple while Buprenorphine HCL will go directly to purple.  When using NIK Field Tests, staff should only report the test results.

UNCLASSIFIED/LIMITED OFFICIAL USE ONLY/LAW ENFORCEMENT SENSITIVE
This document is marked Unclassified/Limited Official Use Only/Law Enforcement Sensitive and may be disseminated, with proper attribution, to active Law Enforcement, DOD, or U.S. Intelligence Agencies. This document, or any segment/attachment thereof, may not be released without the approval of the Bureau of Prisons to any media sources, any non-law enforcement entity, the general public or those without a "need to know." It contains Information that may be exempt from public release under the provisions of the Privacy Act (5 U.S.C. 552).





MDMA

Heroin

Morphine

Codeine

Buprenorphine HCl

**ACTION REQUESTED**: The Special Investigative Supervisors (SIS) are asked to advise the staff of the information contained in this alert. If a recovered substance is suspected Buprenorphine HCL (Suboxone), it is preferred a pharmacist identify the substance as Buprenorphine HCL (Suboxone). The supporting memo from the pharmacist should be attached to the incident report along with photographs of the evidence and no NIK Field Test is necessary. If the recovered substance cannot be positively identified as Buprenorphine HCL (Suboxone) by a pharmacist, staff should treat the substance as a completely unknown narcotic and conduct the appropriate NIK testing sequence. Photographs of the evidence and completed NIK Field Tests should be attached to the incident report.

**REMEMBER**: In Block 11 of the incident report, the substance should be referred to as unknown or unidentified and all NIK Field Test results should be detailed. Example incident reports are attached.

UNCLASSIFIED/LIMITED OFFICIAL USE ONLY/LAW ENFORCEMENT SENSITIVE
This document is marked Unclassified/Limited Official Use Only/Law Enforcement Sensitive and may be disseminated, with proper attribution, to active Law Enforcement, DOD, or U.S. Intelligence Agencies. This document, or any segment/attachment thereof, may not be released without the approval of the Bureau of Prisons to any media sources, any non-law enforcement entity, the general public or those without a "need to know." It contains information that may be exempt from public release under the provisions of the Privacy Act (5 U.S.C. 552).

problems in our region. But lets not let the inmates beat us based on technicalities.

Contact me if you have any questions. John

R. John Lynn, CSS (SIA)
Western Regional Office
7338 Shoreline Drive
Stockton, Ca
Office:

"Use your Tools and Resources to ensure success."

9/5/2018

## UNITED STATES DISTRICT COURT
## DISTRICT OF OREGON

BILLY F. STEFFEY,                           Case No.: 3:19-cv-00093-JR
Petitioner,

v.

WARDEN J. SALAZAR,
Respondent.

# EXHIBIT B

## VIDEO EVIDENCE

Attached to Petitioner's Rule 60(b) Motion for Relief from Judgment

https://youtu.be/p8USQ642q7w

## Key Evidentiary Points from Video

### Stated Purpose and Core Claim

The video's stated purpose is to demonstrate that the NIK tests used by the Bureau of Prisons provide negative results, which are then falsely reported as positive [00:00, 01:06].

**Core Allegation:** The BOP interprets a "dark burgundy color" on NIK Test U as a "positive result for amphetamines" [00:49, 00:59], which the demonstrator claims is actually a negative result [01:06, 04:38].

### Background Documentation Referenced

- The video shows incident reports documenting disciplinary actions based on burgundy test results [00:15, 00:26]
- An SIS (Special Investigative Services) report is displayed stating: "use Nick Kit test U and it turned an immediate dark burgundy color indicating amphetamines" [00:45, 00:55]
- The SIS report explicitly states: "The test indicated a positive result for amphetamines" [00:59]

### Demonstration 1: Plain Paper Test

1. A sealed NIK Test U pouch is displayed [01:35, 01:40]
2. A small strip of standard Hammermill printer paper is cut from a new stack [01:20, 01:53]
3. The plain paper strip is placed into the Test U pouch [02:28, 02:33]
4. The chemical ampoules in the pouch are broken from left to right per instructions [02:39]
5. The liquid in the pouch immediately turns burgundy color [02:56, 03:14]

**Narration at 02:56:** "You can already see the thing turning burgundy right now. So, this is a brand new piece of paper out of a stack of printer paper. That is your burgundy result that you took away my 41 good days." [02:56]

### Demonstration 2: Empty Test Pouch (No Substance)

1. A new, sealed NIK Test U pouch is opened [03:59, 04:01]
2. **No substance is placed inside the pouch** [04:07]
3. **Narration at 04:07:** "I'm not even opening it and putting anything in it. I'm going to break these as it says." [04:07]
4. The chemical ampoules are broken [04:08]
5. The chemicals alone turn burgundy color [04:29, 04:33]

### Critical Color Reference Observation

The demonstrator notes that the test pouch itself contains a blue color reference square at the top [04:24, 04:26].

**Narration at 04:26:** "You can see that on the top of the test there's a blue color to match it with because only blue is positive." [04:26]

## Conclusions Stated in Video

- **At 04:33:** "This test with nothing in it, just the chemicals alone turned burgundy as it should because that's a negative drug test." [04:33]
- **At 04:38:** "And this is what you guys are locking people up for and punishing people just because you have an issue with them or you want to get rid of them for whatever reason." [04:38]
- **At 04:49:** "The nick tests are documented burgundy and you're claiming that's positive. It is not positive." [04:49]

## Alleged Consequences Referenced

The video references the following consequences of burgundy test results being reported as positive:

- Loss of good time credits (41 days specifically mentioned) [02:59]
- Transfer to higher security facilities [03:19]
- Extended time in segregated housing (SHU) [03:19]
- Separation from families and loss of visitation rights [03:34, 03:40]

**Note:** These exhibits are marked for identification and reference purposes in connection with the subject matter of this proceeding.

# UNITED STATES DISTRICT COURT
## DISTRICT OF OREGON

BILLY F. STEFFEY,
Petitioner,

Case No.: 3:19-cv-00093-JR

v.

WARDEN J. SALAZAR,
Respondent.

# EXHIBIT C

## CLARK BAILEY INCIDENT REPORT

Attached to Petitioner's Rule 60(b) Motion for Relief from Judgment

BP-A0288
JAN 17
**U.S. DEPARTMENT OF JUSTICE**

# INCIDENT REPORT

## FEDERAL BUREAU OF PRISONS

### Part I - Incident Report

| | | | |
|---|---|---|---|
| 1. Institution:   FCI Herlong | | Incident Report Number:  3025931 | |
| 2. Inmate's Name:<br>Clark Bailey | 3. Register Number:<br>64110-065 | 4. Date of Incident:<br>August 24, 2017 | 5. Time:<br>3:00p.m. |
| 6. Place of Incident:<br>Tahoe Delta, Cell 111 | 7. Assignment:<br>Yard PME | | 8. Unit:<br>Tahoe Delta |

| 9. Incident:<br>Introduction or making of any drugs or alcohol<br>Possession of any drugs or alcohol | 10. Prohibited Act Code(s)<br>111<br>113 |
|---|---|

11. Description of Incident (Date: 08/24/2017   Time: 3:00 p.m. Staff became aware of incident):

After the completion of an SIS investigation it is determined that; On August 24, 2017, at approximately 3:00pm, staff conducted a random cell search of Tahoe Delta, cell 111, at the time assigned to inmates Clark Bailey, Reg. No. 64110-065 and Travis Donovan, Reg. No. 46939-048. While conducting the search staff located what appeared to be hand written instructions of which website to visit for the purpose of purchasing K-2 spice, a form of synthetic cannabis; furthermore, how to properly saturate greeting cards using a liquid form of K-2 spice and introduce them to Correctional Facilities through the mail room using the U.S Postal Service (USPS). The hand written instructions were located in the common area of the cell, placed on the ground next to the inmate assigned lockers concealed inside a box of laundry soap which was under some clothing items baring inmate Bailey's identifying information. While inventorying the property located inside inmate Bailey's assigned secure inmate locker, staff located three (3), one (1) half greeting cards which appeared to have been saturated in an unknown substance causing them to be malleable and on one card which had a hand written message for the ink to become bleary and for said ink to bleed through the greeting card. The three (3) half cards were tested by SIS for the presence of a foreign substance utilizing the NIK testing procedures outlined in an SIS ADVISORY dated March 27, 2017. Testing procedures produced a positive results for Methamphetamine Reagent which indicates the presence of Amphetamine by results turning burgundy in color. It is concluded that the instructions found in the common area of cell 111, were utilized to introduce narcotics to FCI Herlong, some of which were located inside inmate Bailey's inmate assigned secure locker, at which the time it was under his (Bailey's) dominion.

***This incident report was re-written pending the completion of an SIS investigation.***

| 12. Typed Name/Signature of Reporting Employee:<br>A. Potichkin  / | 13.Date And Time:<br>September 20, 2017  /    6:50a.m. |
|---|---|
| 14. Incident Report Delivered to Above Inmate By<br>(Type Name/Signature):<br>J. Rodgers / | 15 .Date Incident Report Delivered:<br>9-20-17 | 16. Time Incident Report Delivered:<br>9:20~ |

### Part II - Committee Action

17. Comments of Inmate to Committee Regarding Above Incident:

Inmate declined to make a statement at this time.

| 18. A. It is the finding of the committee that you:<br><br>_____ Committed the Prohibited Act as charged.<br>_____ Did not Commit a Prohibited Act.<br>_____ Committed Prohibited Act Code(s). _____   _____ | B.  X  The Committee is referring the Charge(s) to the DHO for further Hearing.<br>C.  X  The Committee advised the inmate of its finding and of the right to file an appeal within 20 calendar days. |
|---|---|

19. Committee Decision is Based on Specific Evidence as Follows:

Referred to the DHO based on severity of charge.

20. Committee action and/or recommendation if referred to DHO (Contingent upon DHO finding inmate committed prohibited act):

GCT, DS, LP comm, Phone, E-mail

21. Date and Time of Action: 9-26-17 12:50 (The UDC Chairman's signature certifies who sat on the UDC and that the completed report accurately reflects the UDC proceedings).

M. Dixon /

| Chairman (Typed Name/Signature) | Member (Typed Name) | Member (Typed Name) |
|---|---|---|

## UNITED STATES DISTRICT COURT
## DISTRICT OF OREGON

BILLY F. STEFFEY,                          Case No.: 3:19-cv-00093-JR
Petitioner,

v.

WARDEN J. SALAZAR,
Respondent.

# EXHIBIT D

## DECLARATION OF WILLIAM J. CHETWOOD

Attached to Petitioner's Rule 60(b) Motion for Relief from Judgment

**BILLY J. WILLIAMS, OSB #901366**
United States Attorney
**JARED D. HAGER, WSB #38961**
Assistant United States Attorney
U.S. Attorney's Office for the District of Oregon
1000 SW Third Avenue, Suite 600
Portland, Oregon 97204-2902
Phone: 503.727.1120
Email: jared.hager@usdoj.gov
    Attorneys for the Respondent

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

| | |
|---|---|
| **BILLY F. STEFFEY,** | Case No.: 3:19-cv-00093-JR |
| Petitioner, | |
| v. | DECLARATION OF WILLIAM J. CHETWOOD |
| **WARDEN J. SALAZAR,** | |
| Respondent. | |

## DECLARATION OF WILLIAM J. CHETWOOD

I, William J. Chetwood hereby declare:

1.     I am currently employed by the Federal Bureau of Prisons (BOP) as a Discipline Hearing Officer (DHO) at the Federal Correctional Institution in Lompoc, CA. I have been employed by the BOP since December 6, 1998. I have served as the DHO at FCI Lompoc since 2015.

2.     I am making this declaration in the case of Billy F. Steffey, Jr. v. Warden J. Salazar, Case No. 3:19-cv-00093-JR, wherein inmate Billy F. Steffey, Jr., Register Number 68463-097, ("Petitioner"), has filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241, challenging the findings of my February 16, 2018 DHO report.

3.     As a part of my routine duties I have access to various records kept in the regular course of business containing information about the inmate population. One record system is called SENTRY. SENTRY indicates Petitioner was sentenced on August 7, 2014 to 84 months of imprisonment for violations of 18 USC § 371; § 1029(a)(2); § 1029(c)(1)(A)(i); and § 1028A (conspiracy to traffic in and use one or more counterfeit devices to obtain things in value in excess of $1,000; and aggravated identity theft). Petitioner is currently housed at the Federal Correctional Institution (FCI), Sheridan, OR. His projected release date is November 2, 2020. Petitioner was housed at FCI Lompoc, CA, at the time of his prohibited act and my disciplinary decision.

4.     Petitioner argues I was not fair and impartial in my role as DHO (see Petition at 6-7). He also contends I did not have adequate evidence upon which to base my decision. Specifically, Petitioner claims the drugs attributed to him were contained in an envelope addressed to another inmate (hereinafter "Inmate X") (id. at 16); the Narcotics Identification Kit (NIK) used to detect the results I relied upon is not designed to identify the drugs attributed to Petitioner (i.e.

Steffey v. Salazar                                                    Declaration of
Case No. 3:19-cv-00093-JR                                    William J. Chetwood

amphetamines) (id. at 7); I failed to confirm the kit was not "expired" (id.); lab tests were conducted which exonerated Petitioner but were not revealed to him (id. at 16); and NIK results are rampantly falsified by BOP staff to intentionally generate false positives (id. at 17).

5.     My responsibilities as DHO consist of conducting administrative hearings for inmates alleged to have committed rule violations established by BOP policy. I make my determinations based on established policy, available evidence, inmate statements, witness statements, and sound correctional judgment. I have attended DHO training and am certified in DHO policies and procedures. I have access to DHO Reports, Incident Reports, Inmate Disciplinary Records, staff memoranda, and inmate statements to form the basis of my decision.

6.     The current inmate disciplinary policy is Program Statement 5270.09, Inmate Discipline Program, which was issued on June 20, 2011 and made effective for all violations committed on or after August 1, 2011. A true and correct copy of the program statement is attached as Exhibit ("Ex.") A. My responsibilities as DHO consist of conducting administrative hearings for inmates alleged to have committed rule violations established by BOP policy. The BOP has implemented policy and procedures for inmate discipline to promote a safe and orderly institution environment.

7.     I am an impartial hearing officer who does not investigate or have any prior knowledge concerning an alleged rule violation before it is referred to me for consideration. My impartiality is determined by my status as one "who was not a victim, witness, investigator, or otherwise significantly involved in the incident." See Ex. A at 27.

8.     The discipline process begins when a staff member witnesses or reasonably believes an inmate has committed a prohibited act. See Ex. A at 17 (citing 28 CFR § 541.5). Attached as Ex. B is a true and correct copy of incident

Steffey v. Salazar
Case No. 3:19-cv-00093-JR

Declaration of
William J. Chetwood

report number 3084272. This is the report that initiated the disciplinary process against Petitioner for BOP prohibited act code 111 (introduction of narcotics). See Ex. B at sections 9-10. On January 31, 2018, at 7:40 pm, Special Investigative Support (SIS) Technician S. Aguilar delivered the incident report to Petitioner. The report clearly identified the charges levied against Petitioner along with a description of the incident and evidence relied upon. Id. at sections 9-11.

9.    A Unit Discipline Committee (UDC) will review the incident report once the staff investigation is complete. See Ex. A at 23 (citing 28 CFR § 541.7). Serious incidents will be referred to the DHO for further review. Id.

10.    Attached as Ex. C is a true and correct copy of Notice of Hearing before the DHO, signed by Petitioner on February 5, 2018.

11.    Attached as Ex. D is a true and correct copy of Inmate Rights at a Discipline Hearing, also signed by Petitioner on February 5, 2018.

12.    Attached as Ex. E is a true and correct copy of my DHO report. I held the DHO hearing on February 13, 2018. See Ex. E at section I(B). Inmates are permitted to make a statement and present documentary evident to the DHO during the hearing. I documented Petitioner's oral statements in my report. Id. at section III(B) and V(2). I also considered Petitioner's prior statements to the UDC. Id. at V(3).

13.    Attached as Ex. F is a true and correct copy of the supportive evidentiary materials I relied upon to make my decision. In addition to the oral statements made by Petitioner to me and the UDC, I considered a list of written objections provided to me by Petitioner at the hearing. See Ex. F at 17. I address all points raised by Petitioner in my report. See Ex. E at section V(7).

14.    Based on my several years of experience as a correctional worker and the methods typically used by inmates to arrange introduction of drugs and other contraband, basic code is typically used to discuss logistical details in the belief it

Steffey v. Salazar                                              Declaration of
Case No. 3:19-cv-00093-JR                              William J. Chetwood

will not garner the attention of BOP. As on the streets, illegal substances in prison are never discussed in such explicit terms.

15.    Petitioner exchanged several email messages from his BOP inmate email account with "Lisa Rassmussen E S Q," allegedly regarding several eviction notices for various tenants in a series of homes purportedly owned by Petitioner. Id. at section V(1). Petitioner's messages with the sender repeatedly discuss and confirm payment being made to certain individuals. Id. The language is suspicious and clearly unrelated to any legal process: "Please resent that eviction again to the exact same tenant as you did last time. Go heavy! . . . Please take care of what I paid you to do and serve the guy." In response to a message from Petitioner, the sender states, "I reached out. 70171450000084946239" Id. On December 5, 2017 the FCC Lompoc mailroom received an envelope with the tracking number 70171450000084946239 containing (10) unusually thick pieces of paper which tested positive for amphetamines. See Ex. F at 5-9 (evidentiary photos). The pages were, indeed, heavily soaked with liquid narcotics. The key email communications between Petitioner and the sender on which I relied upon are included for the court's review. Id. at 10-16.

16.    Petitioner appears to have raised an additional argument at the hearing he does not raise in the Petitioner. Specifically, Petitioner claimed the legal mail addressed to another inmate should not have been opened. Id. at ¶ 16. Although Petitioner was aware through the incident report the seized envelope purportedly originated from an attorney, he was not told the item was sent as legal mail or satisfied BOP's legal mail requirements. As stated in my report, the mail was not addressed to Petitioner, and Petitioner did not have standing to challenge or comment upon how mail to other inmates is handled. Indeed, Petitioner did not assert he was aware Inmate X objected to testing or opening of the envelope.

Steffey v. Salazar                                              Declaration of
Case No. 3:19-cv-00093-JR                           William J. Chetwood

Page 5

17.    In preparation for this declaration to the court I communicated with BOP agency counsel regarding the attorney who purportedly sent the legal mail to Inmate X. The sender was identified as "Law Offices of Leslie R. Ramos, 901 H. St., Sacramento, CA 95814." See Ex. E at Section V(1). Agency counsel notified me he had contacted Ms. Ramos by telephone on February 25, 2019 to inquire about this incident. Ms. Ramos stated she has never heard of Petitioner or any person named Lisa Rassmussen and sent no mail to FCI Lompoc. She practices exclusively in state court. Ms. Ramos also stated she had independently learned her name is being used by federal inmates as a false sender of bogus legal mail parcels. In the past, envelopes with inadequate postage have been returned to her and their suspicious nature has prompted her to immediately contact local law-enforcement for testing and disposal of the mail. Ms. Ramos has also notified the California State Bar Association of these events.

18.    Petitioner argues I was not impartial. My impartiality is determined by my status as one "who was not a victim, witness, investigator, or otherwise significantly involved in the incident." See Ex. A at 27. Petitioner claims I made an arrangement with the reporting officer to not sanction Petitioner severely if Petitioner would "take the shot on the chin . . . [and] not fight, [Petitioner] would get minimal sanctions . . ." See Petition at 7. Petitioner then argues:

> I received a ridiculously lenient punishment. I lost 41 good days and 180 days commissary. I did not lose my visits. I did not lose my email, I did not lose my phone. I did not have to serve any DS [disciplinary segregation] time nor did I receive any monetary fine. These sanctions show that there was definitely a pre-arranged deal between SIS Aguilar and DHO Chetwood.
>
> Id. at 16.

Steffey v. Salazar
Case No. 3:19-cv-00093-JR

Declaration of
William J. Chetwood

19.    This is a bizarre and incorrect argument. As DHO I have several sanctions available based on the severity of the offense. My sanctions for Petitioner were consistent with other decisions for similar offenses and entirely permissible under the CFR and disciplinary policy. See Ex. A at 45-46. That I did not subject Petitioner to the harshest and full panoply of all disciplinary sanctions is not evidence of collusion between me and SIA Aguilar. In addition, Petitioner did not "take the shot on the chin" and articulated a host of objections at his hearing. Rarely do I see inmates come prepared with detailed and extensive written objections as Petitioner did at his hearing. Finally, despite claims from Petitioner he had no disciplinary segregation, he states clearly he was immediately placed in the Special Housing Unit (SHU) and remained there "for several weeks" prior to the hearing. See Petition at 16. I imposed a suspended sentence of 60 additional days of disciplinary segregation in SHU pending six months of clear conduct by Petitioner. See Ex. E at VI. I also imposed a suspended sentence of one year visitation privilege loss, also pending six months of clear conduct. Id. While these sanctions are fair, they are by no means "ridiculously lenient."

20.    As with all my DHO decisions, I attempted to impose a fair and appropriate penalty upon my finding Petitioner had committed the prohibited act as charged. I explained the reason for each sanction in my report. Id. at section VII.

21.    Petitioner argues he was sent the envelope tracking number by mistake. Id. at section V(7). atI found this argument incredible.

22.    Petitioner makes additional arguments about the NIK test itself. He claims the kit is not designed to test for the drugs attributed to him: amphetamines. See Petition at 7. The NIK test clearly describes its use for testing amphetamines. See Ex. F at 4 (table Test B summary).

23.    Petitioner also claims I failed to confirm the test was not expired. See Petition at 7. BOP inmates are regularly tested for drugs on a random basis and

Steffey v. Salazar                                                    Declaration of
Case No. 3:19-cv-00093-JR                                  William J. Chetwood

23.    Petitioner also claims additional tests were conducted which exonerate Petitioner but were not provided to him nor considered by me as part of my decision. See Petition at 16. This is incorrect. No further testing was conducted nor would I fail to consider any test reflecting contrary results from the positive NIK result used to support my decision.

24.    Finally, Petitioner claims NIK results are "rampantly" falsified by BOP staff to torment the inmate population. Id. I have no information to support this claim nor do I believe it to be true.

I declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct. Executed this 4th day of March 2019 at Lompoc, CA.

_____
William J. Chetwood

## UNITED STATES DISTRICT COURT
## DISTRICT OF OREGON

BILLY F. STEFFEY,
Petitioner,

Case No.: 3:19-cv-00093-JR

v.

WARDEN J. SALAZAR,
Respondent.

# EXHIBIT E

## SAFARILAND, LLC MEMORANDUM ISO MOTION TO DISMISS

Attached to Petitioner's Rule 60(b) Motion for Relief from Judgment

STEVEN D. SMELSER (SBN 180602)
ssmelser@yukelaw.com
SYDNEY A. SHAFFER (SBN 348771)
sshaffer@yukelaw.com
CAMILLE T. BAYLIS (SBN 363838)
cbaylis@yukelaw.com
YUKEVICH | CAVANAUGH
355 S. Grand Avenue. 15th Floor
Los Angeles, California 90071-1560
Telephone: (213) 362-7777
Facsimile: (213) 362-7788
Email: eservice@yukelaw.com

Attorneys for Defendant,
SAFARILAND, LLC

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| BILLY F. STEFFEY, | CASE NO. 2-25-cv-11105-VBF-SK |
|---|---|
| Plaintiff, | **DEFENDANT SAFARILAND, LLC'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)** |
| vs. | |
| COLETTE S. PETERS, in her official capacity as Director of the Federal Bureau of Prisons; M. WADE JENNINGS, in his individual and official capacity; KEVIN SCHWINN, in his individual and official capacity; SAFARILAND, LLC; R. JOHN LYNN, Regional Special Investigative Agent (DOE 1); SIS TECHNICIAN S. AGUILAR, (DOE 2); SIS LIEUTENANT [FIRST NAME UNKNOWN] JOHNSON, (DOE 3); DISCIPLINE HEARING OFFICER WILLIAM J. CHETWOOD, (DOE 4); DOES 5-50, | |
| | *[Filed concurrently with Defendant's Notice of Motion to Dismiss Plaintiff's First Amended Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(6); Declaration of S. Shaffer; and [Proposed] Order]* |
| Defendants. | Judge:      Hon. Valerie B. Fairbank Magistrate Judge: Hon. Steve Kim Date:       January 21, 2026 Time:       10:00 a.m. Crtrm.:     540 |
| | Trial Date:  None Set |

/ / /

/ / /

5024986.1                                          1                        Case No. 2-25-cv-11105-VBF-SK

DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED COMPLAINT PURSUANT TO FEDERAL RULE OF PROCEDURE 12(b)(6)

YUKEVICH | CAVANAUGH
355 S. GRAND AVENUE, 15TH FLOOR
LOS ANGELES, CALIFORNIA 90071-1560
TELEPHONE (213) 362-7777
FACSIMILE (213) 362-7788

## TABLE OF CONTENTS

Page

I.    INTRODUCTION ..........................................................................................8

II.   PLAINTIFF'S FIRST AMENDED COMPLAINT .........................................8

III.  ARGUMENT ..............................................................................................11

    A.   Legal Standard Governing Motion to Dismiss Under Federal
        Rule of Civil Procedure 12(b)(6). ...............................................11

    B.   Plaintiff's Claims are Barred by the Relevant Statutes of
        Limitation. ..................................................................................12

    C.   Plaintiff Fails to State a Claim Against Safariland for Strict
        Products Liability Under a Failure to Warn Theory. ....................13

    D.   Plaintiff Fails to State a Claim Against Safariland for Fraudulent
        Misrepresentation. .......................................................................15

    E.   Plaintiff Fails to State a Claim Against Safariland for Fraudulent
        Concealment. ..............................................................................17

    F.   Plaintiff Fails to State a Claim Against Safariland for Civil
        Conspiracy ..................................................................................18

    G.   Plaintiff Fails to Plead Sufficient Facts to Support a Claim for
        Punitive Damages. .......................................................................20

        1.    Pleading Punitive Damages Under California Law is
            Substantive for Purposes of Assessing the Pleadings in
            This Case ...........................................................................20

        2.    Plaintiff's Prayer for Punitive Damages Should be
            Dismissed Because the Complaint Fails to Plead Specific
            Facts Sufficient to Establish the Requisite Malice,
            Oppression or Fraud ..........................................................20

    H.   Plaintiff Lacks Article III Standing to Bring Claims for Equitable
        Relief. .........................................................................................22

        1.    Plaintiff's Release from Custody Renders Moot Any
            Request for Prospective Relief Tied to Prison Practices ............23

        2.    Plaintiff Lacks the Requisite Injury-in-Fact for Prospective
            Relief Against Safariland ...................................................24

        3.    Plaintiff Lacks Standing to Bring Equitable Claims on
            Behalf of Other Prisoners .................................................25

        4.    The Requested Equitable Relief Against Safariland Would
            Not Redress Plaintiff's Alleged Ongoing Injury ........................26

5024986.1                                  2                    Case No. 2-25-cv-11105-VBF-SK

5.    Declaratory Relief Is Purely Retrospective as to Safariland ......26

IV.    CONCLUSION ................................................................................27

YUKEVICH | CAVANAUGH
355 S. GRAND AVENUE, 15TH FLOOR
LOS ANGELES, CALIFORNIA 90071-1560
TELEPHONE (213) 362-7777
FACSIMILE (213) 362-7788

DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED COMPLAINT PURSUANT TO FEDERAL RULE OF PROCEDURE 12(b)(6)

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alger Dynamic Opportunities Fund v. Acadia Pharmaceuticals, Inc.*,
    756 F.Supp.3d 852 (2024) ........................................................................... 12

*Alvarez v. Hill*,
    667 F.3d 1061 (9th Cir. 2012) ............................................................... 23, 24

*Armstrong v. Davis*,
    275 F.3d 849 (9th Cir. 2001) (abrogated on other grounds by
    *Johnson v. California*, 543 U.S. 499, 504-05 (2005)) .......................... 22, 25

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ............................................................................... 11, 17

*Bates v. United Parcel Serv., Inc.*,
    511 F.3d 974 (9th Cir. 2007) (en banc) ............................................... 22, 26

*Beck v. State Farm Mut. Auto. Ins. Co.*,
    54 Cal.App.3d 347 (1976) .......................................................................... 20

*Beckwith v. Dahl*,
    205 Cal. App. 4th 1039 (2012) .............................................................. 16, 17

*Bigler-Engler v. Breg, Inc.*,
    7 Cal.App.5th 276 (2017) ........................................................................... 17

*City of Los Angeles v. Lyons*,
    461 U.S. 95 (1983) ...................................................................................... 22

*Clauson v. Superior Court*,
    67 Cal.App.4th 1253 (1998) .................................................................. 20, 21

*Clegg v. Cult Awareness Network*,
    18 F.3d 752 (9th Cir. 1994) ........................................................................ 11

*College Hospital, Inc. v. Superior Court*
    (1994) 8 Cal. 4th 704 .................................................................................. 21

*Contreras v. Dowling*,
    5 Cal.App.5th 394 (2016) ........................................................................... 18

YUKEVICH | CAVANAUGH
355 S. GRAND AVENUE, 15TH FLOOR
LOS ANGELES, CALIFORNIA 90071-1560
TELEPHONE (213) 362-7777
FACSIMILE (213) 362-7788

*Dilley v. Gunn,*
    64 F.3d 1365 (9th Cir. 1995).................................................................23, 24

*Dyna-Med, Inc. v. Fair Employment & Housing Com.*
    43 Cal.3d 1379 (1987)............................................................................20

*Faulkner v. California Toll Bridge Authority,*
    40 Cal. 2d 317 (1953).............................................................................21

*Gasperini v. Center for Humanities, Inc.,*
    518 U.S. 415 (1996)................................................................................20

*Hodgers-Durgin v. de la Vina,*
    199 F.3d 1037 (9th Cir. 1999) (en banc)............................................23, 25

*IIG Wireless, Inc. v. Yi,*
    22 Cal. App. 5th 630 (2018)....................................................................18

*Johns v. County of San Diego,*
    114 F.3d 874 (9th Cir. 1997)...................................................................25

*Johnson v. American Standard, Inc.*
    (2008) 43 Cal.4th 56..........................................................................13, 15

*Kidron v. Movie Acquisition Corp.,*
    40 Cal.App.4th 1571 (1995)....................................................................18

*Lazar v. Superior Court,*
    12 Cal.4th 631 (1996).............................................................................16

*Lewis v. Casey,*
    518 U.S. 343 (1996)................................................................................25

*Lujan v. Defs. of Wildlife,*
    504 U.S. 555 (1992)................................................................................22

*Mayfield v. United States,*
    599 F.3d 964 (9th Cir. 2010).........................................................22, 24, 26

*Mirkin v. Wasserman,*
    5 Cal. App. 4th 1082 (1993)....................................................................16

*Mock v. Michigan Millers Mutual Ins. Co.*
    (1992) 4 Cal. App. 4th 306......................................................................21

YUKEVICH | CAVANAUGH
355 S. GRAND AVENUE, 15TH FLOOR
LOS ANGELES, CALIFORNIA 90071-1560
TELEPHONE (213) 362-7777
FACSIMILE (213) 362-7788

DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED COMPLAINT PURSUANT TO FEDERAL RULE OF PROCEDURE 12(b)(6)

*Murphy v. Hunt*,
  455 U.S. 478 (1982) (per curiam) ........................................................................... 24

*Navarro v. Block*,
  250 F.3d 729 (9th Cir. 2001) ................................................................................. 11

*Nelsen v. King County*,
  895 F.2d 1248 (9th Cir. 1990) ......................................................................... 22, 24

*O'Neil v. Crane Co.*,
  53 Cal.4th 335 (2012) ............................................................................................ 15

*People v. Powers-Monachello*,
  189 Cal.App.4th 400 (2010) .................................................................................. 18

*Prakashpalan v. Engstrom, Lipcomb & Lack*,
  223 Cal.App.4th 1105 (2014) ................................................................................ 18

*Sample v. Johnson*,
  771 F.2d 1335 (9th Cir.1985) ................................................................................ 22

*Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*,
  559 U.S. 393 (2010) (plurality opinion) ................................................................ 20

*Smith v. Superior Court*,
  10 Cal. App. 4th 1033 (1992) ................................................................................ 21

*Sonner v. Premier Nutrition Corp.*,
  971 F.3d 834 (9th Cir. 2020) ................................................................................. 13

*Tomaselli v. Transamerica Ins. Co.*
  (1994) 25 Cal.App.4th 1269 .................................................................................. 21

*Wallace v. Kato*,
  549 U.S. 384 (2007) ............................................................................................... 12

*Wright v. Stang Mfg. Co.*
  (1997) 54 Cal.App.4th 1218 .................................................................................. 13

*Wyatt v. Union Mortgage, Co.*,
  24 Cal.3d 773 (1979) ............................................................................................. 12

**Statutes**

28 U.S.C. § 2201 ...................................................................................................... 11

YUKEVICH | CAVANAUGH
355 S. GRAND AVENUE. 15TH FLOOR
LOS ANGELES, CALIFORNIA 90071-1560
TELEPHONE (213) 362-7777
FACSIMILE (213) 362-7788

DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED COMPLAINT PURSUANT TO FEDERAL RULE OF PROCEDURE 12(b)(6)

an act by Safariland ....................................................................................................... 19

Cal. Civ. Code §§1709-1710 (2024) .............................................................................. 16

Cal. Civ. Code §§3294-3296 ......................................................................................... 20

Cal. Civ. Code §3294(c)(1) ........................................................................................... 21

Cal. Civ. Code §3294(c)(2) ........................................................................................... 21

Cal. Civ. Proc. Code §§335.1, 338(d) ........................................................................... 12

California Civil Code section 3294 .........................................................................20, 21

Code III ......................................................................................................................... 10

**Other Authorities**

CACI 1205 ..................................................................................................................... 13

Fed. R. Civ. P. 9(b) ....................................................................................................... 15

Federal Rule of Civil Procedure 12(b)(6).................................................................11, 12

YUKEVICH | CAVANAUGH
355 S. GRAND AVENUE, 15TH FLOOR
LOS ANGELES, CALIFORNIA 90071-1560
TELEPHONE (213) 362-7777
FACSIMILE (213) 362-7788

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

While incarcerated at FCI Lompoc, Plaintiff Billy Steffey ("Plaintiff") was subject to disciplinary proceedings in connection with an incident involving the receipt of mail connected to Plaintiff which was intercepted and deemed to be suspicious by Federal Bureau of Prisons ("BOP") officers. If the allegations of Plaintiff's First Amended Complaint ("FAC") are assumed to be true, the BOP officers, using a test kit allegedly manufactured and supplied by Defendant Safariland, LLC ("Safariland"), determined samples of paper taken from the suspicious mail to have positive indications of the presence of amphetamines. The FAC alleges that as a result of the test kit results, Plaintiff underwent disciplinary proceedings which resulted in the imposition of various disciplinary sanctions, during Plaintiff's period of incarceration. Based on these alleged facts, Plaintiff purports to assert claims against Safariland for strict products liability under a failure to warn theory, fraudulent misrepresentation, fraudulent concealment, civil conspiracy, declaratory relief, injunctive relief, and makes a prayer for punitive damages. Because these facts do not support, and in several instances negate, Plaintiff's claims against Safariland, the Court should grant this Motion to Dismiss in its entirety.

### II.    PLAINTIFF'S FIRST AMENDED COMPLAINT

The following alleged facts are taken from Plaintiff's First Amended Complaint (Dkt. No. 14, hereinafter "FAC").

On January 18, 2017, while Plaintiff Billy Steffey ("Plaintiff") was in custody at the Federal Correctional Institute ("FCI") in Lompoc, California, a Special Investigative Services ("SIS") Advisory titled, "Buprenorphine HCL (suboxone) Incident Reports" (the "SIS Advisory") was allegedly distributed to all regional directors, wardens, SIS personnel, correctional services staff, and Federal Bureau of Prisons ("BOP") Central Office departments. (FAC ¶28-29.) The SIS Advisory

YUKEVICH | CAVANAUGH
355 S. GRAND AVENUE, 15TH FLOOR
LOS ANGELES, CALIFORNIA 90071-1560
TELEPHONE (213) 362-7777
FACSIMILE (213) 362-7788

DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED COMPLAINT PURSUANT TO FEDERAL RULE OF PROCEDURE 12(b)(6)

allegedly directed BOP staff to use NIK Tests A, U, and K in sequence to identify Buprenorphine HCL, a sequence which Plaintiff claims was not validated by the alleged manufacturer of the NIK tests, Defendant Safariland, LLC ("Safariland" or "Defendant") (FAC ¶31-33, 55.) Plaintiff further alleges that the SIS Advisory stated a positive NIK Test U result was indicated by a color change to burgundy despite Safariland's product insert and color chart for its NIK tests showing that only blue indicates a positive result for NIK Test U. (FAC ¶35.) Plaintiff alleges that the testing protocol set out in the SIS Advisory was further used by the BOP to test for K2/Spice (synthetic cannabinoids), which Safariland never claimed was possible to detect with the NIK tests. (FAC ¶59.)

Plaintiff contends that the NIK tests utilized by the BOP contained explicit and "prominent" warnings, such as "Do NOT perform tests on paper substrates. False color reactions may result" and "ALL TEST RESULTS MUST BE CONFIRMED BY AN APPROVED ANALYTICAL LABORATORY!" (FAC ¶¶61-62.) Despite these warnings, Plaintiff alleges the BOP used these NIK tests on paper substrates, did not require laboratory confirmation of test results, and treated the NIK tests as definitive proof of drug possession. (FAC ¶63.)

On or about December 5, 2017, Defendant SIS Technician S. Aguilar conducted NIK tests on paper from intercepted mail sent to FCI Lompoc, which was connected to Plaintiff, using NIK Test A and NIK Test U, in direct violation of Safariland's product warning which states, "[d]o NOT perform test on paper substrates." (FAC ¶¶80-81.) Defendant Aguilar documented these test results in an Incident Report which states, "[t]he NIK Test U turning an immediate dark burgundy color is a positive indication of the presence of Amphetamines." (FAC ¶83.) Plaintiff contends that Defendant Aguilar "knew or should have known the result was negative" because Aguilar had access to Safariland's NIK test instructions which indicate that blue is a positive result, as well as the NIK Test U pouch itself which contains a blue reference square showing an example of what a

YUKEVICH | CAVANAUGH
355 S. GRAND AVENUE, 15TH FLOOR
LOS ANGELES, CALIFORNIA 90071-1560
TELEPHONE (213) 362-7777
FACSIMILE (213) 362-7788

positive test looks like. (FAC ¶85.)

On January 23, 2018, an email was sent by Defendant R. John Lynn emphasizing that proper protocol must be followed for NIK tests to ensure that inmate appeals are not successful against the conducted tests. (FAC ¶¶41-49.) Plaintiff was charged with a Code III violation for "[p]ossession of any narcotics, marijuana, drugs, alcohol, intoxicants, or related paraphernalia." (FAC ¶87.) A disciplinary hearing was held on February 13, 2018, during which Plaintiff contested the charges against him for possession of contraband, objected to the NIK test results as unreliable and argued they were performed by SIS Aguilar in a manner that was contrary to Safariland's stated product warnings, requested laboratory confirmation of the test results, and challenged the testing of paper by SIS Aguilar in violation of Safariland's warnings. (FAC ¶¶96-97.) Plaintiff's objections were rejected and his request for confirmatory laboratory testing to validate the NIK test results was denied. (FAC ¶97.) Plaintiff was found guilty and sanctioned with a loss of 41 days of vested good conduct time and 180 days of commissary privileges. (FAC ¶99.) Plaintiff was also sanctioned with 60 days of disciplinary segregation and a one-year loss of visitation privileges, but both sanctions were ultimately suspended. (*Id.*)

Plaintiff filed appeals with the BOP regarding the NIK testing and protocol at FCI Lompoc, but each appeal was denied. (FAC ¶¶108-109.) Plaintiff filed a habeas corpus petition in the U.S. District Court for the District of Oregon challenging his disciplinary conviction, which was denied on the grounds that the NIK test results were found to have met the deferential standard requiring "some evidence" supporting the disciplinary findings against him. (FAC ¶¶113-115.) Plaintiff appealed the District Court's decision to the Ninth Circuit, but he voluntarily dismissed the appeal after being granted early release due to COVID-19. (FAC ¶116.)

/ / /

DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT PURSUANT TO FEDERAL RULE OF PROCEDURE 12(b)(6)

YUKEVICH | CAVANAUGH
355 S. GRAND AVENUE, 15TH FLOOR
LOS ANGELES, CALIFORNIA 90071-1560
TELEPHONE (213) 362-7777
FACSIMILE (213) 362-7788

In November 2025, Plaintiff commenced this action against Safariland, the BOP, and certain individual BOP officials and agents. Plaintiff's FAC (Dkt No. 14,) purports to assert claims against Safariland under California law for strict product liability under failure to warn (FAC ¶¶153-158), fraudulent misrepresentation (FAC ¶¶159-164), fraudulent concealment (FAC ¶¶165-169), and civil conspiracy (FAC ¶¶170-173), and also seeks declaratory relief under 28 U.S.C. § 2201 (FAC ¶¶183-185), as well as injunctive relief (FAC ¶¶186-190).

## III.    ARGUMENT

### A.    Legal Standard Governing Motion to Dismiss Under Federal Rule of Civil Procedure 12(b)(6).

A motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) tests the legal sufficiency of the claims in the complaint. *Navarro v. Block,* 250 F.3d 729, 732 (9th Cir. 2001). Dismissal is appropriate where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory. *Id.* In a motion dismiss, all material allegations in the complaint are taken as true and construed in the light most favorable to the plaintiff. *Id.* However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). Moreover, this Court "is not required to accept legal conclusions cast in the form of factual assertions if those conclusions cannot reasonably be drawn from the facts alleged." *Clegg v. Cult Awareness Network,* 18 F.3d 752, 754-55 (9th Cir. 1994). Only plausible claims for relief will survive a motion to dismiss. *Iqbal,* 556 U.S. at 679. A claim is plausible if its factual content permits the Court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *Id.* The pleading must include "more than the unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* at 678.

/ / /

/ / /

11

DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT PURSUANT TO FEDERAL RULE OF PROCEDURE 12(b)(6)

YUKEVICH | CAVANAUGH
355 S. GRAND AVENUE, 15TH FLOOR
LOS ANGELES, CALIFORNIA 90071-1560
TELEPHONE (213) 362-7777
FACSIMILE (213) 362-7788

Here, none of Plaintiff's purported claims state a valid cause of action against Safariland, even under the most liberal of pleading standards. Accordingly, Safariland respectfully requests that the Court grant the motion and dismiss this entire action as to Safariland.

## B.    Plaintiff's Claims are Barred by the Relevant Statutes of Limitation.

When a statute of limitations issue is raised through a motion to dismiss pursuant to FRCP 12(b)(6), it must be shown that, beyond doubt, the plaintiff can prove no set of facts that would establish the timeliness of their claims. *Alger Dynamic Opportunities Fund v. Acadia Pharmaceuticals, Inc.*, 756 F.Supp.3d 852, 880 (2024). Plaintiff's allegations show that all relevant events occurred between January 2017 and June 2018, yet he did not file this action until November 2025, over seven years later, thereby necessitating a dismissal.

Plaintiff's FAC alleges that he was drug-tested in late 2017 and placed in solitary confinement until June 2018. He filed multiple administrative petitions challenging the discipline, all of which were denied, and later filed a habeas corpus petition before his ultimate release from custody in 2021. (*See generally* Plaintiff's FAC). These allegations show Plaintiff believed discipline was wrongful in 2018, triggering accrual. *See, Wallace v. Kato*, 549 U.S. 384, 391 (2007) (a claim accrues at the time of the wrongful act or injury, not upon release from custody, and continued incarceration does not toll accrual).

California imposes a two-year statute of limitations on strict products liability claims, and a three-year statute of limitations for fraud-based claims, including civil conspiracy based on fraud. Cal. Civ. Proc. Code §§335.1, 338(d); *see also Wyatt v. Union Mortgage, Co.*, 24 Cal.3d 773, 792 (1979). Plaintiff's grievances and habeas petition show discovery of the relevant facts by 2018, therefore the relevant statutes of limitation expired between 2019 and 2021, well before this suit.

///

DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT PURSUANT TO FEDERAL RULE OF PROCEDURE 12(b)(6)

YUKEVICH | CAVANAUGH
355 S. GRAND AVENUE, 15TH FLOOR
LOS ANGELES, CALIFORNIA 90071-1560
TELEPHONE (213) 362-7777
FACSIMILE (213) 362-7788

Because the underlying torts are time-barred, requests for declaratory and injunctive relief fail as well. *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020) (equitable relief is unavailable where a plaintiff fails to "establish that she lacks an adequate remedy at law.")

### C. Plaintiff Fails to State a Claim Against Safariland for Strict Products Liability Under a Failure to Warn Theory.

Plaintiff does not meet the requisite pleading standard of 12(b)(6) as to his claim for strict products liability under the theory of failure to adequately warn. California Civil Jury Instruction 1205 provides that the elements of "failure to warn" causes of action are:

> "(1) The defendant manufacturer, distributed or sold a product;
> (2) The product had potential risks that were known or knowable to the defendant;
> (3) Such risks presented a substantial danger when the product was used or misused in an intended or reasonably foreseeable way;
> (4) Ordinary consumers would not have recognized the potential risks;
> (5) The defendant failed to warn consumers of the potential risks adequately; and
> (6) As a result of the lack of instructions or warnings, [plaintiff was] harmed."
> (CACI 1205).

If a plaintiff relies on a failure to warn theory, he or she must "identify which danger was not warned against, that the danger was substantial, that the danger was not readily recognizable to an ordinary consumer, that the manufacturer knew or should have reasonably known of the danger, and causation." *See, Johnson v. American Standard, Inc.* (2008) 43 Cal.4th 56, 64-67; *Wright v. Stang Mfg. Co.* (1997) 54 Cal.App.4th 1218, 1230. Additionally, the Supreme Court of California in *Finn v. G.D. Searle & Co.* emphasized that "if every report of a possible risk, no matter how speculative, conjectural, or tentative, imposed an affirmative duty to give some warning, a manufacturer would be required to inundate [consumers] indiscriminately with notice of any and every hint of danger, thereby inevitably

YUKEVICH | CAVANAUGH
355 S. GRAND AVENUE, 15TH FLOOR
LOS ANGELES, CALIFORNIA 90071-1560
TELEPHONE (213) 362-7777
FACSIMILE (213) 362-7788

DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT PURSUANT TO FEDERAL RULE OF PROCEDURE 12(b)(6)

diluting the force of any specific warning given." 35 Cal.3d 691, 701 (1984.)

Here, Plaintiff alleges that Safariland's warnings were inadequate as to: (1) rates of false positives, (2) burgundy is the base color of tests, (3) blue is the proper color for positive tests, (4) scientific impossibility of detecting K2/Spice with NIK tests, (5) prohibition against testing paper substrates, and (6) mandatory laboratory confirmation of test results. (FAC ¶156). However, Plaintiff's own complaint states facts outlining the exact warnings provided by Safariland and undermines Plaintiff's argument of their inadequacy.

Regarding false positives, Plaintiff quotes to a warning from the Safariland NIK test instructions that states "Do NOT perform test on paper substrates. False color reactions may result." Id. ¶61. Additionally, Plaintiff quotes the warning by Safariland instructions for NIK Test U which states that "if any other color develops [besides dark blue], proceed to Test A," a warning providing that any other color, including burgundy, would require additional testing to confirm the result. Id. ¶4, 34. Plaintiff's allegation that Safariland failed to adequately warn that Blue is the only color for a positive methamphetamine test is further contradicted by his own recitation that Safariland's "product insert and color chart show that only BLUE indicates a positive result." Id. ¶35. Therefore, the facts set forth by Plaintiff undermine the first three warnings that Plaintiff takes issue.

Plaintiff's subsequent allegations that Safariland failed to emphasize the importance of not using the NIK tests on paper substrates, as well as the requirement for laboratory confirmation are also contradicted by his pleaded facts. Plaintiff quotes Safariland's instruction which "prominently warn: "Do NOT perform tests on paper substrates" and "ALL TEST RESULTS MUST BE CONFIRMED BY AN APPROVED ANALYTICAL LABORATORY!" Id. ¶61-62 (emphasis in original) Plaintiff cannot logically plead an inadequacy in Safariland's warnings when he himself describes them as *prominent*. Further, Plaintiff's use of the warnings in support of his claims that tests were misused by the BOP in direct opposition to the

YUKEVICH | CAVANAUGH
355 S. GRAND AVENUE, 15TH FLOOR
LOS ANGELES, CALIFORNIA 90071-1560
TELEPHONE (213) 362-7777
FACSIMILE (213) 362-7788

DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED COMPLAINT PURSUANT TO FEDERAL RULE OF PROCEDURE 12(b)(6)

warnings by Safariland undermines his failure to warn allegations. (FAC ¶63, 81, 85, 172.)

In regard to Plaintiff's claim that Safariland failed to adequately warn that it was "scientifically impossible" to detect K2/Spice with NIK tests, Plaintiff lacks the causal chain required for strict liability failure to warn. (FAC ¶155.) "In strict liability law, the plaintiff's injury must have been caused by a 'defect' in the defendant's product." *O'Neil v. Crane Co.*, 53 Cal.4th 335, 347 (2012). The FAC does not allege facts that Plaintiff was harmed by a NIK Test that was improperly used to detect K2/Spice. Plaintiff has, therefore, failed to plead the causation element for his strict liability claim as to the K2/Spice allegation. Further, Plaintiff does allege that Safariland "never claimed that NIK tests can detect K2/Spice." (FAC ¶59.) If Safariland was required to over warn of risks, including those outside the scope of their marketed product uses, courts have held that this would "invite mass consumer disregard and ultimate contempt for the warning process." *Johnson*, 43 Cal.4th at 70.

Therefore, Plaintiff's allegation that Safariland should be strictly liable for a failure to adequately warn is insufficiently plead and this cause of action should be dismissed in its entirety.

**D.    Plaintiff Fails to State a Claim Against Safariland for Fraudulent Misrepresentation.**

All claims sounding in fraud or misrepresentation must be pleaded with particularity, especially with respect to the "circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Under California law, to recover on a claim for misrepresentation, a plaintiff must prove all of the following: (1) the defendant represented to the plaintiff that a fact was true; (2) the defendant's representation was false; (3) the defendant knew that the representation was false when it made it, or made the representation recklessly and without regard for its truth; (4) the defendant intended that the plaintiff rely on the representation; (5) the plaintiff

YUKEVICH | CAVANAUGH
355 S. GRAND AVENUE, 15TH FLOOR
LOS ANGELES, CALIFORNIA 90071-1560
TELEPHONE (213) 362-7777
FACSIMILE (213) 362-7788

DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED COMPLAINT PURSUANT TO FEDERAL RULE OF PROCEDURE 12(b)(6)

reasonably relied on the defendant's representation; (6) the plaintiff was harmed; and (7) the plaintiff's reliance on the defendant's representation was a substantial factor in causing the plaintiff's harm. *See Lazar v. Superior Court,* 12 Cal.4th 631, 638 (1996); *see also* Cal. Civ. Code §§1709-1710 (2024); California Civil Jury Instruction ("CACI") No. 1900 (2025).

"There are two causation elements in a fraud [or misrepresentation] cause of action. First the plaintiff's actual and justifiable reliance on the defendant's misrepresentation must have caused [him] to take a detrimental course of action. Second, the detrimental action taken by the plaintiff must have caused [him] alleged damage." *Beckwith v. Dahl,* 205 Cal. App. 4th 1039, 1061 (2012).

Plaintiff fails to allege misrepresentation with the required particularity. But, more importantly, the FAC (Dkt. No. 14, FAC ¶¶159-164) does not allege that Safariland made any representations, directly or indirectly, expressly, or impliedly, to Plaintiff. As a matter of law, Plaintiff does not have a claim for fraudulent misrepresentation if no representations were made to him. The FAC states only that Safariland allegedly represented to the BOP, that the NIK tests (1) can reliably detect drugs in prison settings, (2) can detect K2/Spice, and (3) are suitable for use without laboratory confirmation in disciplinary proceedings. (FAC ¶160.) Plaintiff makes no claim and provides no facts indicating that Safariland ever made any representations whatsoever to Plaintiff himself, thus there is no set of facts under which Plaintiff could possibly recover from Safariland on a fraudulent misrepresentation claim.

Moreover, the allegations of the FAC establish that Plaintiff did not rely on any representation by Safariland and, by extension, could not possibly have been harmed by any such representation. "It is settled that plaintiff, to state a cause of action for deceit based on misrepresentation, must plead that he or she actually relied on the misrepresentation." *Mirkin v. Wasserman,* 5 Cal. App. 4th 1082, 1088 (1993). To recover, Plaintiff must prove that the representation at issue "caused him

YUKEVICH | CAVANAUGH
355 S. GRAND AVENUE, 15TH FLOOR
LOS ANGELES, CALIFORNIA 90071-1560
TELEPHONE (213) 362-7777
FACSIMILE (213) 362-7788

to take a detrimental course of action." *Beckwith*, 205 Cal.App.4th at 1061. Nowhere in the FAC does Plaintiff indicate that Plaintiff himself relied on any representation made by Safariland or on its NIK test kit, thus Plaintiff did not and could not possibly have undertaken a detrimental course of action based on a representation from Safariland. It is unclear whether Plaintiff even had any knowledge (prior to his alleged injury) that there was such a thing as a NIK test kit.

Plaintiff's claim that he was somehow defrauded by Safariland is completely implausible and does not state a claim on which relief can be granted. See *Iqbal*, 556 U.S. at 679. Because it would be completely inconsistent with the FAC for Plaintiff to now allege that Safariland made representations to him or that he relied on those representations, the fraudulent misrepresentation claim (Count IV, FAC ¶¶159-164) should be dismissed without leave to amend.

**E.     Plaintiff Fails to State a Claim Against Safariland for Fraudulent Concealment.**

The elements of a fraudulent concealment claim are: (1) defendant concealed or suppressed a material fact, (2) defendant was under a duty to disclose the fact to the plaintiff, (3) defendant intentionally concealed or suppressed the fact with the intent to defraud the plaintiff, (4) plaintiff was unaware of the fact and would not have acted as he did if he had known of the concealed or suppressed fact, and (5) as a result, the plaintiff sustained damage. *Bigler-Engler v. Breg, Inc.*, 7 Cal.App.5th 276, 311 (2017). A duty to disclose must arise from direct dealings between the plaintiff and the defendant, "it cannot arise between the defendant and the public at large." *Id.*

Here, Plaintiff does not allege that he dealt directly with Safariland or otherwise alleged facts giving rise to a district legal relationship between the parties. Therefore, under *Bigler-Engler,* Plaintiff's fraudulent concealment claim fails.

Even if a duty existed, Plaintiff fails to allege he would have acted differently if facts were disclosed. As *Buckland v. Threshold Enterprises* held, a fraud claim

YUKEVICH | CAVANAUGH
355 S. GRAND AVENUE, 15TH FLOOR
LOS ANGELES, CALIFORNIA 90071-1560
TELEPHONE (213) 362-7777
FACSIMILE (213) 362-7788

based on omission fails without actual reliance. 157 Cal.App.4th 728, 747 (2007). Plaintiff injuries, solitary confinement and other sanctions, resulted from the BOP's independent actions, not the actions of Plaintiff in actual reliance on Safariland. The claim should therefore be dismissed in its entirety.

**F.      Plaintiff Fails to State a Claim Against Safariland for Civil Conspiracy.**

"The basis of a civil conspiracy is the formation of a group of two or more persons who have agreed to a common plan or design to commit a tortious act." *Kidron v. Movie Acquisition Corp.*, 40 Cal.App.4th 1571, 1582 (1995). "[A]ctual knowledge of the planned tort, without more, is insufficient to serve as the basis of a conspiracy claim as the knowledge must be combined with intent to aid in the commission of the tort. *Id.* Simply knowing that a person's products or services are being used for a wrongful purpose is insufficient to infer a conspiracy. *People v. Powers-Monachello*, 189 Cal.App.4th 400 (2010). To succeed on a conspiracy claim, a plaintiff must allege (1) the formation and operation of the conspiracy; (2) wrongful conduct in furtherance of the conspiracy; and (3) damages arising from the wrongful conduct. *AREI II Cases,* 216 Cal. App. 4th 1004, 1022 (2013).

"Conspiracy is not a separate tort, but a form of vicarious liability by which one defendant can be held liable for the acts of another. *IIG Wireless, Inc. v. Yi*, 22 Cal. App. 5th 630, 652 (2018). A conspiracy requires evidence "that each member of the conspiracy acted in concert and came to a mutual understanding to accomplish a common and unlawful plan, and that one or more of them committed an overt act to further it." *Id.* at 652. Additionally, an inference supporting the knowledge and intent elements of civil conspiracy must logically flow from other established facts, and suspicions are not enough. *Contreras v. Dowling,* 5 Cal.App.5th 394 (2016). When fraud is alleged to be the object of a conspiracy, the claim must be plead with particularity. *Prakashpalan v. Engstrom, Lipcomb & Lack*, 223 Cal.App.4th 1105, 1136 (2014).

5024986.1                                            18                                    Case No. 2-25-cv-11105-VBF-SK

DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT PURSUANT TO FEDERAL RULE OF PROCEDURE 12(b)(6)

YUKEVICH | CAVANAUGH
355 S. GRAND AVENUE, 15TH FLOOR
LOS ANGELES, CALIFORNIA 90071-1560
TELEPHONE (213) 362-7777
FACSIMILE (213) 362-7788

Here, Plaintiff's vague contentions that all defendants conspired to "misrepresent NIK test results, deny fair tribunals, and falsely convict inmates," is purely conclusory and insufficient to withstand the present motion, especially given the heightened pleading standard for conspiracies allegedly aimed at fraud. The FAC merely offers vague, ambiguous, and threadbare allegations that fail to show how Safariland supposedly acted with the BOP or others, intended to pursue any unlawful objective, or even knew of any alleged conspiracy within the BOP. The FAC's sole claim of Safariland's role in forming the alleged conspiracy is "Safariland's continued supply of products despite knowledge of misuse." (FAC ¶171.) Plaintiff does not put forth sufficiently specific facts under the strict pleading standards for fraud to demonstrate that Safariland had actual knowledge of any planned tort or unlawful objective to result from the claimed conspiracy.

Further, even if Plaintiff could show Safariland knew of the BOP's alleged misuse, settled law makes clear that such knowledge, even of a planned tort, is not enough to support a conspiracy claim without evidence that Safariland intended to aid in committing the tort. The only mention in the FAC of an act by Safariland claimed to have been done in furtherance of the conspiracy is allegedly "misrepresenting burgundy baseline color as positive result." (FAC ¶172.) This baseless claim does not logically flow from the facts set forth in the FAC, and in fact is directly contradicted by Plaintiff's own concessions elsewhere in the FAC citing to direct language from Safariland's "product insert and color chart show[ing] that only BLUE indicates a positive result." (FAC ¶35.)

Plaintiff's allegations in support of his claim for civil conspiracy against Safariland is therefore completely conclusory, and are unsupported, or explicitly contradicted, by the specific facts pleaded in the FAC. Thus, the Court should dismiss the civil conspiracy claim (Count V, FAC ¶¶170-173) without leave to amend.

YUKEVICH | CAVANAUGH
355 S. GRAND AVENUE, 15TH FLOOR
LOS ANGELES, CALIFORNIA 90071-1560
TELEPHONE (213) 362-7777
FACSIMILE (213) 362-7788

**G.    Plaintiff Fails to Plead Sufficient Facts to Support a Claim for Punitive Damages.**

1.    Pleading Punitive Damages Under California Law is Substantive for Purposes of Assessing the Pleadings in This Case

Classification of a law as being "substantive" or "procedural" requires courts to determine whether the application of a rule would "have *so* important an effect on the fortunes of…the litigants that failure to apply it would unfairly discriminate against citizens of the forum, or to be likely to cause a plaintiff to choose federal court." *Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415, 426 (1996). The important question is whether the rule in question "significantly affect(s) the result of a litigation." *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.,* 559 U.S. 393, 406 (2010) (plurality opinion). Permitting plaintiffs the opportunity to plead punitive damages, without conforming to California law, would significantly affect the course and result of this litigation.

California has enacted a specific statutory scheme governing the recovery of punitive/exemplary damages within the state. *See* Cal. Civ. Code §§3294-3296. California case law supporting this scheme identifies that claims for these types of damages are *disfavored. See Dyna-Med, Inc. v. Fair Employment & Housing Com.* 43 Cal.3d 1379, 1393 (1987); *see also Beck v. State Farm Mut. Auto. Ins. Co.,* 54 Cal.App.3d 347, 355 (1976). And given their disfavored nature, California courts have developed case law to ensure that a party seeking punitive damages plead with particularity the basis upon which they seek such a recovery. *Clauson v. Superior Court,* 67 Cal.App.4th 1253, 1254-55 (1998).

2.    Plaintiff's Prayer for Punitive Damages Should be Dismissed Because the Complaint Fails to Plead Specific Facts Sufficient to Establish the Requisite Malice, Oppression or Fraud

California Civil Code section 3294 authorizes punitive damages upon a showing of malice, fraud, or oppression. Malice is defined as either "conduct which

YUKEVICH | CAVANAUGH
355 S. GRAND AVENUE, 15TH FLOOR
LOS ANGELES, CALIFORNIA 90071-1560
TELEPHONE (213) 362-7777
FACSIMILE (213) 362-7788

is intended by the defendant to cause injury to the plaintiff," or "despicable conduct which is carried on by the defendant with a willful and conscious disregard of the rights or safety of others." Cal. Civ. Code §3294(c)(1). Oppression is defined as "despicable conduct that subjects a person to cruel and unjust hardship in conscious disregard of that person's rights." Cal. Civ. Code §3294(c)(2). Both malice and oppression are defined in California Civil Code §3294 as involving "despicable conduct," which is conduct that is "so vile, base, contemptible, miserable, wretched or loathsome that it would be looked down upon and despised by ordinary decent people." *Mock v. Michigan Millers Mutual Ins. Co.* (1992) 4 Cal. App. 4th 306, 331. "[T]he adjective 'despicable' is a powerful term." *College Hospital, Inc. v. Superior Court* (1994) 8 Cal. 4th 704, 725. "Such conduct has been described as having the character of outrage frequently associated with crime." *Tomaselli v. Transamerica Ins. Co.* (1994) 25 Cal.App.4th 1269, 1287. California courts have held that the standard of adequate pleading of malicious conduct also applied to the pleading of oppressive conduct. *See Smith v. Superior Court*, 10 Cal. App. 4th 1033, 1041 (1992).

Accordingly, in order to withstand a motion to strike punitive damages, Plaintiff's FAC must plead specific and ultimate facts sufficient to establish that Defendant's conduct was either (1) intended to cause damages to plaintiff or (2) that the alleged conduct was so "base, vile or contemptible" that it would be despised and looked down upon by ordinary people. *See Id.*; *see also Clauson*, 67 Cal. App. 4th at 1254. Where a prayer for punitive damages is based on unsupported conclusions, those unsupported conclusions are properly stricken. *Faulkner v. California Toll Bridge Authority*, 40 Cal. 2d 317, 329 (1953).

///
///
///
///

YUKEVICH | CAVANAUGH
355 S. GRAND AVENUE, 15TH FLOOR
LOS ANGELES, CALIFORNIA 90071-1560
TELEPHONE (213) 362-7777
FACSIMILE (213) 362-7788

DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT PURSUANT TO FEDERAL RULE OF PROCEDURE 12(b)(6)

YUKEVICH | CAVANAUGH
355 S. GRAND AVENUE, 15TH FLOOR
LOS ANGELES, CALIFORNIA 90071-1560
TELEPHONE (213) 362-7777
FACSIMILE (213) 362-7788

As described herein, Plaintiff has failed to allege, and is unable to allege, any facts to warrant an award of punitive damages under strict products liability under a failure to warn theory, fraudulent misrepresentation, fraudulent concealment, or civil conspiracy theories. Therefore, Plaintiff's claim and prayer for punitive damages against Safariland should be dismissed without leave to amend.

**H.    Plaintiff Lacks Article III Standing to Bring Claims for Equitable Relief.**

Article III standing requires: (1) a concrete, particularized, and actual or imminent injury; (2) fairly traceable to the defendant's conduct; and (3) likely to be redressed by the requested relief. *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007) (en banc). The U.S. Supreme Court likewise holds that Article III imposes an "irreducible constitutional minimum" of standing, injury in fact, causation, and redressability, for every claim and every form of relief. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992). A plaintiff must establish standing for each form of relief requested, including prospective relief. *See Mayfield v. United States*, 599 F.3d 964, 969-70 (9th Cir. 2010).

The Ninth Circuit has repeatedly emphasized that past injury by itself does not confer standing to seek injunctive or declaratory relief. A plaintiff seeking prospective relief "must demonstrate that he is realistically threatened by a repetition of [the violation]." *Armstrong v. Davis*, 275 F.3d 849, 860-61 (9th Cir. 2001) (abrogated on other grounds by *Johnson v. California*, 543 U.S. 499, 504-05 (2005)). Past exposure to harm is "largely irrelevant" absent a showing of a "very significant possibility" of future harm to the plaintiff himself. *Nelsen v. King County*, 895 F.2d 1248, 1250-52 (9th Cir. 1990). "[T]he burden [of] showing a likelihood of recurrence [is] firmly on the plaintiff." *Sample v. Johnson*, 771 F.2d 1335, 1342 (9th Cir.1985); *City of Los Angeles v. Lyons*, 461 U.S. 95, 101-02 (1983).

///

Where a plaintiff seeks both declaratory and injunctive relief based on past government conduct, the standing and ripeness inquiries for the two forms of relief are effectively the same: both require a non-speculative likelihood of future injury to the named plaintiff, not merely to third parties. *Hodgers-Durgin v. de la Vina*, 199 F.3d 1037, 1042-44 (9th Cir. 1999) (en banc).

Thus, even if Plaintiff had adequately pled past injury caused by Safariland for purposes of damages, he must still plead ongoing or imminent future injury redressable by prospective relief against Safariland. He has not.

1.    Plaintiff's Release from Custody Renders Moot Any Request for Prospective Relief Tied to Prison Practices

The complaint acknowledges that Plaintiff "has been released from federal custody and is no longer under supervision." (FAC pp. 4 and 20.)  Yet, Counts VIII and IX seek forward-looking declarations and injunctions about BOP disciplinary practices, use of Safariland NIK tests, and treatment of current federal inmates.

The Ninth Circuit holds that an inmate's release "generally will moot any claims for injunctive relief relating to the prison's policies unless the suit has been certified as a class action." *Dilley v. Gunn*, 64 F.3d 1365, 1368-69 (9th Cir. 1995); *see also Alvarez v. Hill*, 667 F.3d 1061, 1064 (9th Cir. 2012) (applying to declaratory relief). The Supreme Court applied the same rule in *Preiser v. Newkirk*, finding that an inmate's challenges to a prior transfer became moot once he returned to more favorable conditions, leaving no reasonable expectation that the complained-of conduct would recur. 422 U.S. 395, 401-03 (1975).

Plaintiff's release from BOP custody removes him entirely from BOP housing or disciplinary policies. As in *Alvarez*, where a released inmate alleged ongoing collateral consequences from past prison practices, the Ninth Circuit held that declaratory or injunctive relief "would have no practical impact on the inmate's rights and would not redress in any way the injury he originally asserted." 667 F.3d at 1064. Similarly, Plaintiff is no longer incarcerated and is not subject to BOP's use

YUKEVICH | CAVANAUGH
355 S. GRAND AVENUE, 15TH FLOOR
LOS ANGELES, CALIFORNIA 90071-1560
TELEPHONE (213) 362-7777
FACSIMILE (213) 362-7788

DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT PURSUANT TO FEDERAL RULE OF PROCEDURE 12(b)(6)

of NIK tests or any Safariland product, rendering declaratory or injunctive relief moot.

Plaintiff also cannot rely on the "capable of repetition, yet evading review" exception. *Alvarez* rejected this argument, holding that a former inmate's speculative possibility of returning to custody, requiring commission of a new crime, is too conjectural to preserve live claims for prospective relief. 667 F.3d at 1065. That is fully consistent with the Supreme Court's rule that, outside the class-action context, this exception applies only where there is a reasonable expectation that "the same complaining party" will again face the same challenged action, not a "mere physical or theoretical possibility" of recurrence. *Murphy v. Hunt*, 455 U.S. 478, 482 (1982) (per curiam).

Here, Plaintiff's allegations are but a "chain of speculative contingencies" that cannot sustain Article III jurisdiction. *See Nelsen*, 895 F.2d at 1252-54. Under *Dilley* and *Alvarez*, Plaintiff's release moots his requests for injunctive and declaratory relief about prison use of Safariland's NIK tests and related BOP policies, therefore, Counts VIII and IX fail to state a claim for prospective relief against Safariland.

### 2. Plaintiff Lacks the Requisite Injury-in-Fact for Prospective Relief Against Safariland

The Complaint alleges past harm from alleged wrongful discipline and solitary confinement, along with ongoing reputational and psychological effects (e.g., stigma for "permanent disciplinary record" and PTSD symptoms). These allegations do not satisfy the Ninth Circuit's "real and immediate threat" standard for prospective relief. *Nelsen* explains that "[p]ast exposure to harm is not sufficient to confer standing" unless there is a "very significant possibility" of being harmed again. *Nelsen,* 895 F.2d, at 1250-51. Similarly, *Mayfield* holds that a plaintiff is entitled to injunctive relief only if he faces a "real or immediate threat" of being wronged again in a similar way. 599 F.3d at 970 (quoting *City of Los Angeles*, 461 U.S. at 111).

YUKEVICH | CAVANAUGH
355 S. GRAND AVENUE, 15TH FLOOR
LOS ANGELES, CALIFORNIA 90071-1560
TELEPHONE (213) 362-7777
FACSIMILE (213) 362-7788

DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED COMPLAINT PURSUANT TO FEDERAL RULE OF PROCEDURE 12(b)(6)

Here, the Complaint alleges no realistic threat that Safariland's NIK tests will again be used against Plaintiff, that the same misinterpretation of "burgundy" will recur, or that BOP will again deny him due process. These risks are speculative and fall far short of the "credible threat" required. *Armstrong*, 275 F.3d at 860-61. Plaintiff lacks standing to seek declaratory or injunctive relief against Safariland.

> 3.    Plaintiff Lacks Standing to Bring Equitable Claims on Behalf of Other Prisoners

The wording of Counts VIII and IX confirms the Article III problem. Count VIII alleges an "actual controversy" regarding BOP's use of unconfirmed NIK tests, ex parte communications, retaliation, and the "one team" policy, among other issues. But, when Plaintiff explains why relief is "necessary," he says it is to protect current federal inmates from alleged BOP misconduct, citing imminent risk of unfair hearings and NIK test-based discipline. The requested equitable relief targets the BOP's actions, not Safariland's independent conduct. (FAC ¶3, 31-33).

The Ninth Circuit holds that named plaintiffs cannot obtain class-wide equitable relief for injuries they are unlikely to suffer themselves: without a likelihood of future harm, injunctive and declaratory relief claims are unripe. *Hodgers-Durgin*, 199 F.3d at 1042-44. The Supreme Court similarly emphasizes that federal courts exist to provide relief to those who have suffered or will imminently suffer actual harm, not to restructure institutions based on third-party injuries. *Lewis v. Casey*, 518 U.S. 343, 349-50 (1996). Here, Plaintiff's admitted aim "to protect current federal inmates from the same fraudulent practices and unfair tribunals" underscores that Counts VIII and IX seek systemic relief that *Lewis* forbids. Under *Hodgers-Durgin*, Plaintiff's failure to establish a likelihood of future injury is fatal to standing, for both injunctive and declaratory relief.

Additionally, pro se litigants have no authority to represent anyone other than themselves; therefore, they lack the representative capacity to file motions or other documents on behalf of others. See *Johns v. County of San Diego,* 114 F.3d 874, 877

YUKEVICH | CAVANAUGH
355 S. GRAND AVENUE, 15TH FLOOR
LOS ANGELES, CALIFORNIA 90071-1560
TELEPHONE (213) 362-7777
FACSIMILE (213) 362-7788

(9th Cir. 1997) ("[A] non-lawyer 'has no authority to appear as an attorney for others than himself.'" (quoting *C.E. Pope Equity Trust v. United States*, 818 F.2d 696, 697 (9th Cir. 1987)).

Therefore, even if Plaintiff did have standing to pursue his own equitable claims for relief, he would be unable to seek relief for other prisoners through his status as *pro se* litigant.

### 4.     The Requested Equitable Relief Against Safariland Would Not Redress Plaintiff's Alleged Ongoing Injury

Even assuming Plaintiff has some ongoing injury (e.g., reputational consequences of his disciplinary record), he must still show that prospective relief against Safariland would likely redress that injury. *Bates*, 511 F.3d at 985; *Mayfield*, 599 F.3d at 970.

Here, any improvement in Plaintiff's status, expungement of his disciplinary record, restoration of good time, or changes to BOP NIK-testing policies, would turn entirely on BOP's discretionary decisions, which an order directed solely at Safariland cannot compel. Therefore, Plaintiff lacks standing and dismissal of the declaratory and injunctive relief claims is proper.

### 5.     Declaratory Relief Is Purely Retrospective as to Safariland

Plaintiff's declaratory judgment request regarding Safariland's NIK tests is entirely retrospective. He asks the Court to declare that his past disciplinary conviction was based on fabricated evidence, that unconfirmed NIK test results were insufficient, that BOP's past practices violated due process and equal protection, and that prior directives contradicted manufacturer warnings.

The Ninth Circuit has cautioned that declaratory relief cannot be used to obtain a retrospective pronouncement of past governmental conduct when it will not alter the parties' legal rights going forward. *Mayfield*, 599 F.3d at 972. Here, as in *Mayfield*, Plaintiff's requested declarations would not change his legal status, modify any ongoing relationship with Safariland, or prevent future harm. They

YUKEVICH | CAVANAUGH
355 S. GRAND AVENUE, 15TH FLOOR
LOS ANGELES, CALIFORNIA 90071-1560
TELEPHONE (213) 362-7777
FACSIMILE (213) 362-7788

DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT PURSUANT TO FEDERAL RULE OF PROCEDURE 12(b)(6)

would operate solely as an advisory statement about past conduct, which is constitutionally insufficient to support a stand-alone claim for declaratory relief.

Accordingly, as to Safariland, Counts VIII (declaratory relief) and IX (injunctive relief) fail to allege a live Article III case or controversy and should be dismissed for lack of standing and mootness.

## IV.    **CONCLUSION**

For the foregoing reasons, Safariland respectfully requests that the Court grant the instant Motion to Dismiss in its entirety.

DATED:  December 15, 2025          YUKEVICH | CAVANAUGH

By: */s/ Steven D. Smelser*
    Steven D. Smelser
    Sydney A. Shaffer
    Camille T. Baylis
    Attorneys for Defendant,
    SAFARILAND, LLC

YUKEVICH | CAVANAUGH
355 S. GRAND AVENUE, 15TH FLOOR
LOS ANGELES, CALIFORNIA 90071-1560
TELEPHONE (213) 362-7777
FACSIMILE (213) 362-7788

# CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendant Safariland, LLC, certifies that this brief contains 6,374 words, which:

☒ complies with the word limit of L.R. 11-6.1.

☐ complies with the word limit set by court order dated _____.

DATED: December 15, 2025___        */s/ Steven D. Smelser*

                                    Steven D. Smelser

YUKEVICH | CAVANAUGH
355 S. GRAND AVENUE. 15TH FLOOR
LOS ANGELES, CALIFORNIA 90071-1560
TELEPHONE (213) 362-7777
FACSIMILE (213) 362-7788

## PROOF OF SERVICE

### Billy F. Steffey vs. Colette S. Peters et al.
### USDC, Central Dist. of California - Case No. 2:25-cv-11105-VBF-SK

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

At the time of service, I was over 18 years of age and not a party to this action. I am employed in the County of Los Angeles, State of California. My business address is 355 S. Grand Avenue. 15th Floor, Los Angeles, CA 90071-1560.

On December 15, 2025, I served true copies of the following document(s) described as **DEFENDANT SAFARILAND, LLC'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6)** on the interested parties in this action as follows:

Billy F. Steffey                    Plaintiff Pro Per
229 Dragonfly Circle
Sacramento. CA 95834

**BY MAIL:** I enclosed the document(s) in a sealed envelope or package addressed to the persons at the addresses listed in the Service List and placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with the practice of Yukevich | Cavanaugh for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid. I am a resident or employed in the county where the mailing occurred. The envelope was placed in the mail at Los Angeles, California.

**BY CM/ECF NOTICE OF ELECTRONIC FILING:** I electronically filed the document(s) with the Clerk of the Court by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system. Participants in the case who are not registered CM/ECF users will be served by mail or by other means permitted by the court rules.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on December 15, 2025, at Los Angeles, California.

_____
/s/ Martha Blancas Gutierrez
Martha Blancas Gutierrez

YUKEVICH | CAVANAUGH
355 S. GRAND AVENUE. 15TH FLOOR
LOS ANGELES, CALIFORNIA 90071-1560
TELEPHONE (213) 362-7777
FACSIMILE (213) 362-7788

5024986.1                                    Case No. 2-25-cv-11105-VBF-SK
DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED COMPLAINT PURSUANT TO FEDERAL RULE OF PROCEDURE 12(b)(6)

## UNITED STATES DISTRICT COURT
## DISTRICT OF OREGON

BILLY F. STEFFEY,                          Case No.: 3:19-cv-00093-JR
Petitioner,

v.

WARDEN J. SALAZAR,
Respondent.


# EXHIBIT F


## PLAINTIFF'S NOTICE OF SUPPLEMENTAL AUTHORITY

Attached to Petitioner's Rule 60(b) Motion for Relief from Judgment

BILLY STEFFEY
455 Capitol Mall ste. 802
Sacramento, CA 95814
Phone Number 916-955-6332
Email Address (bsteffey@mac.com)
Plaintiff In Pro Per

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

BILLY STEFFEY, (PRO SE)

   Plaintiff,

  vs.

COLETTE S. PETERS, et al,

   Defendant(s)

) Case No.: LA CV 25-11105-VBF-SK
)
)
)
)
) **PLAINTIFF'S NOTICE OF**
) **SUPPLEMENTAL AUTHORITY**
)
) *(Re: Miley v. Warden, FCI Beaumont Low (E.D.*
) *Tex. Aug. 2, 2023))*
)

Plaintiff respectfully submits the following supplemental authority discovered after Plaintiff's filing of Motion for Temporary Restraining Order and Preliminary Injunction / Opposition to Motion to Dismiss. This Notice is submitted solely for the Court's convenience and is limited to the authority identified below.

1. **Miley v. Warden, FCI Beaumont Low**, Civil Action No. 1:22-cv-00243-[…], (E.D. Tex. Aug. 2, 2023) (denying § 2241 petition). The court recounted that BOP staff used NIK field test kits and that **Test A** produced an orange-to-brown reaction and **Test U** produced a **blue** reaction, which was treated as a positive indication for methamphetamine. (Ex. A).

**Relevance:** In this case, the parties dispute the interpretation and reliability of NIK **Test U** color outcomes. Manufacturer training materials describe Test U as a test for "secondary amines," where **dark blue** indicates methamphetamine/MDMA, and note that Test U may appear **burgundy** as a baseline reaction and that a burgundy result is **negative for methamphetamine**. Miley is submitted as a concrete example of BOP's and a federal court's recognition that **blue** is the Test U indicator for methamphetamine.

Dated this 22nd day of December, 2025

BILLY STEFFEY
Plaintiff in Pro Per

## UNITED STATES DISTRICT COURT
## DISTRICT OF OREGON

BILLY F. STEFFEY,
Petitioner,

Case No.: 3:19-cv-00093-JR

v.

WARDEN J. SALAZAR,
Respondent.

# EXHIBIT G

## VERIFIED COMPLAINT (STEFFEY v. PETERS)

Attached to Petitioner's Rule 60(b) Motion for Relief from Judgment

# UNITED STATES DISTRICT COURT CENTRAL DISTRICT OF CALIFORNIA

**BILLY STEFFEY,**
Plaintiff,

v.

**COLETTE S. PETERS,** in her o icial capacity as Director of the Federal Bureau of Prisons;
**M. WADE JENNINGS,** in his individual and o icial capacity;
**KEVIN SCHWINN,** in his individual and o icial capacity; **SAFARILAND, LLC;**
**R. JOHN LYNN,** Regional Special Investigative Agent (DOE 1);
**SIS TECHNICIAN S. AGUILAR,** (DOE 2);
**SIS LIEUTENANT [FIRST NAME UNKNOWN] JOHNSON,** (DOE 3);
**DISCIPLINE HEARING OFFICER WILLIAM J. CHETWOOD,** (DOE 4);
**DOES 5-50,**
Defendants.

Case No. _____

---

## VERIFIED COMPLAINT FOR:

1. DAMAGES UNDER THE FEDERAL TORT CLAIMS ACT
2. DAMAGES—PRODUCT LIABILITY AND FRAUD
3. CIVIL CONSPIRACY
4. DECLARATORY RELIEF
5. INJUNCTIVE RELIEF
6. RETALIATION FOR EXERCISE OF FEDERAL COURT ACCESS

**DEMAND FOR JURY TRIAL**

---

## PRELIMINARY STATEMENT

**This Case Exposes Three Interconnected Constitutional Violations:**

**PHASE 1 (FCI Lompoc, December 2017 - February 2018): Fraudulent Testing and Rigged Tribunal**

1

1. This action seeks to remedy a systematic, fraudulent, and unconstitutional scheme orchestrated by the highest levels of the Federal Bureau of Prisons in coordination with Defendant Safariland, LLC, involving the deliberate misrepresentation of negative drug test results as positive using NIK-brand chemical field tests.

2. This case is not about unreliable tests alone—it is about **intentional fraud authorized from the top of BOP leadership, systematic denial of fair tribunals through coordinated ex parte communications**, and **subsequent retaliation against Plaintiff for accessing the federal courts**.

3. On January 18, 2017, M. Wade Jennings, Administrator of BOP's Correctional Services Branch at BOP Central Office in Washington, D.C., issued an official SIS Advisory directing all BOP regions and institutions nationwide to interpret "burgundy" color results on NIK Test U as positive for Buprenorphine (Suboxone). **See Exhibit A** (January 18, 2017 SIS Advisory).

4. This directive directly contradicts Safariland's manufacturer warnings, which explicitly state: "An immediate dark blue color indicates Methamphetamine or MDMA (Ecstasy). If any other color develops, proceed to Test A."

5. **Plaintiff Billy Steffey created video evidence demonstrating that burgundy is the baseline color that appears automatically when a NIK Test U pouch is activated without any drugs or substances added. See Exhibit B** (Plaintiff's YouTube Video Demonstration, available at https://youtu.be/p8USQ642q7w). **The video proves that only blue indicates positive, and shows the blue reference square printed directly on the pouch itself to enable users to distinguish between negative (burgundy) and positive (blue) results. See Exhibit B.**

6. BOP Central Office knowingly created and distributed a fraudulent testing protocol that has resulted in thousands of false disciplinary convictions across the federal prison system.

7. Plaintiff Billy Steffey was falsely imprisoned in solitary confinement for approximately 6 months total, lost 41 days of vested good conduct time, and lost 180 days of commissary privileges based on this systematic fraud. Plaintiff has since been released from federal custody and is no longer under supervision.

8. At FCI Lompoc, SIS Technician Aguilar conducted fraudulent NIK tests, filed false incident reports, and then threatened Plaintiff before the DHO hearing, offering a "deal" for minimal sanctions if he did not contest the charges. These threats prove pre-hearing coordination with DHO Chetwood, violating *Wolf v. McDonnell*, 418 U.S. 539 (1975).

2

9. Despite Plaintiff's release, he continues to suffer permanent harm and damages from the fraudulent conviction and rigged tribunal, including emotional distress, reputational damage, lost earning capacity, and diminished job prospects.

**PHASE 2 (FCI Sheridan, After Habeas Filing): Retaliation for Federal Litigation**

10. **After Plaintiff was transferred to FCI Sheridan and filed his § 2241 habeas petition challenging the fraudulent conviction, Defendant SIS Lieutenant Johnson confronted Plaintiff and threatened him with indefinite SHU confinement if he did not abandon his federal litigation.**

11. **This threat by Lt. Johnson constitutes retaliation for Plaintiff's exercise of his First Amendment right to access the federal courts and petition for judicial review—a separate and independent constitutional violation.**

12. **Lt. Johnson's threat was coordinated with Defendant R. John Lynn, proving that BOP's response to federal oversight of the fraudulent NIK testing scheme was to threaten and coerce inmates into abandoning federal litigation.**

13. Defendants have conspired to conceal this fraud and deny fair hearings by:

    - Directing staff to manipulate incident report documentation **See Exhibit A**
    - Establishing official "one team" policy coordinating ex parte communications between SIS investigators and DHO adjudicators **See Exhibit A**
    - Instructing DHOs not to require laboratory confirmation **See Exhibit D**
    - Pre-arranging appeals denials with Office of General Counsel **See Exhibit A**
    - Retaliating against Plaintiff for federal litigation **See Sheridan incident**
    - Destroying and concealing evidence

14. This action seeks monetary damages for all harm suffered, declaratory relief establishing inmates' right to fair tribunals free from ex parte communications and retaliation, and injunctive relief to remedy the harm to Plaintiff, prevent ongoing harm to thousands of current federal inmates, and ensure that future disciplinary proceedings provide fair and impartial tribunals with reliable evidence.

---

3

## JURISDICTION AND VENUE

15. This Court has jurisdiction under 28 U.S.C. § 1331 (federal question jurisdiction), 28 U.S.C. § 1346(b) (Federal Tort Claims Act), and 42 U.S.C. § 1983 (civil rights violations).

16. Venue is proper in the Eastern District of California under 28 U.S.C. § 1391(b) and 28 U.S.C. § 1402(b) because Plaintiff's disciplinary conviction occurred at FCI Lompoc, located within this district, and a substantial part of the events giving rise to Plaintiff's claims occurred in this district.

17. Plaintiff has exhausted administrative remedies through the BOP administrative remedy process (BP-9, BP-10, BP-11).

---

## PARTIES

### Plaintiff

18. Billy Steffey is a former federal inmate who was confined in the custody of the Federal Bureau of Prisons and released from federal custody. At all times relevant to Phase 1 of this Complaint, Plaintiff was confined at FCI Lompoc, a federal correctional institution located in Lompoc, California, within the Eastern District of California. At all times relevant to Phase 2 of this Complaint, Plaintiff was confined at FCI Sheridan. Plaintiff is no longer under BOP custody or supervision and now resides as a free citizen in California.

### Defendants - Federal Defendants

19. **Colette S. Peters** is the Director of the Federal Bureau of Prisons and is sued in her official capacity. Director Peters is responsible for the policies, practices, and operations of BOP, including the systematic fraud scheme and unconstitutional ex parte communication practices described herein. Director Peters' office is located at 320 First Street, NW, Washington, DC 20534.

20. **M. Wade Jennings** was, at all relevant times, the Administrator of the Correctional Services Branch at BOP Central Office, Intelligence Section, located at 320 First Street, NW, Room 543, Washington, DC 20534. Jennings is sued in both his individual and official capacity for:

    - Authoring and signing the January 18, 2017 SIS Advisory directing all BOP staff nationwide to misrepresent burgundy NIK Test U results as positive **See Exhibit A**
    - Creating the fraudulent NIK testing protocol that contradicts manufacturer warnings and scientific reality (as proven by Plaintiff's video) **See Exhibits A and B**

4

- Knowingly disseminating false information to all BOP regions and institutions **See Exhibit A**
- Conspiring with Safariland and subordinate officials to implement systematic fraud
- Establishing BOP-wide policy authorizing ex parte communications and coordinated convictions

21. **Kevin Schwinn** was, at all relevant times, Chief of Operations, Intelligence Section at BOP Central Office, located at 320 First Street, NW, Room 543, Washington, DC 20534. Schwinn is sued in both his individual and official capacity for:

- Co-signing and approving the January 18, 2017 SIS Advisory **See Exhibit A**
- Supervising and directing the fraud scheme **See Exhibit A**
- Coordinating with Safariland on fraudulent testing protocols
- Conspiring to conceal the fraud from inmates and courts
- Authorizing systematic ex parte communications between SIS and DHOs

22. **R. John Lynn** was, at all relevant times, a Regional Special Investigative Agent (SIA) assigned to BOP's Western Regional Office, located at 7338 Shoreline Drive, Stockton, California. Lynn is sued in his individual and official capacity for:

- Distributing Wade Jennings' fraudulent SIS Advisory to Western Region institutions on January 23, 2018 **See Exhibit A**
- Directing subordinate SIS staff to follow the fraudulent testing protocol **See Exhibit A**
- **Explicitly instructing SIS staff to engage in ex parte communications with DHOs: "Like always, please be sure to communicate with your DHO. They will provide you guidance and advise on what they review on their side of the house legal side to ensure all supporting documentation and evidence is present." See Exhibit A**
- **Declaring that SIS, DHOs, and OGC are "all on one team" working together to "hold the inmates accountable" See Exhibit A**
- Coordinating with Discipline Hearing Officers to deny appeals and prevent exposure of fraud **See Exhibit A**
- Threatening staff with loss of support from Office of General Counsel if they failed to follow fraudulent procedures **See Exhibit A**
- Instructing staff to manipulate documentation to "ensure we are holding the inmates accountable" and prevent inmates from "beating us based on technicalities" **See Exhibit A**
- Establishing systematic policy of pre-hearing coordination between investigators and adjudicators, violating *Wolf v. McDonnell*

5

- **Coordinating with Lt. Johnson to threaten Plaintiff after federal litigation was filed** (Phase 2)

23. **SIS Technician S. Aguilar** was, at all relevant times, a Special Investigative Services technician employed by BOP at FCI Lompoc. Aguilar is sued in his individual and official capacity for:

   - Conducting NIK tests on Plaintiff's intercepted mail on December 5, 2017 at FCI Lompoc
   - Testing paper in violation of manufacturer warnings stating "Do NOT perform test on paper substrates" **See Exhibit C**
   - Documenting a burgundy color on NIK Test U
   - Knowingly misrepresenting the burgundy result as positive for amphetamines, following fraudulent directives **See Exhibits A and B**
   - Following fraudulent directives from Wade Jennings and R. John Lynn **See Exhibit A**
   - **Engaging in pre-hearing threats and coercion at FCI Lompoc (late December 2017 - early February 2018), threatening Plaintiff with maximum sanctions and federal prosecution if he contested the charges**
   - **Offering a "deal" for minimal sanctions if Plaintiff admitted guilt without contesting**
   - **Engaging in ex parte communications with DHO Chetwood before Plaintiff's hearing** (violating *Wolf v. McDonnell*)
   - Fabricating evidence to support false disciplinary charges

24. **SIS Lieutenant [First Name Unknown] Johnson** was employed by BOP, serving at FCI Lompoc and later at FCI Sheridan. Johnson is sued in his individual and official capacity for:

   **CRITICAL TIMING DISTINCTION:** Lt. Johnson had NO INVOLVEMENT in the initial NIK testing, incident report filing, or pre-hearing threats at FCI Lompoc in December 2017 or January-February 2018. The following conduct occurred AFTER Plaintiff was transferred to FCI Sheridan and AFTER Plaintiff filed his federal habeas petition:

   - **Being stationed at FCI Sheridan AFTER Plaintiff's transfer from FCI Lompoc**
   - **Confronting Plaintiff at FCI Sheridan AFTER Plaintiff had filed his § 2241 habeas petition**
   - **Threatening Plaintiff with indefinite SHU confinement if he did not abandon his federal litigation challenging the NIK test fraud**
   - **Explicitly retaliating against Plaintiff's exercise of his First Amendment right to access the courts**
   - **Coordinating with Defendant R. John Lynn to suppress Plaintiff's federal litigation**

6

- **Committing Abuse of Process by using his authority as a SIS lieutenant to coerce abandonment of federal litigation**
- **Violating Plaintiff's constitutional rights by threatening punishment for exercising his right to petition the federal courts**

25. **Discipline Hearing Officer William J. Chetwood** was, at all relevant times, a Discipline Hearing Officer employed by BOP and assigned to FCI Lompoc. Chetwood is sued in his individual and official capacity for:

- Conducting Plaintiff's disciplinary hearing on February 13, 2018 **See Exhibit D**
- **Falsely claiming in his declaration to be an "impartial hearing officer who does not investigate or have any prior knowledge concerning an alleged rule violation before it is referred to me for consideration" See Exhibit D**
- **This claim is provably false because Chetwood received ex parte communications from SIS staff (Aguilar) before the hearing, as evidenced by Aguilar's pre-hearing "deal" offer, which required coordination with Chetwood on specific sanctions See Exhibit D**
- Finding Plaintiff guilty based solely on fraudulent NIK test results **See Exhibit D**
- Failing to require laboratory confirmation despite knowing NIK tests are unreliable **See Exhibit D**
- **Engaging in ex parte communications with SIS staff in advance of the hearing as directed by R. John Lynn's "one team" policy See Exhibits A and D**
- Imposing sanctions (41 days loss of good conduct time, 180 days commissary loss, 60 days disciplinary segregation suspended, 1 year visitation loss suspended) based on fabricated evidence and rigged hearing **See Exhibit D**
- **The suspension of the most severe sanctions (60 days DS, 1 year visitation loss) suggests consciousness of guilt and awareness of the case's weakness See Exhibit D**
- Violating Plaintiff's constitutional right to a fair and impartial tribunal under *Wolf v. McDonnell*

26. **DOES 5-50** are additional BOP employees, officials, and agents whose identities are presently unknown to Plaintiff but who participated in the fraudulent scheme and systematic ex parte communications, including:

- BOP Central Office officials who approved or coordinated the fraud **See Exhibit A**
- Regional Directors who distributed Wade Jennings' directives **See Exhibit A**
- Other SIS personnel who implemented the fraudulent testing protocol and engaged in ex parte communications **See Exhibit A**

7

- Other DHOs who convicted inmates based on fraudulent NIK results following ex parte coordination **See Exhibit A**
- Office of General Counsel attorneys who coordinated appeals denials as part of the "one team" **See Exhibit A**

**Corporate Defendant**

27. **Safariland, LLC** is a limited liability company organized under the laws of Florida, with its principal place of business in Jacksonville, Florida. Safariland manufactures, markets, and sells NIK-brand narcotics identification test kits, including those used by BOP to falsely convict Plaintiff and thousands of other federal inmates. Safariland is subject to personal jurisdiction in California because it:
    - Contracts with BOP to supply NIK test kits to California federal prisons, including FCI Lompoc
    - Provides training and technical support to BOP staff in California
    - Markets and sells products for use in California
    - **Knew or should have known its products were being misused in California through fraudulent interpretation of burgundy results as positive when Plaintiff's video proves burgundy is the baseline color See Exhibits A and B**

---

## FACTUAL ALLEGATIONS

### PHASE 1: FRAUDULENT TESTING AND RIGGED TRIBUNAL AT FCI LOMPOC (December 2017 - February 2018)

### I. The Wade Jennings Directive: Fraud Authorized from BOP Central Office

28. On January 18, 2017, M. Wade Jennings, Administrator of BOP's Correctional Services Branch at Central Office in Washington, D.C., issued an official SIS Advisory titled "Buprenorphine HCL (suboxone) Incident Reports." **See Exhibit A.**

29. The January 18, 2017 SIS Advisory was distributed to:

    - All Regional Directors
    - All Wardens
    - All Special Investigative Services (SIS) personnel
    - All Correctional Services staff
    - BOP Central Office departments

**See Exhibit A.**

30. The January 18, 2017 SIS Advisory was co-signed by Kevin Schwinn, Chief of Operations, Intelligence Section, BOP Central Office. **See Exhibit A.**

8

31. The January 18, 2017 SIS Advisory directs BOP staff nationwide to use NIK Tests A, U, and K in sequence to identify Buprenorphine HCL (Suboxone). **See Exhibit A.**

32. Most critically, the January 18, 2017 SIS Advisory states: "NIK Test U - Methamphetamine Reagent - results are BURGANDY" (emphasis in original). **See Exhibit A.**

33. The January 18, 2017 SIS Advisory also states: "In the September 29, 2015 SIS Advisory, the color change in NIK Test U was reported as BROWN. The color change should have been reported as BURGANDY." **See Exhibit A.**

34. This directive to interpret burgundy as a positive result directly contradicts Safariland's manufacturer instructions for NIK Test U, which state: "[Test U] An immediate dark blue color indicates Methamphetamine or MDMA (Ecstasy). If any other color develops, proceed to Test A."

35. Safariland's product insert and color chart show that only BLUE indicates a positive result for NIK Test U. Burgundy is NOT listed as a positive result.

36. **Plaintiff created video evidence that objectively and scientifically proves burgundy is the baseline color and NOT a positive result. See Exhibit B** (Plaintiff's Video Demonstration at https://youtu.be/p8USQ642q7w).

37. **In Exhibit B, Plaintiff's video demonstrates:**

   - **An unopened NIK Test U pouch is activated**
   - **No drugs or substances are added**
   - **The chemicals automatically mix and turn burgundy**
   - **A blue reference square is visible on the pouch itself**
   - **Only blue indicates positive; burgundy is negative**

**See Exhibit B.**

38. BOP Central Office knew or should have known that:

   - Burgundy is not a positive result according to the manufacturer
   - Burgundy is the baseline color when the test is activated **See Exhibit B**
   - Safariland's instructions explicitly state only BLUE indicates positive
   - Interpreting burgundy as positive would result in false positives **See Exhibit B**

39. Despite this knowledge, Wade Jennings and Kevin Schwinn authorized and distributed the fraudulent directive to all BOP facilities nationwide, creating official policy that contradicts manufacturer warnings and scientific reality. **See Exhibits A and B.**

9

40. The January 18, 2017 SIS Advisory proves this is not isolated misconduct by individual staff members, but rather systematic fraud authorized by BOP's senior leadership and implemented as official policy. **See Exhibit A.**

## II. R. John Lynn Implements the Fraud and Establishes "One Team" Ex Parte Communications Policy

41. On January 23, 2018, R. John Lynn, Regional Special Investigative Agent for BOP's Western Regional Office, sent an email to all Western Region SIS personnel and Captains with the subject line "Suboxone related Incident Reports." **See Exhibit A.**

42. R. John Lynn's January 23, 2018 email states: "You must test the substance Using NIK Test Kit 'A' then 'U' then 'K.' (As outlined in the attached SIS Advisement, and NIK Test chart)" **See Exhibit A.**

43. R. John Lynn attached Wade Jennings' January 18, 2017 SIS Advisory to his email, directing Western Region staff to follow the fraudulent testing protocol. **See Exhibit A.**

44. R. John Lynn's January 23, 2018 email reveals the coordinated nature of the conspiracy, stating: "We have lost too many Incident Reports to appeals based on staff not being certified, identifying the drug by the brand name Suboxone instead of the drug name Buprenorphine, not identifying the person who conducted the testing and/or not testing with A, U and K. If you fail to do any of these steps, the inmate will win his appeal because OGC will not support you IR without these steps being followed." **See Exhibit A.**

45. This statement proves:

   - BOP was losing appeals because inmates challenged NIK test reliability
   - BOP Office of General Counsel (OGC) was pre-coordinating which cases to support before hearings even occurred **See Exhibit A**
   - The goal was not accuracy—it was preventing inmates from "winning" appeals **See Exhibit A**

46. R. John Lynn's email further states: "But lets not let the inmates beat us based on technicalities." **See Exhibit A.**

47. This language reveals the adversarial mindset underlying the fraud: BOP viewed scientific accuracy and manufacturer warnings as "technicalities" to be circumvented, not legal and ethical obligations to be followed. **See Exhibit A.**

48. **MOST CRITICALLY, R. John Lynn's email explicitly instructs SIS staff to engage in ex parte communications with DHOs, stating: "Like always, please be sure to communicate with your**

10

DHO. They will provide you guidance and advise on what they review on their side of the house legal side to ensure all supporting documentation and evidence is present." **See Exhibit A.**

49. **R. John Lynn's email then declares: "Remember we are all on one team and at the end of the day, all of us want to make sure we are holding the inmates accountable for their actions." See Exhibit A.**

50. **This "one team" language proves that BOP does not provide fair and impartial tribunals as required by** *Wolf v. McDonnell*, **418 U.S. 539 (1975). Instead, BOP treats disciplinary proceedings as coordinated prosecutions where:**

- **The investigator (SIS) and adjudicator (DHO) are "one team" See Exhibit A**
- **The investigator provides ex parte "guidance" to the adjudicator before the hearing See Exhibit A**
- **The adjudicator and investigator coordinate to "ensure" conviction ("holding the inmates accountable") See Exhibit A**
- **Office of General Counsel pre-coordinates which cases to support before hearings occur See Exhibit A**

51. **This systematic practice of ex parte communications violates the fundamental requirement of** *Wolf v. McDonnell* **that inmates receive "written notice of the charges," "a written statement by the factfinders," and a hearing before an "impartial" tribunal. 418 U.S. at 563-72. An adjudicator who receives ex parte communications from the investigator and views themselves as part of "one team" with the investigator is not impartial.**

52. R. John Lynn's January 24, 2018 follow-up email states he had a "conversation with Central Office" clarifying testing procedures, proving ongoing coordination between Regional and Central Office leadership. **See Exhibit A.**

53. **R. John Lynn's January 25, 2018 email to DHO Hernandez forwards his SIS directive and asks Hernandez to "send this out to your DHOs as a follow up," proving systematic coordination between SIS and DHOs across the Western Region. See Exhibit A.**

### III. The Fraudulent K2/Spice Testing Protocol

54. The January 18, 2017 SIS Advisory purports to create a multi-test sequence (NIK Tests A, U, and K) for identifying Buprenorphine (Suboxone). **See Exhibit A.**

11

55. Safariland never validated this testing sequence. The NIK test manufacturer instructions do not describe using Tests A, U, and K in combination for any substance.

56. BOP invented this testing protocol without scientific validation, creating the false impression that the multi-test sequence is a legitimate forensic method. **See Exhibit A.**

57. BOP further misused this invented protocol by claiming it could detect K2/Spice (synthetic cannabinoids), despite the scientific impossibility of detecting synthetic cannabinoids using colorimetric field tests. **See Exhibit C** (Clark Bailey incident report documenting burgundy NIK Test U result on greeting cards, misrepresented as positive for "Methamphetamine Reagent which indicates the presence of Amphetamine").

58. Synthetic cannabinoids are a diverse class of hundreds of chemical compounds that cannot be reliably detected using simple color-change tests designed for traditional drugs.

59. Safariland has never claimed that NIK tests can detect K2/Spice. No scientific literature supports the use of NIK tests for synthetic cannabinoid detection.

60. BOP's invention of a fraudulent K2 detection method using NIK tests demonstrates deliberate misrepresentation and fraud, not mere negligence or error. **See Exhibits A and C.**

## IV. Safariland's Manufacturer Warnings

61. Safariland's NIK test instructions prominently warn: "Do NOT perform test on paper substrates. False color reactions may result."

62. Safariland's instructions further warn: "ALL TEST RESULTS MUST BE CONFIRMED BY AN APPROVED ANALYTICAL LABORATORY!" (emphasis in original)

63. Despite these explicit warnings, BOP policy and practice:

   - Allows and encourages testing of paper substrates (letters, envelopes, packaging) **See Exhibit C** (testing on greeting cards)
   - Does not require laboratory confirmation of NIK test results before imposing discipline **See Exhibit D**
   - Treats NIK test results as definitive proof of drug possession **See Exhibit D**

64. BOP's double standard: BOP regulations require laboratory confirmation of positive urine drug tests before disciplinary action (28 C.F.R. § 550.42(c)), but BOP imposes no such requirement for NIK field tests, despite NIK tests being far less reliable than urinalysis.

12

65. This discriminatory double standard violates equal protection principles and demonstrates BOP's knowledge that NIK tests are unreliable—yet BOP uses them anyway to maximize disciplinary convictions.

## V. Scientific Evidence of NIK Test Unreliability

66. **New York State Inspector General Report (2020):** Found 38% false positive rate for NARK II tests (same manufacturer as NIK tests), leading to suspension of tests and expungement of 2,772 disciplinary records.

67. **Massachusetts Federal Court (2021):** Issued injunction against NIK tests in Massachusetts DOC, finding tests "arbitrary" and "unlawful guess-work" with 38% false positive rate.

68. **New York City Department of Investigation:** Found 85% false positive rate for fentanyl detection using field tests in NYC jails.

69. **Scientific Working Group for the Analysis of Seized Drugs (SWGDRUG):** Classifies color tests as Category C (lowest reliability) and requires confirmatory testing before relying on results.

70. **ASTM E2329-14:** Industry standard requiring validated methods and confirmatory testing for drug identification—NIK tests as used by BOP violate this standard.

71. **California Courts:** Multiple state courts have found NIK tests inadmissible under Frye/Kelly and Sargon standards due to lack of scientific reliability.

72. BOP knew or should have known of this scientific evidence demonstrating NIK test unreliability, yet continued to use NIK tests without confirmation as the sole basis for disciplinary convictions. **See Exhibit A** (directive to use unreliable tests).

## VI. Plaintiff's Disciplinary Case at FCI Lompoc   December 5, 2017: Interception of Mail

73. On December 5, 2017, mail addressed to inmate Patrick Johnson at FCI Lompoc was intercepted by BOP staff.

74. The mail consisted of papers in an envelope purportedly from "Law Offices of Leslie R. Ramos, 901 H Street, Sacramento, CA 95814." **See Exhibit D.**

75. Plaintiff had no involvement in sending or requesting this mail. Plaintiff did not know Patrick Johnson personally and had never communicated with him about legal mail or any other subject.

76. BOP staff claimed the mail was linked to Plaintiff based on:

13

- TRUVIEW data showing Plaintiff and Johnson had a "money link" (unspecified financial transaction)
- Email communications between Plaintiff and "Lisa Rassmussen" at "inmateresources@protonmail.com" **See Exhibit D**

77. Plaintiff's emails with "Lisa Rassmussen" concerned:

- Assistance with a 28 U.S.C. § 2255 petition (federal habeas case)
- Assistance with eviction proceedings for Plaintiff's rental property

**See Exhibit D.**

78. Plaintiff had no knowledge that "Lisa Rassmussen" was connected to any mail sent to Patrick Johnson or that anyone was using attorney Leslie R. Ramos' name and address without authorization.

79. **Attorney Leslie R. Ramos has confirmed she has no knowledge of Plaintiff, Patrick Johnson, or "Lisa Rassmussen," and did not authorize use of her name or law firm address. See Exhibit D** (DHO Chetwood's declaration documenting attorney Ramos' statement that she has never heard of Petitioner or anyone named Lisa Rassmussen, sent no mail to FCI Lompoc, and has learned that inmates are using her name as a false sender of bogus legal mail).

**December 5, 2017: NIK Testing on Paper**

80. On December 5, 2017, SIS Technician S. Aguilar conducted NIK tests on the paper from the intercepted mail.

81. Aguilar tested the paper using NIK Test A and NIK Test U, in direct violation of Safariland's warning: "Do NOT perform test on paper substrates." **Compare Exhibit C** (Clark Bailey incident documenting similar testing on paper/greeting cards).

82. Aguilar documented the test results in Incident Report No. 3084272 as follows:

- "NIK Test A... turned an orange turning brown color"
- "NIK Test U... turned an immediate dark burgundy color"

**See Exhibit D.**

83. Aguilar then misrepresented the test results, stating: "The NIK Test U turning an immediate dark burgundy color is a positive indication of the presence of Amphetamines."

84. **This statement is scientifically false. Plaintiff created video evidence proving that burgundy is the baseline color that appears automatically when the chemicals mix, even without any drugs present. See Exhibit B. The video shows the blue reference square on the pouch, confirming that only blue indicates positive—not burgundy. See Exhibit B.**

14

85. Aguilar knew or should have known the result was negative because:

- He had access to NIK test instructions stating only blue is positive
- The NIK Test U pouch itself contains a blue reference square showing what positive (blue) looks like **See Exhibit B**
- He had been trained (or should have been trained) on proper test interpretation
- He received Wade Jennings' directive and R. John Lynn's emails instructing him to misrepresent burgundy as positive **See Exhibit A**

86. Aguilar acted pursuant to the fraudulent directives from BOP Central Office (Wade Jennings) and Western Regional Office (R. John Lynn), making this not isolated misconduct but rather implementation of systematic fraud. **See Exhibit A.**

**January 31, 2018: Incident Report Filed and Ex Parte Coordination Begins**

87. On January 31, 2018, nearly two months after the alleged incident, SIS Technician Aguilar filed Incident Report No. 3084272 charging Plaintiff with:

**Code 111:** Possession of any narcotics, marijuana, drugs, alcohol, intoxicants, or related paraphernalia, not prescribed for the individual by the medical staff

88. The delay in filing the incident report is suspicious and suggests coordination with DHO and Regional officials to ensure Plaintiff's conviction. **See Exhibit D** (DHO Chetwood acknowledging delay).

**Late December 2017 - February 2018: Pre-Hearing Threats and Coercion by Aguilar at FCI Lompoc**

89. **While Plaintiff remained at FCI Lompoc awaiting the February 13, 2018 disciplinary hearing, SIS Technician Aguilar threatened and coerced Plaintiff.**

90. Aguilar approached Plaintiff and:

- Told Plaintiff that if he did not "fight" the charges (i.e., if he accepted the fabricated charges), he would receive minimal sanctions
- Threatened Plaintiff that if he contested the charges and pursued litigation, he would receive maximum sanctions including extended SHU confinement and loss of good conduct time
- **Threatened to contact the Assistant U.S. Attorney to pursue federal criminal prosecution** if Plaintiff challenged the NIK test results
- Stated the "deal" required Plaintiff to admit guilt and not contest the fabricated evidence

15

91. These threats by Aguilar demonstrate consciousness of guilt: if the NIK test results were legitimate, there would be no need to threaten Plaintiff into accepting them.

92. These threats also prove pre-hearing coordination between SIS (Aguilar) and DHO (Chetwood): Aguilar could only offer a "deal" for specific sanctions if he had already communicated with DHO Chetwood about what sanctions would be imposed— classic ex parte communication in violation of *Wolf v. McDonnell*. See Exhibit A (proving systematic practice of SIS-DHO coordination).

**February 13, 2018: Sham Disciplinary Hearing Following Ex Parte Communications**

93. On February 13, 2018, Discipline Hearing Officer William J. Chetwood conducted Plaintiff's disciplinary hearing at FCI Lompoc. **See Exhibit D.**

94. DHO Chetwood falsely claimed in his declaration to be an "impartial hearing officer who does not investigate or have any prior knowledge concerning an alleged rule violation before it is referred to me for consideration." See Exhibit D.

95. This statement is provably false. DHO Chetwood received ex parte communications from SIS staff before the hearing, as evidenced by:

- R. John Lynn's directive to SIS staff to "communicate with your DHO" See Exhibit A
- R. John Lynn's "one team" declaration See Exhibit A
- R. John Lynn's instruction that DHOs "provide you guidance and advise on what they review on their side of the house legal side" See Exhibit A
- Aguilar's pre-hearing "deal" offer to Plaintiff, which required coordination with DHO about specific sanctions
- The 2-month delay between incident and hearing, providing ample time for coordination See Exhibit D

96. At the hearing, Plaintiff:

- Contested the charges and denied possessing, introducing, or arranging for contraband
- Objected to the NIK test results, arguing they were unreliable and violated manufacturer warnings
- Requested laboratory confirmation of the alleged drug presence
- Challenged the testing of paper in violation of manufacturer warnings
- Presented evidence of NIK test unreliability

**See Exhibit D.**

16

97. DHO Chetwood rejected all of Plaintiff's objections and refused to require laboratory confirmation, stating the NIK test results alone were sufficient evidence. **See Exhibit D.**

98. **DHO Chetwood's refusal to require laboratory confirmation proves he was following the "one team" agenda established by R. John Lynn: "ensure we are holding the inmates accountable" and don't let them "beat us based on technicalities." See Exhibit A.**

99. DHO Chetwood found Plaintiff guilty based solely on the fraudulent NIK test results and ex parte communications with SIS. **See Exhibit D.**

100. DHO Chetwood imposed sanctions:

- Loss of 41 days of vested good conduct time
- Loss of 180 days of commissary privileges
- 60 days of disciplinary segregation (suspended)
- 1 year loss of visitation privileges (suspended)

**See Exhibit D.**

101. **The suspension of the most severe sanctions (60 days DS, 1 year visitation loss) suggests DHO Chetwood had consciousness of guilt and knew the conviction was based on fraudulent evidence and an unfair tribunal—yet he convicted anyway following the "one team" directive. See Exhibits A and D.**

102. The imposition of these sanctions based on a fraudulent test result, following ex parte communications, and without laboratory confirmation, violated Plaintiff's constitutional rights to due process and a fair tribunal under *Wolf v. McDonnell*, 418 U.S. 539 (1975).

## February 2018 - June 2018: SHU Confinement at FCI Lompoc (Approximately 6 Months)

103. From approximately late December 2017 through late June 2018 (approximately 6 months total), Plaintiff was confined in the Special Housing Unit (SHU) at FCI Lompoc based on the fraudulent disciplinary conviction:
- Pre-hearing detention: approximately 6 weeks (late December 2017 - early February 2018)
- Post-hearing segregation: approximately 5.5 months (February 2018 - late June 2018)

104. SHU conditions included:
- 23-hour daily lockdown in a small cell
- Isolation from general population
- Severely limited human contact
- Restricted access to phone, visitation, recreation, programs, and services

17

- Severe psychological trauma including depression, anxiety, insomnia, feelings of hopelessness, and lasting PTSD symptoms

105. Plaintiff was falsely imprisoned in solitary confinement for six months based on:
   - Fabricated evidence (scientifically provable false positive NIK test result) **See Exhibits A and B**
   - Fraudulent directives from BOP leadership **See Exhibit A**
   - A rigged tribunal tainted by systematic ex parte communications **See Exhibits A and D**
   - Denial of fair hearing in violation of *Wolf v. McDonnell*

106. This prolonged solitary confinement, which is scientifically documented to cause severe psychological harm, was inflicted based on fraudulent evidence and unconstitutional procedures, constituting cruel and unusual punishment in violation of the Eighth Amendment.

### Post-June 2018: Punitive Transfer from FCI Lompoc to FCI Sheridan

107. Following the 6-month SHU sentence, Plaintiff was transferred from FCI Lompoc Low to FCI Sheridan, a higher-security federal prison. This transfer was punitive and directly resulting from the fraudulent disciplinary conviction. This transfer:
   - Separated Plaintiff from legal resources and support networks
   - Increased security level classification and restrictions
   - Extended his total imprisonment beyond what would have occurred absent the false conviction

---

### PHASE 2: RETALIATION FOR FEDERAL LITIGATION AT FCI SHERIDAN (After Habeas Filing)

### VII. Administrative Appeals and Habeas Corpus Filing

108. Plaintiff exhausted BOP's administrative remedy process, filing appeals at the institution (BP-9), regional (BP-10), and Central Office (BP-11) levels.

109. All appeals were denied, with BOP claiming the NIK test results provided "some evidence" of guilt.

110. BOP's appeal denials failed to address:

   - Manufacturer warnings against testing paper
   - Manufacturer requirement for laboratory confirmation
   - **Scientific evidence that burgundy is NOT a positive result See Exhibit B**
   - **Plaintiff's video evidence proving burgundy is baseline color See Exhibit B**

18

- Wade Jennings' fraudulent directive contradicting manufacturer instructions **See Exhibit A**
- BOP's double standard (requiring confirmation for urine tests but not NIK tests)
- Systematic ex parte communications violating *Wolf v. McDonnell* **See Exhibit A**
- R. John Lynn's "one team" directive **See Exhibit A**

111. BOP's coordinated appeals denials were part of the conspiracy to conceal the fraud, as evidenced by R. John Lynn's email directing staff to follow procedures "because OGC will not support you IR without these steps being followed." **See Exhibit A.**

112. **This statement proves OGC was pre-coordinating which cases to support before hearings even occurred, making OGC part of the "one team" working to ensure convictions rather than fair adjudications. See Exhibit A.**

113. Plaintiff filed a petition for writ of habeas corpus under 28 U.S.C. § 2241 in the U.S. District Court for the District of Oregon (Case No. 3:19-cv-00093-JR) challenging his disciplinary conviction.

114. The habeas petition was subject to the highly deferential "some evidence" standard of review under *Superintendent v. Hill*, 472 U.S. 445 (1985), which requires only that "there is some evidence in the record" to support the disciplinary finding—a far lower standard than preponderance of the evidence.

115. On May 18, 2020, the District Court denied the habeas petition, finding the NIK test results provided "some evidence" under the deferential standard, while acknowledging NIK tests are unreliable and manufacturer warns against testing paper.

116. Plaintiff voluntarily dismissed his Ninth Circuit appeal when granted early release due to COVID-19.

**VIII. Retaliatory Threat by Lt. Johnson at FCI Sheridan  CRITICAL TIMING AND DISTINCTION:**

117. **While housed at FCI Sheridan (after his transfer from FCI Lompoc), Plaintiff filed his § 2241 habeas petition challenging his fraudulent disciplinary conviction.**

118. **During his habeas petition research, Plaintiff obtained copies of the internal Lynn Emails and other documents proving the BOP-wide "one team" conspiracy to ensure convictions and deny fair tribunals. See Exhibit A.**

119. **After Plaintiff filed his federal habeas petition AND after Plaintiff obtained and began to act on the Lynn Emails proving**

19

the conspiracy, SIS Lieutenant Johnson, then stationed at FCI Sheridan, confronted Plaintiff.

120. Lt. Johnson threatened Plaintiff, stating that if Plaintiff did not abandon his federal litigation challenging the NIK tests, Plaintiff would face indefinite SHU confinement.

121. This threat was not about the underlying disciplinary conviction—it was explicit retaliation for Plaintiff's exercise of his fundamental First Amendment right to access the federal courts and challenge the BOP's fraudulent practices.

122. Lt. Johnson's threat was coordinated with Defendant R. John Lynn, evidencing that the BOP's response to judicial oversight was to threaten and coerce inmates into abandoning federal litigation.

123. This constitutes a separate, independent cause of action: Retaliation for Court Access / Abuse of Process / Violation of First Amendment Rights.

## IX. Plaintiff's Continued Harm After Release

124. Although Plaintiff has been released from federal custody and is no longer under supervision, he continues to suffer significant and permanent harm from the fraudulent conviction and unconstitutional proceeding:

a. **Reputational Damage:** Permanent disciplinary record falsely stating Plaintiff is a drug offender; disclosed to potential employers, housing providers, and licensing boards; barriers to employment, housing, professional licensing

b. **Psychological Injury:** Lasting PTSD symptoms from 6 months solitary confinement based on rigged hearing; ongoing anxiety, depression, and emotional distress; nightmares, hypervigilance, and trust issues developed during fraudulent imprisonment; permanent psychological damage from knowing he was convicted by a rigged tribunal

c. **Lost Earning Capacity:** Delayed reentry to workforce due to false disciplinary record; reduced earning potential due to employment barriers; lost wages and career opportunities during extended incarceration

d. **Diminished Life Prospects:** Barriers to housing, education, and family stability; ongoing stigma and collateral consequences; permanent damage to personal relationships and reputation; loss of faith in the justice system

20

### X. Safariland's Knowledge and Participation in the Fraud

125. Safariland knew or should have known:

- NIK tests have false positive rates of 38-85% documented in multiple jurisdictions
- BOP was using NIK tests in violation of manufacturer warnings (testing paper, no confirmatory testing) **See Exhibits A and C**
- BOP Central Office (Wade Jennings) was directing staff to misrepresent burgundy as a positive result contrary to Safariland's instructions **See Exhibits A and B**
- **Burgundy is the baseline color that appears automatically when NIK Test U is activated, as proven by Plaintiff's video evidence See Exhibit B**
- **The NIK Test U pouch contains a blue reference square proving only blue is positive See Exhibit B**
- Thousands of inmates were being disciplined based on false positive NIK tests **See Exhibits A and C**

126. Despite this knowledge, Safariland continued to supply NIK test kits to BOP under multi-million dollar federal contracts.

127. Safariland profited from BOP's misuse of its products by:

- Selling hundreds of thousands of test kits annually to BOP
- Providing training that failed to adequately warn of false positive risks
- Failing to report BOP's misuse to regulatory authorities
- Failing to notify BOP that burgundy is not a positive result for Test U **See Exhibits A and B**
- **Failing to clarify that the blue reference square on the pouch shows what a true positive looks like See Exhibit B**

128. Safariland participated in the fraud by:

- Failing to correct Wade Jennings' January 18, 2017 SIS Advisory stating burgundy is a positive result **See Exhibit A**
- Providing inadequate warnings about false positive rates (38-85%)
- Marketing NIK tests to prisons despite knowing they would be misused **See Exhibits A and C**
- Designing packaging and instructions that are easily misinterpreted **See Exhibit B**
- **Failing to make clear that burgundy appears automatically without drugs present See Exhibit B**
- **Failing to emphasize the importance of the blue reference square for color comparison See Exhibit B**

129. Safariland's sophisticated user defense fails because:

- Safariland actively concealed material information (high false positive rates, inability to detect K2/Spice) **See Exhibits A and C**
- **Safariland knew or should have known burgundy is the baseline color See Exhibit B**
- Safariland knew BOP was not conducting confirmatory testing **See Exhibit A**
- BOP staff are not "sophisticated users" with chemistry expertise—they are correctional officers with minimal training **See Exhibit A**
- The sophisticated user defense does not apply to fraud

### XI. Systematic Pattern Affecting Thousands of Inmates

130. The fraud and denial of fair tribunals perpetrated by Defendants is not limited to Plaintiff's case.

131. Based on information and belief, thousands of federal inmates have been and continue to be falsely convicted of drug-related disciplinary charges based on:

- NIK tests conducted on paper in violation of manufacturer warnings **See Exhibits A and C**
- Burgundy or other non-blue colors misrepresented as positive results **See Exhibits A, B, and C**
- Fraudulent K2/Spice testing protocols invented by BOP **See Exhibits A and C**
- Failure to conduct laboratory confirmation **See Exhibit A**
- Wade Jennings' nationwide directive to all BOP facilities **See Exhibit A**
- **Systematic ex parte communications between SIS and DHOs pursuant to R. John Lynn's "one team" policy See Exhibit A**
- **Rigged hearings where investigators and adjudicators coordinate to ensure convictions See Exhibit A**

132. This pattern and practice demonstrates:

- Systematic fraud, not isolated incidents **See Exhibit A**
- Intentional policy created at the highest levels of BOP **See Exhibit A**
- Conspiracy among BOP officials and Safariland **See Exhibits A, B, and C**
- **Systematic denial of fair tribunals in violation of** *Wolf v. McDonnell* **See Exhibit A**
- **BOP-wide policy of ex parte communications as standard operating procedure See Exhibit A**
- **Systematic retaliation against inmates who exercise federal court access (Phase 2)**

22

- Ongoing harm to current inmates requiring injunctive relief to prevent future fraud and ensure fair hearings

---

## COUNTS FOR RELIEF

### COUNT I: FALSE IMPRISONMENT (FTCA)

### Against United States (Colette S. Peters, Director, BOP)

133. Plaintiff re-alleges and incorporates by reference all preceding paragraphs.

134. Under California law, false imprisonment requires: (1) intentional confinement; (2) without consent; (3) without legal authority.

135. Plaintiff was intentionally confined in the Special Housing Unit for approximately 6 months based on the disciplinary conviction.

136. Plaintiff did not consent to the confinement.

137. The confinement was without legal authority because it was based on:

- **Fabricated evidence—a scientifically provable false positive NIK test result. Plaintiff's video evidence proves burgundy is the baseline color that appears automatically without drugs, not a positive result. See Exhibits A and B**
- **BOP staff knowingly misrepresented the negative (burgundy) result as positive following fraudulent directives from BOP leadership See Exhibit A**
- **A fundamentally unfair tribunal tainted by systematic ex parte communications between the investigator and adjudicator in violation of *Wolf v. McDonnell* See Exhibit A**
- **A rigged hearing where SIS and DHO acted as "one team" to ensure conviction rather than fair adjudication See Exhibit A**

138. **A conviction obtained through violation of constitutional procedural protections (here, *Wolf v. McDonnell*'s requirement of a fair and impartial tribunal) provides no legal authority for confinement, rendering the confinement false imprisonment under California law.**

139. SIS Technician Aguilar qualifies as a "law enforcement officer" under 28 U.S.C. § 2680(h) because SIS personnel are investigative officers empowered to conduct searches, seize evidence, and investigate violations of federal law.

140. The law enforcement proviso to the FTCA waives sovereign immunity for false imprisonment arising out of law enforcement activities by investigative officers. *Millbrook v. United States*, 569 U.S. 50 (2013).

23

141. Conducting NIK drug tests on suspected contraband is a law enforcement activity within the scope of the law enforcement proviso.

142. Plaintiff suffered damages including loss of liberty, emotional distress, reputational harm, and diminished earning capacity, all of which are continuing harms following his release from federal custody.

**WHEREFORE,** Plaintiff requests judgment against the United States for compensatory damages.

---

## COUNT II: DUE PROCESS VIOLATION—DENIAL OF FAIR TRIBUNAL

**Against M. Wade Jennings, Kevin Schwinn, R. John Lynn, SIS Technician Aguilar, DHO Chetwood (Individual Capacity)**

143. Plaintiff re-alleges and incorporates by reference all preceding paragraphs.

144. **The Supreme Court in *Wolf v. McDonnell*, 418 U.S. 539 (1975), held that inmates facing disciplinary proceedings that result in loss of liberty (such as solitary confinement) are entitled to certain due process protections, including a hearing before an impartial tribunal.**

145. **An impartial tribunal requires that the adjudicator be free from bias, prejudgment, and ex parte communications with the prosecutor/investigator. The adjudicator must base their decision solely on evidence presented at the hearing, not on secret communications with the accuser.**

146. **Defendants systematically denied Plaintiff and thousands of other inmates the right to an impartial tribunal by:**

   - **Establishing official BOP policy directing SIS investigators to engage in ex parte communications with DHO adjudicators See Exhibit A**
   - **Declaring that SIS, DHOs, and OGC are "all on one team" See Exhibit A**
   - **Instructing SIS staff to "communicate with your DHO" to receive "guidance" on how to ensure convictions See Exhibit A**
   - **Pre-coordinating with OGC on which cases to support before hearings occur See Exhibit A**
   - **Treating disciplinary proceedings as coordinated prosecutions rather than fair adjudications See Exhibit A**

147. **R. John Lynn's January 23, 2018 email explicitly establishes this unconstitutional policy, stating: "Like always, please be sure to**

24

communicate with your DHO. They will provide you guidance and advise on what they review on their side of the house legal side to ensure all supporting documentation and evidence is present. Remember we are all on one team and at the end of the day, all of us want to make sure we are holding the inmates accountable for their actions." See Exhibit A.

148. This "one team" policy violates *Wolf v. McDonnell* because it:

- Eliminates adjudicator impartiality See Exhibit A
- Allows ex parte communications between investigator and adjudicator See Exhibit A
- Treats hearings as coordinated efforts to convict rather than fair evaluations of evidence See Exhibit A
- Denies inmates notice of evidence considered against them (ex parte communications) See Exhibit A
- Denies inmates opportunity to contest evidence (ex parte communications occur outside their presence) See Exhibit A

149. Plaintiff's hearing before DHO Chetwood was tainted by these ex parte communications. DHO Chetwood falsely claimed to be "impartial" despite receiving guidance and coordination from SIS staff pursuant to the "one team" policy. See Exhibits A and D.

150. Plaintiff was convicted and imprisoned based on this fundamentally unfair tribunal, violating his clearly established constitutional rights under *Wolf v. McDonnell*. See Exhibits A and D.

151. Defendants Jennings, Schwinn, Lynn, Aguilar, and Chetwood are not entitled to qualified immunity because:

- *Wolf v. McDonnell* clearly established in 1975 that inmates are entitled to impartial tribunals
- No reasonable officer could believe that instructing investigators and adjudicators to act as "one team" with ex parte communications satisfies constitutional requirements See Exhibit A
- Defendants' own emails prove they knew they were denying fair hearings ("one team," "communicate with your DHO") See Exhibit A

152. Plaintiff seeks monetary damages for violations of his constitutional rights.

**WHEREFORE,** Plaintiff requests judgment against Defendants Jennings, Schwinn, Lynn, Aguilar, and Chetwood in their individual capacities for compensatory and punitive damages.

---

25

## COUNT III: STRICT PRODUCT LIABILITY—FAILURE TO WARN

**Against Safariland, LLC**

153. Plaintiff re-alleges and incorporates by reference all preceding paragraphs.

154. Under California law, a manufacturer has a duty to warn of risks associated with its products.

155. Safariland's warnings are inadequate because they fail to adequately convey:

- The high false positive rate (38-85%)
- **That burgundy is the baseline color that appears automatically when the test is activated, not a positive result See Exhibit B**
- **That the blue reference square on the pouch is the standard for comparison See Exhibit B**
- The scientific impossibility of detecting K2/Spice using colorimetric tests
- The categorical prohibition against testing paper substrates
- The mandatory nature of confirmatory laboratory testing

156. Safariland knew its warnings were inadequate based on:

- Lawsuits and legal challenges documenting false positives
- Media reports and government investigations
- State and local government bans on NIK/NARK tests
- Scientific literature on colorimetric test unreliability
- **Knowledge of BOP's systematic misinterpretation of burgundy as positive See Exhibits A and B**
- **The fact that burgundy appears automatically when pouches are activated See Exhibit B**

157. Safariland's inadequate warnings were a substantial factor in causing Plaintiff's injuries because:

- If BOP staff had been adequately warned of the 38-85% false positive rate, they would not have relied on NIK tests without confirmation
- **If Safariland had clearly stated "burgundy is the baseline color that appears automatically without drugs, not a positive result" with photographic examples, Aguilar could not have misrepresented the result See Exhibits A and B**
- **If Safariland had emphasized that users must compare test results against the blue reference square on the pouch, staff would have recognized burgundy  blue = negative See Exhibit B**
- If Safariland had prominently warned NIK tests cannot detect K2/Spice, BOP could not have invented the fraudulent testing

protocol **See Exhibits A and C**

158. Safariland cannot invoke the sophisticated user defense because:

- Safariland actively concealed material information (high false positive rates, burgundy baseline color) **See Exhibits A and B**
- BOP correctional staff are not sophisticated users with chemistry expertise
- The defense does not apply to fraud

**WHEREFORE,** Plaintiff requests judgment against Safariland for compensatory and punitive damages.

---

## COUNT IV: FRAUD—FRAUDULENT MISREPRESENTATION

**Against Safariland, LLC**

159. Plaintiff re-alleges and incorporates by reference all preceding paragraphs.

160. Safariland made false representations that:

- NIK tests can reliably detect drugs in prison settings
- NIK tests can detect K2/Spice (synthetic cannabinoids)
- NIK tests are suitable for use without laboratory confirmation in disciplinary proceedings

161. Safariland knew these representations were false based on:

- Internal testing data showing high false positive rates
- **Knowledge that burgundy appears automatically when pouches are activated, proving it cannot be a positive result See Exhibit B**
- Scientific literature proving synthetic cannabinoids cannot be detected using colorimetric tests
- Knowledge that NIK tests are classified as Category C (lowest reliability) by SWGDRUG
- **Knowledge of BOP's fraudulent directive misinterpreting burgundy as positive See Exhibit A**

162. Safariland intended BOP to rely on these misrepresentations to continue purchasing NIK tests under lucrative federal contracts.

163. BOP and Plaintiff relied on these misrepresentations to their detriment. **See Exhibits A and C** (documenting BOP's reliance on fraudulent testing protocol).

164. Plaintiff was harmed by the misrepresentations through false imprisonment, loss of liberty, emotional distress, reputational damage, and diminished earning capacity.

27

**WHEREFORE,** Plaintiff requests judgment against Safariland for compensatory and punitive damages.

---

### COUNT V: FRAUD—FRAUDULENT CONCEALMENT

### Against Safariland, LLC

165. Plaintiff re-alleges and incorporates by reference all preceding paragraphs.

166. Safariland concealed material facts, including:

- False positive rates of 38-85%
- **That burgundy is the baseline color that appears automatically without drugs present See Exhibit B**
- **That the blue reference square on the pouch is the standard for comparison See Exhibit B**
- Inability of colorimetric tests to detect synthetic cannabinoids
- BOP's misuse of NIK tests in violation of manufacturer warnings **See Exhibits A and C**
- **Wade Jennings' directive to misrepresent burgundy as a positive result See Exhibit A**

167. Safariland had a duty to disclose these facts because:

- Safariland marketed NIK tests for use in criminal justice settings
- Safariland knew inmates' liberty interests were at stake
- Safariland had superior knowledge of product limitations **See Exhibit B**
- **Safariland knew burgundy appears automatically when tests are activated See Exhibit B**
- **Safariland knew BOP was systematically misinterpreting its product See Exhibit A**

168. Safariland intended to deceive by concealing these facts to maintain profitable BOP contracts.

169. Plaintiff was harmed by Safariland's concealment.

**WHEREFORE,** Plaintiff requests judgment against Safariland for compensatory and punitive damages.

---

### COUNT VI: CIVIL CONSPIRACY

### Against All Defendants

170. Plaintiff re-alleges and incorporates by reference all preceding paragraphs.

28

171. Defendants formed a conspiracy to misrepresent NIK test results, deny fair tribunals, and falsely convict inmates, evidenced by:

- Wade Jennings' January 18, 2017 directive to all BOP facilities **See Exhibit A**
- R. John Lynn's distribution of the directive to Western Region **See Exhibit A**
- **R. John Lynn's "one team" directive establishing systematic ex parte communications See Exhibit A**
- **Coordination between SIS, DHOs, and OGC to prevent successful appeals through pre-hearing collaboration See Exhibit A**
- Safariland's continued supply of products despite knowledge of misuse **See Exhibits A, B, and C**
- **Lt. Johnson's retaliatory coordination with Lynn to suppress federal litigation** (Phase 2)

172. Defendants committed wrongful acts in furtherance of the conspiracy, including:

- Creating and distributing fraudulent testing protocols **See Exhibit A**
- Testing paper in violation of warnings **See Exhibit C**
- **Misrepresenting burgundy baseline color as positive result See Exhibits A and B**
- **Engaging in systematic ex parte communications See Exhibit A**
- **Denying fair tribunals through "one team" coordination See Exhibit A**
- Coordinating appeals denials **See Exhibits A and D**
- **Threatening retaliation against inmates for federal litigation** (Phase 2)
- Concealing evidence of fraud

173. Plaintiff was damaged by the conspiracy through false imprisonment, loss of liberty, emotional distress, reputational damage, and diminished earning capacity.

**WHEREFORE,** Plaintiff requests judgment against all Defendants for compensatory and punitive damages.

---

29

## COUNT VII: RETALIATION FOR EXERCISE OF FIRST AMENDMENT RIGHT TO ACCESS COURTS / ABUSE OF PROCESS

**Against R. John Lynn and SIS Lieutenant Johnson (Individual Capacity)**

174. Plaintiff re-alleges and incorporates by reference all preceding paragraphs.

175. The First Amendment protects the fundamental right of citizens to petition the federal courts for redress of grievances and to access the courts for legal proceedings. *Ex parte Young*, 209 U.S. 123 (1908); *Bounds v. Smith*, 430 U.S. 817 (1977).

176. Retaliation against an inmate for filing a legal action or petition to a court is a violation of the First Amendment and constitutes abuse of process. *Jones v. North Carolina Prisoners' Union*, 433 U.S. 119 (1977); *Shakur v. Artson*, 952 F.3d 1095 (9th Cir. 2020).

177. **After Plaintiff filed his § 2241 habeas petition from FCI Sheridan challenging his fraudulent disciplinary conviction, Defendant SIS Lieutenant Johnson threatened Plaintiff with indefinite SHU confinement if he did not abandon his federal litigation.**

178. **This threat was made after Plaintiff had obtained the Lynn Emails (Exhibit A) and had begun seeking federal judicial review of the BOP's "one team" conspiracy to deny fair tribunals.**

179. **Lt. Johnson's threat was clearly motivated by Plaintiff's exercise of his First Amendment right to access the federal courts.**

180. **Lt. Johnson's threat constitutes retaliation and abuse of process because it:**

   - **Explicitly conditioned continued favorable treatment on abandonment of federal litigation**
   - **Used BOP's disciplinary authority (threat of indefinite SHU) as a weapon to suppress court access**
   - **Coordinated with Defendant Lynn, proving systematic retaliation policy**
   - **Violated Plaintiff's clearly established First Amendment rights under settled law**

181. **Defendants Lynn and Johnson are not entitled to qualified immunity because the right to access federal courts and the prohibition on retaliation for such access have been clearly established law for decades.**

182. Plaintiff suffered damages including:

   - Psychological trauma from retaliatory threats

30

- Chilling effect on exercise of constitutional rights
- Continuing fear of institutional retaliation
- Continued harm to federal litigation efforts

**WHEREFORE,** Plaintiff requests judgment against Defendants Lynn and Johnson for compensatory and punitive damages.

---

## COUNT VIII: DECLARATORY RELIEF

### 28 U.S.C. § 2201

183. Plaintiff re-alleges and incorporates by reference all preceding paragraphs.

184. An actual controversy exists between Plaintiff and Defendants regarding:

- Whether NIK test results without laboratory confirmation are sufficient for disciplinary convictions
- Whether BOP's double standard (requiring confirmation for urine tests but not NIK tests) violates equal protection
- Whether Wade Jennings' directive contradicts manufacturer warnings **See Exhibits A and B**
- **Whether burgundy is the baseline color (negative) or a positive result See Exhibit B**
- Whether Plaintiff's disciplinary conviction was based on fabricated evidence **See Exhibits A, B, and D**
- **Whether BOP's systematic practice of ex parte communications between SIS and DHOs violates** *Wolf v. McDonnell* **See Exhibit A**
- **Whether the "one team" policy denies inmates fair and impartial tribunals See Exhibit A**
- **Whether retaliation against inmates for federal litigation violates the First Amendment**
- **Whether disciplinary hearings following ex parte coordination provide legal authority for confinement**

185. Declaratory relief is necessary to establish Plaintiff's rights and guide future conduct, particularly to protect current federal inmates from the same fraudulent practices and unfair tribunals.

**WHEREFORE,** Plaintiff requests the Court declare:

1. **NIK test results showing burgundy are scientifically negative, not positive, as proven by Plaintiff's video evidence showing burgundy is the baseline color See Exhibit B**

2. BOP's practice of disciplining inmates based on NIK tests without laboratory confirmation violates due process and equal protection

3. BOP's double standard violates equal protection

31

4. Plaintiff's disciplinary conviction was based on fabricated evidence and is unlawful **See Exhibits A, B, and D**

5. Wade Jennings' January 18, 2017 directive contradicts manufacturer warnings and scientific reality **See Exhibits A and B**

6. **R. John Lynn's "one team" policy directing ex parte communications between SIS and DHOs violates** *Wolf v. McDonnell* **and denies inmates fair and impartial tribunals See Exhibit A**

7. **BOP disciplinary hearings tainted by ex parte communications do not satisfy constitutional requirements and provide no legal authority for confinement**

8. **Systematic ex parte communications between investigators and adjudicators constitute a denial of due process under** *Wolf v. McDonnell*

9. **Retaliation against inmates for filing federal litigation violates the First Amendment**

10. BOP must require laboratory confirmation of all NIK test results before imposing discipline

11. **BOP must prohibit all ex parte communications between SIS investigators and DHO adjudicators**

12. **BOP must ensure DHO adjudicators are truly impartial and not part of "one team" with investigators**

13. **BOP must prohibit all retaliation against inmates for exercising their right to access federal courts**

---

## COUNT IX: INJUNCTIVE RELIEF

186. Plaintiff re-alleges and incorporates by reference all preceding paragraphs.

187. Plaintiff lacks an adequate remedy at law because:

- Monetary damages cannot prevent ongoing harm to thousands of current inmates
- Declaratory relief alone is insufficient without enforcement mechanism
- Federal inmates currently facing NIK-based discipline are at imminent risk of false imprisonment
- **Federal inmates currently facing disciplinary hearings are at imminent risk of denial of fair tribunals through ex parte communications See Exhibit A**
- **Federal inmates are at imminent risk of retaliation if they file federal litigation**

32

188. Injunctive relief is necessary to:

- Preserve evidence for this litigation and prevent destruction of documents **See Exhibits A-D**
- Prevent ongoing fraud and false imprisonment of current inmates
- Require confirmatory testing before NIK-based discipline
- **Prohibit ex parte communications between SIS investigators and DHO adjudicators See Exhibit A**
- **Ensure BOP provides fair and impartial tribunals as required by** *Wolf v. McDonnell*
- **Prevent retaliation against inmates for federal litigation**
- Ensure BOP applies the same testing standards to all inmates

189. The balance of equities favors Plaintiff because:

- Current inmates and Plaintiff are being falsely imprisoned based on fraud **See Exhibits A, B, and C**
- **Current inmates are being denied constitutional rights to fair tribunals through systematic ex parte communications See Exhibit A**
- **Current inmates are threatened with retaliation if they exercise federal court access**
- Defendants have no legitimate interest in perpetuating fraud or denying constitutional rights
- Evidence preservation, confirmatory testing, and prohibition on ex parte communications impose minimal burden on Defendants
- The public has a strong interest in accurate discipline proceedings and constitutional compliance

190. Injunctive relief is in the public interest because:

- The public has an interest in accurate, reliable evidence in disciplinary proceedings
- The public has an interest in preventing fraud by government officials **See Exhibit A**
- **The public has a strong interest in ensuring inmates receive fair tribunals free from ex parte communications**
- **The public has an interest in protecting First Amendment rights to access courts**
- The public has an interest in ensuring manufacturers provide adequate warnings
- Due process and fair tribunals are fundamental constitutional rights
- *Wolf v. McDonnell* **is settled law that must be enforced**

**WHEREFORE,** Plaintiff requests the Court order:

1. **Immediate preservation of all evidence** related to NIK testing and SIS-DHO communications for duration of litigation, including:

- All documents referenced in **Exhibits A-D**

33

- All emails, memoranda, and communications between SIS staff and DHOs
- **Plaintiff's YouTube video demonstrating burgundy is baseline color See Exhibit B**

2. **Cease and desist:** Prohibition on using NIK tests without laboratory confirmation in disciplinary proceedings

3. **Mandatory protocol:** Require laboratory confirmation of all positive NIK tests before any disciplinary action

4. **Equal protection compliance:** Apply same confirmatory testing standard to NIK tests as currently applies to urine tests (28 C.F.R. § 550.42(c))

5. **Prohibition on ex parte communications:** Order BOP to immediately cease all ex parte communications between SIS investigators and DHO adjudicators, consistent with *Wolf v. McDonnell* requirements

6. **Elimination of "one team" policy:** Order BOP to rescind R. John Lynn's "one team" directive and establish clear separation between investigative and adjudicative functions **See Exhibit A**

7. **Fair tribunal procedures:** Order BOP to establish procedures ensuring DHO impartiality, including:

   - Prohibition on pre-hearing communications between SIS and DHOs
   - Prohibition on DHO "guidance" to SIS on evidence gathering
   - Prohibition on OGC coordination with DHOs before hearings
   - Requirements that DHOs base decisions solely on evidence presented at hearing

8. **Prohibition of retaliation:** Order BOP to cease all retaliation against inmates for exercising their right to access federal courts

9. **Statistical reporting:** BOP to compile and produce data on:

   - NIK test usage and false positive rates
   - Confirmatory testing results
   - Communications between SIS and DHOs
   - Implementation of separation between investigative and adjudicative functions

10. **Notice to affected inmates:** BOP to notify all inmates disciplined based on:

    - NIK tests without confirmatory testing **See Exhibit A**
    - **Burgundy results misrepresented as positive See Exhibits A and B**
    - Hearings tainted by ex parte communications **See Exhibit A**
    - The "one team" policy **See Exhibit A**

34

of their right to challenge convictions based on fraudulent testing protocol, denial of fair tribunals, and to file federal litigation without retaliation

11. **Prospective relief:** Establish federal injunction requiring BOP to:

   - Cease using NIK tests without confirmatory testing
   - **Recognize that burgundy is the baseline color, not a positive result See Exhibit B**
   - Provide fair and impartial tribunals free from ex parte communications
   - Maintain separation between investigative and adjudicative functions
   - Protect inmates' right to access federal courts
   - Comply with *Wolf v. McDonnell* requirements

---

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully requests that this Court:

1. Assume jurisdiction over this action;

2. Issue a Temporary Restraining Order and Preliminary Injunction requiring:

   - Preservation of evidence, including all materials referenced in **Exhibits A-D** and **Plaintiff's YouTube video (Exhibit B)**
   - Prohibition on destruction of documents related to NIK testing and SIS-DHO communications
   - **Immediate cessation of ex parte communications between SIS and DHOs**
   - **Immediate cessation of retaliation against Plaintiff and other inmates for federal litigation**
   - **Immediate implementation of procedures ensuring fair and impartial tribunals**

3. Enter judgment in favor of Plaintiff and against Defendants on all counts;

4. Award compensatory damages in an amount to be proven at trial, including:

   - **Damages for false imprisonment:** For 6 months solitary confinement based on fabricated evidence (burgundy misrepresented as positive when Plaintiff's video proves it's baseline color) and rigged tribunal **See Exhibits A, B, and D**
   - **Damages for denial of fair tribunal:** For conviction following systematic ex parte communications in violation of *Wolf v. McDonnell* **See Exhibit A**
   - **Damages for emotional distress and psychological injury:** Including PTSD, anxiety, depression, and lasting psychological trauma

from prolonged solitary confinement and knowledge of rigged hearing
- **Damages for lost earning capacity:** Lost wages during extended incarceration and barriers to employment post-release due to false disciplinary record
- **Damages for reputational harm:** Permanent disciplinary record falsely branding Plaintiff as drug offender, affecting employment, housing, and social opportunities
- **Damages for diminished life prospects:** Barriers to housing, education, professional licensing, and family stability
- **Damages for retaliation:** For threats and coercion attempting to suppress federal litigation

5. Award punitive damages against Safariland, LLC and individual defendants in their individual capacities in an amount sufficient to punish and deter future misconduct;

6. Issue declaratory relief as requested in Count VIII, including declarations regarding *Wolf v. McDonnell* violations and that **burgundy is the baseline color, not a positive result (Exhibit B)**;

7. Issue permanent injunctive relief as requested in Count IX, including orders prohibiting ex parte communications, retaliation, and ensuring fair tribunals;

8. Award costs and attorney's fees (if Plaintiff retains counsel or as otherwise permitted by law);

9. Grant trial by jury on all issues so triable; and

10. Grant such other and further relief as the Court deems just and proper.

---

## DEMAND FOR JURY TRIAL

Plaintiff demands trial by jury on all issues so triable pursuant to Federal Rule of Civil Procedure 38.

---

DATED: November 16, 2025

Respectfully submitted,

**BILLY STEFFEY**
Plaintiff, Pro Se
Sacramento, CA
[Phone]
[Email]

36

## VERIFICATION

I, Billy Steffey, declare under penalty of perjury under the laws of the United States of America that I have read the foregoing Verified Complaint, that the allegations therein are true and correct to the best of my knowledge, information, and belief, and that this declaration is executed on November 16, 2025.

I further verify that:

- I personally created the video evidence referenced as Exhibit B, which demonstrates that burgundy is the baseline color that appears automatically when a NIK Test U pouch is activated without any drugs present.

- The video shows the blue reference square on the pouch proving only blue indicates a positive result.

- The video is currently available on YouTube at https://youtu.be/p8USQ642q7w.

- All exhibits A-D accurately represent the documents obtained by me through discovery and legal proceedings.

- The facts alleged in this Complaint are true and correct based on my personal knowledge, the documentary evidence, and information provided through official BOP records and court filings.

**BILLY STEFFEY**
Plaintiff, Pro Se

37