FILED 30 JAN '26 10:09 USDC-ORP

Billy F. Steffey
Pro se
455 Capitol Mall, Suite 802
Sacramento, CA 95814
Phone: 208-412-7147
Email: bsteffey@mac.com

## UNITED STATES DISTRICT COURT
## DISTRICT OF OREGON

**BILLY F. STEFFEY,**
Petitioner,

**Case No.: 3:19-cv-00093-JR**

v.

**WARDEN J. SALAZAR,**
Respondent.

## PETITIONER'S AMENDED MOTION FOR RELIEF FROM JUDGMENT

## PURSUANT TO FED. R. CIV. P. 60(b)(3), 60(b)(6), AND 60(d)(3)

### MOTION

Petitioner Billy F. Steffey respectfully moves for relief from the Judgment entered May 18, 2020, and for an order reopening this 28 U.S.C. § 2241 proceeding. This Amended Motion supplements and clarifies Petitioner's recently filed Rule 60(b) motion by adding newly obtained, independently sourced evidence establishing (1) a material misrepresentation to this Court in 2020 that a *negative* NIK Test U baseline reaction (burgundy) was a "positive" drug test, (2) a six-year pattern of suppression and delay by the Bureau of Prisons ("BOP") to prevent disclosure of the manufacturer flowcharts and instructions, and (3) Safariland's own judicial admissions confirming that *burgundy is baseline* and *blue is the only presumptive-positive* reaction for NIK Test U.

Relief is warranted under Fed. R. Civ. P. 60(b)(3) (fraud / misrepresentation), 60(b)(6) (extraordinary circumstances), and 60(d)(3) (fraud on the court). Petitioner also requests an order that Respondent be judicially estopped, in this case and in any related proceeding arising from the same disciplinary conviction, from asserting that a burgundy reaction on NIK Test U is a "positive" result. For NIK Test U, the manufacturer recognizes only two legally relevant

outcomes: baseline burgundy (not positive) or dark blue (presumptive positive).

## MEMORANDUM OF LAW

### I. REQUEST FOR ASSIGNMENT TO MAGISTRATE JUDGE JOLIE A. RUSSO

Petitioner requests assignment to Magistrate Judge Jolie A. Russo, who issued the Findings and Recommendation (ECF No. 30) on February 25, 2020. Judge Russo's familiarity with the record will aid efficient resolution of this motion.

### II. INTRODUCTION

In 2020, Respondent obtained dismissal of Petitioner's habeas petition by presenting a facially decisive "some evidence" narrative: that a NIK Test U field test "turned an immediate dark burgundy color" and that burgundy is "a positive indication for the presence of amphetamines." This Court accepted that representation as the linchpin of a prison disciplinary conviction.

The representation was false. Safariland's own counsel has now conceded in federal court that **burgundy is the baseline/base color** for the NIK tests and that **blue is the proper (and only) color indicating a presumptive positive reaction** for Test U. *See* Steffey v. Peters, No. 2:25-cv-11105-VBF-SK (C.D. Cal.), Safariland Memo. ISO MTD (Doc. 23-2) at p. 14 (PageID.309) ("burgundy is the base color of tests"; "blue is the proper color for positive tests"); *id.* at p. 19 (PageID.314) ("burgundy baseline color"; "only BLUE indicates a positive result").

Separately—and critically—Safariland/ID Technologies publicly posts the NIK Polytesting instructions and flowchart on its own website. Those instructions state for NIK Test U: "An immediate dark blue color indicates Methamphetamine or MDMA (Ecstasy). If any other color develops, proceed to Test A and continue Polytesting." (Ex. I.) This public publication destroys the BOP's claimed need to withhold the same flowcharts as "law enforcement sensitive" under FOIA Exemption 7(E), and demonstrates the suppression was not protective—it was concealment.

BOP's concealment is not a minor discovery dispute. For six years, the BOP has obstructed access to the very manufacturer materials needed to test (and rebut) the government's litigation position that baseline burgundy equals a positive narcotics result. That suppression prevented Petitioner from fully and fairly presenting his habeas claims in 2020 and constitutes fraud on this Court.

Finally, on January 16, 2026, Magistrate Judge Steve Kim screened Petitioner's parallel action arising from the same disciplinary conviction and held that Petitioner may be able to allege a *colorable cause of action* under the Federal Tort Claims Act, including for false imprisonment. *See* Steffey v. Peters, No. 2:25-cv-11105-VBF-SK (C.D. Cal.), Civil Minutes (Doc. 37) at p. 2 (PageID.398) (Ex. J). This Court should not permit a judgment to stand where the

government's core evidentiary premise has been exposed as a manufactured falsehood.

## III. PROCEDURAL POSTURE

Petitioner filed this § 2241 action challenging a prison disciplinary conviction for alleged narcotics possession based on a NIK field test. On February 25, 2020, Magistrate Judge Russo issued Findings and Recommendation recommending denial. (ECF No. 30.) Judgment was entered on May 18, 2020. Petitioner now seeks relief from that judgment based on fraud and newly discovered evidence demonstrating that the disciplinary conviction and the habeas dismissal were procured through material misrepresentation and deliberate concealment.

## IV. STATEMENT OF FRAUDULENT MISREPRESENTATION AND CONCEALMENT

### A. The 2020 "Burgundy = Positive" Representation Was the Opposite of the Manufacturer Standard

The Findings and Recommendation describes the BOP's litigation premise: "The SIS technician conducted a NIK test on one of the pages, and the NIK Test 'U' turned an immediate dark burgundy color, which is a positive indication for the presence of amphetamines." (ECF No. 30 at 2.) That statement is materially false.

Safariland's publicly posted NIK Instructions state that Test U is a test for *Methamphetamine and MDMA*, and that "an immediate dark blue color" is the indicator of that presumptive-positive reaction—while "any other color" requires additional polytesting and is not a positive Test U result. (Ex. I.) This Court's 2020 decision therefore rested on a government-created inversion of the manufacturer's standard.

### B. Safariland's Counsel Conceded in Federal Court: Burgundy Is Baseline; Blue Is the Only Positive Color for Test U

Safariland's own counsel has now placed the controlling color interpretation into the judicial record. In its Memorandum in support of dismissal in Steffey v. Peters, Safariland stated that "burgundy is the base color of tests" and "blue is the proper color for positive tests." (Doc. 23-2 at 14, PageID.309.) Safariland further characterized burgundy as the "baseline color" and represented that "only BLUE indicates a positive result." (Doc. 23-2 at 19, PageID.314.) (Ex. E.)

These are not Petitioner's characterizations. They are affirmative representations by the manufacturer's counsel—made to a federal court—about the meaning of the NIK Test U color reaction. They confirm that the BOP's "burgundy = positive" position was never a reasonable interpretation; it was a litigation-grade falsehood.

### C. Six Years of FOIA Obstruction Confirms Deliberate Suppression, Not Mere Error

Petitioner began seeking the NIK flowcharts and reading materials through FOIA years before the 2020 judgment. The BOP responded by invoking FOIA Exemption 7(E) to withhold the polytesting chart/flowchart in full—and then repeated that withholding in subsequent requests.

(Ex. H.)

• **FOIA Request No. 2019-06228**: On September 27, 2019, the BOP acknowledged locating "4 pages of responsive records" but withheld all 4 pages in their entirety under Exemption 7(E). (Ex. H-1.)

• **FOIA Request No. 2020-02370**: The BOP issued a "Complex Track" acknowledgment dated February 18, 2020 stating processing "may take up to nine months." (Ex. H-2.) Yet the BOP's own FOIA tracker reflected the request as "Closed" on February 16, 2020—two days before the acknowledgment letter. (Ex. H-3.)

• **FOIA Request No. 2020-02370** (**Determination**): The BOP later issued a determination letter dated May 6, 2020 admitting that the request for the flowchart was duplicative of the 2019 request and again withholding the flowchart pages in full under Exemption 7(E). (Ex. H-4.)

• **FOIA Request No. 2026-00947**: In December 2025, the BOP again delayed production by issuing a preliminary "first party / no CID" response demanding additional identity verification and threatening closure absent further action. (Ex. H-5.)

This pattern is not bureaucratic drift; it is strategic suppression. The same manufacturer chart the BOP has withheld for years as "law enforcement sensitive" is openly published by Safariland/ID Technologies for anyone with an internet connection. (Ex. I.) When a government litigant simultaneously (1) uses a false interpretation of the withheld material to win a habeas case, and (2) blocks the opposing party's access to the underlying manufacturer standard, it is fraud.

### D. The "One Team" Directive Shows Institutional Intent to Obtain and Preserve Disciplinary Convictions

The newly obtained John Lynn emails and SIS advisory demonstrate that BOP staff were directed to operate as "One Team" with disciplinary hearing officers to ensure convictions and to address appeal vulnerabilities—not to ensure neutral adjudication. (Ex. A.) Combined with the FOIA suppression described above, these records show intent: the BOP did not misread a color; it weaponized a manufacturer baseline and insulated that weaponization from judicial review.

### V. MATERIAL MISREPRESENTATIONS THAT UNDERPINNED THE 2020 JUDGMENT

The following table summarizes the core misrepresentations that infected the 2020 proceedings and demonstrates why Rule 60 relief is warranted:

| 2020 Finding / Premise | Representation to the Court | Newly Discovered Reality |
| --- | --- | --- |

| NIK Test U burgundy result constituted a positive drug test. | "NIK Test 'U' turned an immediate dark burgundy color, which is a positive indication for the presence of amphetamines." (ECF No. 30 at 2.) | Manufacturer instructions: Test U is for Methamphetamine/MDMA; only dark blue is presumptive positive; any other color is not a positive Test U result and requires further polytesting. (Ex. I.) |
|---|---|---|
| The burgundy-to-blue issue was a "false positive" question or an interpretive dispute. | BOP treated baseline burgundy as a positive "amphetamines" result and litigated this as "some evidence." | Safariland's counsel conceded in federal briefing: burgundy is baseline/base color; blue is the proper/only positive color; "only BLUE indicates a positive result." (Ex. E at 14 & 19.) |
| The manufacturer flowcharts were law-enforcement sensitive and properly withheld. | BOP withheld flowcharts and reading materials under FOIA Exemption 7(E) and denied access. | Safariland publishes the NIK instructions and polytesting flowchart publicly on its own website. (Ex. I.) BOP's years-long withholding thus functioned as concealment, not protection. (Ex. H.) |
| Proceeding was neutral and adversarial testing of evidence means reliable result. | BOP presented the case as routine discipline supported by "some evidence." | Internal "One Team" communications show coordination and bias concerns; combined with false color interpretation, the conviction rests on unreliable evidence. (Ex. A; Wolff; Hill.) |

## VI. LEGAL STANDARD AND ARGUMENT

**Rule 60(b)(3) (Fraud / Misrepresentation).** Relief is appropriate where clear and convincing evidence shows fraud, misrepresentation, or misconduct by an opposing party that prevented the movant from fully and fairly presenting the case. *See* Appling v. State Farm Mut. Auto. Ins. Co., 340 F.3d 769, 780 (9th Cir. 2003). Here, the government's core evidence was a fabricated color interpretation, and the BOP simultaneously obstructed access to the manufacturer standards that would have exposed it.

**Rule 60(d)(3) (Fraud on the Court).** Fraud on the court includes "egregious conduct involving a corruption of the judicial process itself." *See* United States v. Estate of Stonehill, 660 F.3d 415, 443 (9th Cir. 2011). The combined conduct here—misstating the manufacturer color standard, suppressing the flowchart under a false "law enforcement sensitive" pretext, and obtaining dismissal on that basis—undermines the integrity of the 2020 judgment.

**Rule 60(b)(6) (Extraordinary Circumstances).** Relief is available for extraordinary circumstances and within a reasonable time. *See* Gonzalez v. Crosby, 545 U.S. 524, 535–36 (2005); Phelps v. Alameida, 569 F.3d 1120, 1135–36 (9th Cir. 2009). A judgment procured through a demonstrably inverted manufacturer standard, coupled with six years of suppression, meets the extraordinary-circumstances threshold.

**Due Process Requires Reliable Evidence.** Prison discipline requires an impartial tribunal and "some evidence" that is not manufactured or obviously unreliable. *See* Wolff v. McDonnell, 418 U.S. 539, 563–70 (1974); Superintendent v. Hill, 472 U.S. 445, 455 (1985); Burnsworth v. Gunderson, 179 F.3d 771, 775 (9th Cir. 1999). Where the sole chemical basis for the conviction is an admitted baseline (burgundy) misrepresented as a positive, Hill is not satisfied.

**Judicial Estoppel / Judicial Notice.** Courts may apply judicial estoppel to protect the integrity of proceedings and to prevent litigants from gaining advantage through inconsistent positions. *See* New Hampshire v. Maine, 532 U.S. 742, 749–50 (2001). At minimum, this Court should take judicial notice of Safariland's publicly posted NIK instructions (Ex. I) and Safariland's counsel admissions (Ex. E), and should estop Respondent from advancing a "burgundy = positive" theory in any reopened merits proceedings.

## VII. REQUESTED RELIEF

Petitioner respectfully requests that the Court:

1. Vacate the May 18, 2020 Judgment denying the § 2241 petition and reopen this proceeding;

2. Order an evidentiary hearing and permit narrowly tailored discovery directed to: (a) the manufacturer NIK Test U instructions and polytesting flowcharts used by the BOP; (b) the BOP's SIS advisories and directives governing NIK testing; and (c) the chain-of-custody / testing records in Petitioner's disciplinary matter;

3. Enter an order judicially estopping Respondent, in this case and any related proceeding arising from the same disciplinary conviction, from asserting that a burgundy reaction on NIK Test U is a positive drug test result; and clarifying that the manufacturer recognizes only dark blue as the presumptive-positive Test U reaction;

4. Grant such other relief as the Court deems just and proper, including restoration of good conduct time and expungement or remand for a new disciplinary hearing free of fraud.


DATED: January 25, 2026


/s/ Billy F. Steffey

Billy F. Steffey, Pro se

## EXHIBIT INDEX

**Exhibit A:** John Lynn Emails and SIS Advisory (including the January 18, 2017 SIS Advisory and related January 2018 emails).

**Exhibit B:** Video Evidence (link and summary demonstrating baseline burgundy color on NIK Test U).

**Exhibit C:** Clark Bailey Incident Report (FCI Herlong Incident Report No. 3025931, dated Aug. 24, 2017).

**Exhibit D:** Declaration of William J. Chetwood (filed March 6, 2019, in Case No. 3:19-cv-00093-JR).

**Exhibit E:** Safariland, LLC Memorandum of Points and Authorities in Support of Motion to Dismiss (Steffey v. Peters, Case No. 2:25-cv-11105-VBF-SK, Doc. 23-2 filed Dec. 15, 2025) (highlighted admissions regarding NIK Test U colors).

**Exhibit F:** Plaintiff's Notice of Supplemental Authority (Steffey v. Peters, Case No. 2:25-cv-11105-VBF-SK, filed Dec. 22, 2025).

**Exhibit G:** Verified Complaint (Steffey v. Peters) (verified under penalty of perjury; dated Nov. 16, 2025).

**Exhibit H:** BOP FOIA Obstruction and Withholding Records (2019–2026) (FOIA Nos. 2019-06228, 2020-02370, 2026-00947; tracker screenshot; determination letters).

**Exhibit I:** Safariland/ID Technologies NIK Instructions and IDENTIDRUG Polytesting Chart (publicly posted; includes Test U instruction that only dark blue indicates presumptive positive) (highlighted).

**Exhibit J:** Order of Magistrate Judge Steve Kim (Steffey v. Peters, Case No. 2:25-cv-11105-VBF-SK, Doc. 37 filed Jan. 16, 2026) (finding colorable FTCA claim) (highlighted).

## UNITED STATES DISTRICT COURT
## DISTRICT OF OREGON

BILLY F. STEFFEY,
Petitioner,

Case No.: 3:19-cv-00093-JR

v.

WARDEN J. SALAZAR,
Respondent.

# EXHIBIT A

## JOHN LYNN EMAILS AND SIS ADVISORY

Attached to Petitioner's Rule 60(b) Motion for Relief from Judgment

**Chris Liwag - Fwd: Follow up - Suboxone related Incident Reports**

**From:**     Robert J. Lynn
**To:**     Hernandez, Ismael
**Date:**     1/25/2018 9:39 AM
**Subject:**     Fwd: Follow up - Suboxone related Incident Reports

Can you please send this out to your DHOs as a follow up to your email from yesterday. Thanks

>>> Robert J. Lynn 1/24/2018 9:59 AM >>>
As a follow up conversation with Central Office, I would like to clarify that the first preferred method is to have a pharmacist or any Subject Matter Expert on the identification of medication such as a doctor or other medical staff verify the item is Buprenorphine HCL (Suboxone). They must submit a signed memorandum verifying their identification of the drug, which of course is attached to the IR. Good rule of thumb is if there are identifiers on the strip it should be taken to the SME. However, if the strip is cut up into several pieces and the SME can't identify the item as suboxone, then the NIK testing should take place as addressed below.

R. John Lynn, CSS (SIA)
Western Regional Office
7338 Shoreline Drive
Stockton, Ca
Office: ███████████

"Use your Tools and Resources to ensure success."

>>> Robert J. Lynn 1/23/2018 12:02 PM >>>

WXR SIS and Captains,

As a reminder, if you or your staff write an Incident Report relating to the possession of Buprenorphine (Suboxone is the brand name) that you must test the substance Using NIK Test Kit "A" then "U" then "K." (As outlined in the attached SIS Advisement, and NIK Test chart) A colored photograph of the strips and the NIK tests should also be attached to the Incident Report. If they are full strips with the N8 stamp on them, then you should also have your local pharmacist submit a supporting memorandum identifying it as Buprenorphine (Brand name Suboxone).

In addition ensure you clearly identify who conducted the NIK test in the Incident report. If it is not the author of the IR, then a supporting memorandum should be attached from who did the testing. Furthermore, ensure the staff member who tests the narcotics is certified to do so. (See attached current WXR roster ran today, January 23, 2018. All SIS staff and Lieutenants should be certified.)

We have lost too many Incident Reports to appeals based on staff not being certified,

identifying the drug by the brand name Suboxone instead of the drug name Buprenorphine, not identifying the person who conducted the testing and/or not testing with A, U and K. If you fail to do any of these steps, the inmate will win his appeal because OGC will not support you IR without these steps being followed.

You guys do an outstanding job identifying those inmates introducing, possessing and selling drugs. But we must do all that we must do to hold these inmates accountable.

Please review and use the following attachments and IR examples. Like always, please be sure to communicate with your DHO. They will provide you guidance and advise on what they review on their side of the house (legal side) to ensure all supporting documentation and evidence is present . Remember we are all on one team and at the end of the day, all of us want to make sure we are holding the inmates accountable for their actions.

WXRO appreciates, recognize and thanks you for your hard work on combating our drug problems in our region. But lets not let the inmates beat us based on technicalities.

Contact me if you have any questions. John

R. John Lynn, CSS (SIA)
Western Regional Office
7338 Shoreline Drive
Stockton, Ca
Office:███████████

"Use your Tools and Resources to ensure success."

*Internal emails 11*

## Chris Liwag - Fwd: Follow up - Suboxone related Incident Reports

From:    Robert J. Lynn
To:      Hernandez Ismael
Date:    1/25/2018 9:39 AM
Subject:  Fwd: Follow up - Suboxone related Incident Reports

Can you please send this out to your DHOs as a follow up to your email from yesterday. Thanks

>>> Robert J. Lynn 1/24/2018 9:59 AM >>>
As a follow up conversation with Central Office, I would like to clarify that the first preferred method is to have a pharmacist or any Subject Matter Expert on the identification of medication such as a doctor or other medical staff verify the item is Buprenorphine HCL (Suboxone). They must submit a signed memorandum verifying their identification of the drug, which of course is attached to the IR. Good rule of thumb is if there are identifiers on the strip it should be taken to the SME. However, if the strip is cut up into several pieces and the SME can't identify the item as suboxone, then the NIK testing should take place as addressed below.

R John Lynn, CSS (SIA)
Western Regional Office
7338 Shoreline Drive
Stockton, Ca
Office  █████████

"Use your Tools and Resources to ensure success."

>>> Robert J. Lynn 1/23/2018 12:02 PM >>>

WXR SIS and Captains,

As a reminder, if you or your staff write an Incident Report relating to the possession of Buprenorphine (Suboxone is the brand name) that you must test the substance Using NIK Test Kit "A" then "U" then "K." (As outlined in the attached SIS Advisement, and NIK Test chart) A colored photograph of the strips and the NIK tests should also be attached to the Incident Report. If they are full strips with the N8 stamp on them, then you should also have your local pharmacist submit a supporting memorandum identifying it as Buprenorphine (Brand name Suboxone).

In addition ensure you clearly identify who conducted the NIK test in the Incident report. If it is not the author of the IR, then a supporting memorandum should be attached from who did the testing. Furthermore, ensure the staff member who tests the narcotics is certified to do so. (See attached current WXR roster ran today, January 23, 2018. All SIS staff and Lieutenants should be certified.)

We have lost too many Incident Reports to appeals based on staff not being certified,

identifying the drug by the brand name Suboxone instead of the drug name Buprenorphine, not identifying the person who conducted the testing and/or not testing with A, U and K. If you fail to do any of these steps, the inmate will win his appeal because OGC will not support you IR without these steps being followed.

You guys do an outstanding job identifying those inmates introducing, possessing and selling drugs. But we must do all that we must do to hold these inmates accountable.

Please review and use the following attachments and IR examples. Like always, please be sure to communicate with your DHO. They will provide you guidance and advise on what they review on their side of the house (legal side) to ensure all supporting documentation and evidence is present . Remember we are all on one team and at the end of the day, all of us want to make sure we are holding the inmates accountable for their actions.

WXRO appreciates, recognize and thanks you for your hard work on combating our drug problems in our region. But lets not let the inmates beat us based on technicalities.

Contact me if you have any questions. John

R. John Lynn, CSS (SIA)
Western Regional Office
7338 Shoreline Drive
Stockton, Ca
Office: ▮▮▮▮▮▮▮▮

"Use your Tools and Resources to ensure success."



Page 1 of 2

## Chris Liwag - Suboxone related Incident Reports

**From:** Robert J. Lynn
**To:** Captains WXRO; SIA/SIS LT's; SIS SHOPS
**Date:** 1/23/2018 12:02 PM
**Subject:** Suboxone related Incident Reports
**CC:** WXR CORR SERV
**Attachments:** NIK IR2.pdf; NIKSISAdvisory (Jan 2017).pdf; NIK IR1.pdf; NIK IR3.pdf; CSV-0660-VXX.pdf

WXR SIS and Captains,

As a reminder, if you or your staff write an Incident Report relating to the possession of Buprenorphine (Suboxone is the brand name) that you must test the substance Using NIK Test Kit "A" then "U" then "K." (As outlined in the attached SIS Advisement, and NIK Test chart) A colored photograph of the strips and the NIK tests should also be attached to the Incident Report. If they are full strips with the N8 stamp on them, then you should also have your local pharmacist submit a supporting memorandum identifying it as Buprenorphine (Brand name Suboxone).

In addition ensure you clearly identify who conducted the NIK test in the Incident report. If it is not the author of the IR, then a supporting memorandum should be attached from who did the testing. Furthermore, ensure the staff member who tests the narcotics is certified to do so. (See attached current WXR roster ran today, January 23, 2018. All SIS staff and Lieutenants should be certified.)

We have lost too many Incident Reports to appeals based on staff not being certified, identifying the drug by the brand name Suboxone instead of the drug name Buprenorphine, not identifying the person who conducted the testing and/or not testing with A, U and K. If you fail to do any of these steps, the inmate will win his appeal because OGC will not support you IR without these steps being followed.

You guys do an outstanding job identifying those inmates introducing, possessing and selling drugs. But we must do all that we must do to hold these inmates accountable.

Please review and use the following attachments and IR examples. Like always, please be sure to communicate with your DHO. They will provide you guidance and advise on what they review on their side of the house (legal side) to ensure all supporting documentation and evidence is present . Remember we are all on one team and at the end of the day, all of us want to make sure we are holding the inmates accountable for their actions.

WXRO appreciates, recognize and thanks you for your hard work on combating our drug

file:///C:/Users/bop33635/AppData/Local/Temp/XPgrpwise/5A686D67WXR_DOM1WXR...   9/5/2018

**\*\* SIS ADVISORY \*\***
January 18, 2017
"Buprenorphine HCL (Suboxone) Incident Reports"

Federal Bureau of Prisons
Intelligence Section
320 First Street, NW - Room 543
Washington, DC 20534

COMM:
FAX:
LAN ID:



Brad Trate, Administrator
Correctional Services Branch

M. Wade Jensen
Operations Intelligence Officer
Intelligence Section

Kevin Schwinn, Chief
Intelligence Section

TO: Regional Directors/All ROs; BOP-CPD/Assistant Director; Warden/All Insts; SIS/All ROs; Corr Svc/All ROs; SIS/All Insts; Corr Svcs/All Insts; BOP-CPD/SIS; BOP-CPD/SIU; BOP-CPD/CTU; BOP-CPD/PMB Intel

PURPOSE:    Update Field Test Kits for Buprenorphine HCL (Suboxone) and Clarify Incident Report Writing:

DISCUSSION: This is an update to the SIS Advisory dated September 29, 2015.

The SAFARILAND Company has informed Central Office Intelligence Section of an update to the reported color results when testing for Buprenorphine HCL.  In the September 29, 2015 SIS Advisory, the color change in NIK Test U - Methamphetamine Reagent - was reported as BROWN.  The color change should have been reported as BURGANDY.

The NIK Polytesting procedure for the detection of Buprenorphine HCL is a combination of A, U, K tests.

NIK Test A - Marquis Reagent - results are purple
NIK Test U - Methamphetamine Reagent - results are **BURGANDY**
NIK Test K - Opiates Reagent - results are purple

It should be noted Heroin and Buprenorphine HCL will result in a similar purple color, but Heroin will change from green to purple while Buprenorphine HCL will go directly to purple.  When using NIK Field Tests, staff should only report the test results.

UNCLASSIFIED/LIMITED OFFICIAL USE ONLY/LAW ENFORCEMENT SENSITIVE
This document is marked Unclassified/Limited Official Use Only/Law Enforcement Sensitive and may be disseminated, with proper attribution, to active Law Enforcement, DOD, or U.S. Intelligence Agencies. This document, or any segment/attachment thereof, may not be released without the approval of the Bureau of Prisons to any media sources, any non-law enforcement entity, the general public or those without a "need to know." It contains Information that may be exempt from public release under the provisions of the Privacy Act (5 U.S.C. 552).



**ACTION REQUESTED**: The Special Investigative Supervisors (SIS) are asked to advise the staff of the information contained in this alert. If a recovered substance is suspected Buprenorphine HCL (Suboxone), it is **preferred** a pharmacist identify the substance as Buprenorphine HCL (Suboxone). The supporting memo from the pharmacist should be attached to the incident report along with photographs of the evidence and no NIK Field Test is necessary. If the recovered substance cannot be positively identified as Buprenorphine HCL (Suboxone) by a pharmacist, staff should treat the substance as a completely unknown narcotic and conduct the appropriate NIK testing sequence. Photographs of the evidence and completed NIK Field Tests should be attached to the incident report.

**REMEMBER**: In Block 11 of the incident report, the substance should be referred to as unknown or unidentified and all NIK Field Test results should be detailed. Example incident reports are attached.

UNCLASSIFIED/LIMITED OFFICIAL USE ONLY/LAW ENFORCEMENT SENSITIVE
This document is marked Unclassified/Limited Official Use Only/Law Enforcement Sensitive and may be disseminated, with proper attribution, to active Law Enforcement, DOD, or U.S. Intelligence Agencies. This document, or any segment/attachment thereof, may not be released without the approval of the Bureau of Prisons to any media sources, any non-law enforcement entity, the general public or those without a "need to know." It contains information that may be exempt from public release under the provisions of the Privacy Act (5 U.S.C. 552).

problems in our region. But lets not let the inmates beat us based on technicalities.

Contact me if you have any questions. John

R. John Lynn, CSS (SIA)
Western Regional Office
7338 Shoreline Drive
Stockton, Ca
Office: ███████████

"Use your Tools and Resources to ensure success."

9/5/2018

**UNITED STATES DISTRICT COURT**
**DISTRICT OF OREGON**

BILLY F. STEFFEY,                           Case No.: 3:19-cv-00093-JR
Petitioner,

v.

WARDEN J. SALAZAR,
Respondent.

# EXHIBIT B

## VIDEO EVIDENCE

Attached to Petitioner's Rule 60(b) Motion for Relief from Judgment

https://youtu.be/p8USQ642q7w

**Key Evidentiary Points from Video**

**Stated Purpose and Core Claim**

The video's stated purpose is to demonstrate that the NIK tests used by the Bureau of Prisons provide negative results, which are then falsely reported as positive [00:00, 01:06].

**Core Allegation:** The BOP interprets a "dark burgundy color" on NIK Test U as a "positive result for amphetamines" [00:49, 00:59], which the demonstrator claims is actually a negative result [01:06, 04:38].

**Background Documentation Referenced**

- The video shows incident reports documenting disciplinary actions based on burgundy test results [00:15, 00:26]
- An SIS (Special Investigative Services) report is displayed stating: "use Nick Kit test U and it turned an immediate dark burgundy color indicating amphetamines" [00:45, 00:55]
- The SIS report explicitly states: "The test indicated a positive result for amphetamines" [00:59]

**Demonstration 1: Plain Paper Test**

1. A sealed NIK Test U pouch is displayed [01:35, 01:40]
2. A small strip of standard Hammermill printer paper is cut from a new stack [01:20, 01:53]
3. The plain paper strip is placed into the Test U pouch [02:28, 02:33]
4. The chemical ampoules in the pouch are broken from left to right per instructions [02:39]
5. The liquid in the pouch immediately turns burgundy color [02:56, 03:14]

**Narration at 02:56:** "You can already see the thing turning burgundy right now. So, this is a brand new piece of paper out of a stack of printer paper. That is your burgundy result that you took away my 41 good days." [02:56]

**Demonstration 2: Empty Test Pouch (No Substance)**

1. A new, sealed NIK Test U pouch is opened [03:59, 04:01]
2. **No substance is placed inside the pouch** [04:07]
3. **Narration at 04:07:** "I'm not even opening it and putting anything in it. I'm going to break these as it says." [04:07]
4. The chemical ampoules are broken [04:08]
5. The chemicals alone turn burgundy color [04:29, 04:33]

**Critical Color Reference Observation**

The demonstrator notes that the test pouch itself contains a blue color reference square at the top [04:24, 04:26].

**Narration at 04:26:** "You can see that on the top of the test there's a blue color to match it with because only blue is positive." [04:26]

## Conclusions Stated in Video

- **At 04:33:** "This test with nothing in it, just the chemicals alone turned burgundy as it should because that's a negative drug test." [04:33]
- **At 04:38:** "And this is what you guys are locking people up for and punishing people just because you have an issue with them or you want to get rid of them for whatever reason." [04:38]
- **At 04:49:** "The nick tests are documented burgundy and you're claiming that's positive. It is not positive." [04:49]

## Alleged Consequences Referenced

The video references the following consequences of burgundy test results being reported as positive:

- Loss of good time credits (41 days specifically mentioned) [02:59]
- Transfer to higher security facilities [03:19]
- Extended time in segregated housing (SHU) [03:19]
- Separation from families and loss of visitation rights [03:34, 03:40]

**Note:** These exhibits are marked for identification and reference purposes in connection with the subject matter of this proceeding.

17.    In preparation for this declaration to the court I communicated with BOP agency counsel regarding the attorney who purportedly sent the legal mail to Inmate X. The sender was identified as "Law Offices of Leslie R. Ramos, 901 H. St., Sacramento, CA 95814." See Ex. E at Section V(1). Agency counsel notified me he had contacted Ms. Ramos by telephone on February 25, 2019 to inquire about this incident. Ms. Ramos stated she has never heard of Petitioner or any person named Lisa Rassmussen and sent no mail to FCI Lompoc. She practices exclusively in state court. Ms. Ramos also stated she had independently learned her name is being used by federal inmates as a false sender of bogus legal mail parcels. In the past, envelopes with inadequate postage have been returned to her and their suspicious nature has prompted her to immediately contact local law-enforcement for testing and disposal of the mail. Ms. Ramos has also notified the California State Bar Association of these events.

18.    Petitioner argues I was not impartial. My impartiality is determined by my status as one "who was not a victim, witness, investigator, or otherwise significantly involved in the incident." See Ex. A at 27. Petitioner claims I made an arrangement with the reporting officer to not sanction Petitioner severely if Petitioner would "take the shot on the chin . . . [and] not fight, [Petitioner] would get minimal sanctions . . ." See Petition at 7. Petitioner then argues:

> I received a ridiculously lenient punishment. I lost 41 good days and 180 days commissary. I did not lose my visits. I did not lose my email, I did not lose my phone. I did not have to serve any DS [disciplinary segregation] time nor did I receive any monetary fine. These sanctions show that there was definitely a pre-arranged deal between SIS Aguilar and DHO Chetwood.
> Id. at 16.

19.    This is a bizarre and incorrect argument. As DHO I have several sanctions available based on the severity of the offense. My sanctions for Petitioner were consistent with other decisions for similar offenses and entirely permissible under the CFR and disciplinary policy. See Ex. A at 45-46. That I did not subject Petitioner to the harshest and full panoply of all disciplinary sanctions is not evidence of collusion between me and SIA Aguilar. In addition, Petitioner did not "take the shot on the chin" and articulated a host of objections at his hearing. Rarely do I see inmates come prepared with detailed and extensive written objections as Petitioner did at his hearing. Finally, despite claims from Petitioner he had no disciplinary segregation, he states clearly he was immediately placed in the Special Housing Unit (SHU) and remained there "for several weeks" prior to the hearing. See Petition at 16. I imposed a suspended sentence of 60 additional days of disciplinary segregation in SHU pending six months of clear conduct by Petitioner. See Ex. E at VI. I also imposed a suspended sentence of one year visitation privilege loss, also pending six months of clear conduct. Id. While these sanctions are fair, they are by no means "ridiculously lenient."

20.    As with all my DHO decisions, I attempted to impose a fair and appropriate penalty upon my finding Petitioner had committed the prohibited act as charged. I explained the reason for each sanction in my report. Id. at section VII.

21.    Petitioner argues he was sent the envelope tracking number by mistake. Id. at section V(7). atI found this argument incredible.

22.    Petitioner makes additional arguments about the NIK test itself. He claims the kit is not designed to test for the drugs attributed to him: amphetamines. See Petition at 7. The NIK test clearly describes its use for testing amphetamines. See Ex. F at 4 (table Test B summary).

23.    Petitioner also claims I failed to confirm the test was not expired. See Petition at 7. BOP inmates are regularly tested for drugs on a random basis and

Steffey v. Salazar                                          Declaration of
Case No. 3:19-cv-00093-JR                        William J. Chetwood

23.     Petitioner also claims additional tests were conducted which exonerate Petitioner but were not provided to him nor considered by me as part of my decision. See Petition at 16. This is incorrect. No further testing was conducted nor would I fail to consider any test reflecting contrary results from the positive NIK result used to support my decision.

24.     Finally, Petitioner claims NIK results are "rampantly" falsified by BOP staff to torment the inmate population. Id. I have no information to support this claim nor do I believe it to be true.

I declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct. Executed this 4ᵗʰ day of March 2019 at Lompoc, CA.

_____
William J. Chetwood

Steffey v. Salazar
Case No. 3:19-cv-00093-JR

Declaration of
William J. Chetwood

# UNITED STATES DISTRICT COURT
## DISTRICT OF OREGON

BILLY F. STEFFEY,
Petitioner,

Case No.: 3:19-cv-00093-JR

v.

WARDEN J. SALAZAR,
Respondent.

# EXHIBIT E

## SAFARILAND, LLC MEMORANDUM ISO MOTION TO DISMISS

Attached to Petitioner's Rule 60(b) Motion for Relief from Judgment

STEVEN D. SMELSER (SBN 180602)
    ssmelser@yukelaw.com
SYDNEY A. SHAFFER (SBN 348771)
    sshaffer@yukelaw.com
CAMILLE T. BAYLIS (SBN 363838)
    cbaylis@yukelaw.com
YUKEVICH | CAVANAUGH
355 S. Grand Avenue. 15th Floor
Los Angeles, California 90071-1560
Telephone: (213) 362-7777
Facsimile:  (213) 362-7788
Email:  eservice@yukelaw.com

Attorneys for Defendant,
SAFARILAND, LLC

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| BILLY F. STEFFEY,<br><br>              Plaintiff,<br><br>     vs.<br><br>COLETTE S. PETERS, in her official capacity as Director of the Federal Bureau of Prisons; M. WADE JENNINGS, in his individual and official capacity; KEVIN SCHWINN, in his individual and official capacity; SAFARILAND, LLC; R. JOHN LYNN, Regional Special Investigative Agent (DOE 1); SIS TECHNICIAN S. AGUILAR, (DOE 2); SIS LIEUTENANT [FIRST NAME UNKNOWN] JOHNSON, (DOE 3); DISCIPLINE HEARING OFFICER WILLIAM J. CHETWOOD, (DOE 4); DOES 5-50,<br><br>              Defendants. | CASE NO. 2-25-cv-11105-VBF-SK<br><br>**DEFENDANT SAFARILAND, LLC'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)**<br><br>*[Filed concurrently with Defendant's Notice of Motion to Dismiss Plaintiff's First Amended Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(6); Declaration of S. Shaffer; and [Proposed] Order]*<br><br>Judge:       Hon. Valerie B. Fairbank<br>Magistrate Judge: Hon. Steve Kim<br>Date:        January 21, 2026<br>Time:        10:00 a.m.<br>Crtrm.:      540<br><br>Trial Date:  None Set |

/ / /

/ / /

5024986.1                                            1                       Case No. 2-25-cv-11105-VBF-SK

YUKEVICH | CAVANAUGH
355 S. GRAND AVENUE, 15TH FLOOR
LOS ANGELES, CALIFORNIA 90071-1560
TELEPHONE (213) 362-7777
FACSIMILE (213) 362-7788

## TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ..................................................................................... 8

II.   PLAINTIFF'S FIRST AMENDED COMPLAINT .................................. 8

III.  ARGUMENT ........................................................................................ 11

    A.   Legal Standard Governing Motion to Dismiss Under Federal Rule of Civil Procedure 12(b)(6). ....................................................... 11

    B.   Plaintiff's Claims are Barred by the Relevant Statutes of Limitation. ............................................................................................. 12

    C.   Plaintiff Fails to State a Claim Against Safariland for Strict Products Liability Under a Failure to Warn Theory. ........................... 13

    D.   Plaintiff Fails to State a Claim Against Safariland for Fraudulent Misrepresentation. ............................................................................... 15

    E.   Plaintiff Fails to State a Claim Against Safariland for Fraudulent Concealment. ........................................................................................ 17

    F.   Plaintiff Fails to State a Claim Against Safariland for Civil Conspiracy ............................................................................................ 18

    G.   Plaintiff Fails to Plead Sufficient Facts to Support a Claim for Punitive Damages. ............................................................................... 20

        1.   Pleading Punitive Damages Under California Law is Substantive for Purposes of Assessing the Pleadings in This Case ................................................................................... 20

        2.   Plaintiff's Prayer for Punitive Damages Should be Dismissed Because the Complaint Fails to Plead Specific Facts Sufficient to Establish the Requisite Malice, Oppression or Fraud ............................................................... 20

    H.   Plaintiff Lacks Article III Standing to Bring Claims for Equitable Relief. ..................................................................................................... 22

        1.   Plaintiff's Release from Custody Renders Moot Any Request for Prospective Relief Tied to Prison Practices ............ 23

        2.   Plaintiff Lacks the Requisite Injury-in-Fact for Prospective Relief Against Safariland ........................................ 24

        3.   Plaintiff Lacks Standing to Bring Equitable Claims on Behalf of Other Prisoners ....................................................... 25

        4.   The Requested Equitable Relief Against Safariland Would Not Redress Plaintiff's Alleged Ongoing Injury ....................... 26

DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT PURSUANT TO FEDERAL RULE OF PROCEDURE 12(b)(6)

5.    Declaratory Relief Is Purely Retrospective as to Safariland ......26

IV.    CONCLUSION ...................................................................................27

YUKEVICH | CAVANAUGH
355 S. GRAND AVENUE, 15TH FLOOR
LOS ANGELES, CALIFORNIA 90071-1560
TELEPHONE (213) 362-7777
FACSIMILE (213) 362-7788

DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED COMPLAINT PURSUANT TO FEDERAL RULE OF PROCEDURE 12(b)(6)

YUKEVICH | CAVANAUGH
355 S. GRAND AVENUE, 15TH FLOOR
LOS ANGELES, CALIFORNIA 90071-1560
TELEPHONE (213) 362-7777
FACSIMILE (213) 362-7788

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alger Dynamic Opportunities Fund v. Acadia Pharmaceuticals, Inc.*,
  756 F.Supp.3d 852 (2024)...........................................................................12

*Alvarez v. Hill*,
  667 F.3d 1061 (9th Cir. 2012)..............................................................23, 24

*Armstrong v. Davis*,
  275 F.3d 849 (9th Cir. 2001) (abrogated on other grounds by
  *Johnson v. California*, 543 U.S. 499, 504-05 (2005))................................22, 25

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .........................................................................11, 17

*Bates v. United Parcel Serv., Inc.*,
  511 F.3d 974 (9th Cir. 2007) (en banc) ................................................22, 26

*Beck v. State Farm Mut. Auto. Ins. Co.*,
  54 Cal.App.3d 347 (1976)..........................................................................20

*Beckwith v. Dahl*,
  205 Cal. App. 4th 1039 (2012)...............................................................16, 17

*Bigler-Engler v. Breg, Inc.*,
  7 Cal.App.5th 276 (2017)..........................................................................17

*City of Los Angeles v. Lyons*,
  461 U.S. 95 (1983) ..................................................................................22

*Clauson v. Superior Court*,
  67 Cal.App.4th 1253 (1998)..................................................................20, 21

*Clegg v. Cult Awareness Network*,
  18 F.3d 752 (9th Cir. 1994).......................................................................11

*College Hospital, Inc. v. Superior Court*
  (1994) 8 Cal. 4th 704................................................................................21

*Contreras v. Dowling*,
  5 Cal.App.5th 394 (2016)..........................................................................18

*Dilley v. Gunn,*
   64 F.3d 1365 (9th Cir. 1995).................................................................................23, 24

*Dyna-Med, Inc. v. Fair Employment & Housing Com.*
   43 Cal.3d 1379 (1987).......................................................................................20

*Faulkner v. California Toll Bridge Authority,*
   40 Cal. 2d 317 (1953).......................................................................................21

*Gasperini v. Center for Humanities, Inc.,*
   518 U.S. 415 (1996) .........................................................................................20

*Hodgers-Durgin v. de la Vina,*
   199 F.3d 1037 (9th Cir. 1999) (en banc).......................................................23, 25

*IIG Wireless, Inc. v. Yi,*
   22 Cal. App. 5th 630 (2018).............................................................................18

*Johns v. County of San Diego,*
   114 F.3d 874 (9th Cir. 1997)............................................................................25

*Johnson v. American Standard, Inc.*
   (2008) 43 Cal.4th 56 ................................................................................13, 15

*Kidron v. Movie Acquisition Corp.,*
   40 Cal.App.4th 1571 (1995) ...........................................................................18

*Lazar v. Superior Court,*
   12 Cal.4th 631 (1996)......................................................................................16

*Lewis v. Casey,*
   518 U.S. 343 (1996) .........................................................................................25

*Lujan v. Defs. of Wildlife,*
   504 U.S. 555 (1992) .........................................................................................22

*Mayfield v. United States,*
   599 F.3d 964 (9th Cir. 2010)..................................................................22, 24, 26

*Mirkin v. Wasserman,*
   5 Cal. App. 4th 1082 (1993)..............................................................................16

*Mock v. Michigan Millers Mutual Ins. Co.*
   (1992) 4 Cal. App. 4th 306 ..............................................................................21

YUKEVICH | CAVANAUGH
355 S. GRAND AVENUE, 15TH FLOOR
LOS ANGELES, CALIFORNIA 90071-1560
TELEPHONE (213) 362-7777
FACSIMILE (213) 362-7788

DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED COMPLAINT PURSUANT TO FEDERAL RULE OF PROCEDURE 12(b)(6)

*Murphy v. Hunt,*
    455 U.S. 478 (1982) (per curiam) .................................................................24

*Navarro v. Block,*
    250 F.3d 729 (9th Cir. 2001).......................................................................11

*Nelsen v. King County,*
    895 F.2d 1248 (9th Cir. 1990)................................................................22, 24

*O'Neil v. Crane Co.,*
    53 Cal.4th 335 (2012).................................................................................15

*People v. Powers-Monachello,*
    189 Cal.App.4th 400 (2010) .......................................................................18

*Prakashpalan v. Engstrom, Lipcomb & Lack,*
    223 Cal.App.4th 1105 (2014)......................................................................18

*Sample v. Johnson,*
    771 F.2d 1335 (9th Cir.1985).....................................................................22

*Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.,*
    559 U.S. 393 (2010) (plurality opinion)......................................................20

*Smith v. Superior Court,*
    10 Cal. App. 4th 1033 (1992)......................................................................21

*Sonner v. Premier Nutrition Corp.,*
    971 F.3d 834 (9th Cir. 2020).......................................................................13

*Tomaselli v. Transamerica Ins. Co.*
    (1994) 25 Cal.App.4th 1269........................................................................21

*Wallace v. Kato,*
    549 U.S. 384 (2007) ...................................................................................12

*Wright v. Stang Mfg. Co.*
    (1997) 54 Cal.App.4th 1218........................................................................13

*Wyatt v. Union Mortgage, Co.,*
    24 Cal.3d 773 (1979)..................................................................................12

**Statutes**

28 U.S.C. § 2201..............................................................................................11

YUKEVICH | CAVANAUGH
355 S. GRAND AVENUE, 15TH FLOOR
LOS ANGELES, CALIFORNIA 90071-1560
TELEPHONE (213) 362-7777
FACSIMILE (213) 362-7788

DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED COMPLAINT PURSUANT TO FEDERAL RULE OF PROCEDURE 12(b)(6)

an act by Safariland ............................................................................................... 19

Cal. Civ. Code §§1709-1710 (2024) ........................................................................ 16

Cal. Civ. Code §§3294-3296 .................................................................................... 20

Cal. Civ. Code §3294(c)(1) ....................................................................................... 21

Cal. Civ. Code §3294(c)(2) ....................................................................................... 21

Cal. Civ. Proc. Code §§335.1, 338(d) ...................................................................... 12

California Civil Code section 3294 .................................................................... 20, 21

Code III ..................................................................................................................... 10

**Other Authorities**

CACI 1205 ................................................................................................................ 13

Fed. R. Civ. P. 9(b) .................................................................................................. 15

Federal Rule of Civil Procedure 12(b)(6) .......................................................... 11, 12

YUKEVICH | CAVANAUGH
355 S. GRAND AVENUE, 15TH FLOOR
LOS ANGELES, CALIFORNIA 90071-1560
TELEPHONE (213) 362-7777
FACSIMILE (213) 362-7788

DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED COMPLAINT PURSUANT TO FEDERAL RULE OF PROCEDURE 12(b)(6)

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

While incarcerated at FCI Lompoc, Plaintiff Billy Steffey ("Plaintiff") was subject to disciplinary proceedings in connection with an incident involving the receipt of mail connected to Plaintiff which was intercepted and deemed to be suspicious by Federal Bureau of Prisons ("BOP") officers. If the allegations of Plaintiff's First Amended Complaint ("FAC") are assumed to be true, the BOP officers, using a test kit allegedly manufactured and supplied by Defendant Safariland, LLC ("Safariland"), determined samples of paper taken from the suspicious mail to have positive indications of the presence of amphetamines. The FAC alleges that as a result of the test kit results, Plaintiff underwent disciplinary proceedings which resulted in the imposition of various disciplinary sanctions, during Plaintiff's period of incarceration. Based on these alleged facts, Plaintiff purports to assert claims against Safariland for strict products liability under a failure to warn theory, fraudulent misrepresentation, fraudulent concealment, civil conspiracy, declaratory relief, injunctive relief, and makes a prayer for punitive damages. Because these facts do not support, and in several instances negate, Plaintiff's claims against Safariland, the Court should grant this Motion to Dismiss in its entirety.

### II.    PLAINTIFF'S FIRST AMENDED COMPLAINT

The following alleged facts are taken from Plaintiff's First Amended Complaint (Dkt. No. 14, hereinafter "FAC").

On January 18, 2017, while Plaintiff Billy Steffey ("Plaintiff") was in custody at the Federal Correctional Institute ("FCI") in Lompoc, California, a Special Investigative Services ("SIS") Advisory titled, "Buprenorphine HCL (suboxone) Incident Reports" (the "SIS Advisory") was allegedly distributed to all regional directors, wardens, SIS personnel, correctional services staff, and Federal Bureau of Prisons ("BOP") Central Office departments. (FAC ¶28-29.) The SIS Advisory

YUKEVICH | CAVANAUGH
355 S. GRAND AVENUE, 15TH FLOOR
LOS ANGELES, CALIFORNIA 90071-1560
TELEPHONE (213) 362-7777
FACSIMILE (213) 362-7788

allegedly directed BOP staff to use NIK Tests A, U, and K in sequence to identify Buprenorphine HCL, a sequence which Plaintiff claims was not validated by the alleged manufacturer of the NIK tests, Defendant Safariland, LLC ("Safariland" or "Defendant") (FAC ¶31-33, 55.)  Plaintiff further alleges that the SIS Advisory stated a positive NIK Test U result was indicated by a color change to burgundy despite Safariland's product insert and color chart for its NIK tests showing that only blue indicates a positive result for NIK Test U.  (FAC ¶35.)  Plaintiff alleges that the testing protocol set out in the SIS Advisory was further used by the BOP to test for K2/Spice (synthetic cannabinoids), which Safariland never claimed was possible to detect with the NIK tests.  (FAC ¶59.)

Plaintiff contends that the NIK tests utilized by the BOP contained explicit and "prominent" warnings, such as "Do NOT perform tests on paper substrates. False color reactions may result" and "ALL TEST RESULTS MUST BE CONFIRMED BY AN APPROVED ANALYTICAL LABORATORY!" (FAC ¶¶61-62.)  Despite these warnings, Plaintiff alleges the BOP used these NIK tests on paper substrates, did not require laboratory confirmation of test results, and treated the NIK tests as definitive proof of drug possession.  (FAC ¶63.)

On or about December 5, 2017, Defendant SIS Technician S. Aguilar conducted NIK tests on paper from intercepted mail sent to FCI Lompoc, which was connected to Plaintiff, using NIK Test A and NIK Test U, in direct violation of Safariland's product warning which states, "[d]o NOT perform test on paper substrates." (FAC ¶¶80-81.)  Defendant Aguilar documented these test results in an Incident Report which states, "[t]he NIK Test U turning an immediate dark burgundy color is a positive indication of the presence of Amphetamines." (FAC ¶83.)  Plaintiff contends that Defendant Aguilar "knew or should have known the result was negative" because Aguilar had access to Safariland's NIK test instructions which indicate that blue is a positive result, as well as the NIK Test U pouch itself which contains a blue reference square showing an example of what a

DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT PURSUANT TO FEDERAL RULE OF PROCEDURE 12(b)(6)

positive test looks like. (FAC ¶85.)

On January 23, 2018, an email was sent by Defendant R. John Lynn emphasizing that proper protocol must be followed for NIK tests to ensure that inmate appeals are not successful against the conducted tests. (FAC ¶¶41-49.) Plaintiff was charged with a Code III violation for "[p]ossession of any narcotics, marijuana, drugs, alcohol, intoxicants, or related paraphernalia." (FAC ¶87.) A disciplinary hearing was held on February 13, 2018, during which Plaintiff contested the charges against him for possession of contraband, objected to the NIK test results as unreliable and argued they were performed by SIS Aguilar in a manner that was contrary to Safariland's stated product warnings, requested laboratory confirmation of the test results, and challenged the testing of paper by SIS Aguilar in violation of Safariland's warnings. (FAC ¶¶96-97.) Plaintiff's objections were rejected and his request for confirmatory laboratory testing to validate the NIK test results was denied. (FAC ¶97.) Plaintiff was found guilty and sanctioned with a loss of 41 days of vested good conduct time and 180 days of commissary privileges. (FAC ¶99.) Plaintiff was also sanctioned with 60 days of disciplinary segregation and a one-year loss of visitation privileges, but both sanctions were ultimately suspended. (*Id.*)

Plaintiff filed appeals with the BOP regarding the NIK testing and protocol at FCI Lompoc, but each appeal was denied. (FAC ¶¶108-109.) Plaintiff filed a habeas corpus petition in the U.S. District Court for the District of Oregon challenging his disciplinary conviction, which was denied on the grounds that the NIK test results were found to have met the deferential standard requiring "some evidence" supporting the disciplinary findings against him. (FAC ¶¶113-115.) Plaintiff appealed the District Court's decision to the Ninth Circuit, but he voluntarily dismissed the appeal after being granted early release due to COVID-19. (FAC ¶116.)

///

DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT PURSUANT TO FEDERAL RULE OF PROCEDURE 12(b)(6)

YUKEVICH | CAVANAUGH
355 S. GRAND AVENUE, 15TH FLOOR
LOS ANGELES, CALIFORNIA 90071-1560
TELEPHONE (213) 362-7777
FACSIMILE (213) 362-7788

In November 2025, Plaintiff commenced this action against Safariland, the BOP, and certain individual BOP officials and agents. Plaintiff's FAC (Dkt No. 14,) purports to assert claims against Safariland under California law for strict product liability under failure to warn (FAC ¶¶153-158), fraudulent misrepresentation (FAC ¶¶159-164), fraudulent concealment (FAC ¶¶165-169), and civil conspiracy (FAC ¶¶170-173), and also seeks declaratory relief under 28 U.S.C. § 2201 (FAC ¶¶183-185), as well as injunctive relief (FAC ¶¶186-190).

## III.   **ARGUMENT**

### A.   **Legal Standard Governing Motion to Dismiss Under Federal Rule of Civil Procedure 12(b)(6).**

A motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) tests the legal sufficiency of the claims in the complaint. *Navarro v. Block,* 250 F.3d 729, 732 (9th Cir. 2001). Dismissal is appropriate where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory. *Id.* In a motion dismiss, all material allegations in the complaint are taken as true and construed in the light most favorable to the plaintiff. *Id.* However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). Moreover, this Court "is not required to accept legal conclusions cast in the form of factual assertions if those conclusions cannot reasonably be drawn from the facts alleged." *Clegg v. Cult Awareness Network,* 18 F.3d 752, 754-55 (9th Cir. 1994). Only plausible claims for relief will survive a motion to dismiss. *Iqbal,* 556 U.S. at 679. A claim is plausible if its factual content permits the Court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *Id.* The pleading must include "more than the unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* at 678.

/ / /

/ / /

YUKEVICH | CAVANAUGH
355 S. GRAND AVENUE. 15TH FLOOR
LOS ANGELES, CALIFORNIA 90071-1560
TELEPHONE (213) 362-7777
FACSIMILE (213) 362-7788

Here, none of Plaintiff's purported claims state a valid cause of action against Safariland, even under the most liberal of pleading standards. Accordingly, Safariland respectfully requests that the Court grant the motion and dismiss this entire action as to Safariland.

**B.      Plaintiff's Claims are Barred by the Relevant Statutes of Limitation.**

When a statute of limitations issue is raised through a motion to dismiss pursuant to FRCP 12(b)(6), it must be shown that, beyond doubt, the plaintiff can prove no set of facts that would establish the timeliness of their claims. *Alger Dynamic Opportunities Fund v. Acadia Pharmaceuticals, Inc.*, 756 F.Supp.3d 852, 880 (2024). Plaintiff's allegations show that all relevant events occurred between January 2017 and June 2018, yet he did not file this action until November 2025, over seven years later, thereby necessitating a dismissal.

Plaintiff's FAC alleges that he was drug-tested in late 2017 and placed in solitary confinement until June 2018. He filed multiple administrative petitions challenging the discipline, all of which were denied, and later filed a habeas corpus petition before his ultimate release from custody in 2021. (*See generally* Plaintiff's FAC). These allegations show Plaintiff believed discipline was wrongful in 2018, triggering accrual. *See, Wallace v. Kato*, 549 U.S. 384, 391 (2007) (a claim accrues at the time of the wrongful act or injury, not upon release from custody, and continued incarceration does not toll accrual).

California imposes a two-year statute of limitations on strict products liability claims, and a three-year statute of limitations for fraud-based claims, including civil conspiracy based on fraud. Cal. Civ. Proc. Code §§335.1, 338(d); *see also Wyatt v. Union Mortgage, Co.*, 24 Cal.3d 773, 792 (1979). Plaintiff's grievances and habeas petition show discovery of the relevant facts by 2018, therefore the relevant statutes of limitation expired between 2019 and 2021, well before this suit.

/ / /

YUKEVICH | CAVANAUGH
355 S. GRAND AVENUE, 15TH FLOOR
LOS ANGELES, CALIFORNIA 90071-1560
TELEPHONE (213) 362-7777
FACSIMILE (213) 362-7788

Because the underlying torts are time-barred, requests for declaratory and injunctive relief fail as well. *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020) (equitable relief is unavailable where a plaintiff fails to "establish that she lacks an adequate remedy at law.")

### C.    Plaintiff Fails to State a Claim Against Safariland for Strict Products Liability Under a Failure to Warn Theory.

Plaintiff does not meet the requisite pleading standard of 12(b)(6) as to his claim for strict products liability under the theory of failure to adequately warn. California Civil Jury Instruction 1205 provides that the elements of "failure to warn" causes of action are:

> "(1) The defendant manufacturer, distributed or sold a product;
> (2) The product had potential risks that were known or knowable to the defendant;
> (3) Such risks presented a substantial danger when the product was used or misused in an intended or reasonably foreseeable way;
> (4) Ordinary consumers would not have recognized the potential risks;
> (5) The defendant failed to warn consumers of the potential risks adequately; and
> (6) As a result of the lack of instructions or warnings, [plaintiff was] harmed."
> (CACI 1205).

If a plaintiff relies on a failure to warn theory, he or she must "identify which danger was not warned against, that the danger was substantial, that the danger was not readily recognizable to an ordinary consumer, that the manufacturer knew or should have reasonably known of the danger, and causation." *See, Johnson v. American Standard, Inc.* (2008) 43 Cal.4th 56, 64-67; *Wright v. Stang Mfg. Co.* (1997) 54 Cal.App.4th 1218, 1230. Additionally, the Supreme Court of California in *Finn v. G.D. Searle & Co.* emphasized that "if every report of a possible risk, no matter how speculative, conjectural, or tentative, imposed an affirmative duty to give some warning, a manufacturer would be required to inundate [consumers] indiscriminately with notice of any and every hint of danger, thereby inevitably

DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED COMPLAINT PURSUANT TO FEDERAL RULE OF PROCEDURE 12(b)(6)

YUKEVICH | CAVANAUGH
355 S. GRAND AVENUE, 15TH FLOOR
LOS ANGELES, CALIFORNIA 90071-1560
TELEPHONE (213) 362-7777
FACSIMILE (213) 362-7788

diluting the force of any specific warning given." 35 Cal.3d 691, 701 (1984.)

Here, Plaintiff alleges that Safariland's warnings were inadequate as to: (1) rates of false positives, (2) burgundy is the base color of tests, (3) blue is the proper color for positive tests, (4) scientific impossibility of detecting K2/Spice with NIK tests, (5) prohibition against testing paper substrates, and (6) mandatory laboratory confirmation of test results. (FAC ¶156). However, Plaintiff's own complaint states facts outlining the exact warnings provided by Safariland and undermines Plaintiff's argument of their inadequacy.

Regarding false positives, Plaintiff quotes to a warning from the Safariland NIK test instructions that states "Do NOT perform test on paper substrates. False color reactions may result." Id. ¶61. Additionally, Plaintiff quotes the warning by Safariland instructions for NIK Test U which states that "if any other color develops [besides dark blue], proceed to Test A," a warning providing that any other color, including burgundy, would require additional testing to confirm the result. Id. ¶4, 34. Plaintiff's allegation that Safariland failed to adequately warn that Blue is the only color for a positive methamphetamine test is further contradicted by his own recitation that Safariland's "product insert and color chart show that only BLUE indicates a positive result." Id. ¶35. Therefore, the facts set forth by Plaintiff undermine the first three warnings that Plaintiff takes issue.

Plaintiff's subsequent allegations that Safariland failed to emphasize the importance of not using the NIK tests on paper substrates, as well as the requirement for laboratory confirmation are also contradicted by his pleaded facts. Plaintiff quotes Safariland's instruction which "prominently warn: "Do NOT perform tests on paper substrates" and "ALL TEST RESULTS MUST BE CONFIRMED BY AN APPROVED ANALYTICAL LABORATORY!" Id. ¶61-62 (emphasis in original) Plaintiff cannot logically plead an inadequacy in Safariland's warnings when he himself describes them as *prominent*. Further, Plaintiff's use of the warnings in support of his claims that tests were misused by the BOP in direct opposition to the

YUKEVICH | CAVANAUGH
355 S. GRAND AVENUE. 15TH FLOOR
LOS ANGELES, CALIFORNIA 90071-1560
TELEPHONE (213) 362-7777
FACSIMILE (213) 362-7788

warnings by Safariland undermines his failure to warn allegations. (FAC ¶63, 81, 85, 172.)

In regard to Plaintiff's claim that Safariland failed to adequately warn that it was "scientifically impossible" to detect K2/Spice with NIK tests, Plaintiff lacks the causal chain required for strict liability failure to warn. (FAC ¶155.) "In strict liability law, the plaintiff's injury must have been caused by a 'defect' in the defendant's product." *O'Neil v. Crane Co.*, 53 Cal.4th 335, 347 (2012). The FAC does not allege facts that Plaintiff was harmed by a NIK Test that was improperly used to detect K2/Spice. Plaintiff has, therefore, failed to plead the causation element for his strict liability claim as to the K2/Spice allegation.  Further, Plaintiff does allege that Safariland "never claimed that NIK tests can detect K2/Spice." (FAC ¶59.) If Safariland was required to over warn of risks, including those outside the scope of their marketed product uses, courts have held that this would "invite mass consumer disregard and ultimate contempt for the warning process." *Johnson*, 43 Cal.4th at 70.

Therefore, Plaintiff's allegation that Safariland should be strictly liable for a failure to adequately warn is insufficiently plead and this cause of action should be dismissed in its entirety.

**D.    Plaintiff Fails to State a Claim Against Safariland for Fraudulent Misrepresentation.**

All claims sounding in fraud or misrepresentation must be pleaded with particularity, especially with respect to the "circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).  Under California law, to recover on a claim for misrepresentation, a plaintiff must prove all of the following: (1) the defendant represented to the plaintiff that a fact was true; (2) the defendant's representation was false; (3) the defendant knew that the representation was false when it made it, or made the representation recklessly and without regard for its truth; (4) the defendant intended that the plaintiff rely on the representation; (5) the plaintiff

YUKEVICH | CAVANAUGH
355 S. GRAND AVENUE, 15TH FLOOR
LOS ANGELES, CALIFORNIA 90071-1560
TELEPHONE (213) 362-7777
FACSIMILE (213) 362-7788

reasonably relied on the defendant's representation; (6) the plaintiff was harmed; and (7) the plaintiff's reliance on the defendant's representation was a substantial factor in causing the plaintiff's harm. *See Lazar v. Superior Court,* 12 Cal.4th 631, 638 (1996); *see also* Cal. Civ. Code §§1709-1710 (2024); California Civil Jury Instruction ("CACI") No. 1900 (2025).

"There are two causation elements in a fraud [or misrepresentation] cause of action. First the plaintiff's actual and justifiable reliance on the defendant's misrepresentation must have caused [him] to take a detrimental course of action. Second, the detrimental action taken by the plaintiff must have caused [him] alleged damage." *Beckwith v. Dahl*, 205 Cal. App. 4th 1039, 1061 (2012).

Plaintiff fails to allege misrepresentation with the required particularity. But, more importantly, the FAC (Dkt. No. 14, FAC ¶¶159-164) does not allege that Safariland made any representations, directly or indirectly, expressly, or impliedly, to Plaintiff. As a matter of law, Plaintiff does not have a claim for fraudulent misrepresentation if no representations were made to him. The FAC states only that Safariland allegedly represented to the BOP, that the NIK tests (1) can reliably detect drugs in prison settings, (2) can detect K2/Spice, and (3) are suitable for use without laboratory confirmation in disciplinary proceedings. (FAC ¶160.) Plaintiff makes no claim and provides no facts indicating that Safariland ever made any representations whatsoever to Plaintiff himself, thus there is no set of facts under which Plaintiff could possibly recover from Safariland on a fraudulent misrepresentation claim.

Moreover, the allegations of the FAC establish that Plaintiff did not rely on any representation by Safariland and, by extension, could not possibly have been harmed by any such representation. "It is settled that plaintiff, to state a cause of action for deceit based on misrepresentation, must plead that he or she actually relied on the misrepresentation." *Mirkin v. Wasserman*, 5 Cal. App. 4th 1082, 1088 (1993). To recover, Plaintiff must prove that the representation at issue "caused him

YUKEVICH | CAVANAUGH
355 S. GRAND AVENUE, 15TH FLOOR
LOS ANGELES, CALIFORNIA 90071-1560
TELEPHONE (213) 362-7777
FACSIMILE (213) 362-7788

to take a detrimental course of action." *Beckwith*, 205 Cal.App.4th at 1061. Nowhere in the FAC does Plaintiff indicate that Plaintiff himself relied on any representation made by Safariland or on its NIK test kit, thus Plaintiff did not and could not possibly have undertaken a detrimental course of action based on a representation from Safariland. It is unclear whether Plaintiff even had any knowledge (prior to his alleged injury) that there was such a thing as a NIK test kit.

Plaintiff's claim that he was somehow defrauded by Safariland is completely implausible and does not state a claim on which relief can be granted. See *Iqbal*, 556 U.S. at 679. Because it would be completely inconsistent with the FAC for Plaintiff to now allege that Safariland made representations to him or that he relied on those representations, the fraudulent misrepresentation claim (Count IV, FAC ¶¶159-164) should be dismissed without leave to amend.

E.      **Plaintiff Fails to State a Claim Against Safariland for Fraudulent Concealment.**

The elements of a fraudulent concealment claim are: (1) defendant concealed or suppressed a material fact, (2) defendant was under a duty to disclose the fact to the plaintiff, (3) defendant intentionally concealed or suppressed the fact with the intent to defraud the plaintiff, (4) plaintiff was unaware of the fact and would not have acted as he did if he had known of the concealed or suppressed fact, and (5) as a result, the plaintiff sustained damage. *Bigler-Engler v. Breg, Inc.*, 7 Cal.App.5th 276, 311 (2017). A duty to disclose must arise from direct dealings between the plaintiff and the defendant, "it cannot arise between the defendant and the public at large." *Id.*

Here, Plaintiff does not allege that he dealt directly with Safariland or otherwise alleged facts giving rise to a district legal relationship between the parties. Therefore, under *Bigler-Engler,* Plaintiff's fraudulent concealment claim fails.

Even if a duty existed, Plaintiff fails to allege he would have acted differently if facts were disclosed. As *Buckland v. Threshold Enterprises* held, a fraud claim

DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT PURSUANT TO FEDERAL RULE OF PROCEDURE 12(b)(6)

YUKEVICH | CAVANAUGH
355 S. GRAND AVENUE, 15TH FLOOR
LOS ANGELES, CALIFORNIA 90071-1560
TELEPHONE (213) 362-7777
FACSIMILE (213) 362-7788

based on omission fails without actual reliance. 157 Cal.App.4th 728, 747 (2007). Plaintiff injuries, solitary confinement and other sanctions, resulted from the BOP's independent actions, not the actions of Plaintiff in actual reliance on Safariland. The claim should therefore be dismissed in its entirety.

### F.    Plaintiff Fails to State a Claim Against Safariland for Civil Conspiracy.

"The basis of a civil conspiracy is the formation of a group of two or more persons who have agreed to a common plan or design to commit a tortious act." *Kidron v. Movie Acquisition Corp.*, 40 Cal.App.4th 1571, 1582 (1995). "[A]ctual knowledge of the planned tort, without more, is insufficient to serve as the basis of a conspiracy claim as the knowledge must be combined with intent to aid in the commission of the tort. *Id.* Simply knowing that a person's products or services are being used for a wrongful purpose is insufficient to infer a conspiracy. *People v. Powers-Monachello*, 189 Cal.App.4th 400 (2010). To succeed on a conspiracy claim, a plaintiff must allege (1) the formation and operation of the conspiracy; (2) wrongful conduct in furtherance of the conspiracy; and (3) damages arising from the wrongful conduct. *AREI II Cases,* 216 Cal. App. 4th 1004, 1022 (2013).

"Conspiracy is not a separate tort, but a form of vicarious liability by which one defendant can be held liable for the acts of another. *IIG Wireless, Inc. v. Yi*, 22 Cal. App. 5th 630, 652 (2018). A conspiracy requires evidence "that each member of the conspiracy acted in concert and came to a mutual understanding to accomplish a common and unlawful plan, and that one or more of them committed an overt act to further it." *Id.* at 652. Additionally, an inference supporting the knowledge and intent elements of civil conspiracy must logically flow from other established facts, and suspicions are not enough. *Contreras v. Dowling,* 5 Cal.App.5th 394 (2016). When fraud is alleged to be the object of a conspiracy, the claim must be plead with particularity. *Prakashpalan v. Engstrom, Lipcomb & Lack*, 223 Cal.App.4th 1105, 1136 (2014).

YUKEVICH | CAVANAUGH
355 S. GRAND AVENUE, 15TH FLOOR
LOS ANGELES, CALIFORNIA 90071-1560
TELEPHONE (213) 362-7777
FACSIMILE (213) 362-7788

Here, Plaintiff's vague contentions that all defendants conspired to "misrepresent NIK test results, deny fair tribunals, and falsely convict inmates," is purely conclusory and insufficient to withstand the present motion, especially given the heightened pleading standard for conspiracies allegedly aimed at fraud. The FAC merely offers vague, ambiguous, and threadbare allegations that fail to show how Safariland supposedly acted with the BOP or others, intended to pursue any unlawful objective, or even knew of any alleged conspiracy within the BOP. The FAC's sole claim of Safariland's role in forming the alleged conspiracy is "Safariland's continued supply of products despite knowledge of misuse." (FAC ¶171.) Plaintiff does not put forth sufficiently specific facts under the strict pleading standards for fraud to demonstrate that Safariland had actual knowledge of any planned tort or unlawful objective to result from the claimed conspiracy.

Further, even if Plaintiff could show Safariland knew of the BOP's alleged misuse, settled law makes clear that such knowledge, even of a planned tort, is not enough to support a conspiracy claim without evidence that Safariland intended to aid in committing the tort. The only mention in the FAC of an act by Safariland claimed to have been done in furtherance of the conspiracy is allegedly "misrepresenting burgundy baseline color as positive result." (FAC ¶172.) This baseless claim does not logically flow from the facts set forth in the FAC, and in fact is directly contradicted by Plaintiff's own concessions elsewhere in the FAC citing to direct language from Safariland's "product insert and color chart show[ing] that only BLUE indicates a positive result." (FAC ¶35.)

Plaintiff's allegations in support of his claim for civil conspiracy against Safariland is therefore completely conclusory, and are unsupported, or explicitly contradicted, by the specific facts pleaded in the FAC. Thus, the Court should dismiss the civil conspiracy claim (Count V, FAC ¶¶170-173) without leave to amend.

DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT PURSUANT TO FEDERAL RULE OF PROCEDURE 12(b)(6)

YUKEVICH | CAVANAUGH
355 S. GRAND AVENUE, 15TH FLOOR
LOS ANGELES, CALIFORNIA 90071-1560
TELEPHONE (213) 362-7777
FACSIMILE (213) 362-7788

### G.    Plaintiff Fails to Plead Sufficient Facts to Support a Claim for Punitive Damages.

1.    <u>Pleading Punitive Damages Under California Law is Substantive for Purposes of Assessing the Pleadings in This Case</u>

Classification of a law as being "substantive" or "procedural" requires courts to determine whether the application of a rule would "have *so* important an effect on the fortunes of…the litigants that failure to apply it would unfairly discriminate against citizens of the forum, or to be likely to cause a plaintiff to choose federal court." *Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415, 426 (1996). The important question is whether the rule in question "significantly affect(s) the result of a litigation." *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 406 (2010) (plurality opinion). Permitting plaintiffs the opportunity to plead punitive damages, without conforming to California law, would significantly affect the course and result of this litigation.

California has enacted a specific statutory scheme governing the recovery of punitive/exemplary damages within the state. *See* Cal. Civ. Code §§3294-3296. California case law supporting this scheme identifies that claims for these types of damages are *disfavored*. *See Dyna-Med, Inc. v. Fair Employment & Housing Com.* 43 Cal.3d 1379, 1393 (1987); *see also Beck v. State Farm Mut. Auto. Ins. Co.*, 54 Cal.App.3d 347, 355 (1976). And given their disfavored nature, California courts have developed case law to ensure that a party seeking punitive damages plead with particularity the basis upon which they seek such a recovery. *Clauson v. Superior Court*, 67 Cal.App.4th 1253, 1254-55 (1998).

2.    <u>Plaintiff's Prayer for Punitive Damages Should be Dismissed Because the Complaint Fails to Plead Specific Facts Sufficient to Establish the Requisite Malice, Oppression or Fraud</u>

California Civil Code section 3294 authorizes punitive damages upon a showing of malice, fraud, or oppression. Malice is defined as either "conduct which

YUKEVICH | CAVANAUGH
355 S. GRAND AVENUE. 15TH FLOOR
LOS ANGELES, CALIFORNIA 90071-1560
TELEPHONE (213) 362-7777
FACSIMILE (213) 362-7788

is intended by the defendant to cause injury to the plaintiff," or "despicable conduct which is carried on by the defendant with a willful and conscious disregard of the rights or safety of others." Cal. Civ. Code §3294(c)(1). Oppression is defined as "despicable conduct that subjects a person to cruel and unjust hardship in conscious disregard of that person's rights." Cal. Civ. Code §3294(c)(2). Both malice and oppression are defined in California Civil Code §3294 as involving "despicable conduct," which is conduct that is "so vile, base, contemptible, miserable, wretched or loathsome that it would be looked down upon and despised by ordinary decent people." *Mock v. Michigan Millers Mutual Ins. Co.* (1992) 4 Cal. App. 4th 306, 331. "[T]he adjective 'despicable' is a powerful term." *College Hospital, Inc. v. Superior Court* (1994) 8 Cal. 4th 704, 725. "Such conduct has been described as having the character of outrage frequently associated with crime." *Tomaselli v. Transamerica Ins. Co.* (1994) 25 Cal.App.4th 1269, 1287. California courts have held that the standard of adequate pleading of malicious conduct also applied to the pleading of oppressive conduct. *See Smith v. Superior Court*, 10 Cal. App. 4th 1033, 1041 (1992).

Accordingly, in order to withstand a motion to strike punitive damages, Plaintiff's FAC must plead specific and ultimate facts sufficient to establish that Defendant's conduct was either (1) intended to cause damages to plaintiff or (2) that the alleged conduct was so "base, vile or contemptible" that it would be despised and looked down upon by ordinary people. *See Id.*; *see also Clauson*, 67 Cal. App. 4th at 1254. Where a prayer for punitive damages is based on unsupported conclusions, those unsupported conclusions are properly stricken. *Faulkner v. California Toll Bridge Authority*, 40 Cal. 2d 317, 329 (1953).

/ / /

/ / /

/ / /

/ / /

YUKEVICH | CAVANAUGH
355 S. GRAND AVENUE, 15TH FLOOR
LOS ANGELES, CALIFORNIA 90071-1560
TELEPHONE (213) 362-7777
FACSIMILE (213) 362-7788

5024986.1                                    21                    Case No. 2-25-cv-11105-VBF-SK
DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED COMPLAINT PURSUANT TO FEDERAL RULE OF PROCEDURE 12(b)(6)

As described herein, Plaintiff has failed to allege, and is unable to allege, any facts to warrant an award of punitive damages under strict products liability under a failure to warn theory, fraudulent misrepresentation, fraudulent concealment, or civil conspiracy theories. Therefore, Plaintiff's claim and prayer for punitive damages against Safariland should be dismissed without leave to amend.

## H.    Plaintiff Lacks Article III Standing to Bring Claims for Equitable Relief.

Article III standing requires: (1) a concrete, particularized, and actual or imminent injury; (2) fairly traceable to the defendant's conduct; and (3) likely to be redressed by the requested relief. *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007) (en banc). The U.S. Supreme Court likewise holds that Article III imposes an "irreducible constitutional minimum" of standing, injury in fact, causation, and redressability, for every claim and every form of relief. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992). A plaintiff must establish standing for each form of relief requested, including prospective relief. *See Mayfield v. United States*, 599 F.3d 964, 969-70 (9th Cir. 2010).

The Ninth Circuit has repeatedly emphasized that past injury by itself does not confer standing to seek injunctive or declaratory relief. A plaintiff seeking prospective relief "must demonstrate that he is realistically threatened by a repetition of [the violation]." *Armstrong v. Davis*, 275 F.3d 849, 860-61 (9th Cir. 2001) (abrogated on other grounds by *Johnson v. California*, 543 U.S. 499, 504-05 (2005)). Past exposure to harm is "largely irrelevant" absent a showing of a "very significant possibility" of future harm to the plaintiff himself. *Nelsen v. King County*, 895 F.2d 1248, 1250-52 (9th Cir. 1990). "[T]he burden [of] showing a likelihood of recurrence [is] firmly on the plaintiff." *Sample v. Johnson*, 771 F.2d 1335, 1342 (9th Cir.1985); *City of Los Angeles v. Lyons*, 461 U.S. 95, 101-02 (1983).

///

YUKEVICH | CAVANAUGH
355 S. GRAND AVENUE, 15TH FLOOR
LOS ANGELES, CALIFORNIA 90071-1560
TELEPHONE (213) 362-7777
FACSIMILE (213) 362-7788

DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT PURSUANT TO FEDERAL RULE OF PROCEDURE 12(b)(6)

Where a plaintiff seeks both declaratory and injunctive relief based on past government conduct, the standing and ripeness inquiries for the two forms of relief are effectively the same: both require a non-speculative likelihood of future injury to the named plaintiff, not merely to third parties. *Hodgers-Durgin v. de la Vina*, 199 F.3d 1037, 1042-44 (9th Cir. 1999) (en banc).

Thus, even if Plaintiff had adequately pled past injury caused by Safariland for purposes of damages, he must still plead ongoing or imminent future injury redressable by prospective relief against Safariland. He has not.

         1.     <u>Plaintiff's Release from Custody Renders Moot Any Request for Prospective Relief Tied to Prison Practices</u>

The complaint acknowledges that Plaintiff "has been released from federal custody and is no longer under supervision." (FAC pp. 4 and 20.) Yet, Counts VIII and IX seek forward-looking declarations and injunctions about BOP disciplinary practices, use of Safariland NIK tests, and treatment of current federal inmates.

The Ninth Circuit holds that an inmate's release "generally will moot any claims for injunctive relief relating to the prison's policies unless the suit has been certified as a class action." *Dilley v. Gunn*, 64 F.3d 1365, 1368-69 (9th Cir. 1995); *see also Alvarez v. Hill*, 667 F.3d 1061, 1064 (9th Cir. 2012) (applying to declaratory relief). The Supreme Court applied the same rule in *Preiser v. Newkirk*, finding that an inmate's challenges to a prior transfer became moot once he returned to more favorable conditions, leaving no reasonable expectation that the complained-of conduct would recur. 422 U.S. 395, 401-03 (1975).

Plaintiff's release from BOP custody removes him entirely from BOP housing or disciplinary policies. As in *Alvarez*, where a released inmate alleged ongoing collateral consequences from past prison practices, the Ninth Circuit held that declaratory or injunctive relief "would have no practical impact on the inmate's rights and would not redress in any way the injury he originally asserted." 667 F.3d at 1064. Similarly, Plaintiff is no longer incarcerated and is not subject to BOP's use

DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT PURSUANT TO FEDERAL RULE OF PROCEDURE 12(b)(6)

YUKEVICH | CAVANAUGH
355 S. GRAND AVENUE, 15TH FLOOR
LOS ANGELES, CALIFORNIA 90071-1560
TELEPHONE (213) 362-7777
FACSIMILE (213) 362-7788

of NIK tests or any Safariland product, rendering declaratory or injunctive relief moot.

Plaintiff also cannot rely on the "capable of repetition, yet evading review" exception. *Alvarez* rejected this argument, holding that a former inmate's speculative possibility of returning to custody, requiring commission of a new crime, is too conjectural to preserve live claims for prospective relief. 667 F.3d at 1065. That is fully consistent with the Supreme Court's rule that, outside the class-action context, this exception applies only where there is a reasonable expectation that "the same complaining party" will again face the same challenged action, not a "mere physical or theoretical possibility" of recurrence. *Murphy v. Hunt*, 455 U.S. 478, 482 (1982) (per curiam).

Here, Plaintiff's allegations are but a "chain of speculative contingencies" that cannot sustain Article III jurisdiction. *See Nelsen*, 895 F.2d at 1252-54. Under *Dilley* and *Alvarez*, Plaintiff's release moots his requests for injunctive and declaratory relief about prison use of Safariland's NIK tests and related BOP policies, therefore, Counts VIII and IX fail to state a claim for prospective relief against Safariland.

2.    Plaintiff Lacks the Requisite Injury-in-Fact for Prospective Relief Against Safariland

The Complaint alleges past harm from alleged wrongful discipline and solitary confinement, along with ongoing reputational and psychological effects (e.g., stigma for "permanent disciplinary record" and PTSD symptoms). These allegations do not satisfy the Ninth Circuit's "real and immediate threat" standard for prospective relief. *Nelsen* explains that "[p]ast exposure to harm is not sufficient to confer standing" unless there is a "very significant possibility" of being harmed again. *Nelsen*, 895 F.2d, at 1250-51. Similarly, *Mayfield* holds that a plaintiff is entitled to injunctive relief only if he faces a "real or immediate threat" of being wronged again in a similar way. 599 F.3d at 970 (quoting *City of Los Angeles*, 461 U.S. at 111).

YUKEVICH | CAVANAUGH
355 S. GRAND AVENUE, 15TH FLOOR
LOS ANGELES, CALIFORNIA 90071-1560
TELEPHONE (213) 362-7777
FACSIMILE (213) 362-7788

Here, the Complaint alleges no realistic threat that Safariland's NIK tests will again be used against Plaintiff, that the same misinterpretation of "burgundy" will recur, or that BOP will again deny him due process. These risks are speculative and fall far short of the "credible threat" required. *Armstrong*, 275 F.3d at 860-61. Plaintiff lacks standing to seek declaratory or injunctive relief against Safariland.

> 3.  Plaintiff Lacks Standing to Bring Equitable Claims on Behalf of Other Prisoners

The wording of Counts VIII and IX confirms the Article III problem. Count VIII alleges an "actual controversy" regarding BOP's use of unconfirmed NIK tests, ex parte communications, retaliation, and the "one team" policy, among other issues. But, when Plaintiff explains why relief is "necessary," he says it is to protect current federal inmates from alleged BOP misconduct, citing imminent risk of unfair hearings and NIK test-based discipline. The requested equitable relief targets the BOP's actions, not Safariland's independent conduct. (FAC ¶3, 31-33).

The Ninth Circuit holds that named plaintiffs cannot obtain class-wide equitable relief for injuries they are unlikely to suffer themselves: without a likelihood of future harm, injunctive and declaratory relief claims are unripe. *Hodgers-Durgin*, 199 F.3d at 1042-44. The Supreme Court similarly emphasizes that federal courts exist to provide relief to those who have suffered or will imminently suffer actual harm, not to restructure institutions based on third-party injuries. *Lewis v. Casey*, 518 U.S. 343, 349-50 (1996). Here, Plaintiff's admitted aim "to protect current federal inmates from the same fraudulent practices and unfair tribunals" underscores that Counts VIII and IX seek systemic relief that *Lewis* forbids. Under *Hodgers-Durgin*, Plaintiff's failure to establish a likelihood of future injury is fatal to standing, for both injunctive and declaratory relief.

Additionally, pro se litigants have no authority to represent anyone other than themselves; therefore, they lack the representative capacity to file motions or other documents on behalf of others. See *Johns v. County of San Diego,* 114 F.3d 874, 877

DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT PURSUANT TO FEDERAL RULE OF PROCEDURE 12(b)(6)

YUKEVICH | CAVANAUGH
355 S. GRAND AVENUE, 15TH FLOOR
LOS ANGELES, CALIFORNIA 90071-1560
TELEPHONE (213) 362-7777
FACSIMILE (213) 362-7788

(9th Cir. 1997) ("[A] non-lawyer 'has no authority to appear as an attorney for others than himself.'" (quoting *C.E. Pope Equity Trust v. United States*, 818 F.2d 696, 697 (9th Cir. 1987)).

Therefore, even if Plaintiff did have standing to pursue his own equitable claims for relief, he would be unable to seek relief for other prisoners through his status as *pro se* litigant.

4. The Requested Equitable Relief Against Safariland Would Not Redress Plaintiff's Alleged Ongoing Injury

Even assuming Plaintiff has some ongoing injury (e.g., reputational consequences of his disciplinary record), he must still show that prospective relief against Safariland would likely redress that injury. *Bates*, 511 F.3d at 985; *Mayfield*, 599 F.3d at 970.

Here, any improvement in Plaintiff's status, expungement of his disciplinary record, restoration of good time, or changes to BOP NIK-testing policies, would turn entirely on BOP's discretionary decisions, which an order directed solely at Safariland cannot compel. Therefore, Plaintiff lacks standing and dismissal of the declaratory and injunctive relief claims is proper.

5. Declaratory Relief Is Purely Retrospective as to Safariland

Plaintiff's declaratory judgment request regarding Safariland's NIK tests is entirely retrospective. He asks the Court to declare that his past disciplinary conviction was based on fabricated evidence, that unconfirmed NIK test results were insufficient, that BOP's past practices violated due process and equal protection, and that prior directives contradicted manufacturer warnings.

The Ninth Circuit has cautioned that declaratory relief cannot be used to obtain a retrospective pronouncement of past governmental conduct when it will not alter the parties' legal rights going forward. *Mayfield*, 599 F.3d at 972. Here, as in *Mayfield*, Plaintiff's requested declarations would not change his legal status, modify any ongoing relationship with Safariland, or prevent future harm. They

YUKEVICH | CAVANAUGH
355 S. GRAND AVENUE, 15TH FLOOR
LOS ANGELES, CALIFORNIA 90071-1560
TELEPHONE (213) 362-7777
FACSIMILE (213) 362-7788

DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT PURSUANT TO FEDERAL RULE OF PROCEDURE 12(b)(6)

would operate solely as an advisory statement about past conduct, which is constitutionally insufficient to support a stand-alone claim for declaratory relief.

Accordingly, as to Safariland, Counts VIII (declaratory relief) and IX (injunctive relief) fail to allege a live Article III case or controversy and should be dismissed for lack of standing and mootness.

## IV.    CONCLUSION

For the foregoing reasons, Safariland respectfully requests that the Court grant the instant Motion to Dismiss in its entirety.

DATED: December 15, 2025          YUKEVICH | CAVANAUGH


By: */s/ Steven D. Smelser*
    Steven D. Smelser
    Sydney A. Shaffer
    Camille T. Baylis
    Attorneys for Defendant,
    SAFARILAND, LLC

YUKEVICH | CAVANAUGH
355 S. GRAND AVENUE, 15TH FLOOR
LOS ANGELES, CALIFORNIA 90071-1560
TELEPHONE (213) 362-7777
FACSIMILE (213) 362-7788

DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT PURSUANT TO FEDERAL RULE OF PROCEDURE 12(b)(6)

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendant Safariland, LLC, certifies that this brief contains 6,374 words, which:

☒ complies with the word limit of L.R. 11-6.1.

☐ complies with the word limit set by court order dated _____.

DATED: December 15, 2025____          */s/ Steven D. Smelser*

_____
Steven D. Smelser

YUKEVICH | CAVANAUGH
355 S. GRAND AVENUE, 15TH FLOOR
LOS ANGELES, CALIFORNIA 90071-1560
TELEPHONE (213) 362-7777
FACSIMILE (213) 362-7788

## PROOF OF SERVICE

### Billy F. Steffey vs. Colette S. Peters et al.
### USDC, Central Dist. of California - Case No. 2:25-cv-11105-VBF-SK

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

At the time of service, I was over 18 years of age and not a party to this action. I am employed in the County of Los Angeles, State of California. My business address is 355 S. Grand Avenue. 15th Floor, Los Angeles, CA 90071-1560.

On December 15, 2025, I served true copies of the following document(s) described as **DEFENDANT SAFARILAND, LLC'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6)** on the interested parties in this action as follows:

Billy F. Steffey                              Plaintiff Pro Per
229 Dragonfly Circle
Sacramento. CA 95834

**BY MAIL:** I enclosed the document(s) in a sealed envelope or package addressed to the persons at the addresses listed in the Service List and placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with the practice of Yukevich | Cavanaugh for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid. I am a resident or employed in the county where the mailing occurred. The envelope was placed in the mail at Los Angeles, California.

**BY CM/ECF NOTICE OF ELECTRONIC FILING:** I electronically filed the document(s) with the Clerk of the Court by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system. Participants in the case who are not registered CM/ECF users will be served by mail or by other means permitted by the court rules.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on December 15, 2025, at Los Angeles, California.

_____/s/ Martha Blancas Gutierrez_____
Martha Blancas Gutierrez

YUKEVICH | CAVANAUGH
355 S. GRAND AVENUE. 15TH FLOOR
LOS ANGELES, CALIFORNIA 90071-1560
TELEPHONE (213) 362-7777
FACSIMILE (213) 362-7788

5024986.1

Case No. 2-25-cv-11105-VBF-SK

DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT PURSUANT TO FEDERAL RULE OF PROCEDURE 12(b)(6)

# UNITED STATES DISTRICT COURT
## DISTRICT OF OREGON

BILLY F. STEFFEY,
Petitioner,

Case No.: 3:19-cv-00093-JR

v.

WARDEN J. SALAZAR,
Respondent.

# EXHIBIT F

## PLAINTIFF'S NOTICE OF SUPPLEMENTAL AUTHORITY

Attached to Petitioner's Rule 60(b) Motion for Relief from Judgment

BILLY STEFFEY
455 Capitol Mall ste. 802
Sacramento, CA 95814
Phone Number 916-955-6332
Email Address (bsteffey@mac.com)
Plaintiff In Pro Per

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

BILLY STEFFEY, (PRO SE)

    Plaintiff,

    vs.

COLETTE S. PETERS, et al,

    Defendant(s)

) Case No.: LA CV 25-11105-VBF-SK
)
)
)
) **PLAINTIFF'S NOTICE OF**
) **SUPPLEMENTAL AUTHORITY**
)
) *(Re: Miley v. Warden, FCI Beaumont Low (E.D.*
) *Tex. Aug. 2, 2023))*
)

Plaintiff respectfully submits the following supplemental authority discovered after Plaintiff's filing of Motion for Temporary Restraining Order and Preliminary Injunction / Opposition to Motion to Dismiss. This Notice is submitted solely for the Court's convenience and is limited to the authority identified below.

1. **Miley v. Warden, FCI Beaumont Low**, Civil Action No. 1:22-cv-00243-[…], (E.D. Tex. Aug. 2, 2023) (denying § 2241 petition). The court recounted that BOP staff used NIK field test kits and that **Test A** produced an orange-to-brown reaction and **Test U** produced a **blue** reaction, which was treated as a positive indication for methamphetamine. (Ex. A).

**Relevance:** In this case, the parties dispute the interpretation and reliability of NIK **Test U** color outcomes. Manufacturer training materials describe Test U as a test for "secondary amines," where **dark blue** indicates methamphetamine/MDMA, and note that Test U may appear **burgundy** as a baseline reaction and that a burgundy result is **negative for methamphetamine**. Miley is submitted as a concrete example of BOP's and a federal court's recognition that **blue** is the Test U indicator for methamphetamine.

Dated this 22nd day of December, 2025

BILLY STEFFEY
Plaintiff in Pro Per

## UNITED STATES DISTRICT COURT
## DISTRICT OF OREGON

BILLY F. STEFFEY,
Petitioner,

Case No.: 3:19-cv-00093-JR

v.

WARDEN J. SALAZAR,
Respondent.

# EXHIBIT G

## VERIFIED COMPLAINT (STEFFEY v. PETERS)

Attached to Petitioner's Rule 60(b) Motion for Relief from Judgment

UNITED STATES DISTRICT COURT CENTRAL DISTRICT OF CALIFORNIA

**BILLY STEFFEY,**
Plaintiff,

v.

**COLETTE S. PETERS,** in her o icial capacity as Director of the Federal Bureau of Prisons;
**M. WADE JENNINGS,** in his individual and o icial capacity;
**KEVIN SCHWINN,** in his individual and o icial capacity; **SAFARILAND, LLC;**
**R. JOHN LYNN,** Regional Special Investigative Agent (DOE 1);
**SIS TECHNICIAN S. AGUILAR,** (DOE 2);
**SIS LIEUTENANT [FIRST NAME UNKNOWN] JOHNSON,** (DOE 3);
**DISCIPLINE HEARING OFFICER WILLIAM J. CHETWOOD,** (DOE 4);
**DOES 5-50,**
Defendants.

Case No. _____

---

## VERIFIED COMPLAINT FOR:

1. DAMAGES UNDER THE FEDERAL TORT CLAIMS ACT
2. DAMAGES—PRODUCT LIABILITY AND FRAUD
3. CIVIL CONSPIRACY
4. DECLARATORY RELIEF
5. INJUNCTIVE RELIEF
6. RETALIATION FOR EXERCISE OF FEDERAL COURT ACCESS

**DEMAND FOR JURY TRIAL**

---

## PRELIMINARY STATEMENT

**This Case Exposes Three Interconnected Constitutional Violations:**

**PHASE 1 (FCI Lompoc, December 2017 - February 2018): Fraudulent Testing and Rigged Tribunal**

1

1. This action seeks to remedy a systematic, fraudulent, and unconstitutional scheme orchestrated by the highest levels of the Federal Bureau of Prisons in coordination with Defendant Safariland, LLC, involving the deliberate misrepresentation of negative drug test results as positive using NIK-brand chemical field tests.

2. This case is not about unreliable tests alone—it is about **intentional fraud authorized from the top of BOP leadership, systematic denial of fair tribunals through coordinated ex parte communications, and subsequent retaliation against Plaintiff for accessing the federal courts.**

3. On January 18, 2017, M. Wade Jennings, Administrator of BOP's Correctional Services Branch at BOP Central Office in Washington, D.C., issued an official SIS Advisory directing all BOP regions and institutions nationwide to interpret "burgundy" color results on NIK Test U as positive for Buprenorphine (Suboxone). **See Exhibit A** (January 18, 2017 SIS Advisory).

4. This directive directly contradicts Safariland's manufacturer warnings, which explicitly state: "An immediate dark blue color indicates Methamphetamine or MDMA (Ecstasy). If any other color develops, proceed to Test A."

5. **Plaintiff Billy Steffey created video evidence demonstrating that burgundy is the baseline color that appears automatically when a NIK Test U pouch is activated without any drugs or substances added. See Exhibit B** (Plaintiff's YouTube Video Demonstration, available at https://youtu.be/p8USQ642q7w). **The video proves that only blue indicates positive, and shows the blue reference square printed directly on the pouch itself to enable users to distinguish between negative (burgundy) and positive (blue) results. See Exhibit B.**

6. BOP Central Office knowingly created and distributed a fraudulent testing protocol that has resulted in thousands of false disciplinary convictions across the federal prison system.

7. Plaintiff Billy Steffey was falsely imprisoned in solitary confinement for approximately 6 months total, lost 41 days of vested good conduct time, and lost 180 days of commissary privileges based on this systematic fraud. Plaintiff has since been released from federal custody and is no longer under supervision.

8. At FCI Lompoc, SIS Technician Aguilar conducted fraudulent NIK tests, filed false incident reports, and then threatened Plaintiff before the DHO hearing, offering a "deal" for minimal sanctions if he did not contest the charges. These threats prove pre-hearing coordination with DHO Chetwood, violating *Wolf v. McDonnell*, 418 U.S. 539 (1975).

2

9. Despite Plaintiff's release, he continues to suffer permanent harm and damages from the fraudulent conviction and rigged tribunal, including emotional distress, reputational damage, lost earning capacity, and diminished job prospects.

**PHASE 2 (FCI Sheridan, After Habeas Filing): Retaliation for Federal Litigation**

10. **After Plaintiff was transferred to FCI Sheridan and filed his § 2241 habeas petition challenging the fraudulent conviction, Defendant SIS Lieutenant Johnson confronted Plaintiff and threatened him with indefinite SHU confinement if he did not abandon his federal litigation.**

11. **This threat by Lt. Johnson constitutes retaliation for Plaintiff's exercise of his First Amendment right to access the federal courts and petition for judicial review—a separate and independent constitutional violation.**

12. **Lt. Johnson's threat was coordinated with Defendant R. John Lynn, proving that BOP's response to federal oversight of the fraudulent NIK testing scheme was to threaten and coerce inmates into abandoning federal litigation.**

13. Defendants have conspired to conceal this fraud and deny fair hearings by:

    - Directing staff to manipulate incident report documentation **See Exhibit A**
    - Establishing official "one team" policy coordinating ex parte communications between SIS investigators and DHO adjudicators **See Exhibit A**
    - Instructing DHOs not to require laboratory confirmation **See Exhibit D**
    - Pre-arranging appeals denials with Office of General Counsel **See Exhibit A**
    - Retaliating against Plaintiff for federal litigation **See Sheridan incident**
    - Destroying and concealing evidence

14. This action seeks monetary damages for all harm suffered, declaratory relief establishing inmates' right to fair tribunals free from ex parte communications and retaliation, and injunctive relief to remedy the harm to Plaintiff, prevent ongoing harm to thousands of current federal inmates, and ensure that future disciplinary proceedings provide fair and impartial tribunals with reliable evidence.

---

3

## JURISDICTION AND VENUE

15. This Court has jurisdiction under 28 U.S.C. § 1331 (federal question jurisdiction), 28 U.S.C. § 1346(b) (Federal Tort Claims Act), and 42 U.S.C. § 1983 (civil rights violations).

16. Venue is proper in the Eastern District of California under 28 U.S.C. § 1391(b) and 28 U.S.C. § 1402(b) because Plaintiff's disciplinary conviction occurred at FCI Lompoc, located within this district, and a substantial part of the events giving rise to Plaintiff's claims occurred in this district.

17. Plaintiff has exhausted administrative remedies through the BOP administrative remedy process (BP-9, BP-10, BP-11).

---

## PARTIES

### Plaintiff

18. Billy Steffey is a former federal inmate who was confined in the custody of the Federal Bureau of Prisons and released from federal custody. At all times relevant to Phase 1 of this Complaint, Plaintiff was confined at FCI Lompoc, a federal correctional institution located in Lompoc, California, within the Eastern District of California. At all times relevant to Phase 2 of this Complaint, Plaintiff was confined at FCI Sheridan. Plaintiff is no longer under BOP custody or supervision and now resides as a free citizen in California.

### Defendants - Federal Defendants

19. **Colette S. Peters** is the Director of the Federal Bureau of Prisons and is sued in her official capacity. Director Peters is responsible for the policies, practices, and operations of BOP, including the systematic fraud scheme and unconstitutional ex parte communication practices described herein. Director Peters' office is located at 320 First Street, NW, Washington, DC 20534.

20. **M. Wade Jennings** was, at all relevant times, the Administrator of the Correctional Services Branch at BOP Central Office, Intelligence Section, located at 320 First Street, NW, Room 543, Washington, DC 20534. Jennings is sued in both his individual and official capacity for:

    - Authoring and signing the January 18, 2017 SIS Advisory directing all BOP staff nationwide to misrepresent burgundy NIK Test U results as positive **See Exhibit A**
    - Creating the fraudulent NIK testing protocol that contradicts manufacturer warnings and scientific reality (as proven by Plaintiff's video) **See Exhibits A and B**

4

- Knowingly disseminating false information to all BOP regions and institutions **See Exhibit A**
- Conspiring with Safariland and subordinate officials to implement systematic fraud
- Establishing BOP-wide policy authorizing ex parte communications and coordinated convictions

21. **Kevin Schwinn** was, at all relevant times, Chief of Operations, Intelligence Section at BOP Central Office, located at 320 First Street, NW, Room 543, Washington, DC 20534. Schwinn is sued in both his individual and official capacity for:

- Co-signing and approving the January 18, 2017 SIS Advisory **See Exhibit A**
- Supervising and directing the fraud scheme **See Exhibit A**
- Coordinating with Safariland on fraudulent testing protocols
- Conspiring to conceal the fraud from inmates and courts
- Authorizing systematic ex parte communications between SIS and DHOs

22. **R. John Lynn** was, at all relevant times, a Regional Special Investigative Agent (SIA) assigned to BOP's Western Regional Office, located at 7338 Shoreline Drive, Stockton, California. Lynn is sued in his individual and official capacity for:

- Distributing Wade Jennings' fraudulent SIS Advisory to Western Region institutions on January 23, 2018 **See Exhibit A**
- Directing subordinate SIS staff to follow the fraudulent testing protocol **See Exhibit A**
- **Explicitly instructing SIS staff to engage in ex parte communications with DHOs: "Like always, please be sure to communicate with your DHO. They will provide you guidance and advise on what they review on their side of the house legal side to ensure all supporting documentation and evidence is present." See Exhibit A**
- **Declaring that SIS, DHOs, and OGC are "all on one team" working together to "hold the inmates accountable" See Exhibit A**
- Coordinating with Discipline Hearing Officers to deny appeals and prevent exposure of fraud **See Exhibit A**
- Threatening staff with loss of support from Office of General Counsel if they failed to follow fraudulent procedures **See Exhibit A**
- Instructing staff to manipulate documentation to "ensure we are holding the inmates accountable" and prevent inmates from "beating us based on technicalities" **See Exhibit A**
- Establishing systematic policy of pre-hearing coordination between investigators and adjudicators, violating *Wolf v. McDonnell*

5

- **Coordinating with Lt. Johnson to threaten Plaintiff after federal litigation was filed** (Phase 2)

23. **SIS Technician S. Aguilar** was, at all relevant times, a Special Investigative Services technician employed by BOP at FCI Lompoc. Aguilar is sued in his individual and official capacity for:

   - Conducting NIK tests on Plaintiff's intercepted mail on December 5, 2017 at FCI Lompoc
   - Testing paper in violation of manufacturer warnings stating "Do NOT perform test on paper substrates" **See Exhibit C**
   - Documenting a burgundy color on NIK Test U
   - Knowingly misrepresenting the burgundy result as positive for amphetamines, following fraudulent directives **See Exhibits A and B**
   - Following fraudulent directives from Wade Jennings and R. John Lynn **See Exhibit A**
   - **Engaging in pre-hearing threats and coercion at FCI Lompoc (late December 2017 - early February 2018), threatening Plaintiff with maximum sanctions and federal prosecution if he contested the charges**
   - **Offering a "deal" for minimal sanctions if Plaintiff admitted guilt without contesting**
   - **Engaging in ex parte communications with DHO Chetwood before Plaintiff's hearing** (violating *Wolf v. McDonnell*)
   - Fabricating evidence to support false disciplinary charges

24. **SIS Lieutenant [First Name Unknown] Johnson** was employed by BOP, serving at FCI Lompoc and later at FCI Sheridan. Johnson is sued in his individual and official capacity for:

   **CRITICAL TIMING DISTINCTION:** Lt. Johnson had NO INVOLVEMENT in the initial NIK testing, incident report filing, or pre-hearing threats at FCI Lompoc in December 2017 or January-February 2018. The following conduct occurred AFTER Plaintiff was transferred to FCI Sheridan and AFTER Plaintiff filed his federal habeas petition:

   - **Being stationed at FCI Sheridan AFTER Plaintiff's transfer from FCI Lompoc**
   - **Confronting Plaintiff at FCI Sheridan AFTER Plaintiff had filed his § 2241 habeas petition**
   - **Threatening Plaintiff with indefinite SHU confinement if he did not abandon his federal litigation challenging the NIK test fraud**
   - **Explicitly retaliating against Plaintiff's exercise of his First Amendment right to access the courts**
   - **Coordinating with Defendant R. John Lynn to suppress Plaintiff's federal litigation**

6

- Committing Abuse of Process by using his authority as a SIS lieutenant to coerce abandonment of federal litigation
- Violating Plaintiff's constitutional rights by threatening punishment for exercising his right to petition the federal courts

25. **Discipline Hearing Officer William J. Chetwood** was, at all relevant times, a Discipline Hearing Officer employed by BOP and assigned to FCI Lompoc. Chetwood is sued in his individual and official capacity for:

- Conducting Plaintiff's disciplinary hearing on February 13, 2018 **See Exhibit D**
- **Falsely claiming in his declaration to be an "impartial hearing officer who does not investigate or have any prior knowledge concerning an alleged rule violation before it is referred to me for consideration" See Exhibit D**
- **This claim is provably false because Chetwood received ex parte communications from SIS staff (Aguilar) before the hearing, as evidenced by Aguilar's pre-hearing "deal" offer, which required coordination with Chetwood on specific sanctions See Exhibit D**
- Finding Plaintiff guilty based solely on fraudulent NIK test results **See Exhibit D**
- Failing to require laboratory confirmation despite knowing NIK tests are unreliable **See Exhibit D**
- **Engaging in ex parte communications with SIS staff in advance of the hearing as directed by R. John Lynn's "one team" policy See Exhibits A and D**
- Imposing sanctions (41 days loss of good conduct time, 180 days commissary loss, 60 days disciplinary segregation suspended, 1 year visitation loss suspended) based on fabricated evidence and rigged hearing **See Exhibit D**
- **The suspension of the most severe sanctions (60 days DS, 1 year visitation loss) suggests consciousness of guilt and awareness of the case's weakness See Exhibit D**
- Violating Plaintiff's constitutional right to a fair and impartial tribunal under *Wolf v. McDonnell*

26. **DOES 5-50** are additional BOP employees, officials, and agents whose identities are presently unknown to Plaintiff but who participated in the fraudulent scheme and systematic ex parte communications, including:

- BOP Central Office officials who approved or coordinated the fraud **See Exhibit A**
- Regional Directors who distributed Wade Jennings' directives **See Exhibit A**
- Other SIS personnel who implemented the fraudulent testing protocol and engaged in ex parte communications **See Exhibit A**

7

- Other DHOs who convicted inmates based on fraudulent NIK results following ex parte coordination **See Exhibit A**
- Office of General Counsel attorneys who coordinated appeals denials as part of the "one team" **See Exhibit A**

**Corporate Defendant**

27. **Safariland, LLC** is a limited liability company organized under the laws of Florida, with its principal place of business in Jacksonville, Florida. Safariland manufactures, markets, and sells NIK-brand narcotics identification test kits, including those used by BOP to falsely convict Plaintiff and thousands of other federal inmates. Safariland is subject to personal jurisdiction in California because it:
    - Contracts with BOP to supply NIK test kits to California federal prisons, including FCI Lompoc
    - Provides training and technical support to BOP staff in California
    - Markets and sells products for use in California
    - **Knew or should have known its products were being misused in California through fraudulent interpretation of burgundy results as positive when Plaintiff's video proves burgundy is the baseline color See Exhibits A and B**

---

## FACTUAL ALLEGATIONS

**PHASE 1: FRAUDULENT TESTING AND RIGGED TRIBUNAL AT FCI LOMPOC (December 2017 - February 2018)**

**I. The Wade Jennings Directive: Fraud Authorized from BOP Central Office**

28. On January 18, 2017, M. Wade Jennings, Administrator of BOP's Correctional Services Branch at Central Office in Washington, D.C., issued an official SIS Advisory titled "Buprenorphine HCL (suboxone) Incident Reports." **See Exhibit A.**

29. The January 18, 2017 SIS Advisory was distributed to:

    - All Regional Directors
    - All Wardens
    - All Special Investigative Services (SIS) personnel
    - All Correctional Services staff
    - BOP Central Office departments

**See Exhibit A.**

30. The January 18, 2017 SIS Advisory was co-signed by Kevin Schwinn, Chief of Operations, Intelligence Section, BOP Central Office. **See Exhibit A.**

8

31. The January 18, 2017 SIS Advisory directs BOP staff nationwide to use NIK Tests A, U, and K in sequence to identify Buprenorphine HCL (Suboxone). **See Exhibit A.**

32. Most critically, the January 18, 2017 SIS Advisory states: "NIK Test U - Methamphetamine Reagent - results are BURGANDY" (emphasis in original). **See Exhibit A.**

33. The January 18, 2017 SIS Advisory also states: "In the September 29, 2015 SIS Advisory, the color change in NIK Test U was reported as BROWN. The color change should have been reported as BURGANDY." **See Exhibit A.**

34. This directive to interpret burgundy as a positive result directly contradicts Safariland's manufacturer instructions for NIK Test U, which state: "[Test U] An immediate dark blue color indicates Methamphetamine or MDMA (Ecstasy). If any other color develops, proceed to Test A."

35. Safariland's product insert and color chart show that only BLUE indicates a positive result for NIK Test U. Burgundy is NOT listed as a positive result.

36. **Plaintiff created video evidence that objectively and scientifically proves burgundy is the baseline color and NOT a positive result. See Exhibit B** (Plaintiff's Video Demonstration at https://youtu.be/p8USQ642q7w).

37. **In Exhibit B, Plaintiff's video demonstrates:**

- **An unopened NIK Test U pouch is activated**
- **No drugs or substances are added**
- **The chemicals automatically mix and turn burgundy**
- **A blue reference square is visible on the pouch itself**
- **Only blue indicates positive; burgundy is negative**

**See Exhibit B.**

38. BOP Central Office knew or should have known that:

- Burgundy is not a positive result according to the manufacturer
- Burgundy is the baseline color when the test is activated **See Exhibit B**
- Safariland's instructions explicitly state only BLUE indicates positive
- Interpreting burgundy as positive would result in false positives **See Exhibit B**

39. Despite this knowledge, Wade Jennings and Kevin Schwinn authorized and distributed the fraudulent directive to all BOP facilities nationwide, creating official policy that contradicts manufacturer warnings and scientific reality. **See Exhibits A and B.**

9

40. The January 18, 2017 SIS Advisory proves this is not isolated misconduct by individual staff members, but rather systematic fraud authorized by BOP's senior leadership and implemented as official policy. **See Exhibit A.**

## II. R. John Lynn Implements the Fraud and Establishes "One Team" Ex Parte Communications Policy

41. On January 23, 2018, R. John Lynn, Regional Special Investigative Agent for BOP's Western Regional Office, sent an email to all Western Region SIS personnel and Captains with the subject line "Suboxone related Incident Reports." **See Exhibit A.**

42. R. John Lynn's January 23, 2018 email states: "You must test the substance Using NIK Test Kit 'A' then 'U' then 'K.' (As outlined in the attached SIS Advisement, and NIK Test chart)" **See Exhibit A.**

43. R. John Lynn attached Wade Jennings' January 18, 2017 SIS Advisory to his email, directing Western Region staff to follow the fraudulent testing protocol. **See Exhibit A.**

44. R. John Lynn's January 23, 2018 email reveals the coordinated nature of the conspiracy, stating: "We have lost too many Incident Reports to appeals based on staff not being certified, identifying the drug by the brand name Suboxone instead of the drug name Buprenorphine, not identifying the person who conducted the testing and/or not testing with A, U and K. If you fail to do any of these steps, the inmate will win his appeal because OGC will not support you IR without these steps being followed." **See Exhibit A.**

45. This statement proves:

   - BOP was losing appeals because inmates challenged NIK test reliability
   - BOP Office of General Counsel (OGC) was pre-coordinating which cases to support before hearings even occurred **See Exhibit A**
   - The goal was not accuracy—it was preventing inmates from "winning" appeals **See Exhibit A**

46. R. John Lynn's email further states: "But lets not let the inmates beat us based on technicalities." **See Exhibit A.**

47. This language reveals the adversarial mindset underlying the fraud: BOP viewed scientific accuracy and manufacturer warnings as "technicalities" to be circumvented, not legal and ethical obligations to be followed. **See Exhibit A.**

48. **MOST CRITICALLY, R. John Lynn's email explicitly instructs SIS staff to engage in ex parte communications with DHOs, stating: "Like always, please be sure to communicate with your**

10

DHO. They will provide you guidance and advise on what they review on their side of the house legal side to ensure all supporting documentation and evidence is present." See Exhibit A.

49. R. John Lynn's email then declares: "Remember we are all on one team and at the end of the day, all of us want to make sure we are holding the inmates accountable for their actions." See Exhibit A.

50. This "one team" language proves that BOP does not provide fair and impartial tribunals as required by *Wolf v. McDonnell*, 418 U.S. 539 (1975). Instead, BOP treats disciplinary proceedings as coordinated prosecutions where:

- The investigator (SIS) and adjudicator (DHO) are "one team" See Exhibit A
- The investigator provides ex parte "guidance" to the adjudicator before the hearing See Exhibit A
- The adjudicator and investigator coordinate to "ensure" conviction ("holding the inmates accountable") See Exhibit A
- Office of General Counsel pre-coordinates which cases to support before hearings occur See Exhibit A

51. This systematic practice of ex parte communications violates the fundamental requirement of *Wolf v. McDonnell* that inmates receive "written notice of the charges," "a written statement by the factfinders," and a hearing before an "impartial" tribunal. 418 U.S. at 563-72. An adjudicator who receives ex parte communications from the investigator and views themselves as part of "one team" with the investigator is not impartial.

52. R. John Lynn's January 24, 2018 follow-up email states he had a "conversation with Central Office" clarifying testing procedures, proving ongoing coordination between Regional and Central Office leadership. **See Exhibit A.**

53. **R. John Lynn's January 25, 2018 email to DHO Hernandez forwards his SIS directive and asks Hernandez to "send this out to your DHOs as a follow up," proving systematic coordination between SIS and DHOs across the Western Region. See Exhibit A.**

### III. The Fraudulent K2/Spice Testing Protocol

54. The January 18, 2017 SIS Advisory purports to create a multi-test sequence (NIK Tests A, U, and K) for identifying Buprenorphine (Suboxone). **See Exhibit A.**

11

55. Safariland never validated this testing sequence. The NIK test manufacturer instructions do not describe using Tests A, U, and K in combination for any substance.

56. BOP invented this testing protocol without scientific validation, creating the false impression that the multi-test sequence is a legitimate forensic method. **See Exhibit A.**

57. BOP further misused this invented protocol by claiming it could detect K2/Spice (synthetic cannabinoids), despite the scientific impossibility of detecting synthetic cannabinoids using colorimetric field tests. **See Exhibit C** (Clark Bailey incident report documenting burgundy NIK Test U result on greeting cards, misrepresented as positive for "Methamphetamine Reagent which indicates the presence of Amphetamine").

58. Synthetic cannabinoids are a diverse class of hundreds of chemical compounds that cannot be reliably detected using simple color-change tests designed for traditional drugs.

59. Safariland has never claimed that NIK tests can detect K2/Spice. No scientific literature supports the use of NIK tests for synthetic cannabinoid detection.

60. BOP's invention of a fraudulent K2 detection method using NIK tests demonstrates deliberate misrepresentation and fraud, not mere negligence or error. **See Exhibits A and C.**

### IV. Safariland's Manufacturer Warnings

61. Safariland's NIK test instructions prominently warn: "Do NOT perform test on paper substrates. False color reactions may result."

62. Safariland's instructions further warn: "ALL TEST RESULTS MUST BE CONFIRMED BY AN APPROVED ANALYTICAL LABORATORY!" (emphasis in original)

63. Despite these explicit warnings, BOP policy and practice:
    - Allows and encourages testing of paper substrates (letters, envelopes, packaging) **See Exhibit C** (testing on greeting cards)
    - Does not require laboratory confirmation of NIK test results before imposing discipline **See Exhibit D**
    - Treats NIK test results as definitive proof of drug possession **See Exhibit D**

64. BOP's double standard: BOP regulations require laboratory confirmation of positive urine drug tests before disciplinary action (28 C.F.R. § 550.42(c)), but BOP imposes no such requirement for NIK field tests, despite NIK tests being far less reliable than urinalysis.

12

65. This discriminatory double standard violates equal protection principles and demonstrates BOP's knowledge that NIK tests are unreliable—yet BOP uses them anyway to maximize disciplinary convictions.

## V. Scientific Evidence of NIK Test Unreliability

66. **New York State Inspector General Report (2020):** Found 38% false positive rate for NARK II tests (same manufacturer as NIK tests), leading to suspension of tests and expungement of 2,772 disciplinary records.

67. **Massachusetts Federal Court (2021):** Issued injunction against NIK tests in Massachusetts DOC, finding tests "arbitrary" and "unlawful guess-work" with 38% false positive rate.

68. **New York City Department of Investigation:** Found 85% false positive rate for fentanyl detection using field tests in NYC jails.

69. **Scientific Working Group for the Analysis of Seized Drugs (SWGDRUG):** Classifies color tests as Category C (lowest reliability) and requires confirmatory testing before relying on results.

70. **ASTM E2329-14:** Industry standard requiring validated methods and confirmatory testing for drug identification—NIK tests as used by BOP violate this standard.

71. **California Courts:** Multiple state courts have found NIK tests inadmissible under Frye/Kelly and Sargon standards due to lack of scientific reliability.

72. BOP knew or should have known of this scientific evidence demonstrating NIK test unreliability, yet continued to use NIK tests without confirmation as the sole basis for disciplinary convictions. **See Exhibit A** (directive to use unreliable tests).

## VI. Plaintiff's Disciplinary Case at FCI Lompoc   December 5, 2017: Interception of Mail

73. On December 5, 2017, mail addressed to inmate Patrick Johnson at FCI Lompoc was intercepted by BOP staff.

74. The mail consisted of papers in an envelope purportedly from "Law Offices of Leslie R. Ramos, 901 H Street, Sacramento, CA 95814." **See Exhibit D.**

75. Plaintiff had no involvement in sending or requesting this mail. Plaintiff did not know Patrick Johnson personally and had never communicated with him about legal mail or any other subject.

76. BOP staff claimed the mail was linked to Plaintiff based on:

13

- TRUVIEW data showing Plaintiff and Johnson had a "money link" (unspecified financial transaction)
- Email communications between Plaintiff and "Lisa Rassmussen" at "inmateresources@protonmail.com" **See Exhibit D**

77. Plaintiff's emails with "Lisa Rassmussen" concerned:

- Assistance with a 28 U.S.C. § 2255 petition (federal habeas case)
- Assistance with eviction proceedings for Plaintiff's rental property

**See Exhibit D.**

78. Plaintiff had no knowledge that "Lisa Rassmussen" was connected to any mail sent to Patrick Johnson or that anyone was using attorney Leslie R. Ramos' name and address without authorization.

79. **Attorney Leslie R. Ramos has confirmed she has no knowledge of Plaintiff, Patrick Johnson, or "Lisa Rassmussen," and did not authorize use of her name or law firm address. See Exhibit D** (DHO Chetwood's declaration documenting attorney Ramos' statement that she has never heard of Petitioner or anyone named Lisa Rassmussen, sent no mail to FCI Lompoc, and has learned that inmates are using her name as a false sender of bogus legal mail).

### December 5, 2017: NIK Testing on Paper

80. On December 5, 2017, SIS Technician S. Aguilar conducted NIK tests on the paper from the intercepted mail.

81. Aguilar tested the paper using NIK Test A and NIK Test U, in direct violation of Safariland's warning: "Do NOT perform test on paper substrates." **Compare Exhibit C** (Clark Bailey incident documenting similar testing on paper/greeting cards).

82. Aguilar documented the test results in Incident Report No. 3084272 as follows:

- "NIK Test A... turned an orange turning brown color"
- "NIK Test U... turned an immediate dark burgundy color"

**See Exhibit D.**

83. Aguilar then misrepresented the test results, stating: "The NIK Test U turning an immediate dark burgundy color is a positive indication of the presence of Amphetamines."

84. **This statement is scientifically false. Plaintiff created video evidence proving that burgundy is the baseline color that appears automatically when the chemicals mix, even without any drugs present. See Exhibit B. The video shows the blue reference square on the pouch, confirming that only blue indicates positive—not burgundy. See Exhibit B.**

14

85. Aguilar knew or should have known the result was negative because:

- He had access to NIK test instructions stating only blue is positive
- The NIK Test U pouch itself contains a blue reference square showing what positive (blue) looks like **See Exhibit B**
- He had been trained (or should have been trained) on proper test interpretation
- He received Wade Jennings' directive and R. John Lynn's emails instructing him to misrepresent burgundy as positive **See Exhibit A**

86. Aguilar acted pursuant to the fraudulent directives from BOP Central Office (Wade Jennings) and Western Regional Office (R. John Lynn), making this not isolated misconduct but rather implementation of systematic fraud. **See Exhibit A.**

### January 31, 2018: Incident Report Filed and Ex Parte Coordination Begins

87. On January 31, 2018, nearly two months after the alleged incident, SIS Technician Aguilar filed Incident Report No. 3084272 charging Plaintiff with:

    **Code 111:** Possession of any narcotics, marijuana, drugs, alcohol, intoxicants, or related paraphernalia, not prescribed for the individual by the medical staff

88. The delay in filing the incident report is suspicious and suggests coordination with DHO and Regional officials to ensure Plaintiff's conviction. **See Exhibit D** (DHO Chetwood acknowledging delay).

### Late December 2017 - February 2018: Pre-Hearing Threats and Coercion by Aguilar at FCI Lompoc

89. **While Plaintiff remained at FCI Lompoc awaiting the February 13, 2018 disciplinary hearing, SIS Technician Aguilar threatened and coerced Plaintiff.**

90. Aguilar approached Plaintiff and:

- Told Plaintiff that if he did not "fight" the charges (i.e., if he accepted the fabricated charges), he would receive minimal sanctions
- Threatened Plaintiff that if he contested the charges and pursued litigation, he would receive maximum sanctions including extended SHU confinement and loss of good conduct time
- **Threatened to contact the Assistant U.S. Attorney to pursue federal criminal prosecution** if Plaintiff challenged the NIK test results
- Stated the "deal" required Plaintiff to admit guilt and not contest the fabricated evidence

15

91. These threats by Aguilar demonstrate consciousness of guilt: if the NIK test results were legitimate, there would be no need to threaten Plaintiff into accepting them.

92. These threats also prove pre-hearing coordination between SIS (Aguilar) and DHO (Chetwood): Aguilar could only offer a "deal" for specific sanctions if he had already communicated with DHO Chetwood about what sanctions would be imposed— classic ex parte communication in violation of *Wolf v. McDonnell.* See Exhibit A (proving systematic practice of SIS-DHO coordination).

**February 13, 2018: Sham Disciplinary Hearing Following Ex Parte Communications**

93. On February 13, 2018, Discipline Hearing Officer William J. Chetwood conducted Plaintiff's disciplinary hearing at FCI Lompoc. **See Exhibit D.**

94. DHO Chetwood falsely claimed in his declaration to be an "impartial hearing officer who does not investigate or have any prior knowledge concerning an alleged rule violation before it is referred to me for consideration." See Exhibit D.

95. This statement is provably false. DHO Chetwood received ex parte communications from SIS staff before the hearing, as evidenced by:

- R. John Lynn's directive to SIS staff to "communicate with your DHO" See Exhibit A
- R. John Lynn's "one team" declaration See Exhibit A
- R. John Lynn's instruction that DHOs "provide you guidance and advise on what they review on their side of the house legal side" See Exhibit A
- Aguilar's pre-hearing "deal" offer to Plaintiff, which required coordination with DHO about specific sanctions
- The 2-month delay between incident and hearing, providing ample time for coordination See Exhibit D

96. At the hearing, Plaintiff:

- Contested the charges and denied possessing, introducing, or arranging for contraband
- Objected to the NIK test results, arguing they were unreliable and violated manufacturer warnings
- Requested laboratory confirmation of the alleged drug presence
- Challenged the testing of paper in violation of manufacturer warnings
- Presented evidence of NIK test unreliability

**See Exhibit D.**

16

97. DHO Chetwood rejected all of Plaintiff's objections and refused to require laboratory confirmation, stating the NIK test results alone were sufficient evidence. **See Exhibit D.**

98. **DHO Chetwood's refusal to require laboratory confirmation proves he was following the "one team" agenda established by R. John Lynn: "ensure we are holding the inmates accountable" and don't let them "beat us based on technicalities." See Exhibit A.**

99. DHO Chetwood found Plaintiff guilty based solely on the fraudulent NIK test results and ex parte communications with SIS. **See Exhibit D.**

100. DHO Chetwood imposed sanctions:

- Loss of 41 days of vested good conduct time
- Loss of 180 days of commissary privileges
- 60 days of disciplinary segregation (suspended)
- 1 year loss of visitation privileges (suspended)

**See Exhibit D.**

101. **The suspension of the most severe sanctions (60 days DS, 1 year visitation loss) suggests DHO Chetwood had consciousness of guilt and knew the conviction was based on fraudulent evidence and an unfair tribunal—yet he convicted anyway following the "one team" directive. See Exhibits A and D.**

102. The imposition of these sanctions based on a fraudulent test result, following ex parte communications, and without laboratory confirmation, violated Plaintiff's constitutional rights to due process and a fair tribunal under *Wolf v. McDonnell*, 418 U.S. 539 (1975).

## February 2018 - June 2018: SHU Confinement at FCI Lompoc (Approximately 6 Months)

103. From approximately late December 2017 through late June 2018 (approximately 6 months total), Plaintiff was confined in the Special Housing Unit (SHU) at FCI Lompoc based on the fraudulent disciplinary conviction:
- Pre-hearing detention: approximately 6 weeks (late December 2017 - early February 2018)
- Post-hearing segregation: approximately 5.5 months (February 2018 - late June 2018)

104. SHU conditions included:
- 23-hour daily lockdown in a small cell
- Isolation from general population
- Severely limited human contact
- Restricted access to phone, visitation, recreation, programs, and services

- Severe psychological trauma including depression, anxiety, insomnia, feelings of hopelessness, and lasting PTSD symptoms

105. Plaintiff was falsely imprisoned in solitary confinement for six months based on:
    - Fabricated evidence (scientifically provable false positive NIK test result) **See Exhibits A and B**
    - Fraudulent directives from BOP leadership **See Exhibit A**
    - A rigged tribunal tainted by systematic ex parte communications **See Exhibits A and D**
    - Denial of fair hearing in violation of *Wolf v. McDonnell*

106. This prolonged solitary confinement, which is scientifically documented to cause severe psychological harm, was inflicted based on fraudulent evidence and unconstitutional procedures, constituting cruel and unusual punishment in violation of the Eighth Amendment.

### Post-June 2018: Punitive Transfer from FCI Lompoc to FCI Sheridan

107. Following the 6-month SHU sentence, Plaintiff was transferred from FCI Lompoc Low to FCI Sheridan, a higher-security federal prison. This transfer was punitive and directly resulting from the fraudulent disciplinary conviction. This transfer:
    - Separated Plaintiff from legal resources and support networks
    - Increased security level classification and restrictions
    - Extended his total imprisonment beyond what would have occurred absent the false conviction

---

### PHASE 2: RETALIATION FOR FEDERAL LITIGATION AT FCI SHERIDAN (After Habeas Filing)

### VII. Administrative Appeals and Habeas Corpus Filing

108. Plaintiff exhausted BOP's administrative remedy process, filing appeals at the institution (BP-9), regional (BP-10), and Central Office (BP-11) levels.

109. All appeals were denied, with BOP claiming the NIK test results provided "some evidence" of guilt.

110. BOP's appeal denials failed to address:

- Manufacturer warnings against testing paper
- Manufacturer requirement for laboratory confirmation
- **Scientific evidence that burgundy is NOT a positive result See Exhibit B**
- **Plaintiff's video evidence proving burgundy is baseline color See Exhibit B**

18

- Wade Jennings' fraudulent directive contradicting manufacturer instructions **See Exhibit A**
- BOP's double standard (requiring confirmation for urine tests but not NIK tests)
- Systematic ex parte communications violating *Wolf v. McDonnell* **See Exhibit A**
- R. John Lynn's "one team" directive **See Exhibit A**

111. BOP's coordinated appeals denials were part of the conspiracy to conceal the fraud, as evidenced by R. John Lynn's email directing staff to follow procedures "because OGC will not support you IR without these steps being followed." **See Exhibit A.**

112. **This statement proves OGC was pre-coordinating which cases to support before hearings even occurred, making OGC part of the "one team" working to ensure convictions rather than fair adjudications. See Exhibit A.**

113. Plaintiff filed a petition for writ of habeas corpus under 28 U.S.C. § 2241 in the U.S. District Court for the District of Oregon (Case No. 3:19-cv-00093-JR) challenging his disciplinary conviction.

114. The habeas petition was subject to the highly deferential "some evidence" standard of review under *Superintendent v. Hill*, 472 U.S. 445 (1985), which requires only that "there is some evidence in the record" to support the disciplinary finding—a far lower standard than preponderance of the evidence.

115. On May 18, 2020, the District Court denied the habeas petition, finding the NIK test results provided "some evidence" under the deferential standard, while acknowledging NIK tests are unreliable and manufacturer warns against testing paper.

116. Plaintiff voluntarily dismissed his Ninth Circuit appeal when granted early release due to COVID-19.

**VIII. Retaliatory Threat by Lt. Johnson at FCI Sheridan   CRITICAL TIMING AND DISTINCTION:**

117. **While housed at FCI Sheridan (after his transfer from FCI Lompoc), Plaintiff filed his § 2241 habeas petition challenging his fraudulent disciplinary conviction.**

118. **During his habeas petition research, Plaintiff obtained copies of the internal Lynn Emails and other documents proving the BOP-wide "one team" conspiracy to ensure convictions and deny fair tribunals. See Exhibit A.**

119. **After Plaintiff filed his federal habeas petition AND after Plaintiff obtained and began to act on the Lynn Emails proving**

19

the conspiracy, SIS Lieutenant Johnson, then stationed at FCI Sheridan, confronted Plaintiff.

120. Lt. Johnson threatened Plaintiff, stating that if Plaintiff did not abandon his federal litigation challenging the NIK tests, Plaintiff would face indefinite SHU confinement.

121. This threat was not about the underlying disciplinary conviction—it was explicit retaliation for Plaintiff's exercise of his fundamental First Amendment right to access the federal courts and challenge the BOP's fraudulent practices.

122. Lt. Johnson's threat was coordinated with Defendant R. John Lynn, evidencing that the BOP's response to judicial oversight was to threaten and coerce inmates into abandoning federal litigation.

123. This constitutes a separate, independent cause of action: Retaliation for Court Access / Abuse of Process / Violation of First Amendment Rights.

## IX. Plaintiff's Continued Harm After Release

124. Although Plaintiff has been released from federal custody and is no longer under supervision, he continues to suffer significant and permanent harm from the fraudulent conviction and unconstitutional proceeding:

   a. **Reputational Damage:** Permanent disciplinary record falsely stating Plaintiff is a drug offender; disclosed to potential employers, housing providers, and licensing boards; barriers to employment, housing, professional licensing

   b. **Psychological Injury:** Lasting PTSD symptoms from 6 months solitary confinement based on rigged hearing; ongoing anxiety, depression, and emotional distress; nightmares, hypervigilance, and trust issues developed during fraudulent imprisonment; permanent psychological damage from knowing he was convicted by a rigged tribunal

   c. **Lost Earning Capacity:** Delayed reentry to workforce due to false disciplinary record; reduced earning potential due to employment barriers; lost wages and career opportunities during extended incarceration

   d. **Diminished Life Prospects:** Barriers to housing, education, and family stability; ongoing stigma and collateral consequences; permanent damage to personal relationships and reputation; loss of faith in the justice system

20

**X. Safariland's Knowledge and Participation in the Fraud**

125. Safariland knew or should have known:

- NIK tests have false positive rates of 38-85% documented in multiple jurisdictions
- BOP was using NIK tests in violation of manufacturer warnings (testing paper, no confirmatory testing) **See Exhibits A and C**
- BOP Central Office (Wade Jennings) was directing staff to misrepresent burgundy as a positive result contrary to Safariland's instructions **See Exhibits A and B**
- **Burgundy is the baseline color that appears automatically when NIK Test U is activated, as proven by Plaintiff's video evidence See Exhibit B**
- **The NIK Test U pouch contains a blue reference square proving only blue is positive See Exhibit B**
- Thousands of inmates were being disciplined based on false positive NIK tests **See Exhibits A and C**

126. Despite this knowledge, Safariland continued to supply NIK test kits to BOP under multi-million dollar federal contracts.

127. Safariland profited from BOP's misuse of its products by:

- Selling hundreds of thousands of test kits annually to BOP
- Providing training that failed to adequately warn of false positive risks
- Failing to report BOP's misuse to regulatory authorities
- Failing to notify BOP that burgundy is not a positive result for Test U **See Exhibits A and B**
- **Failing to clarify that the blue reference square on the pouch shows what a true positive looks like See Exhibit B**

128. Safariland participated in the fraud by:

- Failing to correct Wade Jennings' January 18, 2017 SIS Advisory stating burgundy is a positive result **See Exhibit A**
- Providing inadequate warnings about false positive rates (38-85%)
- Marketing NIK tests to prisons despite knowing they would be misused **See Exhibits A and C**
- Designing packaging and instructions that are easily misinterpreted **See Exhibit B**
- **Failing to make clear that burgundy appears automatically without drugs present See Exhibit B**
- **Failing to emphasize the importance of the blue reference square for color comparison See Exhibit B**

129. Safariland's sophisticated user defense fails because:

21

- Safariland actively concealed material information (high false positive rates, inability to detect K2/Spice) **See Exhibits A and C**
- **Safariland knew or should have known burgundy is the baseline color See Exhibit B**
- Safariland knew BOP was not conducting confirmatory testing **See Exhibit A**
- BOP staff are not "sophisticated users" with chemistry expertise— they are correctional officers with minimal training **See Exhibit A**
- The sophisticated user defense does not apply to fraud

## XI. Systematic Pattern Affecting Thousands of Inmates

130. The fraud and denial of fair tribunals perpetrated by Defendants is not limited to Plaintiff's case.

131. Based on information and belief, thousands of federal inmates have been and continue to be falsely convicted of drug-related disciplinary charges based on:

- NIK tests conducted on paper in violation of manufacturer warnings **See Exhibits A and C**
- Burgundy or other non-blue colors misrepresented as positive results **See Exhibits A, B, and C**
- Fraudulent K2/Spice testing protocols invented by BOP **See Exhibits A and C**
- Failure to conduct laboratory confirmation **See Exhibit A**
- Wade Jennings' nationwide directive to all BOP facilities **See Exhibit A**
- **Systematic ex parte communications between SIS and DHOs pursuant to R. John Lynn's "one team" policy See Exhibit A**
- **Rigged hearings where investigators and adjudicators coordinate to ensure convictions See Exhibit A**

132. This pattern and practice demonstrates:

- Systematic fraud, not isolated incidents **See Exhibit A**
- Intentional policy created at the highest levels of BOP **See Exhibit A**
- Conspiracy among BOP officials and Safariland **See Exhibits A, B, and C**
- **Systematic denial of fair tribunals in violation of** *Wolf v. McDonnell* **See Exhibit A**
- **BOP-wide policy of ex parte communications as standard operating procedure See Exhibit A**
- **Systematic retaliation against inmates who exercise federal court access (Phase 2)**

22

- Ongoing harm to current inmates requiring injunctive relief to prevent future fraud and ensure fair hearings

---

## COUNTS FOR RELIEF

### COUNT I: FALSE IMPRISONMENT (FTCA)

### Against United States (Colette S. Peters, Director, BOP)

133. Plaintiff re-alleges and incorporates by reference all preceding paragraphs.

134. Under California law, false imprisonment requires: (1) intentional confinement; (2) without consent; (3) without legal authority.

135. Plaintiff was intentionally confined in the Special Housing Unit for approximately 6 months based on the disciplinary conviction.

136. Plaintiff did not consent to the confinement.

137. The confinement was without legal authority because it was based on:

- **Fabricated evidence—a scientifically provable false positive NIK test result. Plaintiff's video evidence proves burgundy is the baseline color that appears automatically without drugs, not a positive result. See Exhibits A and B**
- **BOP staff knowingly misrepresented the negative (burgundy) result as positive following fraudulent directives from BOP leadership See Exhibit A**
- **A fundamentally unfair tribunal tainted by systematic ex parte communications between the investigator and adjudicator in violation of *Wolf v. McDonnell* See Exhibit A**
- **A rigged hearing where SIS and DHO acted as "one team" to ensure conviction rather than fair adjudication See Exhibit A**

138. **A conviction obtained through violation of constitutional procedural protections (here, *Wolf v. McDonnell*'s requirement of a fair and impartial tribunal) provides no legal authority for confinement, rendering the confinement false imprisonment under California law.**

139. SIS Technician Aguilar qualifies as a "law enforcement officer" under 28 U.S.C. § 2680(h) because SIS personnel are investigative officers empowered to conduct searches, seize evidence, and investigate violations of federal law.

140. The law enforcement proviso to the FTCA waives sovereign immunity for false imprisonment arising out of law enforcement activities by investigative officers. *Millbrook v. United States*, 569 U.S. 50 (2013).

23

141. Conducting NIK drug tests on suspected contraband is a law enforcement activity within the scope of the law enforcement proviso.

142. Plaintiff suffered damages including loss of liberty, emotional distress, reputational harm, and diminished earning capacity, all of which are continuing harms following his release from federal custody.

**WHEREFORE,** Plaintiff requests judgment against the United States for compensatory damages.

---

## COUNT II: DUE PROCESS VIOLATION—DENIAL OF FAIR TRIBUNAL

**Against M. Wade Jennings, Kevin Schwinn, R. John Lynn, SIS Technician Aguilar, DHO Chetwood (Individual Capacity)**

143. Plaintiff re-alleges and incorporates by reference all preceding paragraphs.

144. **The Supreme Court in** *Wolf v. McDonnell*, **418 U.S. 539 (1975), held that inmates facing disciplinary proceedings that result in loss of liberty (such as solitary confinement) are entitled to certain due process protections, including a hearing before an impartial tribunal.**

145. **An impartial tribunal requires that the adjudicator be free from bias, prejudgment, and ex parte communications with the prosecutor/investigator. The adjudicator must base their decision solely on evidence presented at the hearing, not on secret communications with the accuser.**

146. **Defendants systematically denied Plaintiff and thousands of other inmates the right to an impartial tribunal by:**

- **Establishing official BOP policy directing SIS investigators to engage in ex parte communications with DHO adjudicators See Exhibit A**
- **Declaring that SIS, DHOs, and OGC are "all on one team" See Exhibit A**
- **Instructing SIS staff to "communicate with your DHO" to receive "guidance" on how to ensure convictions See Exhibit A**
- **Pre-coordinating with OGC on which cases to support before hearings occur See Exhibit A**
- **Treating disciplinary proceedings as coordinated prosecutions rather than fair adjudications See Exhibit A**

147. **R. John Lynn's January 23, 2018 email explicitly establishes this unconstitutional policy, stating: "Like always, please be sure to**

24

communicate with your DHO. They will provide you guidance and advise on what they review on their side of the house legal side to ensure all supporting documentation and evidence is present. Remember we are all on one team and at the end of the day, all of us want to make sure we are holding the inmates accountable for their actions." See Exhibit A.

148. This "one team" policy violates *Wolf v. McDonnell* because it:

- Eliminates adjudicator impartiality See Exhibit A
- Allows ex parte communications between investigator and adjudicator See Exhibit A
- Treats hearings as coordinated efforts to convict rather than fair evaluations of evidence See Exhibit A
- Denies inmates notice of evidence considered against them (ex parte communications) See Exhibit A
- Denies inmates opportunity to contest evidence (ex parte communications occur outside their presence) See Exhibit A

149. Plaintiff's hearing before DHO Chetwood was tainted by these ex parte communications. DHO Chetwood falsely claimed to be "impartial" despite receiving guidance and coordination from SIS staff pursuant to the "one team" policy. See Exhibits A and D.

150. Plaintiff was convicted and imprisoned based on this fundamentally unfair tribunal, violating his clearly established constitutional rights under *Wolf v. McDonnell*. See Exhibits A and D.

151. Defendants Jennings, Schwinn, Lynn, Aguilar, and Chetwood are not entitled to qualified immunity because:

- *Wolf v. McDonnell* clearly established in 1975 that inmates are entitled to impartial tribunals
- No reasonable officer could believe that instructing investigators and adjudicators to act as "one team" with ex parte communications satisfies constitutional requirements See Exhibit A
- Defendants' own emails prove they knew they were denying fair hearings ("one team," "communicate with your DHO") See Exhibit A

152. Plaintiff seeks monetary damages for violations of his constitutional rights.

**WHEREFORE,** Plaintiff requests judgment against Defendants Jennings, Schwinn, Lynn, Aguilar, and Chetwood in their individual capacities for compensatory and punitive damages.

---

25

## COUNT III: STRICT PRODUCT LIABILITY—FAILURE TO WARN

**Against Safariland, LLC**

153. Plaintiff re-alleges and incorporates by reference all preceding paragraphs.

154. Under California law, a manufacturer has a duty to warn of risks associated with its products.

155. Safariland's warnings are inadequate because they fail to adequately convey:

- The high false positive rate (38-85%)
- **That burgundy is the baseline color that appears automatically when the test is activated, not a positive result See Exhibit B**
- **That the blue reference square on the pouch is the standard for comparison See Exhibit B**
- The scientific impossibility of detecting K2/Spice using colorimetric tests
- The categorical prohibition against testing paper substrates
- The mandatory nature of confirmatory laboratory testing

156. Safariland knew its warnings were inadequate based on:

- Lawsuits and legal challenges documenting false positives
- Media reports and government investigations
- State and local government bans on NIK/NARK tests
- Scientific literature on colorimetric test unreliability
- **Knowledge of BOP's systematic misinterpretation of burgundy as positive See Exhibits A and B**
- **The fact that burgundy appears automatically when pouches are activated See Exhibit B**

157. Safariland's inadequate warnings were a substantial factor in causing Plaintiff's injuries because:

- If BOP staff had been adequately warned of the 38-85% false positive rate, they would not have relied on NIK tests without confirmation
- **If Safariland had clearly stated "burgundy is the baseline color that appears automatically without drugs, not a positive result" with photographic examples, Aguilar could not have misrepresented the result See Exhibits A and B**
- **If Safariland had emphasized that users must compare test results against the blue reference square on the pouch, staff would have recognized burgundy   blue = negative See Exhibit B**
- If Safariland had prominently warned NIK tests cannot detect K2/Spice, BOP could not have invented the fraudulent testing

26

protocol **See Exhibits A and C**

158. Safariland cannot invoke the sophisticated user defense because:

- Safariland actively concealed material information (high false positive rates, burgundy baseline color) **See Exhibits A and B**
- BOP correctional staff are not sophisticated users with chemistry expertise
- The defense does not apply to fraud

**WHEREFORE,** Plaintiff requests judgment against Safariland for compensatory and punitive damages.

---

## COUNT IV: FRAUD—FRAUDULENT MISREPRESENTATION

### Against Safariland, LLC

159. Plaintiff re-alleges and incorporates by reference all preceding paragraphs.

160. Safariland made false representations that:

- NIK tests can reliably detect drugs in prison settings
- NIK tests can detect K2/Spice (synthetic cannabinoids)
- NIK tests are suitable for use without laboratory confirmation in disciplinary proceedings

161. Safariland knew these representations were false based on:

- Internal testing data showing high false positive rates
- **Knowledge that burgundy appears automatically when pouches are activated, proving it cannot be a positive result See Exhibit B**
- Scientific literature proving synthetic cannabinoids cannot be detected using colorimetric tests
- Knowledge that NIK tests are classified as Category C (lowest reliability) by SWGDRUG
- **Knowledge of BOP's fraudulent directive misinterpreting burgundy as positive See Exhibit A**

162. Safariland intended BOP to rely on these misrepresentations to continue purchasing NIK tests under lucrative federal contracts.

163. BOP and Plaintiff relied on these misrepresentations to their detriment. **See Exhibits A and C** (documenting BOP's reliance on fraudulent testing protocol).

164. Plaintiff was harmed by the misrepresentations through false imprisonment, loss of liberty, emotional distress, reputational damage, and diminished earning capacity.

27

**WHEREFORE,** Plaintiff requests judgment against Safariland for compensatory and punitive damages.

---

## COUNT V: FRAUD—FRAUDULENT CONCEALMENT

### Against Safariland, LLC

165. Plaintiff re-alleges and incorporates by reference all preceding paragraphs.

166. Safariland concealed material facts, including:

- False positive rates of 38–85%
- **That burgundy is the baseline color that appears automatically without drugs present See Exhibit B**
- **That the blue reference square on the pouch is the standard for comparison See Exhibit B**
- Inability of colorimetric tests to detect synthetic cannabinoids
- BOP's misuse of NIK tests in violation of manufacturer warnings **See Exhibits A and C**
- **Wade Jennings' directive to misrepresent burgundy as a positive result See Exhibit A**

167. Safariland had a duty to disclose these facts because:

- Safariland marketed NIK tests for use in criminal justice settings
- Safariland knew inmates' liberty interests were at stake
- Safariland had superior knowledge of product limitations **See Exhibit B**
- **Safariland knew burgundy appears automatically when tests are activated See Exhibit B**
- **Safariland knew BOP was systematically misinterpreting its product See Exhibit A**

168. Safariland intended to deceive by concealing these facts to maintain profitable BOP contracts.

169. Plaintiff was harmed by Safariland's concealment.

**WHEREFORE,** Plaintiff requests judgment against Safariland for compensatory and punitive damages.

---

## COUNT VI: CIVIL CONSPIRACY

### Against All Defendants

170. Plaintiff re-alleges and incorporates by reference all preceding paragraphs.

28

171. Defendants formed a conspiracy to misrepresent NIK test results, deny fair tribunals, and falsely convict inmates, evidenced by:

- Wade Jennings' January 18, 2017 directive to all BOP facilities **See Exhibit A**
- R. John Lynn's distribution of the directive to Western Region **See Exhibit A**
- **R. John Lynn's "one team" directive establishing systematic ex parte communications See Exhibit A**
- **Coordination between SIS, DHOs, and OGC to prevent successful appeals through pre-hearing collaboration See Exhibit A**
- Safariland's continued supply of products despite knowledge of misuse **See Exhibits A, B, and C**
- **Lt. Johnson's retaliatory coordination with Lynn to suppress federal litigation** (Phase 2)

172. Defendants committed wrongful acts in furtherance of the conspiracy, including:

- Creating and distributing fraudulent testing protocols **See Exhibit A**
- Testing paper in violation of warnings **See Exhibit C**
- **Misrepresenting burgundy baseline color as positive result See Exhibits A and B**
- **Engaging in systematic ex parte communications See Exhibit A**
- **Denying fair tribunals through "one team" coordination See Exhibit A**
- Coordinating appeals denials **See Exhibits A and D**
- **Threatening retaliation against inmates for federal litigation** (Phase 2)
- Concealing evidence of fraud

173. Plaintiff was damaged by the conspiracy through false imprisonment, loss of liberty, emotional distress, reputational damage, and diminished earning capacity.

**WHEREFORE,** Plaintiff requests judgment against all Defendants for compensatory and punitive damages.

---

29

**COUNT VII: RETALIATION FOR EXERCISE OF FIRST AMENDMENT RIGHT TO ACCESS COURTS / ABUSE OF PROCESS**

**Against R. John Lynn and SIS Lieutenant Johnson (Individual Capacity)**

174. Plaintiff re-alleges and incorporates by reference all preceding paragraphs.

175. The First Amendment protects the fundamental right of citizens to petition the federal courts for redress of grievances and to access the courts for legal proceedings. *Ex parte Young*, 209 U.S. 123 (1908); *Bounds v. Smith*, 430 U.S. 817 (1977).

176. Retaliation against an inmate for filing a legal action or petition to a court is a violation of the First Amendment and constitutes abuse of process. *Jones v. North Carolina Prisoners' Union*, 433 U.S. 119 (1977); *Shakur v. Artson*, 952 F.3d 1095 (9th Cir. 2020).

177. **After Plaintiff filed his § 2241 habeas petition from FCI Sheridan challenging his fraudulent disciplinary conviction, Defendant SIS Lieutenant Johnson threatened Plaintiff with indefinite SHU confinement if he did not abandon his federal litigation.**

178. **This threat was made after Plaintiff had obtained the Lynn Emails (Exhibit A) and had begun seeking federal judicial review of the BOP's "one team" conspiracy to deny fair tribunals.**

179. **Lt. Johnson's threat was clearly motivated by Plaintiff's exercise of his First Amendment right to access the federal courts.**

180. **Lt. Johnson's threat constitutes retaliation and abuse of process because it:**

   - **Explicitly conditioned continued favorable treatment on abandonment of federal litigation**
   - **Used BOP's disciplinary authority (threat of indefinite SHU) as a weapon to suppress court access**
   - **Coordinated with Defendant Lynn, proving systematic retaliation policy**
   - **Violated Plaintiff's clearly established First Amendment rights under settled law**

181. **Defendants Lynn and Johnson are not entitled to qualified immunity because the right to access federal courts and the prohibition on retaliation for such access have been clearly established law for decades.**

182. Plaintiff suffered damages including:

   - Psychological trauma from retaliatory threats

30

- Chilling effect on exercise of constitutional rights
- Continuing fear of institutional retaliation
- Continued harm to federal litigation efforts

**WHEREFORE,** Plaintiff requests judgment against Defendants Lynn and Johnson for compensatory and punitive damages.

---

## COUNT VIII: DECLARATORY RELIEF

### 28 U.S.C. § 2201

183. Plaintiff re-alleges and incorporates by reference all preceding paragraphs.

184. An actual controversy exists between Plaintiff and Defendants regarding:

- Whether NIK test results without laboratory confirmation are sufficient for disciplinary convictions
- Whether BOP's double standard (requiring confirmation for urine tests but not NIK tests) violates equal protection
- Whether Wade Jennings' directive contradicts manufacturer warnings **See Exhibits A and B**
- **Whether burgundy is the baseline color (negative) or a positive result See Exhibit B**
- Whether Plaintiff's disciplinary conviction was based on fabricated evidence **See Exhibits A, B, and D**
- **Whether BOP's systematic practice of ex parte communications between SIS and DHOs violates** *Wolf v. McDonnell* **See Exhibit A**
- **Whether the "one team" policy denies inmates fair and impartial tribunals See Exhibit A**
- **Whether retaliation against inmates for federal litigation violates the First Amendment**
- **Whether disciplinary hearings following ex parte coordination provide legal authority for confinement**

185. Declaratory relief is necessary to establish Plaintiff's rights and guide future conduct, particularly to protect current federal inmates from the same fraudulent practices and unfair tribunals.

**WHEREFORE,** Plaintiff requests the Court declare:

1. **NIK test results showing burgundy are scientifically negative, not positive, as proven by Plaintiff's video evidence showing burgundy is the baseline color See Exhibit B**

2. BOP's practice of disciplining inmates based on NIK tests without laboratory confirmation violates due process and equal protection

3. BOP's double standard violates equal protection

31

4. Plaintiff's disciplinary conviction was based on fabricated evidence and is unlawful **See Exhibits A, B, and D**

5. Wade Jennings' January 18, 2017 directive contradicts manufacturer warnings and scientific reality **See Exhibits A and B**

6. **R. John Lynn's "one team" policy directing ex parte communications between SIS and DHOs violates** *Wolf v. McDonnell* **and denies inmates fair and impartial tribunals See Exhibit A**

7. **BOP disciplinary hearings tainted by ex parte communications do not satisfy constitutional requirements and provide no legal authority for confinement**

8. **Systematic ex parte communications between investigators and adjudicators constitute a denial of due process under** *Wolf v. Mc-Donnell*

9. **Retaliation against inmates for filing federal litigation violates the First Amendment**

10. BOP must require laboratory confirmation of all NIK test results before imposing discipline

11. **BOP must prohibit all ex parte communications between SIS investigators and DHO adjudicators**

12. **BOP must ensure DHO adjudicators are truly impartial and not part of "one team" with investigators**

13. **BOP must prohibit all retaliation against inmates for exercising their right to access federal courts**

---

## COUNT IX: INJUNCTIVE RELIEF

186. Plaintiff re-alleges and incorporates by reference all preceding paragraphs.

187. Plaintiff lacks an adequate remedy at law because:

- Monetary damages cannot prevent ongoing harm to thousands of current inmates
- Declaratory relief alone is insufficient without enforcement mechanism
- Federal inmates currently facing NIK-based discipline are at imminent risk of false imprisonment
- **Federal inmates currently facing disciplinary hearings are at imminent risk of denial of fair tribunals through ex parte communications See Exhibit A**
- **Federal inmates are at imminent risk of retaliation if they file federal litigation**

32

188. Injunctive relief is necessary to:

- Preserve evidence for this litigation and prevent destruction of documents **See Exhibits A-D**
- Prevent ongoing fraud and false imprisonment of current inmates
- Require confirmatory testing before NIK-based discipline
- **Prohibit ex parte communications between SIS investigators and DHO adjudicators See Exhibit A**
- **Ensure BOP provides fair and impartial tribunals as required by** *Wolf v. McDonnell*
- **Prevent retaliation against inmates for federal litigation**
- Ensure BOP applies the same testing standards to all inmates

189. The balance of equities favors Plaintiff because:

- Current inmates and Plaintiff are being falsely imprisoned based on fraud **See Exhibits A, B, and C**
- **Current inmates are being denied constitutional rights to fair tribunals through systematic ex parte communications See Exhibit A**
- **Current inmates are threatened with retaliation if they exercise federal court access**
- Defendants have no legitimate interest in perpetuating fraud or denying constitutional rights
- Evidence preservation, confirmatory testing, and prohibition on ex parte communications impose minimal burden on Defendants
- The public has a strong interest in accurate discipline proceedings and constitutional compliance

190. Injunctive relief is in the public interest because:

- The public has an interest in accurate, reliable evidence in disciplinary proceedings
- The public has an interest in preventing fraud by government officials **See Exhibit A**
- **The public has a strong interest in ensuring inmates receive fair tribunals free from ex parte communications**
- **The public has an interest in protecting First Amendment rights to access courts**
- The public has an interest in ensuring manufacturers provide adequate warnings
- Due process and fair tribunals are fundamental constitutional rights
- *Wolf v. McDonnell* **is settled law that must be enforced**

**WHEREFORE,** Plaintiff requests the Court order:

1. **Immediate preservation of all evidence** related to NIK testing and SIS-DHO communications for duration of litigation, including:

- All documents referenced in **Exhibits A-D**

33

- All emails, memoranda, and communications between SIS staff and DHOs
- **Plaintiff's YouTube video demonstrating burgundy is baseline color See Exhibit B**

2. **Cease and desist:** Prohibition on using NIK tests without laboratory confirmation in disciplinary proceedings

3. **Mandatory protocol:** Require laboratory confirmation of all positive NIK tests before any disciplinary action

4. **Equal protection compliance:** Apply same confirmatory testing standard to NIK tests as currently applies to urine tests (28 C.F.R. § 550.42(c))

5. **Prohibition on ex parte communications:** Order BOP to immediately cease all ex parte communications between SIS investigators and DHO adjudicators, consistent with *Wolf v. McDonnell* requirements

6. **Elimination of "one team" policy:** Order BOP to rescind R. John Lynn's "one team" directive and establish clear separation between investigative and adjudicative functions **See Exhibit A**

7. **Fair tribunal procedures:** Order BOP to establish procedures ensuring DHO impartiality, including:

    - Prohibition on pre-hearing communications between SIS and DHOs
    - Prohibition on DHO "guidance" to SIS on evidence gathering
    - Prohibition on OGC coordination with DHOs before hearings
    - Requirements that DHOs base decisions solely on evidence presented at hearing

8. **Prohibition of retaliation:** Order BOP to cease all retaliation against inmates for exercising their right to access federal courts

9. **Statistical reporting:** BOP to compile and produce data on:

    - NIK test usage and false positive rates
    - Confirmatory testing results
    - Communications between SIS and DHOs
    - Implementation of separation between investigative and adjudicative functions

10. **Notice to affected inmates:** BOP to notify all inmates disciplined based on:

    - NIK tests without confirmatory testing **See Exhibit A**
    - **Burgundy results misrepresented as positive See Exhibits A and B**
    - Hearings tainted by ex parte communications **See Exhibit A**
    - The "one team" policy **See Exhibit A**

34

of their right to challenge convictions based on fraudulent testing protocol, denial of fair tribunals, and to file federal litigation without retaliation

11. **Prospective relief:** Establish federal injunction requiring BOP to:

- Cease using NIK tests without confirmatory testing
- **Recognize that burgundy is the baseline color, not a positive result See Exhibit B**
- Provide fair and impartial tribunals free from ex parte communications
- Maintain separation between investigative and adjudicative functions
- Protect inmates' right to access federal courts
- Comply with *Wolf v. McDonnell* requirements

---

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully requests that this Court:

1. Assume jurisdiction over this action;

2. Issue a Temporary Restraining Order and Preliminary Injunction requiring:

   - Preservation of evidence, including all materials referenced in **Exhibits A-D** and **Plaintiff's YouTube video (Exhibit B)**
   - Prohibition on destruction of documents related to NIK testing and SIS-DHO communications
   - **Immediate cessation of ex parte communications between SIS and DHOs**
   - **Immediate cessation of retaliation against Plaintiff and other inmates for federal litigation**
   - **Immediate implementation of procedures ensuring fair and impartial tribunals**

3. Enter judgment in favor of Plaintiff and against Defendants on all counts;

4. Award compensatory damages in an amount to be proven at trial, including:

   - **Damages for false imprisonment:** For 6 months solitary confinement based on fabricated evidence (burgundy misrepresented as positive when Plaintiff's video proves it's baseline color) and rigged tribunal **See Exhibits A, B, and D**
   - **Damages for denial of fair tribunal:** For conviction following systematic ex parte communications in violation of *Wolf v. McDonnell* **See Exhibit A**
   - **Damages for emotional distress and psychological injury:** Including PTSD, anxiety, depression, and lasting psychological trauma

35

from prolonged solitary confinement and knowledge of rigged hearing

- **Damages for lost earning capacity:** Lost wages during extended incarceration and barriers to employment post-release due to false disciplinary record
- **Damages for reputational harm:** Permanent disciplinary record falsely branding Plaintiff as drug offender, affecting employment, housing, and social opportunities
- **Damages for diminished life prospects:** Barriers to housing, education, professional licensing, and family stability
- **Damages for retaliation:** For threats and coercion attempting to suppress federal litigation

5. Award punitive damages against Safariland, LLC and individual defendants in their individual capacities in an amount sufficient to punish and deter future misconduct;

6. Issue declaratory relief as requested in Count VIII, including declarations regarding *Wolf v. McDonnell* violations and that **burgundy is the baseline color, not a positive result (Exhibit B);**

7. Issue permanent injunctive relief as requested in Count IX, including orders prohibiting ex parte communications, retaliation, and ensuring fair tribunals;

8. Award costs and attorney's fees (if Plaintiff retains counsel or as otherwise permitted by law);

9. Grant trial by jury on all issues so triable; and

10. Grant such other and further relief as the Court deems just and proper.

---

## DEMAND FOR JURY TRIAL

Plaintiff demands trial by jury on all issues so triable pursuant to Federal Rule of Civil Procedure 38.

DATED: November 16, 2025

Respectfully submitted,

**BILLY STEFFEY**
Plaintiff, Pro Se
Sacramento, CA
[Phone]
[Email]

36

## VERIFICATION

I, Billy Steffey, declare under penalty of perjury under the laws of the United States of America that I have read the foregoing Verified Complaint, that the allegations therein are true and correct to the best of my knowledge, information, and belief, and that this declaration is executed on November 16, 2025.

I further verify that:

- I personally created the video evidence referenced as Exhibit B, which demonstrates that burgundy is the baseline color that appears automatically when a NIK Test U pouch is activated without any drugs present.

- The video shows the blue reference square on the pouch proving only blue indicates a positive result.

- The video is currently available on YouTube at https://youtu.be/p8USQ642q7w.

- All exhibits A-D accurately represent the documents obtained by me through discovery and legal proceedings.

- The facts alleged in this Complaint are true and correct based on my personal knowledge, the documentary evidence, and information provided through official BOP records and court filings.

**BILLY STEFFEY**
Plaintiff, Pro Se

37

# UNITED STATES DISTRICT COURT
## DISTRICT OF OREGON

BILLY F. STEFFEY,
Petitioner,

Case No.: 3:19-cv-00093-JR

v.

WARDEN J. SALAZAR,
Respondent.

# EXHIBIT H

## BOP FOIA OBSTRUCTION & WITHHOLDING

FOIA Nos. 2019-06228, 2020-02370, 2026-00947

Attached to Petitioner's Amended Rule 60(b) Motion for Relief from Judgment

# EXHIBIT H – SUB-EXHIBIT INDEX

**H-1:** BOP FOIA 2019-06228 response (Sept. 27, 2019) withholding 4 pages under Exemption 7(E) (incl. withheld pages).

**H-2:** BOP FOIA 2020-02370 Complex Track acknowledgment (Feb. 18, 2020).

**H-3:** FOIA Tracker screenshot showing 2020-02370 status "Closed" (Date Received: 02/16/2020) and related email chain (highlighted).

**H-4:** BOP FOIA 2020-02370 determination letter (May 6, 2020) and released NIK certification memo (with flowchart withheld under 7(E)).

**H-5:** BOP preliminary response for FOIA 2026-00947 (Dec. 9, 2025) requesting identity verification and threatening closure.



U.S. Department of Justice

Federal Bureau of Prisons

Central Office
320 First St., NW
Washington, DC 20534
(202) 616-7750

Billy Steffey
Register Number: 68463-097
FCI Sheridan
P.O. Box 5000
Sheridan, OR 97378

Dear Billy Steffey:

The Federal Bureau of Prisons (BOP) received your Freedom of Information Act/Privacy Act (FOIA/PA) request. Your request has been assigned a number and forwarded to the processing office noted below. Please make a note of the request number and processing office as you will need to include it in any correspondence or inquiry regarding your request. A copy of the first page of your request is attached to help you more easily keep track of your request.

FOIA/PA Request Number:       2019-06228
Processing Office:            CO

The time needed to complete our processing of your request depends on the complexity of our records search and the volume and complexity of any records located. Each request is assigned to one of three tracks: simple, complex, or expedited. Due to the large number of FOIA/PA requests received by BOP and the limited resources available to process such requests, BOP handles each request on a first-in, first-out basis in relation to other requests in the same track. Your request was assigned to the complex track and placed in chronological order based on the date of receipt.

We determined unusual circumstances exist as the documents responsive to your request must be searched for and collected from a field office, and/or the documents responsive to your request are expected to be voluminous and will require significant time to review, and/or your request requires consultation with at least one other agency with a substantial interest in your request. Because of these unusual circumstances, we are extending the time limit to respond to your request for the ten additional days provided by the statute. Processing complex requests may take up to nine months. Pursuant to 28 C.F.R. § 16.5(b) and (c), you may narrow or modify your request in an effort to reduce the processing time.

Pursuant to 28 C.F.R. § 16.10, in certain circumstances we are required to charge fees for time spent searching for or duplicating responsive documents. If we anticipate your fees will be in excess of $25.00 or the amount you have indicated you are willing to pay, we will notify you of the estimated amount. At that time, you will have the option to



**U.S. Department of Justice**
**Federal Bureau of Prisons**

*Central Office*
*320 First St., NW*
*Washington, DC  20534*

September 27, 2019

Billy Steffey #68463-097
FCI Sheridan
P.O. Box 5000
Sheridan, OR  97378

*Request Number:* 2019-06228

*Dear Mr. Steffey:*

This is in response to the above referenced Freedom of Information Act (FOIA) request. A copy of your request is attached.

In response to your request, staff located 4 pages of responsive records, which were forwarded to this office for a release determination. After careful review, we determined the 4 pages must be withheld in their entirety.

Pursuant to the Freedom of Information Act, 5 U.S.C. § 552, records were redacted under the following exemption:
(b)(7)(E), Permits withholding of records when techniques and procedures for law enforcement investigations or process would be disclosed or provided such disclosure could reasonably be expected to risk circumvention of law.

If you have questions about this response please feel free to contact the undersigned, this office, or the Federal Bureau of Prisons' (BOP) FOIA Public Liaison, Mr. C. Darnell Stroble at 202-616-7750 or 320 First Street NW, Suite 936, Washington DC 20534.

Additionally, you may contact the Office of Government Information Services (OGIS) at the National Archives and Records Administration to inquire about the FOIA mediation services they offer. The contact information for OGIS is as follows: Office of Government Information Services, National Archives and Records Administration, Room 2510, 8601 Adelphi Road, College Park, Maryland 20740-6001; telephone at 202-741-5770; toll free at 1-877-684-6448; or facsimile at 202-741-5769.

If you are not satisfied with my response to this request, you may administratively appeal by writing to the Director, Office of Information Policy (OIP), United States Department of Justice, Sixth Floor, 441 G Street, NW, Washington, DC  20001. Your appeal must be postmarked within 90 days of the date of my response to your request. If you submit your appeal by mail, both the letter and the envelope should be clearly marked "Freedom of Information Act Appeal."

*Sincerely,*

S. Arellano, *for*
*Eugene E. Baime, Supervisory Attorney*

TRULINCS 68463097 - STEFFEY, BILLY - Unit: SHE-A-R

---------------------------------------------------------------------------------------

FROM: 68463097
TO:
SUBJECT: Freedom of Information Request
DATE: 08/29/2019 02:53:58 PM

**Received**

>

August 28, 2019

SEP 0 6 2019

Billy Steffey 68463097
FCI - Sheridan
PO Box 5000
Sheridan, OR 97378

**FOIA/PA Section
Federal Bureau of Prisons**

Re: FOIA for ALL instructions and flowcharts from Safariland regarding testing procedures for NIK Test

Dear FOIA Compliance Officer,

Per the Freedom of Information Act, I am requesting copies of all instructions and Flowcharts and recent bulletins that has been sent to BOP staff from Safariland LLC, makers of the NIK Testing Kit. I am looking specifically for the bulletins pertaining to the testing of Buphenepherine (Suboxone) as well as K2 and Spice.

I am aware that BOP maintains a vendor contract with Safariland and they receive regular testing updates for substances. I have personally read some of these internal, GroupWise emails from the Western Region (CSS) and SIA agent that was sent out to all of the regional SIS. I want BOP's instructions and processes that they are advised to follow when testing unknown substances that have appeared on the scene AFTER the NIK test was developed. These include Buphenepherine (Suboxone) and Spice and K2. I would also like a copy of all testing instructions for the NIK Kit, not just the Identidrug Chart.

I'd also like copies of records where BOP staff notified Safariland of the "false positives" when using Test U and how literally anything will result in a burgundy test, which BOP mistakenly identifies as a positive test for amphetamines.

It is my belief that BOP has been intentionally misrepresenting Test U to be a positive test for amphetamines when in fact Test U cannot detect amphetamines, only methamphetamines and MDMA. Only a BLUE color is indicative of a positive result. This has gone on for years and hundreds if not thousands of inmates have been wrongly sanctioned at discipline hearings based on this test.

Respectfully,

>

cc: office of information policy
   office of inspector general

BP-A0288
JAN 17

**INCIDENT REPORT**

**U.S. DEPARTMENT OF JUSTICE**          **FEDERAL BUREAU OF PRISONS**

**Part I - Incident Report**

| 1. Institution:   FCI Herlong | | Incident Report Number: 3025931 | | |
|---|---|---|---|---|
| 2. Inmate's Name: Clark Bailey | 3. Register Number: 64110-065 | 4. Date of Incident: August 24, 2017 | | 5. Time: 3:00p.m. |
| 6. Place of Incident: Tahoe Delta, Cell 111 | 7. Assignment: Yard PME | | 8. Unit: | Tahoe Delta |
| 9. Incident: Introduction or making of any drugs or alcohol  Possession of any drugs or alcohol | | 10. Prohibited Act Code(s)  111  113 | | |

11. Description of Incident (Date: 08/24/2017    Time: 3:00 p.m. Staff became aware of incident):

After the completion of an SIS investigation it is determined that; On August 24, 2017, at approximately 3:00pm, staff conducted a random cell search of Tahoe Delta, cell 111, at the time assigned to inmates Clark Bailey, Reg. No. 64110-065 and Travis Donovan, Reg. No. 46939-048. While conducting the search staff located what appeared to be hand written instructions of which website to visit for the purpose of purchasing K-2 spice, a form of synthetic cannabis; furthermore, how to properly saturate greeting cards using a liquid form of K-2 spice and introduce them to Correctional Facilities through the mail room using the U.S Postal Service (USPS). The hand written instructions were located in the common area of the cell, placed on the ground next to the inmate assigned lockers concealed inside a box of laundry soap which was under some clothing items baring inmate Bailey's identifying information. While inventorying the property located inside inmate Bailey's assigned secure Inmate locker, staff located three (3), one (1) half greeting cards which appeared to have been saturated in an unknown substance causing them to be malleable and on one card which had a hand written message for the ink to become bleary and for said ink to bleed through the greeting card. The three (3) half cards were tested by SIS for the presence of a foreign substance utilizing the NIK testing procedures outlined in an SIS ADVISORY dated March 27, 2017. Testing procedures produced a positive results for Methamphetamine Reagent which indicates the presence of Amphetamine by results turning burgundy in color. It is concluded that the instructions found in the common area of cell 111, were utilized to introduce narcotics to FCI Herlong, some of which were located inside inmate Bailey's inmate assigned secure locker, at which the time it was under his (Bailey's) dominion.

***This incident report was re-written pending the completion of an SIS investigation.***

| 12. Typed Name/Signature of Reporting Employee: A. Potichkin  / | 13.Date And Time: September 20, 2017   /    6:50a.m. |
|---|---|
| 14. Incident Report Delivered to Above Inmate By (Type Name/Signature):      J. Rodgers / | 15 .Date Incident Report Delivered:   9-20-17 | 16. Time Incident Report Delivered:   9:20am |

**Part II - Committee Action**

17. Comments of Inmate to Committee Regarding Above Incident:

Inmate declined to make A statement at this time.

| 18. A. It is the finding of the committee that you:   _____ Committed the Prohibited Act as charged.  _____ Did not Commit a Prohibited Act.  _____ Committed Prohibited Act Code(s). _____   _____ | B.   ✗ The Committee is referring the Charge(s) to the DHO for further Hearing.  C.   ✗ The Committee advised the inmate of its finding and of the right to file an appeal within 20 calendar days. |
|---|---|

19. Committee Decision is Based on Specific Evidence as Follows:

Referred to the DHO based on severity of charge.

20. Committee action and/or recommendation if referred to DHO (Contingent upon DHO finding inmate committed prohibited act):

GCT, DS, LP comm, Phone, E-mail

21. Date and Time of Action: 9-26-17 12:00 (The UDC Chairman's signature certifies who sat on the UDC and that the completed report accurately reflects the UDC proceedings).

M. Dixon /

| Chairman (Typed Name/Signature) | Member (Typed Name) | Member (Typed Name) |
|---|---|---|



**U.S. Department of Justice**
**Federal Bureau of Prisons**

_Central Office_
_320 First St., NW_
_Washington, DC 20534_

February 18, 2020

Billy Steffey
bsteffey@mac.com

Dear Mr. Steffey:

The Federal Bureau of Prisons (BOP) received your Freedom of Information Act/Privacy Act (FOIA/PA) request. Your request has been assigned a number and forwarded to the processing office noted below. Please make a note of the request number and processing office as you will need to include it in any correspondence or inquiry regarding your request. A copy of the first page of your request is attached to help you more easily keep track of your request.

FOIA/PA Request Number:     2020-02370
Processing Office:          CO

The time needed to complete our processing of your request depends on the complexity of our records search and the volume and complexity of any records located. Each request is assigned to one of three tracks: simple, complex, or expedited. Due to the large number of FOIA/PA requests received by BOP and the limited resources available to process such requests, BOP handles each request on a first-in, first-out basis in relation to other requests in the same track. Your request was assigned to the complex track and placed in chronological order based on the date of receipt.

We determined unusual circumstances exist as the documents responsive to your request must be searched for and collected from a field office, and/or the documents responsive to your request are expected to be voluminous and will require significant time to review. Because of these unusual circumstances, we are extending the time limit to respond to your request for the ten additional days provided by the statute. Processing complex requests may take up to nine months. Pursuant to 28 C.F.R. § 16.5(b) and (c), you may narrow or modify your request in an effort to reduce the processing time.

Pursuant to 28 C.F.R. § 16.10, in certain circumstances we are required to charge fees for time spent searching for or duplicating responsive documents. If we anticipate your fees will be in excess of $25.00 or the amount you have indicated you are willing to pay, we will notify you of the estimated amount. At that time, you will have the option to reformulate your request to reduce the fees. If you requested a fee waiver, we will make a decision whether to grant your request after we determine whether fees will be assessed for this request.

If you have any questions or wish to discuss reformulation or an alternative time frame for the processing of your request, please feel free to contact the CO at  or the Federal Bureau of Prisons' (BOP) FOIA Public Liaison, Mr. C. Darnell Stroble at 202-616-7750, 320 First Street NW, Suite 936, Washington DC 20534, or ogc_efoia@bop.gov. You can also check the status of your request on line at http://www.bop.gov/PublicInfo/execute/foia.

Additionally, you may contact the Office of Government Information Services (OGIS) at the National Archives and Records Administration to inquire about the FOIA mediation services they offer. The contact information for OGIS is as follows: Office of Government Information, Services, National Archives and Records Administration, Room 2510, 8601 Adelphi Road, College Park, Maryland 20740-6001; e-mail at ogis@nara.gov; telephone at 202-741-5770; toll free at 1-877-684-6448; or facsimile at 202-741-5769.

Sincerely,

K. Scarantino, for
Eugene E. Baime, Supervisory Attorney



**From:** **BILLY STEFFEY** bsteffey@mac.com
**Subject:** Re: Automatic reply: [EXTERNAL] Request for information
**Date:** December 17, 2025 at 6:47 AM
**To:** BOP-OGC-EFOIA-S BOP-OGC-EFOIA-S@bop.gov

*This also concern me and seems really suspicious. You acknowledge there are records and claim you need an extended time, almost a year to produce. No response was ever given. Then I just found out you have a FOIA tracker. Your own FOIA tracker shows you "CLOSED" my request 2 days before you sent me a letter claiming you needed 9mo. Seems really fishy*



**Request Number:**  2020-02370

Search

**Request**: 2020-02370
**Status**: Closed
**Office Assigned**: Central Office
**Date Received**: 02/16/2020

⊖ Questions about your request.

If you have questions about your request, please go to the Overview tab for information about contacting the FOIA Office processing your request.

Note: documents in Portable Document Format (PDF) require Adobe Acrobat Reader 5.0 or higher to view, download Adobe Acrobat Reader.



**Acknowledgment
Complex Request.pdf**

*On Nov 22, 2025, at 2:47 AM, BOP-OGC-EFOIA-S (BOP) <BOP-OGC-EFOIA-S@bop.gov>
wrote:*

Greetings,

The Federal Bureau of Prisons (BOP), FOIA/PA Section has received your email and will respond to
you as quickly as possible.  Meanwhile, if you would like more information about the FOIA
and/or BOP's FOIA process, please visit:  https://www.bop.gov/foia/index.jsp#tabs-0.

We appreciate your patience.

Sincerely,
FOIA/Privacy Act Section
Federal Bureau of Prisons
U.S. Department of Justice



**U.S. Department of Justice**
**Federal Bureau of Prisons**

_____

*Central Office*
*320 First St., NW*
*Washington, DC 20534*

May 6, 2020

Billy Steffey
bsteffey@mac.com                    Request Number: 2020-02370

Dear Mr. Steffey:

This is in response to the above referenced Freedom of Information Act (FOIA) request. Specifically, you requested a copy of the flow chart and documentation of the proper training procedures for NIK testing.

In response to the flow chart, this portion of the request was a duplicate of Request No. 2019-06228, in which 2 responsive pages were withheld in full under exemption (b)(7)(E).

In response to the proper training procedures, staff located 2 pages of responsive records, which were forwarded to this office for a release determination. After careful review, we determined 2 pages are appropriate for release in part. Copies of releasable records are attached.

Pursuant to the Freedom of Information Act, 5 U.S.C. § 552, records were under the following exemptions: (b)(6) and (b)(7)(C). An explanation of FOIA exemptions is attached.

If you have questions about this response please feel free to contact the undersigned, this office, or the Federal Bureau of Prisons' (BOP) FOIA Public Liaison, Mr. C. Darnell Stroble at 202-616-7750, 320 First Street NW, Suite 936, Washington DC 20534, or ogc_efoia@bop.gov.

Additionally, you may contact the Office of Government Information Services (OGIS) at the National Archives and Records Administration to inquire about the FOIA mediation services they offer. The contact information for OGIS is as follows: Office of Government Information Services, National Archives and Records Administration, Room 2510, 8601 Adelphi Road, College Park, Maryland 20740-6001; e-mail at ogis@nara.gov; telephone at 202-741-5770; toll free at 1-877-684-6448; or facsimile at 202-741-5769.

If you are not satisfied with my response to this request, you may administratively appeal by writing to the Director, Office of Information Policy (OIP), United States Department of Justice, 441 G Street, NW, 6th Floor, Washington, D.C. 20530, or you may submit an appeal through OIP's FOIA STAR portal by creating an account on the following website: https://foiastar.doj.gov. Your appeal must be postmarked or electronically transmitted within 90 days of the date of my response to your request. If you submit your appeal by mail, both the letter and the envelope should be clearly marked "Freedom of Information Act Appeal."

Sincerely,

S. Lilly

S. Lilly, GIS, for
Eugene E. Baime, Supervisory Attorney

**Explanation of FOIA Exemptions Used by the Federal Bureau of Prisons**

**5 U.S.C. § 552(b)(1)** protects classified information.

**5 U.S.C. § 552(b)(2)** concerns matters related solely to internal agency personnel rules or practices.

**5 U.S.C. § 552(b)(3)** concerns matters specifically exempted from release by statute.

**5 U.S.C. § 552(b)(4)** concerns trade secrets and commercial or financial information obtained from a person that is privileged or confidential.

**5 U.S.C. § 552(b)(5)** concerns certain inter- and intra-agency communications protected by the deliberative process privilege, the attorney work-product privilege, and/or the attorney-client privilege.

**5 U.S.C. § 552(b)(6)** concerns material the release of which would constitute a clearly unwarranted invasion of the personal privacy of third parties.

**5 U.S.C. § 552(b)(7)(A)** concerns records or information compiled for law enforcement purposes the release of which could reasonably be expected to interfere with enforcement proceedings.

**5 U.S.C. § 552(b)(7)(B)** concerns records or information compiled for law enforcement purposes the release of which would deprive a person of a right to a fair trial or an impartial adjudication.

**5 U.S.C. § 552(b)(7)(C)** concerns records or information compiled for law enforcement purposes the release of which could reasonably be expected to constitute an unwarranted invasion of the personal privacy of third parties.

**5 U.S.C. § 552(b)(7)(D)** concerns records or information compiled for law enforcement purposes the release of which could reasonably be expected to disclose the identities of confidential sources and information furnished by such sources.

**5 U.S.C. § 552(b)(7)(E)** concerns records or information compiled for law enforcement purposes the release of which would disclose techniques and procedures for law enforcement investigations or prosecutions.

**5 U.S.C. § 552(b)(7)(F)** concerns records or information compiled for law enforcement purposes the release of which could reasonably be expected to endanger the life or personal safety of an individual.

**5 U.S.C. § 552(b)(8)** concerns matters that are "contained in or related to examination, operating, or condition reports prepared by, on behalf of, or for the use of an agency responsible for the regulation or supervision of financial institutions."

**5 U.S.C. § 552(b)(9)** concerns geological and geophysical information and data, including maps, concerning wells.



**U.S. DEPARTMENT OF JUSTICE**

Federal Bureau of Prisons

*Management and Specialty Training Center*

*791 Chambers Road*
*Aurora, CO 80011*

January 21, 2010

MEMORANDUM FOR EMPLOYEE SERVICES MANAGERS

FROM:          David D. Huerta, Acting Director

SUBJECT:       Narcotics Identification Kit (NIK) Certification
               CSV-0660-BXX

This memorandum is to provide clarification on the procedures for obtaining NIK end-user certification. Completion of the NIK Ezexam test for certification was discontinued April 25, 2003. All NIK certifications must be obtained through the vendor following the procedures noted on the attached document. This document has been posted on MSTC's Sallyport web page for future reference.

Any additional question should be directed to ▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮. Thank you for your attention to this matter.


cc:   Mitch Allen, Chief
      Training and Staff Development Section
      HRMD

**Narcotics Identification Kit (NIK) - Vendor**
**Course Code CSV-0660-BXX**
**End User Certification**

1. Contact the following vendor to purchase an NIK certification CD (S15 fee):

   Send completed tests for grading and certificate issuance to:
   Scan to:

2. Each participant must review the CD individually, not in a group setting.

3. After the participant reviews the CD, Employee Services staff are to contact the vendor to obtain the test for each participant.

4. Employee Services staff will forward completed tests to the vendor contact for grading and certificate issuance.

5. This CD program alleviates the need for a local NIK instructor. However, should you choose to have a trained instructor, please contact the vendor for further guidance.

**From:** bop-ogc-efoia-s@bop.gov
**Subject:** First Party-No CID-Prelim - FOIA Request 2026-00947
**Date:** December 12, 2025 at 6:46 AM
**To:** bsteffey@mac.com

Dear Billy Steffey:

This is a preliminary response to your recent email, which has been assigned FOIA Request Number 2026-00947, wherein you request documents pertaining to NIK testing as well as documents related to your incident report.

When requesting non-public information, written authorization from the subject of the record must accompany your request. The written authorization must include the subject's full name, current address, place and date of birth, and contain a signature that is either notarized or signed under a penalty of perjury. Written authorization must meet the requirements of 28 C.F.R. §16.41(d). For more information about the FOIA, please visit: **https://www.bop.gov/foia/index.jsp#tabs-0**.

For your convenience, we attached a form DOJ-361, Certification of Identity. If you complete this form, we should have the information needed to proceed. If you use this form, we do require an actual signature. Please submit the properly executed authorization to **bop-ogc-efoia-s@bop.gov**.  If we do not receive proper authorization within the next 30 business days, we will assume you are no longer interested in the records and will administratively close your request as withdrawn.

If you have questions about this response, please feel free to reply to this email. Alternatively, you may contact the Federal Bureau of Prisons' (BOP) FOIA Public Liaison, Ms. Kara Christenson at 202-616-7750 or 320 First Street NW, Suite 936, Washington DC 20534.

Sincerely,

FOIA Staff
Federal Bureau of Prisons
U.S. Department of Justice

**doj361_form.pdf**

# INSTRUCTIONS ON USE

**For One Ampoule Tests (A, B I, K, O, W)** - Remove the clip and insert sample suspect material. Reseal with clip and tap gently on a hard surface to drive the sample to the bottom of the pouch. With the printed side of the pouch facing you, break the ampoule by squeezing the center of the ampoule with the tips of the thumb and forefinger. Agitate gently and observe the color or color changes. NOTE: In Test O, if sampling a liquid substance, place 2 small drops of liquid in the pouch using the included disposable pipette (dropper).

**For Two Ampoule Tests (C, H, L, N, Q, R, T)** - Remove the clip and insert sample suspect material. Reseal with clip and tap gently on a hard surface to drive the sample to the bottom of the pouch. With the printed side of the pouch facing you, break the ampoules from left to right. Break by squeezing the center of the ampoule with the tips of the thumb and forefinger. Break the left ampoule and agitate. Observe any color change, although some of these tests will not produce a color at this point. Break the right ampoule and agitate, observing the color or color changes.

**For Three Ampoule Tests (D, E, G, J, M, P, U)** - Remove the clip and insert sample suspect material. Reseal with clip and tap gently on a hard surface to drive the sample to the bottom of the pouch. With the printed side of the pouch facing you, break the ampoules from left to right. Break by squeezing the center of the ampoule with the tips of the thumb and forefinger. Break the left ampoule and agitate. Observe any color change, although some of these tests will not produce a color at this point. Break the middle ampoule and agitate. Observe any color change, although some of these tests will not produce a color at this point. Break the right ampoule and agitate, observing the color or color changes.

| TEST | DESCRIPTION | POSITIVE RESULTS |
|---|---|---|
| Test A | **Marquis Reagent** - This reagent system presumptively identifies Opium alkaloids, Heroin and Amphetamine type compounds and as a general screening agent for other drugs. | A rapidly developing purple or blue-violet color indicates Opium alkaloids (Morphine or Codeine) or Heroin. An immediate orange color rapidly turning to a brown color indicates Amphetamine-Type compounds. Refer to the Polytesting Chart for other color results. |
| Test B | **Nitric Acid Reagent** - Secondary screening test for the confirmation of Opiates (Morphine, Codeine or Heroin) and Amphetamine-type compound as well as a general screening test for other drugs. | A yellow color slowly changing to a light green color indicates Heroin. An orange color changing very rapidly to red then slowly to a yellow color indicates Morphine. An orange color changing slowly to yellow indicates Codeine. |
| Test C | **Modified Dille-Koppanyi Reagent** - A test for Barbiturates. Used after no change result in Test A and Test G, and an orange result in Test I. | No color change after breaking the first ampoule and a lavender color after breaking the second ampoule. |
| Test D | **Modified Ehrlich's Reagent** - A test for LSD (Lysergic Acid Diethylamide). Used after positive results in Test A and B. | No color change after breaking the first ampoule and a lavender result after breaking the second and third ampoules. |
| Test E | **Duquenois-Levine Reagent** - Standalone test for Marijuana, Hashish and "Hash Oil". | No color change after breaking the first ampoule, a dark blue or violet after breaking the second ampoule and a grey upper layer over a violet layer upon breaking the third ampoule. |
| Test F | Used upon completion of each test to ensure that the strong acids and bases contained in many tests won't pose a danger to personnel. Each pouch includes enough acid neutralizer for five individual NIK tests. | N/A |
| Test G | **Modified Scott Reagent** - A test for Cocaine, Crack or Free Base. | Blue or pink with blue speckles after breaking the first ampoule, a pink result after breaking the second ampoule and a pink layer over a blue layer after breaking the third ampoule. |
| Test H | A test for Methadone. | No color change after breaking the first ampoule and a resulting blue color after breaking the second ampoule. Test H should only be used after positive results from Test A, G, I and C. |
| Test I | **Liebermen's Reagent** - For the general screening of PMA, Ketamine, Barbiturates and Methadone. | Used after brown result in Test A or clear result in Test A followed by no change in Test G. |
| Test J | A test for PCP (Phencyclidine). Test J should be used after no change results from Tests A, G, I and W. | No color change after breaking the first ampoule, followed by a blue or pink with blue speckled result after the second and third ampoules. |
| Test K | A test for Heroin, Black Tar, Codeine and Morphine. Easier to distinguish between the four Opiates than using Test B. Can also be used to screen out Methapyrilene and Propoxyphene. | An immediate green color, changing to purple indicates Heroin. An immediate blue-green color, changing to a gray color indicates Morphine. An immediate stable blue color indicates Codeine. |
| Test L | **Modified Mecke's Reagent** - A test for Heroin, including White, Brown and Black Tar, and MDMA (Ecstasy), as well as certain dye combinations designed to give false positives with Test A. | A purple color after breaking the first ampoule indicates Ecstasy (MDMA). A green color after breaking the second ampoule that intensifies with prolonged agitation indicates Heroin. |
| Test M | A test for Methaqualone (Quaaludes, Sopor Somnafac, Opitimil and Parest). | A flash blue or solid blue color indicates Methaqualone, but Methadone and PCP are potential false positives in this test. To eliminate these, use Test H for Methadone and Test J for PCP. |
| Test N | A test for Pentazocine (Talwin® Nx or Talacen) as well as Oxycodone. | A slowly developing purple color after breaking the first ampoule followed by an immediate yellow color after breaking the second ampoule. |
| Test O | A test for GHB (Gamma-Hydroxybutyrate). Used after no change results from Tests A, G, I, W, J and R. | A rapidly developing green from amber (natural color) indicates GHB. |
| Test P | A test for Propoxyphene (Darvon®). | A pink color after breaking the first ampoule followed by a blue color after breaking the second ampoule and remaining blue after breaking the third ampule indicates Propoxyphene. |
| Test Q | A test for Ephedrine and Pseudoephedrine. | No color change after breaking the first ampoule and a purple or violet color after breaking the second ampoule. |
| Test R | A test for Valium (Diazepam), Rohypnol (Flunitrazepam) and Methcathinone. | A lavender color after breaking all ampoules. |
| Test T | **Morris Reagent** - A test for Ketamine. | Lavender color indicates Ketamine. A blue/green color is a negative. |
| Test U | A test for Methamphetamine and MDMA (Ecstacy). | An immediate dark blue color indicates Methamphetamine or MDMA (Ecstasy). If any other color develops, proceed to Test A and continue Polytesting as instructed in the Polytesting procedures. |
| Test W | **Mandelin Reagent** - A test for Amphetamines and Methadone, as well as screening for PMA and Ketamine in conjunction with Test I. | A rapidly developing blue color indicates the presence of Methadone. An immediate olive green color indicates the presence of Amphetamines. |

XXXXXXX - REV0510                                                                                                © Safariland

# IDENTIDRUG™ CHART
for use with the NIK® Polytesting System

**IMPORTANT:** Follow the Polytesting flow chart. Do not jump from sequence to sequence; i.e. follow the arrows from one test to another, noting the results.





## General Polytesting Procedures

Always begin Polytesting with Test A and continue from test to test until a positive or negative result is obtained. Tests E, L, M, N, P, Q, R and T are exceptions to this rule and are designed as standalone tests.

Before testing can begin, it is important to classify the material using one of the classifications below:

**Tablets or other hard materials** - Crush a part of the tablet into powder and insert into the test pouch.

**Capsules** - Open the capsule, remove part of the powder and insert into the test pouch.

**Powders** - Insert powder directly into the test pouch

**Plant material** - Begin testing with Test E. Use only a few leaf fragments.

**Suspected Brown or Black Tar Heroin** - Begin testing with Test L

**Liquid samples** - NIK® tests are NOT designed for use with liquid samples. However, liquids may be tested by placing the tip of an NIK® SUBSTANCE LOADING DEVICE or a 1cm square (roughly 1/2″ square) piece of paper into the liquid. Remove and allow to air dry. Place the dry paper into the test pack and proceed with the test as instructed. The choice of paper is critical. Unscented, uncolored filter paper is ideal. NEVER use brown paper, hand towels or newsprint.

## Determining the amount of suspect material

The amount of suspect material needed to make a successful test varies with the amount and purity of the material. With the exception of plant material, gelatin squares, etc., you should begin by using the loading device to collect an amount of powdered suspect material that would fit inside this circle: ⬭ If the resulting colors are too weak, use more material; if too intense, use less.

## Safety Precautions

Many of the tests in the NIK® Polytesting System contain strong acid(s) or bases. Always insert a portion of Pack F (Acid Neutralizer) into the test pack after testing and before disposal of the used test pack.

In the event that a test pack or chemical is ingested, seek immediate medical attention. If chemicals come into contact with the skin or eyes, wash the skin thoroughly with soap and water. Flush eyes with water and seek immediate medical attention.

Store NIK® tests in a cool, dark area. Heat will speed up the action of the chemicals in each test, and extreme cold will slow them down. Appropriate care should be exercised. Do NOT store in direct sunlight. Technical Assistance is available during business hours at: (800) 347-1200.

## Breaking the Chemical Ampoules

Care should be taken when breaking the glass ampoules in each test. Press firmly in the center of the harness to break each ampoule. Once the glass has broken, do NOT continue to crush the glass ampoules, as this may result in injury.

Not here

BREAK HERE

Not here

## Interpretation of Test Results

For any test, there are three important factors you should look for:

1. The color or lack of color
2. The color change
3. The location of colors in the test pouch

PINK UPPER LAYER

 NOTE - Each of our NIK Test Instructions are also available in French, German & Spanish. Please contact one of our Customer Care representatives at (800) 347-1200 to receive a PDF version.

# UNITED STATES DISTRICT COURT
## DISTRICT OF OREGON

BILLY F. STEFFEY,
Petitioner,

v.

WARDEN J. SALAZAR,
Respondent.

Case No.: 3:19-cv-00093-JR

# EXHIBIT J

## ORDER OF MAGISTRATE JUDGE STEVE KIM

Doc. 37 (Jan. 16, 2026) – Colorable FTCA Claims (Highlighted)

Attached to Petitioner's Amended Rule 60(b) Motion for Relief from Judgment

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL

Case No.   2:25-cv-11105-VBF-SK                              Date: January 16, 2026
Title      Billy F. Steffey v. Colette S. Peters, et al.

Present: The Honorable: Steve Kim, United States Magistrate Judge

| Connie Chung | n/a |
|---|---|
| Deputy Clerk | Court Reporter / Recorder |

| Attorneys Present for Plaintiff(s)/Petitioner(s): | Attorneys Present for Defendant(s)/Respondent(s): |
|---|---|
| None present | None present |

**Proceedings:**       (IN CHAMBERS) **ORDER CONDITIONALLY GRANTING PLAINTIFF'S REQUEST TO PROCEED IN FORMA PAUPERIS [ECF 2]**

Plaintiff Billy Steffey, a formal federal inmate, seeks to proceed in forma pauperis (IFP) with a first amended complaint against several officials and employees of the Federal Bureau of Prisons (BOP), including Colette Peters in her official capacity as BOP Director, and a private drug test manufacturer—Safariland, LLC—from which the BOP allegedly bought field drug test kits used with federal inmates. (ECF 14 at 1, 4–8). He alleges that product defects in these testing kits led to false positive results used to impose disciplinary sanctions—including solitary confinement—on federal inmates (including him while formerly in BOP custody). (ECF 14 at 8–18, 21–22). Seeking to remedy those wrongs not only for himself but also prospectively for current federal inmates, plaintiff seeks monetary damages along with sweeping declaratory and injunctive relief through the Federal Tort Claims Act (FTCA) and an implied cause of action under *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971). (ECF 14 at 22–23, 31–35). Plaintiff claims that the defendants not only violated federal due process and inmates' First Amendment rights, but also that they are liable for a variety of torts including fraud, false imprisonment, malicious prosecution, and product liability. (ECF 14 at 1–36).

As explained before, because plaintiff seeks to proceed in forma pauperis, the court is required to screen his operative complaint to "identify cognizable claims"—that is, claims that are neither "frivolous, malicious, or fail[] to state a claim upon which relief may be granted," nor seek "monetary relief from a defendant who is immune from

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

Case No.    2:25-cv-11105-VBF-SK                          Date: January 16, 2026

Title       Billy F. Steffey v. Colette S. Peters, et al.

such relief." 28 U.S.C. § 1915A(a)-(b). Having performed that screening with the liberal pleading standards for pro se litigants, the court finds that plaintiff may be able to allege a colorable cause of action under the FTCA for certain of his state-law tort claims (e.g., false imprisonment) against the BOP. The FTCA provides the exclusive remedy "for injury or loss of property . . . arising or resulting from the negligent or wrongful act or omission of any employee of the [federal] Government while acting within the scope of his office or employment." 28 U.S.C. § 2679(b)(1). But "the United States is the only proper party defendant in an FTCA action." *Kennedy v. U.S. Postal Serv.*, 145 F.3d 1077, 1078 (9th Cir. 1998). And plaintiff can seek only monetary damages from the United States under the FTCA. *See Westbay Steel, Inc. v. United States*, 970 F.2d 648, 651 (9th Cir. 1992); *see also* 28 U.S.C. § 1346(b)(1). Otherwise, the balance of plaintiff's first amended complaint cannot proceed as alleged.

Most critically, no implied *Bivens* remedy is available for plaintiff's alleged federal constitutional claims. *See Ziglar v. Abbasi*, 582 U.S. 120, 135 (2017) (declining to extend *Bivens* for procedural or substantive due process claims); *Reichle v. Howards*, 566 U.S. 658, 663 n.4 (2012) (recognizing that Supreme Court has never recognized *Bivens* remedy for First Amendment claims). The Supreme Court has warned federal courts not to create *Bivens* remedies on their own without its express guidance. *See Ziglar*, 582 U.S. at 135. In addition, by suing the BOP Director and others in their official capacities, plaintiff is essentially suing the United States. *See Hutchinson v. United States*, 677 F.2d 1322, 1327 (9th Cir.1982). But except to the extent waived by federal statute (e.g., the FTCA), the United States and its federal agencies enjoy sovereign immunity from damages suits. *See F.D.I.C. v. Meyer*, 510 U.S. 471, 486 (1994). And even if plaintiff had standing to challenge drug testing practices employed on other inmates, *contra*, e.g., *Wasson v. Sonoma Cnty. Junior Coll.*, 203 F.3d 659, 663 (9th Cir. 2000) ("Parties ordinarily are not permitted to assert constitutional rights other than their own."); *Mayweathers v. Hickman*, 2007 WL 2326086, at *3 (S.D. Cal. July 31, 2007) (plaintiff lacks standing to seek injunctive relief on behalf of other prisoners after release), he cannot obtain equitable relief like injunctions under *Bivens*. *See Solida v. McKelvey*, 820 F.3d 1090, 1093 (9th Cir. 2016). Nor can plaintiff sue under *Bivens* against "private entities acting under color of federal law" like Safariland. *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 66 (2001).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.    2:25-cv-11105-VBF-SK                    Date: January 16, 2026

Title    Billy F. Steffey v. Colette S. Peters, et al.

For all these reasons, plaintiff's request to proceed in forma pauperis is CONDITIONALLY GRANTED provided that he files a second amended complaint naming the United States as defendant and alleging state-law claims actionable against the United States under the FTCA. The court could then order such second amended complaint served on the United States.[1] Plaintiff could also join Safariland to that FTCA suit and ask this court "to exercise supplemental jurisdiction over" any separate actionable state-law claims against that private party arising from the same set of facts at issue in the FTCA suit against the United States. *Agyeman v. Corr. Corp. of Am.*, 390 F.3d 1101, 1103–04 (9th Cir. 2004); *see* 28 U.S.C. § 1367(c)(3).

The deadline for plaintiff to file a second amended complaint consistent with this order is **January 30, 2026**. Alternatively, if plaintiff wishes to dismiss this action *without prejudice* (e.g., to exhaust tort claims with the United States before filing an FTCA suit), he may do so by signing and returning the attached Form CV-09x by the response deadline. But failure to comply with this order or to otherwise respond in writing by that deadline may lead to involuntary dismissal of this action (with or without prejudice) with no further notice for lack of prosecution and noncompliance with court orders. *See* Fed. R. Civ. P. 41(b); L.R. 41-1. Failure to keep the court timely apprised of plaintiff's current address of record may also lead to immediate closing of this case with no further warning. *See* L.R. 41-6.

IT IS SO ORDERED.

---

[1] Nothing in such order, however, would prevent the United States from asserting any and all defenses to the FTCA complaint, including for failure to state a claim on which relief may be granted. *See, e.g., Relyea v. United States*, 220 F. Supp. 2d 1048, 1050 (D. Ariz. 2002) (The FTCA authorizes "the United States to assert defenses that would be available to an individual under state law."). Nor is anything in this order intended to suggest that plaintiff is excused from the requirement to exhaust administrative remedies before filing an FTCA suit. *See Gartner v. S.E.C.*, 913 F. Supp. 1372, 1381 (C.D. Cal. 1995) (citing 28 U.S.C. § 2675(a)). To the contrary, failure to administratively exhaust may be grounds to dismiss unexhausted FTCA claims for lack of jurisdiction. *See McNeil v. United States*, 508 U.S. 106, 112 (1993).

PRESS FIRMLY TO SEAL

 SUSTAINABLE FORESTRY INITIATIVE
Certified Sourcing
www.sfiprogram.org
SFI-00061

 PAPER POUCH how2recycle.info

PRESS FIRMLY TO SEAL

PRIORITY MAIL
FLAT RATE ENVELOPE
POSTAGE REQUIRED

 **UNITED STATES POSTAL SERVICE ®**

# PRIORITY
## MA

- Expected delivery date specified for domestic use.
- Domestic shipments include $100 of insurance (restrictions apply).*
- USPS Tracking® service included for domestic and many international
- Limited international insurance.**
- When used internationally, a customs declaration form is required.

*Insurance does not cover certain items. For details regarding claims exclusions see the Domestic Mail Manual at *http://pe.usps.com.*

** See International Mail Manual at *http://pe.usps.com* for availability and limitations of c

# FLAT RATE ENVELOPE
ONE RATE ■ ANY WEIGHT

# TRACKED ■ INSURED


PS00001000014

EP14F November 2025
OD: 12 1/2 x 9 1/2

To schedule free Pack
scan the QR c

USPS.COM/PICKUP

 **UNITED STATES POSTAL SERVICE.** **Click-N-Ship®**

usps.com
$14.25
US POSTAGE

9410 8301 0935 5007 9950 71 0103 0001 0009 7204

 U.S. POSTAGE PAID

01/27/2026
1 lb 0 oz

Mailed from 95834   7419132597192554

**PRIORITY MAIL®**

Created 2026-01-27
Flat Rate Envelope

BILLY STEFFEY
455 DRAGONFLY CIR
SACRAMENTO CA 95834

RDC 03

C002

**SIGNATURE REQUIRED**

 U.S. DISTRICT COURT
CLERK OF THE COURT
1000 SW 3RD AVE
PORTLAND OR 97204-2930

**USPS SIGNATURE TRACKING #**



9410 8301 0935 5007 9950 71



 PAPER POUCH how2recycle.info

This packaging is the property of the U.S. Postal Service® and is provided solely for use in sending Priority Mail® and Priority Mail International® shipments. Misuses may be a violation of federal law. This package is not for resale. EP14F © U.S. Postal Service; November 2025; All rights reserved.

SKNA