IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

BILLY F. STEFFEY,

      Petitioner,

      v.

WARDEN, FCI LOMPOC,[1]

      Respondent.

Case No. 3:19-cv-93-JR

**ORDER**

**Michael H. Simon, District Judge.**

On January 18, 2019, Petitioner filed his Petition for Writ of Habeas Corpus. ECF 1. In his Petition, he challenged a disciplinary hearing in which he lost 41 days of good time credit. Petitioner had been accused of the "Introduction or making of any narcotics, marijuana, drugs or related paraphernalia not prescribed for the individual by medical staff." ECF 30 at 3. Petitioner raised arguments about the investigator assigned to his case and the "NIK" test used to determine

---

[1] The Court replaces Warden Salazar, who no longer serves as the Warden of FCI Lompoc and has passed away since the filing of Petitioner's original habeas case, with a generic reference to the warden, pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

PAGE 1 – ORDER

if the substance had narcotics.[2] ECF 1 at 7. Regarding the latter, he contended that the tests were being used improperly, "manipulatt[ed]," and used after their expiration dates. *Id.* Petitioner alleged that the misuse of the NIK tests resulted in "false positives" and that prison staff knew about these false positives. *Id.* at 8.

On February 5, 2020, U.S. Magistrate Judge Jolie A. Russo issued Findings and Recommendation, recommending that the Court deny the Petition. ECF 30. Judge Russo first concluded that Petitioner did not meet his burden to show that the investigating officer was biased or made any bargains relating to Petitioner's case. ECF 30 at 7-8. Judge Russo then concluded that Petitioner failed to show that his disciplinary hearing lacked a valid evidentiary basis because there was "some evidence" supporting it "[d]espite Petitioner's contention that the NIK test was not reliable." ECF 30 at 10. Judge Russo described the other evidence in the record the investigator relied on in addition to the NIK test that supported the investigator's disciplinary finding. *Id.* In other words, Judge Russo found some evidence in the record supporting the Bureau of Prison's decision, even assuming Petitioner was correct that the NIK test was unreliable. On May 18, 2020, the Court adopted the Findings and Recommendation and entered Judgment denying Petitioner's Petition. *See* ECF 39, 40.

On January 26, 2026, Petitioner filed a Motion for Relief from Judgment, and on January 30, 2026, filed an Amended Motion for Relief from Judgment. *See* ECF 43, 45. Petitioner seeks relief from Judgment under Rule 60 of the Federal Rules of Civil Procedure, and requests that the Court reopen his habeas proceeding under 28 U.S.C. § 2241. Petitioner argues that Defendants have intentionally suppressed information showing that the NIK test results in

---

[2] Although not raised in his Petition, Petitioner raised an argument in his supporting brief, prepared by appointed counsel, that he was not provided with fair notice. Judge Russo rejected this argument. ECF 30 at 8-9.

PAGE 2 – ORDER

Petitioner's case were not positive for drugs and thus that Defendants committed fraud on the Court.

## A. Mootness

Petitioner confirmed through email to the Court that he has been released from custody after serving his custodial sentence and also is no longer on supervised release. The Court, therefore, ordered Petitioner to show cause in writing why his motion should not be denied because his release has rendered his Petition moot—the Court cannot grant any relief on his Petition given that he is no longer in the custody of the United States. Petitioner responded, arguing that his disciplinary finding has ongoing collateral consequences similar to a criminal conviction and thus his Petition is not moot.

Section 2241 authorizes habeas relief for federal prisoners who are "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(1), (3). "[T]he Ninth Circuit has long held that 'the writ of habeas corpus is limited to attacks upon the legality or duration of confinement . . . .'" *Pinson v. Carvajal*, 69 F.4th 1059, 1065 (9th Cir. 2023) (quoting *Crawford v. Bell*, 599 F.2d 890, 891 (9th Cir. 1979)). When success on a petitioner's claims would not necessarily result in immediate or earlier release from confinement, those claims do not fall within the "core of habeas corpus." *See Nettles v. Grounds*, 830 F.3d 922, 927-35 (9th Cir. 2016). The Ninth Circuit has made clear that habeas corpus relief is not available to prisoners who attack the terms and conditions of their confinement. *See Crawford*, 599 F.2d at 891-92; *see also Ramirez v. Galaza*, 334 F.3d 850, 859 (9th Cir. 2003) (stating that habeas jurisdiction is absent "where a successful challenge to a prison condition will not necessarily shorten the prisoner's sentence").

A petitioner's release from custody and conclusion of supervised release generally causes the petition to become moot because it no longer presents "an actual injury traceable to the

PAGE 3 – ORDER

defendant" that is likely to be "redressed by a favorable judicial decision." *See Spencer v. Kemna*, 523 U.S. 1, 7 (1998) (quoting *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990)). Petitioner, however, argues that he has provided evidence of specific collateral consequences of his prison disciplinary charge that should be considered the equivalent of the collateral consequences of a criminal conviction, which the Supreme Court has held sufficient to constitute redressable injury in habeas even after the completion of a petitioner's sentence. *Id.* at 8. The Supreme Court's analysis in *Spencer*, however, forecloses Petitioner's argument.

The Supreme Court in *Spencer* first evaluated whether to extend the "presumption" of collateral consequences to avoid mootness that arises from a habeas claim challenging a criminal conviction to one challenging the wrongful revocation of parole. *See id.* The Supreme Court discussed the evolving history of its analysis of the collateral consequences of a criminal conviction and whether such consequences served to avoid mootness. *See id.* at 8-12. The court noted that originally it required a petitioner to show specific collateral consequences to avoid dismissal based on mootness, but eventually the court accepted a presumption of collateral consequences for a criminal conviction.

The Supreme Court declined to extend the presumption of collateral consequences to the revocation of parole. *Id.* at 14. The Supreme Court explained that collateral consequences that can avoid mootness must cause "further penalties or disabilities . . . imposed on [the petitioner]" "under either state or federal law." *See id.* at *8 (quoting *St. Pierre v. United States*, 319 U.S. 41, 43 (1943)). Such "penalties and disabilities" include facing deportation and being barred from voting, serving as a juror, obtaining certain business licenses, holding certain offices, becoming a naturalized citizen, and serving as an official in a labor union. *Id.* at *9, 12-13.

In *Spencer*, the Supreme Court rejected the grounds that Petitioner raises here as actionable collateral consequences. Petitioner asserts that because of his disciplinary hearing, he

PAGE 4 – ORDER

lost a job at Verizon and he and his partner are at risk of suffering negative consequences in a custody dispute of her two children. The first example is squarely foreclosed by *Spencer*, which rejected the argument that an effect on future employment decisions was sufficient. *See id.* at *12-13.

Similarly, that an adverse disciplinary hearing finding could impair Petitioner's credibility or reputation in the pending family law case does not constitute a "penalty or disability" because "the moral stigma of a judgment which no longer affects legal rights does not present a case or controversy for appellate review." *See id.* at *8-9 (quoting *St. Pierre*, 319 U.S. at 43). Additionally, as noted by the Supreme Court in *Spencer*, it is unclear whether in these two situations it is Petitioner's *disciplinary hearing* that is the primary problem, or his *criminal conviction* for conspiracy to traffic and use one or more counterfeit devices to obtain items in value in excess of $1,000 and for aggravated identity theft, for which he was sentenced to 84 months' imprisonment. *See id.* at *13 (rejecting contention that future use of parole revocation to impugn credibility constituted collateral consequences, explaining that such use is discretionary, it is unclear whether it would be admissible, and use of the "far more reliable evidence" of the criminal conviction to "would achieve the same purpose of impeachment"). As Petitioner quotes in his brief, in the custody dispute, the father of the children raise Petitioner's felony conviction, describing Petitioner as being convicted for "identity theft and racketeering, one of the largest cases of its kind in U.S. history," in addition to raising that Petitioner smuggled drugs into the prison. ECF 51 at 6.

Petitioner fails to show "that under either state or federal law further penalties or disabilities can be imposed on him as a result of the judgment which has now been satisfied." *Spencer*, 523 U.S. at 8 (quoting *St. Pierre*, 319 U.S. at 43). The "moral stigma" that may attach

PAGE 5 – ORDER

to a disciplinary hearing charge of smuggling drugs does not suffice. *See id.* at *8-9. Thus, he fails to show collateral consequences sufficient to avoid the mootness caused by his release.

## B.  Other Arguments

Petitioner argues that the Court should consider his motion because he seeks vacatur of the Court's judgment dismissing his Petition instead of release from custody. Requesting vacatur, however, is the step to reopening his case. When considering mootness, the Court looks to whether after his case is reopened, Petitioner can seek relief that this Court can grant. Petitioner cannot seek vacatur in and of itself. If the Court were to vacate the judgment, Petitioner would have an active habeas case before this Court, and would then litigate that habeas case and request relief. The Court presumes Petitioner is seeking the same relief originally requested; invalidating the disciplinary hearing results, but without the additional element of restoring his 41 days of lost good time credits that would have allowed his sentence to be reduced. Considering only overturning the disciplinary hearing itself, that relief is not within the "core" of habeas and, as discussed above, does not have sufficient collateral consequences to warrant habeas relief.

Petitioner also argues that because his motion asserts Rule 60(d)(3), and fraud on the court is an independent and extraordinary ground for reconsideration, the Court must consider the motion on the merits. Claiming fraud on the Court, however, does not avoid Petitioner's mootness problem. The Court must first have a live case or controversy before it can consider Petitioner's argument that his case must be reopened for fraud.

Finally, Petitioner argues that the Court should consider his motion because of the gravity of Respondent's fraud. Petitioner asserts that the United States has relied on the misinterpretation of the NIK U test in courts throughout the country to have habeas petitions denied and it is critical that a court with the manufacturer's instructions introduced as evidence rule against the government and stop this practice. Whatever the merits of that argument, this is not that case. A

PAGE 6 – ORDER

petitioner with an active habeas petition will need to be the litigant that files the manufacturer's instructions and raises these arguments. The Court notes, however, that Petitioner has preserved his right to continue with his civil litigation against the United States in the Central District of California, following that court's suggestion to dismiss without prejudice so he could follow the requirements of the Federal Tort Claims Act.

The Court DENIES Petitioner's Amended Motion for Relief from Judgment, ECF 45.[3]

**IT IS SO ORDERED.**

DATED this 6th day of May, 2026.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge

---

[3] Even if the Court reached the merits of Petitioner's motion, the Court would deny the motion. Petitioner's motion is based solely on the contention that the NIK U test results were inaccurate. But Judge Russo specifically found "some evidence" despite the underlying drug test, recognizing Petitioner's original argument that the test was unreliable. *See* ECF 30 at 10 (describing the other evidence in the record relied on by the disciplinary hearing officer and finding some evidence in the record "[d]espite Petitioner's contention that the NIK test was not reliable").

PAGE 7 – ORDER