Steffey v. Warden, FCI Lompoc, No. 3:19-cv-00093-JR

**Billy F. Steffey, Self-Represented Petitioner**
455 Capitol Mall, Suite 802
Sacramento, California 95814
Telephone: (916) 955-6332
Email: bsteffey@mac.com

FILED 11 MAY '26 1  30USDC-ORP

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **BILLY F. STEFFEY,**<br><br>    Petitioner,<br><br>v.<br><br>**WARDEN, FCI LOMPOC,**<br><br>    Respondent. | Case No. 3:19-cv-00093-JR<br><br>**PETITIONER'S MOTION TO ALTER OR**<br>**AMEND JUDGMENT UNDER FED. R. CIV. P. 59(e), OR IN THE ALTERNATIVE MOTION FOR CLARIFICATION OF FOOTNOTE 3**<br><br>The Honorable Michael H. Simon<br>**Request for Oral Argument** |

**LOCAL RULE 7-1 STATEMENT:** Petitioner appears self-represented in this closed post-judgment habeas matter. No counsel for Respondent has entered an appearance in connection with Petitioner's Motion for Relief from Judgment (ECF 43), Amended Motion for Relief from Judgment (ECF 45), the Court's April 22, 2026 Order to Show Cause (ECF 49), Petitioner's Response thereto (ECF 51), or the May 6, 2026 Order (ECF 53). The most recent appearance by counsel for Respondent in the underlying proceeding was at ECF 38 (May 7, 2020). On May 7, 2026, prior to filing this Motion, Petitioner contacted the United States Attorney's Office for the District of Oregon by telephone to identify currently assigned counsel for Respondent and was unable to do so. Petitioner has therefore been unable to confer with counsel for Respondent regarding the relief requested in this Motion. Petitioner files this Motion within the non-extendable 28-day deadline of Federal Rule of Civil Procedure 59(e). *See* Fed. R. Civ. P. 6(b)(2) (the court *"must not extend"* the time to act under Rule 59(e)). Petitioner respectfully requests the Court deem this Statement sufficient under LR 7-1 or, in the alternative, excuse further conferral under

the circumstances of this closed post-judgment proceeding. Petitioner will promptly notify the Court of Respondent's position upon receipt.

## MOTION

Petitioner Billy F. Steffey, appearing self-represented, respectfully moves this Honorable Court pursuant to Federal Rule of Civil Procedure 59(e) to alter or amend its Order entered May 6, 2026 (ECF 53) denying Petitioner's Amended Motion for Relief from Judgment under Rule 60(d)(3) (ECF 45). In the alternative, Petitioner respectfully requests clarification of footnote 3 of that Order to preserve the integrity of Petitioner's preserved civil action in the Central District of California, *Steffey v. Peters*, No. 2:25-cv-11105-VBF-SK (C.D. Cal.). Petitioner files concurrently herewith his supporting Declaration and a Proposed Order.

## MEMORANDUM OF LAW IN SUPPORT

Petitioner files this Motion with the utmost respect for the Court. Rule 59(e) relief is extraordinary and is not sought to relitigate matters already decided. Petitioner respectfully submits, however, that the May 6 Order rests on manifest errors of law and fact that warrant correction under Rule 59(e).

**Preliminary Statement.** The Court's footnote 3 treats this case as if Petitioner challenged merely the weight or reliability of one item of evidence. Respectfully, the Rule 60(d)(3) claim is different and narrower. The Bureau of Prisons ("BOP") charged Petitioner with a Code 111 drug-introduction offense—the most severe category of prison discipline. The *only* evidence purporting to establish actual drugs was a NIK Test U result. That result was burgundy. Safariland, LLC's federal-court filing in Petitioner's related Central District of California action represents that *only blue* indicates a positive result for NIK Test U. The question this Motion presents, then, is not whether the Court should reweigh the record. The question is whether a Greatest-Severity Code 111 disciplinary judgment can satisfy *Superintendent v. Hill*, 472 U.S. 445 (1985), when the only evidence of drugs was a chemically negative reaction represented as positive pursuant to a concealed national directive from BOP Headquarters.

## I.  RULE 59(e) STANDARD

A motion under Rule 59(e) may be granted (1) to correct manifest errors of law or fact upon which the judgment rests; (2) to consider newly discovered or previously unavailable evidence; (3) to prevent manifest injustice; or (4) to account for an intervening change in controlling law. *Allstate*

*Ins. Co. v. Herron*, 634 F.3d 1101, 1111 (9th Cir. 2011); *McDowell v. Calderon*, 197 F.3d 1253, 1255 n.1 (9th Cir. 1999) (en banc) (per curiam). The Ninth Circuit has expressly recognized that Rule 59(e) is *"not limited merely to these four situations"*; *"unusual circumstances"* outside the listed categories also justify amendment. *Allstate*, 634 F.3d at 1111. While Rule 59(e) is not a vehicle for reargument, *Carroll v. Nakatani*, 342 F.3d 934, 945 (9th Cir. 2003), it is the proper instrument when an order overlooks controlling Ninth Circuit authority directly on point or rests on a material factual misunderstanding. This Motion identifies four such errors. Each, standing alone, warrants amendment.

## II. THE COURT OVERLOOKED BINDING NINTH CIRCUIT AUTHORITY DIRECTLY ON POINT: ROBBINS v. CHRISTIANSON

The May 6 Order concluded that Petitioner's employment-related collateral consequence is *"squarely foreclosed by Spencer."* ECF 53 at 5. Respectfully, that conclusion overlooks *Robbins v. Christianson*, 904 F.2d 492 (9th Cir. 1990)—the controlling Ninth Circuit precedent governing the precise factual pattern presented here.

The factual alignment between *Robbins* and Petitioner's case is exact in the variables that *Robbins* itself treated as dispositive:

- **Same institution.** *Robbins* was a federal prisoner at **FCI Lompoc**. 904 F.2d at 493. Petitioner is a former federal prisoner at **FCI Lompoc**. The challenged disciplinary finding issued from FCI Lompoc.

-  **Same category of charge.** *Robbins* challenged a **drug-related disciplinary** finding. *Id.* Petitioner challenges a **Greatest-Severity Code 111 drug-introduction** finding. 28 C.F.R. § 541.3, Table 1.

- **Same posture.** *Robbins* was released from custody before the merits were reached. 904 F.2d at 493. Petitioner is a released federal prisoner.

- **Same direct attack on the underlying finding.** *Robbins* did not concede the conduct; he attacked the disciplinary finding itself. *Id.* Petitioner does not concede the introduction of drugs and directly attacks the underlying Code 111 finding.

On those facts, the Ninth Circuit **reversed** the district court's mootness dismissal. *Id.* at 496. The court held that the threat of employment discrimination arising from a prison drug-discipline record was *"not too ephemeral"* to constitute a cognizable collateral consequence, and emphasized

that *"the threat of discrimination is much more real when drug charges are involved."* *Id.* at 495–96.

Petitioner's collateral injury is materially **stronger** than the record in *Robbins*. *Robbins* turned on the *possibility* of future employment discrimination. *Id.* Petitioner has **actual realized employment harm**: Petitioner's OSC Response (ECF 51) and supporting Declaration (ECF 52) establish that BOP material reciting that Petitioner introduced drugs into a federal correctional institution was provided to Verizon Communications HR, resulting in the termination of Petitioner's senior commission-based position with first-year base compensation of approximately $175,000. If a *possibility* of discrimination defeated mootness in *Robbins*, an *actualized* termination defeats mootness here. *A fortiori.*

**Anticipated AUSA response:** *Wilson v. Terhune*, 319 F.3d 477 (9th Cir. 2003), distinguished *Robbins* on the ground that the *Wilson* petitioner did not attack the underlying finding itself. *Id.* at 482–83. *Wilson*'s distinction **confirms** rather than undermines Petitioner's position. *Wilson* did not displace *Robbins*; it sharpened it. The Ninth Circuit in *Wilson* expressly preserved *Robbins* for cases where the petitioner challenges **the underlying drug-misconduct finding**. That is precisely Petitioner's posture: he challenges the underlying finding that he introduced drugs into FCI Lompoc. *Wilson* thus places Petitioner inside, not outside, *Robbins*'s rule.

## III. THE FAMILY-COURT CONSEQUENCE IS A CONCRETE ECONOMIC AND CHILD-SAFETY INJURY, NOT MERE MORAL STIGMA

The May 6 Order treated Petitioner's family-court consequence as the type of generalized reputational harm that may attach to any prior conviction. Respectfully, the record shows a material distinction that the Order did not address.

Petitioner has a prior federal fraud-related conviction from approximately fifteen years ago. Petitioner does not minimize that conviction. But Petitioner has **never** been convicted in any criminal court of any drug-related offense. The challenged BOP Code 111 finding is the **only** drug-related adjudication in his record.

That distinction is material in a custody setting. A family court's paramount concern is the safety and welfare of children. A dated fraud conviction may bear on credibility. A recent drug-introduction finding raises a categorically different and more direct concern—whether drugs may be present in a household or around children. The challenged Code 111 finding is currently being invoked in active family-court proceedings (DeLotty v. Turner, 22FL01590, Hon. Weng-

Gutierrez, Dept. 125, Sacramento Superior Court), with merits trial currently scheduled for late June 2026.

**The harm is concrete, current, and economic.** To defend against filings invoking the BOP Code 111 finding, Petitioner has incurred a $10,000 retainer to Michelle E. Trigger, Esq. (SBN 288008), Trigger Law Office, Sacramento. That payment is not moral stigma. It is a quantifiable, out-of-pocket legal expense incurred in active litigation involving family relationships and child safety, and it would not have been incurred but for the challenged disciplinary judgment.

These consequences place this case outside the moral-stigma analysis of *St. Pierre v. United States*, 319 U.S. 41 (1943) (per curiam). They align directly with *Robbins*, 904 F.2d at 495–96, and with *Troxel v. Granville*, 530 U.S. 57, 65–66 (2000), which recognizes the fundamental, constitutionally protected liberty interest in family relationships. A judgment that imposes a $10,000 cost on a parent in ongoing custody litigation is not *"ephemeral."*

### IV. THE MAY 6 ORDER DID NOT ADDRESS THE MATERIAL DISTINCTION BETWEEN AN UNRELIABLE TEST AND A NEGATIVE TEST REPRESENTED AS POSITIVE

Petitioner respectfully submits that the May 6 Order treated his Rule 60(d)(3) motion as a challenge to an *unreliable* NIK Test U result. That is not the Rule 60(d)(3) claim. The claim is narrower and far more serious: that a NIK Test U result producing burgundy—the manufacturer's baseline color —was represented in the disciplinary and habeas proceedings as a *positive* drug result.

The new evidence supporting that distinction was not before the Court when judgment was entered in 2020. Two items now squarely place it before this Court:

**(1) Safariland's federal-court representations.** In Petitioner's related action in the Central District of California, *Steffey v. Peters*, No. 2:25-cv-11105-VBF-SK (C.D. Cal.), Safariland's counsel filed a Memorandum in Support of Motion to Dismiss (Doc. 23-2) representing that Safariland's product insert and color chart show that *"only BLUE indicates a positive result"* for NIK Test U, and that if any color other than dark blue develops, additional testing is required. That is the diametric opposite of what BOP told the DHO and what BOP permitted to be told to this Court.

**(2) The concealed Central Office SIS Advisory.** On January 18, 2017, BOP Headquarters' Intelligence Section issued a national "Law Enforcement Sensitive" advisory marked from 320 First Street NW, Room 543, Washington, D.C. 20534, signed by Brad Trate (Administrative Correctional Services Branch), M. Wade Jensen, and Kevin Schwinn (Chief, Intelligence Section).

The Advisory stated that Safariland had informed BOP Central Office of an update concerning Buprenorphine HCL testing and that, in the A-U-K sequence, *"NIK Test U — Methamphetamine Reagent"* results are *"BURGANDY" [sic]*. This was not an isolated local misreading. It was concealed national guidance that re-defined a baseline burgundy reaction as inculpatory. It was suppressed from Petitioner, his Oregon habeas counsel, and this Court.

Reconsideration is warranted because a chemically *negative* test represented as positive is not merely *"weak"* evidence. It is **false** evidence. The *Hill* "some evidence" standard is deferential, but it is not a license to credit fabricated chemistry as evidence of drugs.

## V. ONCE CONCRETE COLLATERAL CONSEQUENCES PRESERVE ARTICLE III, THE COURT HAS BOTH THE POWER AND THE DUTY TO REACH THE RULE 60(d)(3) CLAIM

The May 6 Order held that *"Claiming fraud on the Court does not avoid Petitioner's mootness problem"* and that the Court must first have a live controversy before reaching whether the judgment was procured by fraud. ECF 53 at 6. Petitioner respectfully agrees that Rule 60(d)(3) does not displace Article III. The point is the converse: *once* Article III is satisfied by the concrete collateral consequences identified in Sections II and III above—realized loss of a senior commission-based position with approximately $175,000 in first-year base compensation; $10,000 in current legal fees in active child-safety custody litigation; ongoing reputational and family-relationship injury—the Court possesses both the *power* and the *duty* to investigate whether its own judgment was procured by fraud.

The Supreme Court could not have stated the principle more directly:

> *"The inherent power of a federal court to investigate whether a judgment was obtained by fraud, is beyond question."*

*Universal Oil Prods. Co. v. Root Refining Co.*, 328 U.S. 575, 580 (1946); *accord Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 246 (1944) (*"The public welfare demands that the agencies of public justice be not so impotent that they must always be mute and helpless victims of deception and fraud"*); *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44–46 (1991) (recognizing inherent authority of federal courts to protect the integrity of their proceedings).

*Hazel-Atlas* controls a critical defensive point. Even if Respondent argues that Petitioner could have discovered the fraud sooner, the Supreme Court squarely held that *"relief may not be denied on that ground alone, since public interests are involved."* 322 U.S. at 246. The institutional

interest in the integrity of a federal judgment is not a private claim that can be defeated by litigation diligence rules.

Petitioner therefore does not ask the Court to allow fraud-on-the-court doctrine to displace Article III. He asks the Court to recognize that the May 6 Order overlooked concrete consequences that *preserve* Article III, and that, once those consequences are properly weighed, settled Supreme Court authority requires the Court to reach the Rule 60(d)(3) merits.

### VI. MANIFEST ERROR REGARDING FOOTNOTE 3: THE "SOME EVIDENCE" STANDARD MUST BE EVIDENCE OF THE CHARGED CODE 111 OFFENSE; UNCHARGED CONDUCT CANNOT SUBSTITUTE FOR EVIDENCE OF DRUGS

Footnote 3 states that, even if the Court reached the merits, it would deny relief because Magistrate Judge Russo found *"some evidence"* despite Petitioner's contention that the NIK test was unreliable. ECF 53 at 7 n.3. Respectfully, this characterization does not address the Rule 60(d)(3) claim now before the Court, and footnote 3 should be withdrawn or clarified.

### A. The charged offense is Code 111, not a mail or commissary violation.

Petitioner was not charged with a mail violation, a commissary violation, or with giving another inmate anything of value. He was charged with a single Greatest-Severity offense:

> **Code 111** — *"Introduction or making of any narcotics, marijuana, drugs, alcohol, intoxicants, or related paraphernalia, not prescribed for the individual by the medical staff."*

28 C.F.R. § 541.3, Table 1. The *elemental predicate* of Code 111 is the actual introduction of **drugs or related paraphernalia**. Code 111 sits at the *Greatest* severity level—the same tier as killing (Code 100), assault causing serious injury (Code 101), escape (Code 102), arson (Code 103), and rioting (Code 105). The deference owed under *Hill* to *"some evidence"* of a Code 111 offense is identical to the deference that would attach to *"some evidence"* of those offenses. It is not a deference that survives proof that the inculpatory chemistry was inverted.

### B. The BOP's own regulatory taxonomy refutes any post-hoc pivot to uncharged conduct.

The BOP's prohibited-acts regulation contains separately codified offenses for the very conduct on which the original Findings and Recommendation rested:

- **Code 113** — "Possession of any narcotics, marijuana, drugs, alcohol, intoxicants, or related paraphernalia." 28 C.F.R. § 541.3, Table 1.

- **Code 196** — "Use of the mail for an illegal purpose or to commit or further a Greatest category prohibited act." *Id.*

- **Code 296** — "Use of the mail for abuses other than criminal activity which circumvent mail monitoring procedures." *Id.*

- **Code 328** — "Giving money or anything of value to, or accepting money or anything of value from, another inmate or any other person without staff authorization." *Id.*

By the canon *expressio unius est exclusio alterius*, BOP's decision to codify those offenses as separate prohibited acts forecloses their use as substitute evidence of **introduction** under Code 111. The point is narrow and surgical: facts about mail patterns or commissary transactions may bear on entirely different administrative offenses, but they cannot substitute for evidence of the elemental premise of Code 111—the actual introduction or making of drugs, intoxicants, or related paraphernalia. BOP could have charged Codes 113, 196, 296, or 328. It charged none of them. It charged Code 111. Due process requires that the conviction be sustained, if at all, on evidence of *the charged offense*—not on a post-hoc reframing of uncharged administrative conduct. *Wolff v. McDonnell*, 418 U.S. 539, 564 (1974) (due process requires advance written notice of the *charged* violation so the inmate may marshal evidence and prepare a defense).

## C.    The other evidence connected Petitioner to a package; it did not establish that the package contained drugs.

Petitioner adopts a precise formulation. There was *other evidence* of **association** with the package or possible administrative mail-related issues. There was **no other evidence of actual drugs**. The NIK Test U result was the *only* evidence of actual drugs in the entire record.

That singular premise has now been directly contradicted by the manufacturer's own federal-court representations. Safariland's C.D. Cal. filing represents that *only blue* indicates a positive result on NIK Test U, and that any other color requires additional testing. The challenged disciplinary record reads the opposite: it treats burgundy as positive for amphetamines pursuant to a concealed Headquarters directive. The two cannot be reconciled.

## D.  Manufactured chemistry is not *"some evidence."*

The Ninth Circuit has been explicit: a prison disciplinary conviction violates due process where *"no shred of evidence"* supports guilt, and the appropriate remedy is **expungement**. *Burnsworth v. Gunderson*, 179 F.3d 771, 774–75 (9th Cir. 1999); *see also Cato v. Rushen*, 824 F.2d 703, 705 (9th Cir. 1987) (information forming the basis for prison discipline must bear *"indicia of reliability"*).

A negative chemical reaction inverted by a concealed national directive does not bear *indicia of reliability*; it is the antithesis of indicia of reliability.

Footnote 3 should therefore be withdrawn. In the alternative, footnote 3 should be clarified. Because the Court denied relief on threshold mootness grounds and held no evidentiary hearing on (i) NIK Test U chemistry, (ii) the Central Office SIS Advisory, (iii) Safariland's federal-court representations, or (iv) the alleged concealment record, footnote 3 was not necessary to the disposition and should not be treated as a merits adjudication. *See Bobby v. Bies*, 556 U.S. 825, 834–35 (2009) (issue preclusion requires that determination have been *"essential to the judgment"*).

## VII. THE COURT'S MOOTNESS ANALYSIS SHOULD BE CALIBRATED TO THE GOVERNING SUPREME COURT FRAMEWORK

The governing constitutional floor for collateral consequences was set in *Sibron v. New York*, 392 U.S. 40 (1968). *Sibron* held that *"[t]he mere 'possibility'"* of adverse collateral consequences is *"enough to preserve a criminal case from ending ignominiously in the limbo of mootness,"* and that a case is moot *"only if it is shown that there is no possibility that any collateral legal consequences will be imposed." Id.* at 55, 57 (emphasis added).

*Spencer v. Kemna*, 523 U.S. 1 (1998), did not displace *Sibron*; *Spencer* expressly preserves the concrete-consequences exception. *Spencer* held that, once a sentence has expired, *"some concrete and continuing injury other than the now-ended incarceration or parole—some 'collateral consequence' of the conviction—must exist if the suit is to be maintained." Id.* at 7. *Spencer* declined to *presume* collateral consequences from a parole revocation. It did not abrogate the rule that *identified* collateral consequences—realized employment loss, ongoing financial harm in active litigation, and concrete child-safety consequences—preserve Article III.

Petitioner has identified **realized, quantified, and current** injuries traceable to the challenged judgment: a senior commission-based position lost (with approximately $175,000 in first-year base compensation); $10,000 in legal fees presently being expended in active child-safety custody proceedings; and ongoing collateral effects in family-court litigation now scheduled for merits trial. These are not the speculative consequences *Spencer* rejected. They are precisely the concrete consequences *Spencer* preserved.

## VIII. CONCLUSION AND PRAYER FOR RELIEF

For the reasons stated, Petitioner respectfully requests that the Court:

(1) **Grant** this Rule 59(e) Motion;

(2) **Alter or amend** the May 6, 2026 Order denying Petitioner's Amended Motion for Relief from Judgment under Rule 60(d)(3);

(3) **Hold** that Petitioner has demonstrated concrete collateral consequences sufficient to defeat mootness under *Sibron v. New York*, 392 U.S. 40 (1968); *Spencer v. Kemna*, 523 U.S. 1 (1998); and *Robbins v. Christianson*, 904 F.2d 492 (9th Cir. 1990);

(4) **Reach the merits** of Petitioner's Rule 60(d)(3) claim in light of the Central Office SIS Advisory of January 18, 2017; Safariland's federal-court representations regarding NIK Test U colors; and the allegation that a chemically negative Test U result was presented as positive pursuant to concealed national BOP guidance;

(5) **Set an evidentiary hearing** pursuant to *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238 (1944), and *Universal Oil Prods. Co. v. Root Refining Co.*, 328 U.S. 575 (1946), on the NIK Test U chemistry, the SIS Advisory, and the alleged concealment record;

(6) **In the alternative, withdraw or clarify footnote 3** of the May 6 Order to state expressly that the Court has not adjudicated the truth, reliability, admissibility, or preclusive effect of the NIK Test U result, and that the May 6 Order does not impair Petitioner's preserved civil action in the Central District of California; and

(7) **Grant** such other and further relief as the Court deems just and proper.

**Respectfully submitted,**

**Dated: May 7, 2026**

**BILLY F. STEFFEY**
Petitioner, Self-Represented
455 Capitol Mall, Suite 802
Sacramento, California 95814
Telephone: (916) 955-6332
Email: bsteffey@mac.com

Steffey v. Warden, FCI Lompoc, No. 3:19-cv-00093-JR

## CERTIFICATE OF SERVICE

I hereby certify that on May 7, 2026, I caused a true and correct copy of the foregoing **Petitioner's Motion to Alter or Amend Judgment Under Fed. R. Civ. P. 59(e), or in the Alternative for Clarification of Footnote 3**, together with the supporting Declaration and Proposed Order, to be served by United States Mail, postage prepaid, on the following:

**Original to the Clerk of Court, by U.S. Mail:**

Clerk of Court
United States District Court
for the District of Oregon
1000 SW Third Avenue
Portland, Oregon 97204

**Copy to Counsel for Respondent, by U.S. Mail:**

Civil Division
United States Attorney's Office
for the District of Oregon
1000 SW Third Avenue, Suite 600
Portland, Oregon 97204-2902

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

**Executed on May 7, 2026, at Sacramento, California.**

**BILLY F. STEFFEY**
Petitioner, Self-Represented

PRESS FIRMLY TO SEAL

SUSTAINABLE FORESTRY INITIATIVE
Certified Sourcing
www.sfiprogram.org
SFI-00061


PAPER POUCH
how2recycle.info

PRESS FIRMLY TO SEAL

PRIORITY MAIL
FLAT RATE ENVELOPE
POSTAGE REQUIRED

## UNITED STATES POSTAL SERVICE ®  |  PRIORITY MAIL®

- Expected delivery date specified for domestic use.

- Domestic shipments include $100 of insurance (restrictions apply).*

- USPS Tracking® service included for domestic and many international destinations.

- Limited international insurance.**

- When used internationally, a customs declaration form is required.

*Insurance does not cover certain items. For details regarding claims exclusions see the Domestic Mail Manual at http://pe.usps.com.

** See International Mail Manual at http://pe.usps.com for availability and limitations of coverage.

## FLAT RATE ENVELOPE
ONE RATE ■ ANY WEIGHT

## TRACKED ■ INSURED



PS00001000014

EP14F November 2025
OD: 12 1/2 x 9 1/2

To schedule free Package Pickup,
scan the QR code.



USPS.COM/PICKUP

 P

US POSTAGE PAID IMI
2026-05-07
95814
C8563443
Commercial
0.5 LB ZONE 4

 easypost

0901000022692

### USPS PRIORITY MAIL

BILLY STEFFEY
455 CAPITOL MALL
SUITE 802
SACRAMENTO CA 95814

0003

C002

DENIED

SHIP TO: CLERK OF THE COURT
U.S. DISTRICT COURT
1000 SW 3RD AVE STE 740
PORTLAND OR 97204-2937

### USPS TRACKING #



9405 5362 0766 8275 0618 13

Shipped with Rollo



This packaging is the property of the U.S. Postal Service® and is provided solely for use in sending Priority Mail® and Priority Mail International® shipments. Misuses may be a violation of federal law. This package is not for resale. EP14F © U.S. Postal Service; November 2025; All rights reserved.



# UNITED STATES POSTAL SERVICE®

# PRIORITY MAIL EXPRESS®



# FLAT RATE ENVELOPE

ONE RATE ■ ANY WEIGHT

To schedule free Package Pickup,
scan the QR code.



USPS.COM/PICKUP

# VISIT US AT USPS.COM®
## ORDER FREE SUPPLIES ONLINE



PS10001000006

EP13F October 2023
OD: 12 1/2 x 9 1/2

**US POSTAGE PAID IMI**
2026-05-11
95814
C8563443
Commercial
FLAT RATE ENV

E

easypost

0901000022692

## USPS PRIORITY MAIL EXPRESS

BILLY STEFFEY
455 CAPITOL MALL
SUITE 802
SACRAMENTO CA 95814

**0007**

C002

WAIVER OF SIGNATURE

SHIP TO: CLERK OF THE COURT
U.S. DISTRICT COURT
1000 SW 3RD AVE STE 740
PORTLAND OR 97204-2937

### USPS TRACKING #



9470 1362 0766 8274 3846 43

📦 Shipped with Rollo



# GUARANTEED* ■ TRACKED ■ INSURED

For Domestic shipments, the maximum weight is 70 lbs. For international shipments, the maximum weight is 20 lbs.