Steffey v. Warden, FCI Lompoc, No. 3:19-cv-00093-JR

**Billy F. Steffey, Self-Represented Petitioner**
455 Capitol Mall, Suite 802
Sacramento, California 95814
Telephone: (916) 955-6332
Email: bsteffey@mac.com

FILED11 JUN'26 11:20USDC-ORP

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **BILLY F. STEFFEY,**<br>Petitioner,<br><br>v.<br><br>**WARDEN, FCI LOMPOC,**<br>Respondent. | Case No. 3:19-cv-00093-JR<br><br>**PETITIONER'S REPLY IN SUPPORT OF MOTION TO ALTER OR AMEND JUDGMENT UNDER FED. R. CIV. P. 59(e)**<br><br>The Honorable Michael H. Simon<br><br>Request for Oral Argument |

## PRELIMINARY STATEMENT AND LR 7-1(e)(2) NOTE

Counsel for Respondent has now appeared in this post-judgment matter. On June 8, 2026, the United States Attorney for the District of Oregon filed Respondent's Response to Petitioner's Motion to Alter or Amend Judgment (ECF 60), signed by Assistant U.S. Attorney Joshua Keller. Petitioner files this short Reply, addressed solely to the matters Respondent raised, within fourteen days after service of the Response, as LR 7-1(e)(2) permits. To the extent the Court construes its May 29, 2026 Scheduling Order (ECF 59) as authorizing only a response and not a reply, Petitioner respectfully requests leave to file this Reply, which is necessary to address Respondent's arguments concerning *Robbins*, hearsay, collateral consequences, and redressability.

## INTRODUCTION

Respondent's Response does not refute the manifest errors identified in Petitioner's Motion (ECF 54); it confirms them. The Motion identified four independent errors in the May 6,

2026 Order (ECF 53). Respondent answers only one of them—mootness—and, even there, does not engage the controlling Ninth Circuit authority on which this case turns.

What Respondent declines to address is equally telling. Respondent does not mention Rule 60(d)(3). It does not cite or distinguish *Universal Oil*, *Hazel-Atlas*, or *Chambers*. It does not defend the factual premise on which the 2020 judgment rested—that a NIK Test U "dark burgundy" reaction was affirmative evidence of amphetamines. It does not address Safariland's judicial admission, in Petitioner's related federal action, that burgundy is the manufacturer's baseline color and that only blue indicates a positive result. And it does not address the concealed January 18, 2017 Central Office advisory or the "One Team" emails—both part of the Rule 60(d)(3) record, *see* ECF 45—directing staff to coordinate with the disciplinary hearing officer to secure convictions. Petitioner does not ask the Court to resolve the fraud-on-the-court merits on this Reply; the point is that Respondent, given the opportunity to engage that record, did not. Three points dispose of the Response.

First, Respondent does not engage *Robbins v. Christianson*, 904 F.2d 492 (9th Cir. 1990). Although Respondent devotes a section of its brief to *Robbins*, it never addresses that decision's facts, holding, or reasoning. It recites *Spencer v. Kemna*, 523 U.S. 1 (1998), as though *Spencer* answered *Robbins*. It does not. The Ninth Circuit itself reconciled the two decisions in *Wilson v. Terhune*, 319 F.3d 477 (9th Cir. 2003)—five years after *Spencer*—and distinguished *Robbins* precisely because the petitioner there, like Petitioner here, attacked the underlying drug-misconduct finding.

Second, Respondent's lone substantive objection—that the supporting declaration is "hearsay"—is immaterial. *Robbins* holds that the mere possibility of employment discrimination arising from a drug-disciplinary record is a cognizable collateral consequence. That possibility

inheres in the undisputed existence of Petitioner's Greatest-Severity Code 111 drug-introduction record, independent of any declaration. The Court need not resolve the objection to find this case live.

Third, and most telling, Respondent is wholly silent on a separate and equally dispositive point once Article III is satisfied: the Court's inherent power to vacate a judgment procured by fraud on the court. Respondent does not mention *Universal Oil*, *Hazel-Atlas*, *Chambers v. NASCO*, or the inherent-power framework at all. Respondent offers no answer to that authority on this record.

The Motion should be granted. In the alternative, footnote 3 should be withdrawn or clarified, as requested in Prayer ¶ 6—relief that Respondent's brief does not oppose on the merits.

## I. RESPONDENT DOES NOT ENGAGE ROBBINS, AND WILSON v. TERHUNE FORECLOSES ANY ARGUMENT THAT SPENCER DISPLACED IT.

Rule 59(e) is the proper instrument to correct an order that overlooks controlling Ninth Circuit authority directly on point. *Allstate Ins. Co. v. Herron*, 634 F.3d 1101, 1111 (9th Cir. 2011); *McDowell v. Calderon*, 197 F.3d 1253, 1255 n.1 (9th Cir. 1999) (en banc). The May 6 Order held Petitioner's employment-related consequence "squarely foreclosed by *Spencer*." ECF 53 at 5. That holding overlooked *Robbins*, the controlling decision governing the precise pattern presented here. Respondent's Response does not cure the omission: it cites *Robbins* in a single sentence, labels Petitioner's reliance "misplaced," and then argues only *Spencer*. ECF 60 at 3–4. Respondent never addresses what *Robbins* actually held.

*Robbins* involved a federal prisoner who, like Petitioner, had a single, unrelated, non-drug conviction. 904 F.2d at 493. While serving the final months of his sentence at a community

treatment center, Robbins was found to have used a restricted drug; the center's director imposed discipline that included the loss of sixty days of good-time credit and transfer to the federal prison camp at Lompoc. *Id.* Robbins was released before any court reached the merits, and the district court dismissed his § 2241 petition as moot. *Id.* The Ninth Circuit reversed. *Id.* at 496.

The court held that Robbins's "alleged possible loss of employment is sufficiently harmful to constitute a collateral consequence." *Id.* at 495. Critically, the court reached that conclusion even though it recognized that Robbins's "employment possibilities are most likely to be affected by the fact that he was convicted of a felony," holding that it "cannot fully discount the danger created by the drug use finding." *Id.* The court explained that although "the possibility of discrimination arising out of prison discipline would seem very speculative had Robbins been disciplined for some conduct other than drug use," "the threat of discrimination is much more real when drug charges are involved." *Id.* at 495–96. It concluded that "the possibility of future harm to Robbins is not too ephemeral to constitute a collateral consequence for mootness purposes." *Id.* at 496.

*Spencer* addressed the presumption of collateral consequences and speculative consequences arising from parole revocation. It does not answer the separate question presented here: whether a petitioner who directly attacks an underlying drug-disciplinary finding and shows concrete post-release consequences retains a live controversy. *Wilson* later applied *Spencer* in the prison-disciplinary context and distinguished *Robbins* because *Robbins* challenged the underlying drug-use finding, while Wilson did not challenge the fact of his escape. 319 F.3d at 482. That is the operative distinction. Petitioner invokes no presumption. He relies on *Robbins*'s drug-discipline employment-consequence reasoning, *Wilson*'s distinction, and his own showing of actual post-release injury.

*Wilson* confirms the point from the other side of the same line. In rejecting the speculative parole prospects the petitioner there asserted, the Ninth Circuit distinguished *Park v. California*, 202 F.3d 1146, 1148 (9th Cir. 2000), in which the petitioner "had already been ordered deported on the basis of his conviction" and "therefore suffered an actual consequence," and *Zegarra-Gomez v. INS*, 314 F.3d 1124, 1125–27 (9th Cir. 2003), in which an accomplished twenty-year reentry bar defeated mootness. *Wilson*, 319 F.3d at 481. The line the Ninth Circuit drew separates a consequence that has actually been realized from one that remains speculative or discretionary. Petitioner's termination from Verizon falls on the *Park* side of that line: it is not a prediction about how some future employer might someday react, but a completed, realized loss of a senior, commission-based position. Respondent's reliance on *Lane*'s "discretionary . . . third party decisions," ECF 60 at 3–4, therefore misframes the inquiry—a consequence that has already occurred is not a speculative prediction about a third party's future choice.

Petitioner's case is materially stronger than *Robbins* in every variable the Ninth Circuit treated as dispositive. *Robbins* lost sixty days of good-time credit on a bare urinalysis adjudicated by a halfway-house director; Petitioner lost forty-one days of good-time credit and was placed in segregated housing for approximately five months on a Greatest-Severity Code 111 drug-introduction finding—the most serious drug-discipline category in the federal system, 28 C.F.R. § 541.3, Table 1. *Robbins*, like Petitioner, had a single unrelated non-drug conviction, yet the drug-discipline consequence still counted. And where *Robbins* turned on the mere possibility of future employment discrimination, Petitioner identifies a realized loss. If a possibility sufficed in *Robbins*, a realization suffices here. *A fortiori*.

The Ninth Circuit drew the distinction directly in *Wilson*: "*Robbins* . . . is distinguishable because the petitioner there challenged the underlying finding of misconduct—the alleged drug

use—that was the basis for the disciplinary action," whereas Wilson "ha[d] not challenged the fact that he escaped." *Wilson*, 319 F.3d at 482. Petitioner stands with *Robbins* and apart from Wilson: he does not concede the introduction of drugs and directly attacks the underlying Code 111 finding. *Wilson* thus places Petitioner squarely inside *Robbins*'s rule.

Because *Wilson* postdates *Spencer* and applied *Robbins* as good law, any suggestion that *Spencer* silently displaced *Robbins* fails as a matter of circuit law. Prior circuit authority may be set aside only where it is "clearly irreconcilable" with intervening higher authority. *Miller v. Gammie*, 335 F.3d 889, 893 (9th Cir. 2003) (en banc). *Wilson*'s continued application of *Robbins* after *Spencer* is dispositive proof that the two are not clearly irreconcilable. *Robbins* remains binding, and it governs here.

## II. RESPONDENT'S HEARSAY OBJECTION IS BOTH MISPLACED AND IMMATERIAL.

Respondent's only substantive objection is that Petitioner's supporting declaration (ECF 52 ¶ 6) is "inadmissible hearsay" because it recounts what Verizon human-resources personnel conveyed to Petitioner. ECF 60 at 4. The objection fails on its own terms and, more fundamentally, is immaterial to mootness.

**A. The objection is misplaced.** In determining whether a live controversy exists, the Court is not confined to trial-admissible evidence; it may consider declarations and materials outside the pleadings to resolve the jurisdictional facts. *See Savage v. Glendale Union High Sch. Dist.*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003). The declaration is competent in any event. Petitioner has personal knowledge of the fact and timing of his own termination from a senior, commission-based position. And the communication from the employer's personnel is not offered for the truth of the disciplinary finding it recited; it is offered to establish that the BOP

record was conveyed to the employer and to show its effect on the employer's decision—a non-hearsay purpose. *See* Fed. R. Evid. 801(c) (hearsay is a statement offered "to prove the truth of the matter asserted").

**B. The objection is immaterial.** Even if the declaration were disregarded in its entirety, the collateral consequence *Robbins* requires would remain. *Robbins* did not require proof of an actual termination. It held that the possibility of future employment discrimination arising from a drug-disciplinary record is itself "not too ephemeral to constitute a collateral consequence." 904 F.2d at 496. That possibility exists here by operation of the undisputed existence of Petitioner's Code 111 drug-introduction record—the precise category of record *Robbins* found consequential. Respondent's objection therefore cannot defeat mootness; at most it bears on the weight of one item corroborating a consequence that is already established as a matter of law. Petitioner's realized termination renders the case *a fortiori*, but the Court need not resolve the objection to find the case live. In all events, should the Court harbor any doubt about the evidentiary sufficiency of the termination showing, the proper course on a contested jurisdictional fact is to permit limited supplementation or to hold an evidentiary hearing—not to deny reconsideration while the dispositive collateral consequence stands established as a matter of law.

## III. THE FAMILY-COURT CONSEQUENCE IS A PRESENT, ONGOING ECONOMIC AND LEGAL INJURY—NOT SPECULATIVE FUTURE STIGMA.

Respondent characterizes Petitioner's family-court consequence as the kind of speculative future stigma *Spencer* rejected. ECF 60 at 4–5. The record shows otherwise. Petitioner has already incurred concrete legal expenses—including a $10,000 flat-rate retainer to retained counsel, ECF 52 ¶ 9—to defend against filings in an active custody proceeding (*DeLotty v. Turner*, No. 22FL01590, Sacramento County Superior Court) in which the Code 111 drug-

introduction finding is invoked against him. That proceeding remains active and ongoing; the merits trial—scheduled for late June 2026 when Petitioner executed his declaration (ECF 52 ¶ 7) —has since been continued to August 2026. A sum already paid is not a speculative future possibility; it is a concrete, out-of-pocket injury that would not have been incurred but for the challenged judgment, and the continuing obligation to litigate against the finding is a present and ongoing burden. *Spencer* required "some concrete and continuing injury," 523 U.S. at 7; a legal expense already incurred, coupled with an active proceeding in which the disciplinary finding is being used as evidence, is exactly that. This is not the "moral stigma" of *St. Pierre v. United States*, 319 U.S. 41 (1943) (per curiam); it is concrete, economic, and present.

## IV. RESPONDENT IS SILENT ON THE COURT'S INHERENT POWER TO VACATE A JUDGMENT PROCURED BY FRAUD ON THE COURT.

Petitioner's Motion identified a second, independent error: the May 6 Order's conclusion that the Court "must first have a live case or controversy before it can consider Petitioner's argument that his case must be reopened for fraud." ECF 53 at 6. As the Motion explained, that reasoning conflates two distinct questions—the petitioner's Article III standing to seek relief, and the Court's inherent authority to protect the integrity of its own judgment. Once concrete collateral consequences preserve Article III (Sections I–III, *supra*), the Court possesses "inherent power . . . to investigate whether a judgment was obtained by fraud," which "is beyond question." *Universal Oil Prods. Co. v. Root Refining Co.*, 328 U.S. 575, 580 (1946). That power exists to vindicate "public interests," and relief "may not be denied on [diligence] ground[s] alone." *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 246 (1944); *accord Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991).

Respondent says nothing about any of this. The Response does not cite *Universal Oil*, *Hazel-Atlas*, or *Chambers*; it does not address the inherent-power framework; and it offers no answer to the Motion's showing that the May 6 Order conflated standing with the Court's authority over its own judgment. That silence is not an oversight. There is no answer to *Universal Oil* on a record in which a national Bureau directive—redefining the manufacturer's baseline color as inculpatory—was withheld from Petitioner, from his habeas counsel, and from this Court. The error identified in the Motion stands unrebutted, and it is independently sufficient to warrant amendment.

The record Respondent leaves unanswered is specific. Petitioner's Rule 60(d)(3) motion (ECF 45) showed that the only physical evidence of the drug element was a NIK Test U reaction that turned burgundy; that Safariland's counsel has judicially admitted, in Petitioner's related federal action, that burgundy is the manufacturer's baseline color and that only blue indicates a positive result; that the Bureau withheld the manufacturer's flowcharts and reading instructions while litigating the opposite premise; and that a concealed January 18, 2017 Central Office advisory directed staff to report "BURGANDY" in a NIK sequence attributed to Safariland. The same record contains the "One Team" emails of Regional Agent R. John Lynn, which directed staff to "communicate with your DHO" and warned that an inmate "will win his appeal" unless prescribed testing steps were followed—coordination among investigators, appellate strategy, and the disciplinary hearing officer that stands in tension with the impartial-tribunal guarantee of *Wolff v. McDonnell*, 418 U.S. 539, 570–71 (1974). Petitioner does not ask the Court to resolve these fraud-on-the-court questions on this Reply. He observes only that Respondent—given the opportunity to defend the integrity of the 2020 judgment—offered no response to any of it.

Steffey v. Warden, FCI Lompoc, No. 3:19-cv-00093-JR

Respondent separately renews the suggestion, drawn from the May 6 Order, that overturning the disciplinary finding is not relief within "the core of habeas" now that Petitioner has been released. ECF 60 at 4; *see* ECF 53 at 6. That misapprehends the relief Petitioner seeks. He does not ask this Court to order his release, to restore good-time credit, or to superintend the administration of an institution he left years ago. He asks the Court to vacate its own 2020 judgment under Rule 60(d)(3) because that judgment was procured by fraud on the court. Vacatur of a judgment is quintessential Rule 60 relief, and the Court's power to grant it does not lapse when custody ends; it turns on the integrity of the judgment, not the movant's custodial status, and is "beyond question." *Universal Oil*, 328 U.S. at 580. Vacatur is, moreover, effective relief for Article III purposes: it would withdraw the judicial imprimatur the 2020 judgment lends to the disciplinary finding and would materially alter the federal record on which the third-party consequences identified above depend. Article III demands no more: a case remains live so long as the movant retains "a concrete interest, however small, in the outcome," *Chafin v. Chafin*, 568 U.S. 165, 172 (2013), and a litigant need not show that a favorable decision will redress every injury—partial redress suffices. *See Massachusetts v. EPA*, 549 U.S. 497, 525 (2007).

## V.  RESPONDENT DEFENDS NO MERITS HOLDING; ANY MERITS OBSERVATION IS NOT PRECLUSIVE AND SHOULD BE CLARIFIED.

Respondent asserts that "this Court already addressed the merits." ECF 60 at 5. It does not, however, defend any merits holding. The Response identifies no evidence of the charged Code 111 offense; it does not engage the "some evidence" standard of *Superintendent v. Hill*, 472 U.S. 445 (1985), the written-notice and impartial-tribunal requirements of *Wolff v. McDonnell*, 418 U.S. 539, 564, 570–71 (1974), the manufacturer's federal-court representations

regarding NIK Test U colors, the January 18, 2017 Central Office advisory, or the Lynn "One Team" emails. Respondent does not dispute—because it cannot—that Safariland's counsel has judicially admitted, in Petitioner's related federal action, that burgundy is the manufacturer's baseline color and that only blue indicates a positive NIK Test U result.

The Court denied relief on threshold mootness grounds and held no evidentiary hearing on the chemistry, the advisory, the "One Team" emails, or the alleged concealment. Any observation about the merits was therefore not necessary to the disposition and is not entitled to preclusive effect. *Bobby v. Bies*, 556 U.S. 825, 834–35 (2009) (issue preclusion requires that the determination have been "essential to the judgment"). To the extent any ambiguity remains, the alternative relief requested in Prayer ¶ 6—withdrawal or clarification confirming that the Court has not adjudicated the truth, reliability, admissibility, or preclusive effect of the NIK Test U result—should be granted. Respondent's brief does not oppose that relief, and clarification imposes no burden on Respondent while protecting Petitioner's preserved civil action in the Central District of California.

## CONCLUSION

For the foregoing reasons, Petitioner respectfully requests that the Court grant his Motion to Alter or Amend the May 6, 2026 Order; hold that concrete collateral consequences defeat mootness under *Sibron v. New York*, 392 U.S. 40 (1968), *Spencer*, and *Robbins*; and reach the merits of the Rule 60(d)(3) claim. In the alternative, Petitioner requests that the Court withdraw or clarify footnote 3 as set forth in Prayer ¶ 6 of the Motion. Petitioner requests oral argument.

Dated: June 9, 2026.

Respectfully submitted,

_____

Steffey v. Warden, FCI Lompoc, No. 3:19-cv-00093-JR

**BILLY F. STEFFEY**
Petitioner, Self-Represented
455 Capitol Mall, Suite 802
Sacramento, California 95814
(916) 955-6332
bsteffey@mac.com

## CERTIFICATE OF SERVICE

I hereby certify that on June 9, 2026, I caused a true and correct copy of the foregoing

*Petitioner's Reply in Support of Motion to Alter or Amend Judgment Under Fed. R. Civ. P. 59(e)*

to be served as follows:

Original to the Clerk of Court, by United States Mail:
Clerk of Court
United States District Court for the District of Oregon
1000 SW Third Avenue
Portland, Oregon 97204

Copy to Counsel for Respondent, by United States Mail:
Joshua Keller
Assistant United States Attorney
United States Attorney's Office, District of Oregon
1000 SW Third Avenue, Suite 600
Portland, Oregon 97204-2936

I declare under penalty of perjury under the laws of the United States of America that the

foregoing is true and correct. Executed on June 9, 2026, at Sacramento, California.

**BILLY F. STEFFEY**
Petitioner, Self-Represented

# 2025 AMENDED RETURN PACKAGE

Form 1040-X and supporting schedules | Billy F. Steffey, Jr. | SSN xxx-xx-3382
Sole proprietor — "Swift Designer" | Prepared for CPA review

**DRAFT FOR CPA REVIEW — NOT FOR FILING AS-IS.** Built from figures and representations provided by the taxpayer. Three figures remain open (see "Items for your CPA") and are shown as placeholders or conservative defaults. Vehicle positions depend on a contemporaneous mileage log substantiating 80% business use. Standard deduction is used pending confirmation of 2025 CA state income tax actually paid. Prepared by an AI assistant; not a CPA, not tax advice. CPA should verify every line, the Form 4797 same-year-disposition treatment, and the QBI computation before the taxpayer signs.

## Form 1040-X — Amended U.S. Individual Income Tax Return (TY 2025)

| 1040-X line | A. Original | B. Net change | C. Corrected |
|---|---|---|---|
| 1  Adjusted gross income | 278,158 | (200,844) | 77,314 |
| 2  Standard deduction | 15,750 | 0 | 15,750 |
| 3  Line 1 minus line 2 | 262,408 | | 61,564 |
| 4b  Qualified business income deduction | 0 | +12,313 | 12,313 |
| 5  Taxable income | 262,408 | | 49,251 |
| 6  Tax (2025 single brackets) | 61,390 | (55,641) | 5,749 |
| 7  Nonrefundable credits | 0 | 0 | 0 |
| 10  Other taxes (SE tax, Sch. 2) | 30,318 | (14,915) | 15,403 |
| **11  TOTAL TAX** | **91,708** | **(70,556)** | **21,152** |
| 12-17  Payments/withholding (none on file) | 0 | 0 | 0 |
| **18-20  AMOUNT YOU OWE (corrected)** | | | **~21,152** |

Effect: the assessed liability falls from $91,708 to about $21,152, a reduction of **$70,556** (before recalculated penalty/interest on the lower balance). No payments are on file, so this reduces the balance the IRS is collecting rather than producing a refund.

## Schedule C — Profit or Loss From Business (revised)

| Line | Description | Original | Revised |
|---|---|---|---|
| 1 / 7 | Gross receipts / gross income | 293,000 | 293,000 |
| 9 | Car &amp; truck expenses (gas, actual method, 80%) | 0 | 2,496 |
| 13 | Depreciation &amp; §179 (Form 4562) | 0 | 135,238 |
| 20b | Rent — other business property | 0 | 3,200 |
| 24a | Travel | 0 | 23,550 * |
| 27a | Other expenses (software/subscriptions) | 0 | 18,000 |
| 28 | Total expenses before home office | 0 | 182,484 |
| 29 | Tentative profit | 293,000 | 110,516 |
| 30 | Business use of home (simplified placeholder) | 0 | 1,500 * |
| 31 | **NET PROFIT → Schedule 1 line 3 &amp; Schedule SE** | **293,000** | **109,016** |

* Travel $23,550 shown in full; meals portion is only 50% deductible — split needed, figure may drop. Home office is the $1,500 simplified placeholder; actual method (32.1% of rent/utilities) likely higher.

## Form 4562 — Depreciation and Amortization (to Schedule C line 13)

| Asset | Basis | Method | Deduction |
|---|---|---|---|
| Apple hardware (computers, iPads, accessories) | 31,638 | §179 / 100% bonus | 31,638 |
| BMW M5 (business car 80%, in service 11/24/25) | 129,500 | bonus × 80% (GVWR 6,482 &gt; 6,000) | 103,600 |
| Tesla Model S | | — NOT depreciated — see Form 4797 | 0 |
| **Total to Schedule C line 13** | | | **135,238** |

The Tesla is **not** depreciated: a vehicle placed in service and disposed of in the same tax year (acquired 4/11/25, traded 11/24/25) generally gets no depreciation deduction. It is handled as a disposition on Form 4797.

## Form 4797 — Sales of Business Property (Tesla disposition)

| Tesla Model S (VIN ...549173) | Amount |
|---|---|
| Acquired (financed purchase, Navy Federal) | 04/11/2025 |
| Disposed (traded to Niello BMW) | 11/24/2025 |
| Cost basis × 80% business (cost ~$105,000) | 84,000 |
| Amount realized × 80% (trade allowance $75,000) | 60,000 |
| Depreciation allowed/allowable | 0 |
| **Ordinary loss (Part II) → Schedule 1 line 4** | **(24,000)** |

Business vehicle held under one year, so the loss is **ordinary** (Form 4797 Part II), fully deductible against ordinary income, but it does **not** reduce self-employment tax. The 20% personal-use portion of the loss is nondeductible. **CPA to confirm the exact capitalized cost** from the purchase agreement (the $105,499 financed includes the $499 GAP and is not the depreciable basis) and verify the same-year-disposition treatment.

## Schedule SE — Self-Employment Tax

| Item | Original | Revised |
|---|---|---|
| Net SE earnings (Sch C × 0.9235) | 270,586 | 100,676 |
| Self-employment tax | 29,683 | 15,403 |
| Deductible one-half (to Schedule 1 line 15) | 14,842 | 7,702 |

SS portion no longer maxed — net earnings fell below the $176,100 wage base, so both the 12.4% and 2.9% components drop. Form 8959 Additional Medicare Tax: $635 → $0.

## Schedule 1 / Schedule 2 / Form 8995 (QBI)

| Form / line | Amount |
|---|---|
| Schedule 1, line 3 — business income (Sch C) | 109,016 |
| Schedule 1, line 4 — Form 4797 ordinary loss | (24,000) |
| Schedule 1, line 10 — additional income | 85,016 |
| Schedule 1, line 15 — deductible ½ SE tax | 7,702 |
| Schedule 2, line 4 — SE tax | 15,403 |
| Form 8995 — QBI deduction (taxable income now below $197,300) | 12,313 |

QBI: with taxable income below the $197,300 threshold the wage/UBIA limit no longer applies, so the deduction (which was $0 on the original return) is restored. CPA should confirm whether the Form 4797 vehicle loss is included in QBI; it is treated here as reducing QBI.

## Items for your CPA (to finalize)

1. **Mileage logs** substantiating 80% business use for both vehicles — the deductions rise or fall with this.
2. **Tesla capitalized cost** from the purchase agreement (not the $105,499 loan amount) for the Form 4797 basis.
3. **2025 CA state income tax actually paid** — if it plus the $12,000 donation exceeds the $15,750 standard deduction, switch to itemizing (Schedule A) and the donation lowers tax by ~$1,448; otherwise the standard deduction (used here) is correct and the

donation gives no federal benefit this year. The donation should still help on the California return.

4. **Meals portion** of the $23,550 travel (50% limit).

5. **Home-office actuals** (rent/utilities/insurance × 32.1%) vs. the $1,500 simplified figure used here.

6. Verify the **Form 4797 same-year acquisition-and-disposition** treatment and any depreciation-recapture interaction.

## Audit-exposure note

This return claims roughly **$127,600 of vehicle-related deductions across two performance cars in a single year** (BMW $103,600 bonus depreciation + Tesla $24,000 disposition loss), both at 80% business use, with the Tesla bought and sold inside the same year. This is among the highest-scrutiny profiles a sole-proprietor return can carry. It is permissible only if the business use is real and documented by contemporaneous mileage records; absent those records the vehicle deductions can be disallowed in full. Future-year recapture applies if BMW business use later drops. Confirm all positions with the CPA before signing.

Steffey v. Warden, FCI Lompoc, No. 3:19-cv-00093-JR

**Billy F. Steffey, Self-Represented Petitioner**
455 Capitol Mall, Suite 802
Sacramento, California 95814
Telephone: (916) 955-6332
Email: bsteffey@mac.com

FILED 11 JUN '26 11 20USDC-ORP

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF OREGON

**BILLY F. STEFFEY,**
　　Petitioner,

v.

**WARDEN, FCI LOMPOC,**
　　Respondent.

Case No. 3:19-cv-00093-JR

**NOTICE OF FILING**

The Honorable Michael H. Simon

### NOTICE OF FILING

PLEASE TAKE NOTICE that Petitioner Billy F. Steffey, self-represented, has filed and is serving the following document in the above-captioned matter:

*Petitioner's Reply in Support of Motion to Alter or Amend Judgment Under Fed. R. Civ. P. 59(e)* (with Certificate of Service).

The original is being filed with the Clerk of Court by United States Mail, and a true and correct copy is being served on counsel for Respondent, Assistant United States Attorney Joshua Keller, by United States Mail, at the addresses stated in the Certificate of Service accompanying the Reply.

Dated: June 9, 2026.

Respectfully submitted,

**BILLY F. STEFFEY**
Petitioner, Self-Represented
455 Capitol Mall, Suite 802
Sacramento, California 95814
(916) 955-6332

Steffey v. Warden, FCI Lompoc, No. 3:19-cv-00093-JR

bsteffey@mac.com

## CERTIFICATE OF SERVICE

I hereby certify that on June 9, 2026, I caused a true and correct copy of this *Notice of Filing* to be served by United States Mail on the Clerk of Court, United States District Court for the District of Oregon, 1000 SW Third Avenue, Portland, Oregon 97204, and on Joshua Keller, Assistant United States Attorney, United States Attorney's Office, District of Oregon, 1000 SW Third Avenue, Suite 600, Portland, Oregon 97204-2936.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on June 9, 2026, at Sacramento, California.

**BILLY F. STEFFEY**
Petitioner, Self-Represented