# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **BILLY F. STEFFEY**, | Case No. 3:19-cv-93-JR |
| Petitioner, | |
| v. | **ORDER** |
| **WARDEN, FCI LOMPOC**,[1] | |
| Respondent. | |

**Michael H. Simon, District Judge.**

On January 18, 2019, Petitioner filed a Petition for Writ of Habeas Corpus. ECF 1. In his

Petition, Mr. Steffey challenged a disciplinary hearing in which he lost 41 days of good-time

credit. Prison officials accused Petitioner of "[i]ntroduction or making of any narcotics,

marijuana, drugs or related paraphernalia not prescribed for the individual by medical staff."

ECF 30 at 3. In his Petition, Mr. Steffey raised arguments about the investigator assigned to his

case and the "NIK" test that was used to determine if the substance at issue contained narcotics.[2]

---

[1] The Court replaces Warden Salazar, who no longer serves as the Warden of FCI Lompoc, having passed away since the filing of Petitioner's original habeas case, with a generic reference to the warden, pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

[2] Although not raised in his Petition, Mr. Steffey also argued in his supporting brief, prepared by appointed counsel, that he was not provided with "fair notice." Judge Russo rejected this argument. ECF 30 at 8-9.

PAGE 1 – ORDER

ECF 1 at 7. He contended that the tests were being used improperly, "manipulat[ed]," and used after their expiration dates. *Id.* Petitioner also alleged that the misuse of the NIK tests resulted in "false positives" and that prison staff knew about these false positives. *Id.* at 8.

On February 25, 2020, U.S. Magistrate Judge Jolie A. Russo issued Findings and Recommendation, recommending that the Court deny the Petition. ECF 30. On May 18, 2020, the Court adopted the Findings and Recommendation and entered Judgment denying Petitioner's Petition. *See* ECF 39, 40.

On January 26, 2026, Petitioner filed a Motion for Relief from Judgment, and on January 30, 2026, filed an Amended Motion for Relief from Judgment, seeking relief under Rule 60 of the Federal Rules of Civil Procedure and generally based on "fraud on the court." *See* ECF 43, 45. The Court requested that Petitioner show cause in writing why his motion should not be denied because his Petition appeared to be moot and thus the Court could not provide any relief in this case if the Court granted the requested relief from Judgment. ECF 49. Petitioner argued, among other things, that his Petition was not moot because he suffered ongoing collateral consequences in employment and in a custody dispute for his partner's children. ECF 51. The Court rejected this argument, relying on *Spencer v. Kemna*, 523 U.S. 1 (1998), and denied Petitioner's motion for relief from judgment. ECF 53.

Now before the Court is Petitioner's motion to amend or alter the judgment under Rule 59(e) of the Federal Rules of Civil Procedure. Petitioner challenges the Court's Order denying Petitioner's motion for relief from judgment.[3] Petitioner now argues that the Court failed to consider binding precedent from the Ninth Circuit and based its decision on material factual

---

[3] Although the Court did not enter a judgment after deciding Plaintiff's motion for reconsideration, a "judgment" for purposes of the Federal Rules of Civil Procedure includes "any order from which an appeal lies." Fed. R. Civ. P. 54(a).

PAGE 2 – ORDER

misunderstandings. Thus, Petitioner contends, the Court's decision was clearly erroneous or manifestly unjust.

## A. Standards

### 1. Rule 59(e)

Under Rule 59(e) of the Federal Rules of Civil Procedure, a court has discretion to alter or amend a judgment if: (1) it is presented with newly discovered evidence; (2) it committed clear error or made an initial decision that was manifestly unjust; or (3) there is an intervening change in controlling law. *Ybarra v. McDaniel*, 656 F.3d 984, 998 (9th Cir. 2011); *see also McDowell v. Calderon*, 197 F.3d 1253, 1255 (9th Cir. 1999) (emphasis in original) ("A motion for reconsideration under Rule 59(e) should not be granted, absent highly unusual circumstances, unless the district court is presented with newly discovered evidence, committed *clear error*, or if there is an intervening change in the controlling law." (cleaned up)). "Although Rule 59(e) permits a district court to reconsider and amend a previous order, the rule offers an extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources." *Kona Enters., Inc. v. Est. of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000) (quotation marks omitted).

"A Rule 59(e) motion may *not* be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation." *Id.* (emphasis in original). To establish entitlement to reconsideration under Rule 59 based on newly discovered evidence, the movant must show that: "(1) the evidence was discovered after trial, (2) the exercise of due diligence would not have resulted in the evidence being discovered at an earlier stage and (3) the newly discovered evidence is of such magnitude that production of it earlier would likely have changed the outcome of the case." *Defs. of Wildlife v. Bernal*, 204 F.3d 920, 929 (9th Cir. 2000); *see also Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 992-93 (9th Cir.

2001). A motion under Rule 59(e) must be filed within 28 days of the entry of judgment. Fed. R. Civ. P. 59(e).

### 2. Mootness

Section 2241 authorizes habeas relief for federal prisoners who are "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(1), (3). "[T]he Ninth Circuit has long held that 'the writ of habeas corpus is limited to attacks upon the legality or duration of confinement . . . .'" *Pinson v. Carvajal*, 69 F.4th 1059, 1065 (9th Cir. 2023) (quoting *Crawford v. Bell*, 599 F.2d 890, 891 (9th Cir. 1979)). When success on a petitioner's claims would not necessarily result in immediate or earlier release from confinement, those claims do not fall within the "core of habeas corpus." *See Nettles v. Grounds*, 830 F.3d 922, 927-35 (9th Cir. 2016).

A petitioner's release from custody and conclusion of supervised release generally causes the petition to become moot because it no longer presents "an actual injury traceable to the defendant" that is likely to be "redressed by a favorable judicial decision." *See Spencer v. Kemna*, 523 U.S. 1, 7 (1998) (quoting *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990)). Certain collateral consequences, such as those that inherently arise from a criminal conviction, are sufficient to constitute redressable injury in habeas even after the completion of a petitioner's sentence. *Id.* at 8.

### B. Discussion

Petitioner relies on *Robbins v. Christianson*, 904 F.2d 492 (9th Cir. 1990), to argue that his Petition is not moot. If his Petition is not moot, the Court would need to reconsider its Order of May 6, 2026, denying Petitioner's motion for relief from the judgment of May 18, 2020, based on mootness. That would lead to evaluating Petitioner's Rule 60 motion on the merits and, if that motion is granted, setting aside the May 2020 judgment and reopening Petitioner's original

PAGE 4 – ORDER

Petition challenging his disciplinary hearing. Petitioner would then move forward litigating his Petition—a briefing schedule would be set on that Petition and, ultimately, the Court would decide that Petition on the merits. Because the result of Petitioner's motion would be a decision on the merits of his Petition challenging his disciplinary hearing, his disciplinary hearing must give rise to collateral consequences sufficient to keep his Petition justiciable.

Petitioner argues that his circumstances are directly governed by *Robbins*. Petitioner, however, did not raise *Robbins* in responding to the Court's Order to Show Cause. Generally, a motion under Rule 59(e) may not be used to raise arguments that could have been raised earlier. *See Kona Enters.*, 229 F.3d at 890. The Court, however, gives latitude to Petitioner based on his status as a pro se litigant. *See generally Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010). Thus, the Court will consider Petitioner's argument based on *Robbins*.

### 1.  Whether *Robbins* was abrogated by *Spencer*

A Ninth Circuit panel opinion remains binding authority unless overruled by an en banc decision of the circuit or "where 'intervening Supreme Court authority is clearly irreconcilable with . . . prior circuit authority." *Fiedler v. United States*, 165 F.4th 1310, 1317 (9th Cir. 2026) (quoting *Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003) (en banc)). "The clearly irreconcilable requirement is a high standard that demands more than mere tension between the intervening higher authority and prior circuit precedent." *Id.* (cleaned up). Thus, if a court can apply the panel decision consistent with the higher authority, the court "must do so." *Id.* (quoting *United States v. Eckford*, 77 F.4th 1228, 1233 (9th Cir. 2023)).

*Robbins* involved a petition for writ of habeas corpus challenging a disciplinary decision that resulted from a finding that Robbins had been using restricted drugs. 904 F.2d at 493. Robbins had been unconditionally released by the time the district court reviewed the petition, and so the district court dismissed the petition as moot. *Id.* The Ninth Circuit explained that the

PAGE 5 – ORDER

petition may not be moot if "the prisoner can show that he will suffer some collateral legal consequences if the challenged conviction is allowed to stand." *Id.* at 494. In considering what might constitute sufficient legal consequences, the Ninth Circuit discussed at length the U.S. Supreme Court's decision in *Lane v. Williams*, 455 U.S. 624 (1982). *Id.* at 494-95.

The court in *Robbins* noted that the Supreme Court had found sufficient collateral consequences when "the prisoners had been able to show an immediate injury such as the fact that the prisoner could not engage in certain businesses, could not serve as an official of a labor union, could not vote in local elections and could not serve as a juror." *Robbins*, 904 F.2d at 494 (citing *Lane*, 455 U.S. at 632). The Ninth Circuit also noted that a mere parole violation was insufficient, and that the Supreme Court rejected such claims where the prisoner "would be affected by '[a]t most, certain non-statutory consequences . . . [such as] employment prospects, or the sentence imposed in a future criminal proceeding.'" *Id.* at 495 (alterations in *Robbins*) (quoting *Lane*, 455 U.S. at 632). This was because

> it was more likely that an employer or a court would be influenced by the underlying conduct which had caused the parole revocation rather than the mere fact that the prisoners had violated parole. Since the prisoners had not challenged the findings that their conduct had violated the terms of their parole, but had only challenged the fact that they had been returned to custody, the Court stated that it was unable to provide any relief via a habeas corpus proceeding.

*Id.* (citing *Lane*, 455 U.S. at 633).

The Ninth Circuit in *Robbins* emphasized that "[t]his circuit has not said what result is appropriate when a prisoner attacks the finding of misconduct that caused his parole to be revoked or his sentence to be lengthened." *Id.* The court "assum[ed]" that Robbins had to show that "he will suffer actual harm." *Id.*

The *Robbins* court held that two collateral consequences were sufficient to avoid mootness: (1) the potential detriment in any future charge or conviction of a federal offense; and

PAGE 6 – ORDER

(2) likely future employment consequences. *Id.* at 495-96. For the latter, the Ninth Circuit noted that although an employer may be affected by someone's underlying felony, there also was the threat of employment discrimination in the disciplinary proceedings because Robbin's disciplinary charge involved drugs. *Id.* The *Robbins* court emphasized that were the conduct other than drug-related, it "would seem very speculative" to find collateral consequences but that "the threat of discrimination is much more real when drug charges are involved." *Id.* This is because of society's highly negative view about illegal drugs. *Id.* As summarized by the Ninth Circuit, "The charge against Robbins was that he was a user of illicit drugs. Given the present climate in our society regarding drug use, that is no minor matter." *Id.* This rendered the potential employment harm "not too ephemeral to constitute a collateral consequence for mootness purposes." *Id.*

The Supreme Court in *Spencer* summarized the history of its previous opinions regarding the development of the "presumption" of collateral consequences, and with respect to that doctrine as applied to revocation of parole quoted similar passages from *Lane* that the Ninth Circuit quoted and cited in *Robbins*. *Spencer*, 523 U.S. at 12-13. These included that challenges to employment prospects had been rejected as "nonstatutory consequences" that were "dependent upon '[t]he discretionary decisions . . . made by an employer or a sentencing judge,' which are 'not governed by the mere presence or absence of a recorded violation of parole,' but can 'take into consideration, and are more directly influenced by, the underlying conduct that formed the basis for the parole violation.'" *Id.* at 13 (quoting *Lane*, 455 U.S. at 632-33).

Regarding whether to apply a presumption of collateral consequences, the court in *Spencer* concluded that it would "adhere to the principles announced in *Lane* and decline to presume that collateral consequences adequate to meet Article III's injury-in-fact requirement resulted from petitioner's parole revocation." *Id.* at 14. Instead, the petitioner must

PAGE 7 – ORDER

"demonstrate[] such consequences." *Id.* This conclusion is not "clearly irreconcilable" with *Robbins*, because *Robbins* presumed that Robbins had to show actual harm. *Robbins*, 904 F.2d at 495.

After deciding not to apply a presumption of collateral consequences, the Supreme Court in *Spencer* evaluated whether the petitioner had demonstrated any collateral consequences. The Supreme Court specifically analyzed and rejected that any potential negative effect from revocation of parole on a future parole hearing, future sentencing, or future prosecution was a valid collateral consequence. *Id.* at 14-16. The *Spencer* court also rejected a collateral consequence based on using a finding for impeachment if the petitioner were ever called in the future as a witness. *Id.* at 15-16. Thus, *Spencer* abrogated the first finding of collateral consequences in *Robbins* involving effects on any potential future charge or conviction for a federal offense. *See, e.g.*, *Wilson v. Terhune*, 319 F.3d 477, 481 n.5 (9th Cir. 2003) ("*Robbins* also concluded that the possibility of a harsher sentence in any future criminal proceedings was another collateral consequence sufficient to prevent mootness. This type of collateral consequence was rejected in *Spencer*, in which the Court stated that the habeas petitioner is expected to prevent such a possibility by avoiding violating the law." (citation omitted)); *Maxwell v. Neotti*, 2010 WL 3338806, at *7 n.6 (S.D. Cal. July 15, 2010), *report and recommendation adopted*, 2010 WL 3338803 (S.D. Cal. Aug. 24, 2010) ("[I]n *Spencer*, the Supreme Court did not expressly address the distinction between a challenge to the misconduct and a challenge to the disciplinary conviction in rejecting the argument that a negative impact on future parole proceedings constitutes a collateral consequence and, thus, it appears *Spencer* abrogated *Robbins*.").

In *Spencer*, the Supreme Court did not address whether the petitioner had *demonstrated* a collateral consequence involving employment opportunities. The only discussion regarding

PAGE 8 – ORDER

employment opportunities was in the context of discussing *Lane* in the section resolving whether to apply a *presumption*. Thus, *Spencer* is not "clearly irreconcilable" with the *Robbins* analysis on whether a prisoner convicted of a disciplinary charge based on a drug offense has demonstrated a collateral consequence. Courts in this circuit continue to apply the analysis from this portion of *Robbins*. *See, e.g.*, *Wilson*, 319 F.3d at 481-82 (applying and distinguishing this portion of *Robbins* while also noting the separate portion of *Robbins* that was abrogated in *Spencer*; concluding that Wilson failed to show the necessary collateral consequences because unlike Robbins, Wilson did not challenge the underlying conduct that gave rise to the disciplinary charge); *Santos v. Holland*, 2017 WL 111627, at \*5 (E.D. Cal. Jan. 10, 2017), *subsequently aff'd*, 761 F. App'x 707 (9th Cir. 2019) (quoting *Robbins* and concluding that gang validation resulting in extended placement in security housing unit presented a live case or controversy even after the petitioner was removed from that housing unit because it presented collateral consequences that were "not too ephemeral").

 *Robbins*' discussion about how future employment consequences can be shown in the context of a prison disciplinary charge remains good law. Thus, the Court next considers whether *Robbins* presents a sufficient basis to provide relief under Rule 59(e).

### 2.  Rule 59(e) Motion

 No party brought *Robbins* to the Court's attention when the Court was resolving Petitioner's motion for relief from judgment and the Court specifically asked for briefing regarding mootness. *Robbins* is directly on point regarding Petitioner's claim of ongoing collateral consequences related to employment.

 *Robbins* concluded that the mere chance that an employer "may" find out about a prison disciplinary charge that involves illicit drug use presents sufficient collateral consequences to maintain a live case or controversy for a habeas petition challenging the validity of that

PAGE 9 – ORDER

disciplinary proceeding. 904 F.2d at 496. As discussed, this conclusion was based on the Ninth Circuit's consideration of society's negative view of illicit drug use. The Ninth Circuit stated this view was demonstrated by "harsh criminal penalties, random drug testing of employees, and high visibility government campaigns against the drug menace." *Id.* (citations omitted). All of those factors remain just as relevant today, which supports finding a live case or controversy. Accordingly, under *Robbins*, his case is not moot.

Respondent argues that Petitioner's claim involving a disciplinary proceeding is not within the "core" of habeas and thus is not cognizable. That only matters, however, outside the context of collateral consequences. When evaluating a habeas petition after release, so long as Petitioner had a valid claim under habeas when he originally filed (which no one disputes), then the Court only looks to whether his current allegations raise sufficient collateral consequences. He does not independently need to raise a claim within the core of habeas. *Cf. Spencer*, 523 U.S. at 7 (explaining that the issue when a habeas petitioner has been released is not whether he is "in custody" as required under the habeas statute, but whether he claims sufficient "collateral consequences").

The Court relied on mootness in denying Petitioner's Rule 60 motion for relief from judgment. The Court, however, also noted in a footnote that it would have denied the motion on the merits because Petitioner argued that the NIK test was "inaccurate" but Judge Russo had found "some evidence" supporting the disciplinary finding in addition to the NIK test. Petitioner disputes this footnote by challenging the other evidence relied on by Judge Russo. Petitioner, however, only based his Rule 60 motion on a challenge to the NIK test, not against the other evidence cited by Judge Russo. Nonetheless, the Court acknowledges that based on Petitioner's pro se status, he might not have understood the statement by Judge Russo as relying on evidence *in addition to* the NIK test as opposed to not accepting Petitioner's contention *about* the NIK

PAGE 10 – ORDER

test, such that he believed it necessary to raise these arguments in his Rule 60 motion. *See* ECF 30 at 10 ("Despite Petitioner's contention that the NIK test was not reliable, this Court finds some evidence in the record to support DHO Chetwood's finding that Petitioner committed the prohibited act."). Accordingly, the Court will not preclude Petitioner from litigating his Rule 60 motion on the merits and raising these new arguments. Thus, Petitioner may file a further amended Rule 60 motion.

The Court finds that it would be manifestly unjust to allow the Order dated May 6, 2026 denying Petitioner's Rule 60 motion to stand in light of the new arguments raised by Petitioner based on *Robbins* and the Court's conclusion that the Petition is not moot under that case. The Court, therefore, grants Petitioner's Rule 59(e) motion. The parties shall confer and provide the Court with a proposed expedited briefing schedule on a further amended Rule 60 motion.

## C.  Conclusion

The Court GRANTS Petitioner's Amended Motion for Relief from Judgment, ECF 54. The parties shall confer and provide the Court by June 26, 2026, with a proposed expedited briefing schedule on Petitioner's Rule 60 motion, as discussed herein.

**IT IS SO ORDERED.**

DATED this 23rd day of June, 2026.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge

PAGE 11 – ORDER