# EXHIBIT F

*Steffey v. Warden, FCI Lompoc, No. 3:19-cv-00093-JR*

Petitioner's Further Amended Rule 60(d)(3) Motion

**United States' Ninth Circuit Answering Brief, No. 20-35493 (Dkt. Entry 11, filed Oct. 8, 2020)**

Government appellate brief containing the concession at 21 n.5 that the photograph does not capture Test A's transition from orange to brown.

NO. 20-35493

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

————————————

BILLY STEFFEY,

PETITIONER-APPELLANT

V.

JOSIAS SALAZAR, WARDEN

RESPONDENT-APPELLEE.

————————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON, PORTLAND DIVISION

CASE NO. 3:19-CV-00093-JR

————————————

ANSWERING BRIEF OF RESPONDENT-APPELLEE

————————————

**BILLY J. WILLIAMS**
United States Attorney
District of Oregon
**RENATA A. GOWIE**
Civil Division Chief
**JARED D. HAGER**
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, Oregon 97204-2902
Telephone: (503) 727-1120

**TABLE OF CONTENTS**

STATEMENT OF JURISDICTION ................................................................................ 1

ISSUES PRESENTED ...................................................................................................... 1

STATEMENT OF THE CASE .......................................................................................... 1

I.     Facts ...................................................................................................................... 1

II.    Procedural History ............................................................................................. 6

III.   Rulings Presented for Review ........................................................................... 7

SUMMARY OF THE ARGUMENT ................................................................................ 8

STANDARDS OF REVIEW .............................................................................................. 9

ARGUMENT .................................................................................................................... 10

I.    This Appeal Is Moot Because Steffey Was Released From Custody
More than 41 Days Early .................................................................................. 10

II.   Some Evidence Supports the Decision to Discipline Steffey for
Violating Code 111 ............................................................................................ 13

III.  The District Court Properly Exercised Its Discretion to Deny
Discovery Because Steffey Did Not Show Good Cause in this
Habeas Case ...................................................................................................... 23

IV.  The District Court Properly Exercised Its Discretion to Decide this
Case Without an Evidentiary Hearing ............................................................ 27

CONCLUSION ................................................................................................................ 28

# TABLE OF AUTHORITIES
## Federal Cases

*Allen v. Ives*, 950 F.3d 1184 (9th Cir. 2020) ........................................................................ 11

*Baker v. Lake*, 2019 WL 1455326 (E.D. Cal. Apr. 2, 2019) ................................... 18, 19, 21

*Bracy v. Gramley*, 520 U.S. 899 (1997) ............................................................ 8, 9, 24, 25, 26

*Calderon v. Moore*, 518 U.S. 149 (1996) ............................................................................ 10

*Castro v. Terhune*, 712 F.3d 1304 (9th Cir. 2013) ...................................... 13, 14, 18, 22, 26

*Earp v. Davis*, 881 F.3d 1135 (9th Cir. 2018) ........................................................ 25, 27, 28

*Fourstar v. Copenhaver*, 764 F. App'x 628 (9th Cir. 2019) .................................................... 10

*Hamilton v. O'Leary*, 976 F.2d 341 (7th Cir. 1992) ............................................................ 21

*Harris v. Nelson*, 394 U.S. 286 (1969) .................................................................................. 9

*Hogevoll v. City of Los Angeles*, 2008 WL 11409514 (C.D. Cal. Feb. 25, 2008) ................ 19

*Iron Arrow Honor Soc'y v. Heckler*, 464 U.S. 67 (1984) ...................................................... 11

*Jackson v. Shartle*, 2019 WL 1795593 (D. Ariz. Mar. 13, 2019) ........................................ 19

*Koenig v. Vannelli*, 971 F.2d 422 (9th Cir. 1992) ........................................................... 19, 26

*Lane v. Salazar*, 911 F.3d 942 (9th Cir. 2018) ...................................................................... 9

*Laub v. United States Dep't of Interior*, 342 F.3d 1080 (9th Cir. 2003) ................................ 9

*Mujahid v. Daniels*, 413 F.3d 991 (9th Cir. 2005) .............................................................. 11

*Peer v. Denham*, 2015 WL 5579654 (D. Colo. Sept. 23, 2015) ............................... 18, 19, 20

*Peranzo v. Coughlin*, 850 F.2d 125 (2d Cir. 1988) .............................................................. 19

*Pierce v. Thomas*, 400 F. App'x 259 (9th Cir. 2010) ............................................................ 12

*Powell v. Gomez*, 33 F.3d 39 (9th Cir. 1994) ........................................................................ 13

*Preiser v. Rodriguez*, 411 U.S. 475 (1973) .......................................................................... 11

*Rich v. Calderon*, 187 F.3d 1064 (9th Cir. 1999) ............................................................... 24

*Rivas v. Cross*, 2011 WL 1601289 (N.D. W. Va. Apr. 1, 2011) .......................................... 18

*Rivas v. Cross*, 2011 WL 1601288 (N.D. W. Va. Apr. 27, 2011),
   *aff'd by* 448 F. App'x 332 (4th Cir. 2011) ...................................................................... 18

*Sandoval v. Ives*, 2018 WL 2225358 (D. Or. Apr. 2, 2018) ................................................ 22

*Sandoval v. Ives*, 2018 WL 2223318 (D. Or. May 15, 2018),
   *aff'd sub nom. Sandoval v. Mitchell*, 753 F. App'x 520 (9th Cir. 2019) ......................... 22

*Schriro v. Landrigan*, 550 U.S. 465 (2007) .................................................................... 27, 28

*Spence v. Farrier*, 807 F.2d 753 (8th Cir. 1986) ................................................................. 19

*Spencer v. Kemna*, 523 U.S. 1 (1998) ................................................................................. 10

*Sully v. Ayers*, 725 F.3d 1057 (9th Cir. 2013) .................................................................. 9, 10

*Superintendent v. Hill*, 472 U.S. 445 (1985) .................................................. 8, 13, 19, 23, 26

*Tablada v. Thomas*, 533 F.3d 800 (9th Cir. 2008) .............................................................. 11

*Torres v. Ciolli*, 2020 WL 4501784 (E.D. Cal. Aug. 5, 2020) ............................................. 20

*Totten v. Merkle*, 137 F.3d 1172 (9th Cir. 1998) ............................................................. 8, 9, 27

*United States v. Steffey*, 2015 WL 4393520 (D. Nev. Apr. 6, 2015) ..................................... 2

*United States v. Steffey*, 2017 WL 2909401 (D. Nev. July 7, 2017) ..................................... 2

*United States v. Steffey*, 2020 WL 3840558 (D. Nev. July 8, 2020) ........................ 2, 7, 12, 16

*US. Parole Comm'n v. Geraghty*, 445 U.S. 388 (1980) ....................................................... 10

*White v. Stansil*, 2016 WL 4009954 (E.D. Cal. July 25, 2016) .......................................... 7, 19

*Williams v. Hall*, 648 F. Supp. 2d 1222 (D. Or. 2009) ........................................................ 25

*Williams v. Taylor*, 529 U.S. 420 (2000) .......................................................................... 27

*Wolff v. McDonnell*, 418 U.S. 539 (1974) ................................................................... 13, 19

*Yeaman v. United States*, 326 F.2d 293 (9th Cir. 1963) ...................................................... 10

## TABLE OF AUTHORITIES
### Federal Statutes, Rules, & Regulations

18 U.S.C. § 3583(e) ............................................................................................ 12

28 U.S.C. § 1291 .................................................................................................. 1

28 U.S.C. § 2241 ........................................................................................... 6, 9, 10

28 U.S.C. § 2241(a) ............................................................................................. 1

28 U.S.C. § 2243 ................................................................................................ 10

28 U.S.C. § 2253(a) ............................................................................................. 1

28 U.S.C. § 2254 ................................................................................................ 24

Fed. R. App. P. 4(a)(1)(B) ..................................................................................... 1

28 C.F.R. § 541.3(111) ...................................................................................... 14, 22

28 C.F.R. § 541.3(113) ......................................................................................... 22

## STATEMENT OF JURISDICTION

On January 16, 2019, Billy Steffey petitioned for a writ of habeas corpus to challenge the loss of 41 days of earned credit for good conduct that the Bureau of Prisons ("BOP") imposed as discipline. ER 225-33. The district court had jurisdiction. 28 U.S.C. § 2241(a). It denied the petition and a motion for discovery on May 18, 2020, without holding an evidentiary hearing. ER 1-2. Steffey filed a timely notice of appeal on May 28, 2020. ER 4; *see* Fed. R. App. P. 4(a)(1)(B). This Court has jurisdiction. 28 U.S.C. §§ 1291, 2253(a).

## ISSUES PRESENTED

1. Is this case moot because Steffey was released early from prison and the loss of 41 days of credit had no effect on his length of confinement?

2. Did the district court correctly find that some evidence supports the decision to discipline Steffey for introducing narcotics into prison?

3. Did the district court properly exercise its discretion to deny Steffey's motion for discovery?

4. Did the district court properly exercise its discretion to resolve this case on the administrative record, without holding an evidentiary hearing?

## STATEMENT OF THE CASE

### I.    Facts

On August 7, 2014, Steffey was sentenced to 108 months in prison and three years of supervised release after pleading guilty in the federal district court in Nevada

1

to participating in what the sentencing judge described as "a massive credit card racketeering scheme." *United States v. Steffey*, 2017 WL 2909401, at *1 (D. Nev. July 7, 2017) (denying relief under 28 U.S.C. § 2255); *see also id.*, 2015 WL 4393520, at *1 (D. Nev. Apr. 6, 2015) (amending judgment). Steffey's projected release date had been November 2, 2020. ER 129. However, he was released from custody a few months early, on July 8, 2020, after the sentencing court granted compassionate release. *United States v. Steffey*, 2020 WL 3840558, at *1 (D. Nev. July 8, 2020); Op. Brief 10.

The events giving rise to Steffey's loss of 41 days of credit occurred in 2017 and 2018, when he was incarcerated at FCI Lompoc in California, and sanctioned for a violation involving drugs. ER 129. In late November 2017, Steffey and an outside contact, an unknown person identified as "Lisa Rassmussen, Esq.," used the inmate email system to discuss a package with a unique tracking identification number 70171450000084946239. ER 67, 132; 215. Steffey and Rassmussen exchanged emails before and after the package was received at FCI Lompoc. ER 68 n.1, 209-15.

The emails did not reference contraband explicitly, but used a thinly-veiled code about service upon evicted tenants to describe mailing paperwork and receiving payment. ER 131-32, 209-15. The language was suspicious on its face, and mostly unrelated to legal work. ER 132. Specifically, Steffey discussed eviction notices for various tenants in a series of homes Steffey purportedly owned, and directed Rassmussen to "draft my motion exactly the same and serve on the same guy." ER 132, 209-10. The multiple emails repeatedly confirmed payments and deliveries. ER

2

132, 209-15. Some language was obviously unconnected to legal process. For example, in one email, Steffey wrote, "Please resent [sic] that eviction again to the exact same tenant as you did last time. *Go heavy!*" ER 210 (emphasis added).

On December 5, in response to an email indicating Steffey's frustration for having paid money without receiving what he paid for, Rassmussen wrote, "I reached out. 70171450000084946239." ER 132, 214. The same day, the FCI Lompoc mailroom received an envelope with the tracking number 70171450000084946239. The mail was not addressed to Steffey, but to another inmate. ER 132, 191-92, 197, 201, 204. Correctional Systems Officer B. McDaniel opened the envelope and discovered what appeared to be legal paperwork from an attorney. ER 200. However, the package was not marked legal mail and contained 10 unusually thick, grainy, and discolored sheets of paper. ER 132, 197, 200. A light table revealed that the paper was stained. ER 207.

Special Investigative Support Technician S. Aguilar tested the paper using a NIK brand chemical field-testing kit to see if it had been soaked with liquefied drugs. ER 191, 201, 207. Aguilar cut a small piece of paper from the contents of the envelope and tested it with NIK Test A. ER 201, 207. According to Aguilar's memo, the Test A result "had an immediate orange rapidly turning brown color, indicating Amphetamines." ER 201. Aguilar cut another small piece of paper and tested it with Test U, which "turned an immediate dark burgundy color, indicating Amphetamines." ER 201, 207.

3

Aguilar reviewed the "TRUVIEW system 1 Degree of Separation," which revealed a "money link" between Steffey and the inmate to whom the mail was addressed. ER 191, 198. Aguilar also reviewed the emails Steffey exchanged with Rassmussen, which led Aguilar to believe Steffey had arranged for the amphetamine-soaked paper to be sent to the other inmate. ER 191-92, 208. The emails did not reference amphetamines explicitly, but Aguilar believed the references to legal work for Steffey was code. ER 198, 209-15. The package's tracking number and the emails to Rassmussen directly linked Steffey to the incoming mail. ER 198, 212-13.

On January 31, 2018, Aguilar concluded his investigation by issuing an Incident Report charging Steffey with a Code 111 violation for "[i]ntroduction or making of any narcotics, marijuana, drugs or related paraphernalia not prescribed for the individual by medical staff." ER 191. The report charged that Steffey "facilitated and arranged with an outside person, to have narcotic soaked papers to be sent to another inmate housed at FCC Lompoc-FCI (Low)." ER 191. Upon receiving the report, Steffey stated, "I have no comment due to possible charges being brought by outside law enforcement agencies." ER 192.

On February 5, 2018, the United Discipline Committee ("UDC") held a hearing at which Steffey made no comment and presented no evidence in his defense. ER 193, 198. The UDC referred the matter to the Discipline Hearing Officer ("DHO") for further hearing. ER 193. In the referral, the UDC recommended that Steffey lose 41 days of earned credit for good conduct, among other sanctions, if the Code 111

violation was upheld. ER 193. Steffey was given a Notice of Disciplinary Hearing that identified the alleged violation. ER 194.

On February 13, 2018, DHO William J. Chetwood conducted a disciplinary hearing. ER 131, 196. At the DHO hearing, Steffey did not request a staff representative and did not call any witnesses. ER 196. Steffey "neither admit[ed] or denie[d] the charge(s)." ER 196. He acknowledged his rights before DHO Chetwood and, after being read the incident report, stated, "I talked to Aguilar at length, I didn't think I was going to get a shot. I know of other drug issues." ER 196. Steffey also submitted a written statement denying responsibility, claiming the emails were with his paralegal relating to evictions and his criminal appeal, and suggesting Rassmussen sent him the tracking number by mistake because he "communicated with the same guy for legal help" as did the inmate who received the package. ER 216.

On February 16, 2018, DHO Chetwood found that Steffey committed the Code 111 violation. ER 196-99. In reaching this decision, DHO Chetwood relied upon written statements from Aguilar, Steffey's statements to the investigator and the UDC, photographic evidence depicting the mail items and NIK polytest, memoranda from McDaniel and Aguilar describing how the mail items were discovered and tested, Steffey's email communications with Rassmussen (in particular the email containing the tracking number of the package), and the statements Steffey made at the DHO hearing and in writing. ER 131-34, 197-98. DHO Chetwood found Steffey's claim he was emailed the tracking number by mistake lacked credibility, and considered Steffey's

5

statement that he "knew of other drug issues" adversely, as it suggested Steffey was purposely withholding potentially incriminating information. ER 198-99.

DHO Chetwood imposed discipline consisting of 41 days loss of credit for good conduct, and other sanctions not relevant to this appeal. ER 199.

## II.    Procedural History

On January 18, 2019, while Steffey was incarcerated at FCI Sheridan in Oregon, he petitioned for writ of habeas corpus pursuant to 28 U.S.C. § 2241, challenging the discipline on procedural and evidentiary grounds.[1] ER 225-42. He asserted that his discipline was not supported by "some evidence" because NIK tests are generally unreliable and, in his case the test was specifically unreliable. ER 231-32, 240-41.

The district court appointed counsel. ER 244. Steffey then filed a supplemental brief in which he requested an evidentiary hearing. ER 117-27. Two weeks after briefing was complete, Steffey filed a motion for discovery seeking 11 categories of documents, including access to all physical evidence for confirmation testing. ER 111-16. The Government provided responsive information to some requests and objected to others. ER 92-108. In reply, Steffey acknowledged that the Government produced some responsive documents, but insisted on receiving additional responsive information and propounded 18 interrogatories. ER 78-91.

---

[1] Steffey does not appeal the district court's rejection of his challenges to DHO Chetwood's impartiality and to receiving fair notice of the charges.

On July 8, 2020, a few months before his projected release date, Steffey was granted compassionate release and began serving a three-year term of supervised release. *United States v. Steffey*, 2020 WL 3840558, at *1 (D. Nev. July 8, 2020).

## III. Rulings Presented for Review

On February 25, 2020, the magistrate judge recommended that the petition and motion for discovery be denied without further hearing. ER 66, 245. She reasoned that "multiple sources of evidence" supported the DHO finding that Steffey violated prison rules, notwithstanding Steffey's attacks on the reliability of the NIK test. ER 75. Specifically, the magistrate judge cited to the following:

> detailed communications between Petitioner and the supplier of the contraband which included a message from the supplier containing the exact tracking number of the s[e]ized envelope; photographs documenting the appearance of the papers in question and evidencing the testing process; staff memoranda; the positive test results; and statements from Petitioner confirming his relationship with the sender. DHO Chetwood also found Petitioner lacked credible explanations and made demonstrably false statements. Despite Petitioner's contention that the NIK test was not reliable, this Court finds some evidence in the record to support DHO Chetwood's finding that Petitioner committed the prohibited act.

ER 75 (citing to *White v. Stansil*, 2016 WL 4009954, at *6 (E.D. Cal. July 25, 2016), for the proposition that "independent confirmatory testing could, at best, be used to attack the accuracy of the prison's drug testing procedures and would not necessarily discount the fact that 'some evidence' supported the conclusion of the disciplinary board").

In denying the discovery motion, the magistrate judge found that Steffey did not show good cause because the allegations did not show he would be entitled to relief if

the facts were more fully developed. ER 76 (quoting *Bracy v. Gramley*, 520 U.S. 899, 908-09 (1997)). In declining to hold an evidentiary hearing, the magistrate judge found that the issues could be resolved by reference to the underlying record. ER 76 (quoting *Totten v. Merkle*, 137 F.3d 1172, 1176 (9th Cir. 1998)).

On May 18, 2020, the district judge adopted the magistrate judge's findings and recommendation without elaboration. ER 2-3.

## SUMMARY OF THE ARGUMENT

The appeal should be dismissed as moot. Steffey was released from custody early, and his loss of credit for good conduct did not cause him to overserve his sentence. The mere existence of a supervised release term and the theoretic possibility of that term being reduced are insufficient to satisfy constitutional limits on standing.

Alternatively, the district court correctly denied habeas relief because "some evidence" supports the DHO's discipline decision. Steffey's attack on the credibility of the two positive NIK tests goes to the weight of that particular evidence, not its admissibility, and is immaterial to the outcome of this § 2241 action. *See Superintendent v. Hill*, 472 U.S. 445, 455-56 (1985) (directing that the "some evidence" standard "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence"). In addition, the attack does not negate the other evidence on which the DHO relied, including Steffey's detailed communications with the sender, the money link between Steffey and the recipient, and Steffey's incomplete, implausible, and incriminating statements.

8

The district court properly denied the motion for discovery because Steffey's document requests focused on the NIK tests and would not have invalidated the other evidence before the DHO. Habeas petitioners are "not routinely entitled to discovery," *Bracy v. Gramley*, 520 U.S. 899, 904 (1997), and the discovery provisions of the Federal Rules of Civil Procedure do not generally apply. *See Harris v. Nelson*, 394 U.S. 286, 295 (1969).

The district court also properly decided this case without an evidentiary hearing because the underlying record contained sufficient evidence to affirm the DHO's disciplinary decision. *See Totten v. Merkle*, 137 F.3d 1172, 1176 (9th Cir. 1998).

## STANDARDS OF REVIEW

The district court's denial of a 28 U.S.C. § 2241 habeas petition is reviewed de novo. *Lane v. Salazar*, 911 F.3d 942, 947 (9th Cir. 2018). This Court may affirm the denial of habeas relief on any ground supported by the record, even if it differs from the district court's rationale. *Sully v. Ayers*, 725 F.3d 1057, 1067 (9th Cir. 2013).

The district court's decision to deny a motion for discovery is reviewed for abuse of discretion. "A district court is vested with broad discretion to permit or deny discovery, and a decision to deny discovery will not be disturbed except upon the clearest showing that the denial of discovery results in actual and substantial prejudice to the complaining litigant." *Laub v. United States Dep't of Interior*, 342 F.3d 1080, 1084, 1093 (9th Cir. 2003) (internal quotation marks and citation omitted).

9

The court's decision to deny a § 2241 petition without holding an evidentiary hearing is reviewed for abuse of discretion. *Sully*, 725 F.3d at 1067; *Fourstar v. Copenhaver*, 764 F. App'x 628 (9th Cir. 2019). When the merits of a habeas petition "can be determined on the record before the court, a hearing is not required." *Yeaman v. United States*, 326 F.2d 293, 294 (9th Cir. 1963) (resolving § 2255 petition); *cf.* 28 U.S.C. § 2243 ("The court shall summarily hear and determine the facts, and dispose of the matter as law and justice require.").

## ARGUMENT

### I.     This Appeal Is Moot Because Steffey Was Released From Custody More than 41 Days Early.

An appeal becomes moot "when, by virtue of an intervening event, a court of appeals cannot grant any effectual relief whatever in favor of the appellant." *Calderon v. Moore,* 518 U.S. 149, 150 (1996) (per curiam) (citation and internal quotation marks omitted). Similarly, a habeas case is moot if the petitioner fails to meet Article III's case-or-controversy requirement. *Spencer v. Kemna*, 523 U.S. 1, 7 (1998). Throughout the litigation, the petitioner must have suffered an actual injury traceable to the respondent and likely to be redressed by a favorable judicial decision. *Id.* The concept of mootness is thus closely related to standing. *US. Parole Comm'n v. Geraghty*, 445 U.S. 388, 397 (1980) ("The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness).").

10

Questions of mootness thus implicate a court's subject matter jurisdiction. *Iron Arrow Honor Soc'y v. Heckler*, 464 U.S. 67, 70 (1984).

Habeas relief is available to those "in custody" in violation of federal law, and extends to prisoners seeking to restore credit for good conduct and thereby hasten release. *See Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973). This Court holds that a prisoner's release from custody does not necessarily render a habeas petition moot where the prisoner is also subject to a term of supervised release that could be shortened by the sentencing court. *Mujahid v. Daniels*, 413 F.3d 991, 994-95 (9th Cir. 2005) (citing to 18 U.S.C. § 3583(e)(2)). However, a term of supervised release, by itself, is insufficient to confer Article III standing on an otherwise moot petition. Rather, this Court holds that a petitioner must have a "nontrivial argument for reducing his supervised release period under § 3583(e)." *Allen v. Ives*, 950 F.3d 1184, 1187 (9th Cir. 2020). That must mean, at a minimum, a petitioner needs to show more than the mere existence of a term of supervised release to evade mootness after being released.

The possibility that the sentencing court would reduce the supervised release period is necessarily nontrivial where a prisoner overserves a sentence. In the case of an overserved sentence, the supervised release period would have begun to run earlier and ended sooner. For instance, the petitioners in *Mujahid*, 413 F.3d at 995-97, and *Tablada v. Thomas*, 533 F.3d 800, 803-05 (9th Cir. 2008), argued that they had overserved sentences because the BOP unlawfully denied them 7 days of credit per year served. In *Allen*, 950 F.3d at 1186-88, the petitioner claimed actual innocence in a career offender

11

case, which, if true, would have reduced his sentence by years. In the absence of over-incarceration concerns, however, at least one panel in this circuit has distinguished *Mujahid* and dismissed a released prisoner's petition as moot. *See Pierce v. Thomas*, 400 F. App'x 259 (9th Cir. 2010) (deciding that release mooted a petition where the "challenge does not implicate over-incarceration concerns").

Steffey has not presented a nontrivial argument sufficient to meet Article III's limit on standing. He does not argue that losing 41 days of credit caused him to overserve his sentence. Nor could he because the sentencing court granted Steffey compassionate release a few months before his release date and, at the same time, reaffirmed his three-year term of supervised release. *United States v. Steffey*, 2020 WL 3840558, at *1-2 (D. Nev. July 8, 2020). Thus, even if Steffey had not been disciplined for violating Code 111, his release date would have been the same—July 8, 2020. He also does not assert actual innocence with respect to his underlying conviction, such that he should have served less time. Rather, Steffey relies solely on the existence of a three-year term of supervised release, and the trivial argument that 18 U.S.C. § 3583(e) permits the period to be reduced. Op. Brief 10. That is plainly insufficient under Article III and this Court's ruling in *Allen*.

In sum, this Court should dismiss this case as moot because it is undisputed that losing 41 days of credit did not cause Steffey to overserve his sentence. The mere existence of supervised release and the theoretic possibility of reduction under § 3583(e) is too trivial to satisfy constitutional limits on standing.

## II. Some Evidence Supports the Decision to Discipline Steffey for Violating Code 111.

Prisoners have a constitutionally protected liberty interest in earned credit for good conduct. *Wolff v. McDonnell*, 418 U.S. 539, 557 (1974). But that interest "must be accommodated in the distinctive setting of a prison," and the "legitimate institutional needs of assuring the safety of inmates and prisoners [and] avoiding burdensome administrative requirements that might be susceptible to manipulation." *Hill*, 472 U.S. at 454-55. Accordingly, in contrast to a criminal prosecution, "the full panoply of rights due a defendant in such proceedings does not apply." *Wolff*, 418 U.S. at 556.

In the prison context, a disciplinary decision to revoke earned credit for good conduct need be supported only by "some evidence." *Hill*, 472 U.S. at 453-56. The "some evidence" standard "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence." *Id.* at 455-56. But that is exactly what Steffey asks the Court to do in this case—reassess the credibility and weight of the evidence that was before DHO Chetwood.

"Some evidence" review asks only "whether there is *any evidence* in the record that could support the conclusion." *Castro v. Terhune*, 712 F.3d 1304, 1314 (9th Cir. 2013). Accordingly, this Court will uphold discipline if any evidence in the record "could support the conclusion reached by the disciplinary board." *Hill*, 472 U.S. at 455-56; *see also Powell v. Gomez*, 33 F.3d 39, 41 (9th Cir. 1994) (emphasizing the word "could"). "Evidence only must bear some indicia of reliability to be considered some evidence,"

13

and "evidence may qualify as some evidence, even if it does not logically preclude any conclusion but the one reached." *Castro*, 712 F.3d at 1314. The "some evidence" standard is "minimally stringent," and does not require a court to "examine the entire record," or consider "competing inferences." *Id.* at 1314-15. But, again, that is exactly what Steffey asked the district court to do in this case—order discovery and hold an evidentiary hearing to compile a fuller record for reexamination.

DHO Chetwood's disciplinary decision is supported by ample evidence. He relied on multiple sources of proof to determine that Steffey violated Code 111 by arranging to have his purported paralegal, "Lisa Rassmussen, ESQ,"[2] send narcotic-soaked paper to another inmate. ER 196-99; *see also* 28 C.F.R. § 541.3(111) (prohibiting introduction of "any narcotics, marijuana, drugs, alcohol, intoxicants, or related paraphernalia, not prescribed for the individual by the medical staff"). The district court correctly ruled that DHO Chetwood's declaration and report contained "some evidence," including the detailed communications between Steffey and the supplier of the amphetamine-soaked paper, statements from Steffey confirming his relationship

---

[2] After the DHO hearing and before Steffey's writ of habeas corpus, DHO Chetwood received information about the attorney whose name, law office, and address were used for the return address on the envelope that contained the narcotic-soaked paper, "Law Offices of Leslie R. Ramos." Leslie Ramos stated that she had never heard of Steffey or Rassmussen and had never sent mail to FCI Lompoc. Ramos independently learned that federal inmates were using her name as a sender of false legal mail. In the past, Ramos also received suspicious envelopes returned for inadequate postage, for which she immediately contacted local law-enforcement for testing and disposal. Ramos also notified the California State Bar Association of these incidents. ER 132.

14

with the supplier, a money link between Steffey and the intended recipient of the amphetamine-soaked paper, Steffey's implausible, inconsistent, and incomplete statements in his defense, staff memoranda, two positive NIK tests, and photographs documenting the NIK testing process and showing positive results for amphetamines. ER 196-99.    This evidence manifestly satisfies the low standard, notwithstanding Steffey's singular criticism of the NIK test results.

Steffey's suspicious communications with Rassmussen are especially probative. Before the package arrived, he solicited paperwork purportedly relating to evictions. He told her to send the "eviction again to the exact same tenant as you did last time. Go heavy!" ER 132, 210.  Steffey followed up several days later, telling her to "Please take care of what I paid you to do and serve the guy." ER 132, 211.  In response, she wrote, "I reached out," and provided a tracking number.  ER 132, 212.  Steffey replied, "Thank you Lisa.  Are you wanting to get a hold of the other guys?  I can get you the payment." ER 213.

Steffey's lack of credible explanation for these exchanges is equally probative. He claimed Rassmussen must have sent him the tracking number by mistake, because he uses the "same guy for legal help" as the intended recipient.  ER 216.  If he truly owned property with tenants to evict, he could have submitted an affidavit to that effect from Rassmussen and other relevant agents, like the property manager he referenced the day the package arrived.  ER 215.  Steffey did not even submit evidence to confirm

15

his ownership of rental properties.[3]  He never explained why the eviction paperwork needed to be prepared by him personally, instead of by his outside counsel.  Rather, he inconsistently suggested that "Lisa Rassmussen" sent him the tracking number by mistake.  ER 134, 216.

The multiple emails Steffey exchanged with Rassmussen demonstrated a close familiarity with her, yet he submitted absolutely no evidence from her, either at the DHO hearing or to the district court.  Several hours after he received the tracking number, Steffey followed up on the same email exchange, referencing "gifts for the kids," and his appeal for which he could not pay fees.  ER 214.  Rassmussen wrote back, "Did the documents get served have u heard from the tenant."  ER 214-15.  Steffey responded forty minutes later, "No.  Should they of?  The property manager said he hasn't mentioned anything.  When you look at the email, does it show he got the email already?  What day?"  ER 215.  This exchange took place the same day that the amphetamine-soaked papers were intercepted.  ER 215.  Steffey has no explanation for his reference to a "property manager," or how he communicated with that supposedly non-incarcerated person.  He also submitted no evidence from the property manager, who, like Rassmussen, would presumably be his agent.

---

[3] Steffey's need to file in forma pauperis documentation to waive filing fees suggests otherwise.  *See* ER 215; *see also United States v. Steffey*, No. 2:12-cr-0083-APG-GWF, Dkt. 402 (D. Nev. Sept. 10, 2015) (granting IFP motion).

16

Based on his years of experience in corrections, DHO Chetwood understands the basic code prisoners use to discuss logistical details and illegal substances while avoiding explicit terms. ER 131-32. He reasonably and correctly viewed Steffey and Rassmussen's exchanges as "suspicious and clearly unrelated to any legal process." ER 132.

In addition, the DHO appropriately considered Steffey's refusal to deny the charge or give any statement in his defense at the UDC hearing, despite being advised that silence would lead to an adverse inference. ER 198. Steffey just said, "I have no comment, due to possible charges being brought on by outside law enforcement agency." ER 198. Steffey's written statement at the DHO hearing did not include any evidence that he owned rental properties or needed to evict tenants, and Steffey did not even try to corroborate his relationship with Rassmussen. ER 216. The money link between Steffey and the intended recipient of the package completes the loop. ER 67, 197. Steffey still has not explained why the addressee paid him before the suspicious package arrived.

The email and money evidence is buttressed by the BOP staff's personal observations of the discolored paper, photographs of the paper, and staff memoranda. ER 196-99. The photographs showed the paper to be discolored and oddly stained. ER 204-08. The staff memoranda described the paper as unusually thick, gritty, and discolored, as if soaked in a liquid. ER 200-01.

17

All of this evidence, and absence of contrary evidence, bears sufficient indicia of reliability to uphold Steffey's discipline. *See Castro*, 712 F.3d at 1314. Taken together, it amply satisfies the minimally stringent "some evidence" standard.

In addition to this evidence, the DHO's finding is supported by two positive NIK test results that showed the paper was soaked with liquid narcotics. ER 208. The DHO properly considered those results because "in the context of a prison disciplinary hearing, prison officials generally are entitled to rely on institutional test results, such as the NIK field test, absent any evidence of unreliability or irregularity in conducting the tests." *Peer v. Denham*, 2015 WL 5579654, at *6 (D. Colo. Sept. 23, 2015). DHO Chetwood saw no evidence of unreliability or irregularity, and appropriately considered the two positive results. *Baker v. Lake*, 2019 WL 1455326, at *1, 4 (E.D. Cal. Apr. 2, 2019), *reconsideration denied*, 2019 WL 2125458 (E.D. Cal. May 15, 2019) (finding a positive NIK test to be "some evidence" of illegal drugs).

In this case, Aguilar followed the test directions and correctly reported the results. ER 201. The NIK tests confirmed what the other evidence showed. Given that the tests were used in the context of prison discipline, and there was no evidence that the tests were incorrectly administered or that the results were misinterpreted, the NIK tests support the discipline charge.

Courts deem NIK tests sufficiently reliable in exigent settings, including prisons. *Rivas v. Cross*, 2011 WL 1601289, at *7-8 (N.D. W. Va. Apr. 1, 2011), *report and recommendation adopted*, 2011 WL 1601288 (N.D. W. Va. Apr. 27, 2011), *aff'd by* 448 F.

18

App'x 332 (4th Cir. 2011) (rejecting inmate's challenge to NIK test reliability, and denying request for confirmation testing); *Jackson v. Shartle*, 2019 WL 1795593, at *3 (D. Ariz. Mar. 13, 2019), *report and recommendation adopted*, 2019 WL 1816687 (D. Ariz. Apr. 24, 2019) (concluding that no additional testing is necessary after an initial positive NIK test result); *Baker*, 2019 WL 1455326, at *4; *Peer*, 2015 WL 5579654, at *6; *cf. Hogevoll v. City of Los Angeles*, 2008 WL 11409514, at *2-4 (C.D. Cal. Feb. 25, 2008) (rejecting § 1983 claim that officers lacked probable cause to arrest based on NIK field test results).. Likewise, due process does not require confirmation testing of other kinds of drug tests that may return false positives. *See, e.g.*, *Koenig v. Vannelli*, 971 F.2d 422, 423 (9th Cir. 1992); *Peranzo v. Coughlin*, 850 F.2d 125, 126 (2d Cir. 1988) ("Though the risk of false positives has not been entirely eliminated, we agree with Judge Sand that use of the test results may be relied upon as sufficient evidence to warrant prison discipline under the standards of *Superintendent v. Hill*.") (citation omitted); *Spence v. Farrier*, 807 F.2d 753, 756-57 (8th Cir. 1986) (holding that an unconfirmed urinalysis test ("EMIT") was reliable enough to use in prison disciplinary hearings because "[a]lthough it is conceivable that an inmate could be unjustly disciplined as a result of EMIT tests, the margin of error is insignificant in light of institutional goals"); *see also White v. Stansil*, 2016 WL 4009954, at *6 (E.D. Cal. July 25, 2016) (collecting cases).

Prison discipline is distinct from criminal prosecution, and in this "highly charged atmosphere," BOP staff must be able to act swiftly on evidence that "might be insufficient in less exigent circumstances." *Hill*, 472 U.S. at 456; *Wolff*, 418 U.S. at 556

19

("Prison disciplinary proceedings are not part of a criminal prosecution"). In the prison context, "[t]he NIK test has been deemed generally reliable" and "prison officials generally are entitled to rely on institutional test results, such as the NIK field test." *Peer*, 2015 WL 5579654, at *6.

Steffey suggests that a NIK test cannot be used on paper because paper will necessarily trigger a false positive. Op. Brief 25-26. That misrepresents the NIK test guidance. Liquid is the only substance for which the tests are not designed. ER 59, 63. However, the NIK test plainly instructs that paper can (and must) be tested to identify a liquid narcotic. ER 59. The only parameters for testing paper is that it not be brown, hand towels, or newsprint. ER 59. Those parameters were met in this case. ER 205-07.[4] Otherwise, NIK tests can be used to identify drug-soaked paper. *See, e.g., Torres v. Ciolli*, 2020 WL 4501784, at *1 (E.D. Cal. Aug. 5, 2020) (denying challenge to discipline where the prisoner admittedly possessed paper that NIK tests A and U identified as having been soaked with liquid amphetamines).

Aguilar also correctly interpreted the test results. He first used the NIK Test A, which showed "an immediate orange rapidly turning brown color." ER 201. That color sequence indicates the presence of amphetamines and determines the next test to use.

---

[4] This Court should reject Steffey's criticism that the test was "conducted on paper of unknown origin," Op. Brief 26, because Steffey controlled that information through his purported agent, Rassmussen. He could have had her identify the type of paper, the origin of stains and discolorations, and any substances that may have caused a false positive, such as coffee or chocolate. *See* Op. Brief 19-22.

ER 64, 201-03.  Aguilar correctly deployed NIK Test U to distinguish amphetamines from methamphetamines.  ER 64.  If Test U remained burgundy, that would indicate amphetamines; if it turned blue, that would indicate methamphetamines.  ER 64.  Here, Test U remained burgundy, which Aguilar correctly viewed as a positive for amphetamines.  In addition to Aguilar's reported observations, DHO Chetwood also had photographic evidence showing the results.[5]  ER 71, 207.  Because there was no irregularity in interpreting the NIK test results, they bear sufficient indicia of reliability to support the prison disciplinary decision.  *Baker*, 2019 WL 1455326, at *1.

Steffey's challenge assumes NIK testing it is 100 percent unreliable and hence entitled to "zero weight."  Op. Brief 13.  Nothing in the record supports that view.  Even Steffey admits that NIK tests have "no established error rate."  Op. Brief 11.  In the prison context and in light of other reliable evidence, the Government submits that NIK testing is sufficiently reliable to support discipline.  *Cf. Hamilton v. O'Leary*, 976 F.2d 341, 346 (7th Cir. 1992) (finding "some evidence" standard met where an inmate was 25% likely to have committed the charge).

Steffey asserts that Test A's positive result might have identified a drug other than an illegal substance, such as a decongestant.  Op. Brief 27.  But even that is true, the "some evidence" standard does not require a record to "logically preclude any

---

[5] While the photograph does not capture Test A's transition from orange to brown, Aguilar stated that Test A turned orange first before turning brown.  ER 201.  This orange-to-brown transition is important because it dictates which test to use next.

conclusion but the one reached." *Castro*, 712 F.3d at 1314. Moreover, a Code 111 violation covers "any narcotics, marijuana, drugs, alcohol, intoxicants, or related paraphernalia." It does not does not require that the substance be illegal, but only that it was "not prescribed . . . by medical staff." 28 C.F.R. § 541.3(111). This Court has affirmed an interpretation of nearly identical language as covering unprescribed medication, not just illegal narcotics. *See Sandoval v. Ives*, 2018 WL 2225358, at *3 (D. Or. Apr. 2, 2018), *report and recommendation adopted*, 2018 WL 2223318 (D. Or. May 15, 2018), *aff'd sub nom. Sandoval v. Mitchell*, 753 F. App'x 520 (9th Cir. 2019) (upholding discipline for violating Code 113); *see also* 28 C.F.R. § 541.3(113) (prohibiting the possession of "any narcotics, marijuana, drugs, alcohol, intoxicants, or related paraphernalia that have not been prescribed for the individual by medical staff"). Accordingly, even if Steffey is right, and the NIK Test A identified a legal decongestant – an assumption the evidentiary record does not support – the Code 111 violation would be supported by some evidence.

Finally, Steffey characterizes the NIK Test U result as "negative," but that is true only as to methamphetamines. Op. Brief 28. Test U produced a positive result for amphetamines, as first identified by Test A. ER 64. In sum, the evidence before the DHO had sufficient indicia of reliability, as a whole, to support the Code 111 violation. Likewise, the administrative record before the district court met the "some evidence" standard. This Court should reject Steffey's belated attempt to challenge the discipline by attacking individual pieces of evidence in federal court.

## III.  The District Court Properly Exercised Its Discretion to Deny Discovery Because Steffey Did Not Show Good Cause in this Habeas Case.

Steffey's motion for discovery sought information related to the NIK testing to undermine the reliability of that evidence, which was just one of many items that DHO Chetwood relied on to support the discipline decision.  Op. Brief 33.  The district court properly exercised its discretion to deny the motion based on the standard applicable to judicial review of prison discipline, and the standard for obtaining discovery in habeas corpus proceedings.

First, discovery is inappropriate in a habeas proceeding challenging whether prison discipline violates the Due Process Clause because it "is not supported by evidence in the record."  *Hill*, 472 U.S. at 447 (framing the question).  The "some evidence" standard does not require a court to build a more complete evidentiary record, reweigh the evidence that was before the DHO, or assess the credibility of that evidence.  *See id.* at 454-55.  If it were otherwise, the BOP can reasonably expect many more prison discipline cases to wind up in federal district court with habeas petitioners seeking to supplement the evidence that was put to UDC and DHO hearings.

This type of habeas case is entirely susceptible to resolution on the administrative record.  If that record lacks sufficient evidence supporting the discipline, the remedy is to expunge the discipline and restore the credit.  Similarly, if the record before the DHO meets the "some evidence" standard, the habeas challenge must be dismissed.  This type of limited review does not require further factfinding in the district court.

23

Accordingly, Steffey's discovery requests for additional documents and information are immaterial to the outcome of this case.

Second, a habeas petitioner is not entitled to discovery as a matter of course. *Bracy v. Gramley*, 520 U.S. 899, 904 (1997). Rather, a court "may, for good cause, authorize a party to conduct discovery under the Federal Rules of Civil Procedure and may limit the extent of discovery." Rule 6(a) of the Rules Governing 28 U.S.C. § 2254 Cases.[6] To show "good cause," a petitioner must demonstrate that "specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief." *Bracy*, 520 U.S. at 909. However, Rule 6(a) does not sanction "fishing expeditions," and discovery will not be allowed so that a petitioner can "explore [his] case" looking for new constitutional claims. *Rich v. Calderon*, 187 F.3d 1064, 1067 (9th Cir. 1999).

To determine whether a petitioner shows good cause, the district court must "identify the 'essential elements' of the underlying substantive claim, and determine whether petitioner's allegations, if proven, would satisfy those elements and show the violation of a constitutional right." *Bracy*, 520 U.S. at 904. The court should allow discovery when it is "essential to the full development of a petitioner's claim," i.e., "when it may well uncover favorable, material information that would tend to support

---

[6] The rules governing § 2254 cases apply to § 2241 habeas petitions. *See* Rule 1(b) of the Rules Governing 28 U.S.C. § 2254 Cases ("The district court may apply any or all of these rules to a habeas corpus petition not covered by [§ 2254].").

24

the claim." *Williams v. Hall*, 648 F. Supp. 2d 1222, 1225 (D. Or. 2009) (internal citations omitted). Mere speculation is insufficient. *See Earp v. Davis*, 881 F.3d 1135, 1142-43 (9th Cir. 2018) ("Just as bald assertions and conclusory allegations do not afford a sufficient ground for an evidentiary hearing, neither do they provide a basis for imposing upon the state the burden of responding in discovery to every habeas petitioner who wishes to seek such discovery."). If a petitioner fails to show good cause, the court need not grant his discovery requests. *See Bracy*, 520 U.S. at 909.

Here, the district court did not abuse its discretion in denying Steffey's discovery requests because he failed to show good cause. Most of his requests focus on the reliability of NIK testing. Op Brief 32-33. Some requests seek broad categories of documents with no apparent connection to the evidence supporting the charge, such as all emails between DHO Chetwood and Aguilar regarding Steffey and the intended recipient of the mail, records about the intended recipient's discipline, and records identifying the frequency of discipline supported by NIK testing. *See* ER 112-13 (requests for production); ER 80-81 (interrogatories). The Government properly responded by producing responsive information some requests and objecting to others. ER 97-102. In short, the discovery was unnecessary to decide whether "some evidence" supports DHO Chetwood's decision, and thus its burdens outweighed its benefits.

Steffey argues that he was entitled to discovery because his requests were minimally burdensome. Op. Brief 33. That is untrue and misstates the standard. Steffey was entitled to discovery only upon showing "good cause," which the district

25

court properly concluded he did not show. ER 76 (citing to *Bracy*, 520 U.S. at 908-09). Plus, the burden is not minor when weighed against its limited probative value. For example, Steffey sought access to the narcotic-soaked papers to conduct independent testing. Op. Brief 33. Allowing such discovery "would create a 'ripple effect' among other prisoners, and impose a significant administrative burden on prison officials." *Koenig*, 971 F.2d at 423. The burden is accentuated by the increasing prevalence of liquefied drugs, and the well-publicized and vexing problems they present for prisons. *See, e.g.*, Wash. Post, *Jail inmates now getting drug-soaked paper through mail, jails moving to stop it*, Mar. 10, 2016, *at* www.washingtonpost.com/news/true-crime/wp/2016/03/10/jail-inmates-now-getting-drug-soaked-paper-through-mail-jails-moving-to-stop-it (last accessed Oct. 5, 2020). The dangerousness of liquefied drugs is well publicized, too. *See, e.g.*, Wash. Post, *Jake the narcotics dog went into a prison to sniff for drugs. What he found killed him.*, July 22, 2019, *at* www.washingtonpost.com/science/2019/07/23/jake-narcotics-k-died-after-sniffing-synthetic-weed-an-alabama-prison/ (last accessed Oct. 5, 2020).

In sum, the "some evidence" standard asks the district court to determine whether the DHO's disciplinary decision is supported by any evidence in the record. It does not ask whether that evidence is perfectly reliable or excludes other conclusions. *See Hill*, 472 U.S. at 453-56; *Castro*, 712 F.3d at 1314. Steffey's discovery requests were thus immaterial to answering the relevant question and properly denied.

26

## IV. The District Court Properly Exercised Its Discretion to Decide this Case Without an Evidentiary Hearing.

A habeas petitioner does not receive an evidentiary hearing as a matter of right, but must demonstrate entitlement under the federal habeas statute. *Earp v. Davis*, 881 F.3d 1135, 1142 (9th Cir. 2018) (citing *Williams v. Taylor*, 529 U.S. 420, 430 (2000)). An evidentiary hearing may be required if: "(1) [the petitioner] has alleged facts that, if proven, would entitle him to habeas relief, and (2) he did not receive a full and fair opportunity to develop those facts." *Earp*, 881 F.3d at 1142 (internal citations omitted). However, "if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007).

The district court did not abuse its discretion in deciding this case without an evidentiary hearing for three reasons. First, Steffey's entitlement to habeas relief turns on the administrative record before DHO Chetwood. That record was before the district court and did not need to be supplemented with a hearing. *See Totten v. Merkle*, 137 F.3d 1172, 1176 (9th Cir. 1998) (holding that an evidentiary hearing is not required on issues that can be resolved by reference to the underlying record).

Second, Steffey had a full and fair opportunity to build a record at the UDC and DHO hearings. He chose not to present any evidence or statement in his defense at the UDC hearing. At the DHO hearing, he chose not to have a staff representative to aid his defense. He also waived his right to witnesses and chose not to submit any

27

witness statement to support his defense. ER 196. Though he submitted a written statement, it contained inconsistencies and implausible assertions. ER 216. In these circumstances, the district court properly decided this case without an evidentiary hearing. *See Earp*, 881 F.3d at 1142

Finally, Steffey's challenge to NIK testing, even if credited, would not necessarily entitle him to relief because the DHO relied on other, unchallenged evidence to support the Code 111 violation. Thus, the record "otherwise precludes habeas relief," and an evidentiary hearing was not required. *Schiro*, 550 U.S. at 474.

## CONCLUSION

This Court should dismiss the appeal as moot. Alternatively, this Court should affirm the district court's sound judgment.


DATED: October 8, 2020.

Respectfully submitted,

BILLY J. WILLIAMS
United States Attorney
District of Oregon

RENATA A. GOWIE
Civil Division Chief

*/s/ Jared D. Hager*
JARED D. HAGER
Assistant United States Attorney

28

## STATEMENT OF RELATED CASES

Pursuant to Ninth Circuit Rule 28-2.6, counsel for the Respondent-Appellee is unaware

of any related cases.

DATED this 8th day of October 2020.

/s/ *Jared D. Hager*
JARED D. HAGER
Assistant United States Attorney

# CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(a)(7)(C) and Ninth Circuit Rule 32-1, I hereby certify that the foregoing brief complies with the type-volume limitations, uses a proportionately spaced font (Garamond), has a typeface of 14-point, and contains 7530 words according to the word processing system used to produce the document.

DATED this 8th day of October 2020.

/s/ Jared D. Hager
JARED D. HAGER
Assistant United States Attorney

# CERTIFICATE OF SERVICE

I hereby certify that on October 8, 2020, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

*/s/ Jared D. Hager*
JARED D. HAGER
Assistant United States Attorney