Billy F. Steffey, Petitioner, Self-Represented
455 Capitol Mall, Suite 802
Sacramento, California 95814
Telephone: (916) 955-6332
Email: bsteffey@mac.com

**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF OREGON**

**PORTLAND DIVISION**

BILLY F. STEFFEY,

Petitioner,

v.

WARDEN, FCI LOMPOC,

Respondent.

Case No. 3:19-cv-00093-JR

**PETITIONER'S PROPOSED SUPPLEMENTAL MEMORANDUM ON SUPPLEMENTAL EXHIBIT S (MARCH 27, 2017 SIS ADVISORY) IN SUPPORT OF FURTHER AMENDED MOTION FOR RELIEF FROM JUDGMENT UNDER FED. R. CIV. P. 60(d)(3) (ECF 69)**

Attachment 1 to Motion for Leave

The Honorable Michael H. Simon

## INTRODUCTION

On November 13, 2026, the Bureau of Prisons released, with redactions, four pages of an SIS Advisory dated March 27, 2017. Supp. Ex. S ("Ex. S") at S-2–S-7. Petitioner's reply called that Advisory "the central missing source document" and asked the Court to inspect in camera the four pages withheld in response to his request for it. ECF 74 at 21, 34–35, 38.

The Advisory is dated more than eight months before the test in this case and is addressed to "Warden/All Insts" and "SIS/All Insts," among others. Ex. S at S-4. Its visible text includes:

> NIK Test A – [redacted] – results are TAN.
>
> NIK Test U – [redacted] – results are BURGANDY [sic] indicating positive for Amphetamine.

*Id.* at S-6 (formatting omitted).

The reply said in advance what would make this Advisory matter: it would matter “only insofar as” it showed “that the court-facing label reflected a known institutional protocol inconsistent with the manufacturer materials.” ECF 74 at 18. Heavily redacted as they are, the released pages establish that an institutional protocol existed. It concerns NIK testing and the identification of K2 and Spice. It gives Test U nearly the same label that Respondent’s exhibits gave this Court. And it tells staff how to word the incident report and attaches examples. Ex. S at S-4, S-6, S-7. Its address line covers FCI Lompoc, and the test in this case was run and reported by the Lompoc SIS office. ECF 12-6 at 2. The pages do not yet establish the rest: whether the technician relied on the Advisory, and whether its sequence carries the manufacturer’s condition, which is redacted.

Petitioner’s request for vacatur stands. ECF 69 at 33–34. This memorandum quotes only unredacted text and asks the Court to read, not infer, what is redacted. In the alternative to vacatur, it asks for one paper step: in camera review of the unredacted Advisory, with its attachments and transmittal, and a two-question declaration from a records custodian.

## I. WHAT THE RELEASED PAGES SAY

The Advisory issued from the Bureau’s “Intelligence Section” in Washington, D.C. Ex. S at S-4. It is titled “K2/Spice-Synthetic Cannabis and Designer Drugs-Cathinones.” *Id.* It describes itself as “an update to previous SIS Advisories related to NIK testing procedures, identification of K2/Spice and designer drugs, and methods of introduction into BOP facilities.” *Id.* Its “PURPOSE” section and most of its discussion are redacted. *Id.* at S-4–S-5.

The visible sequence that ends in those two lines begins: “NIK Test E – [redacted] – results are purple substance is marijuana, hash, or THC. Any other color results proceed to NIK Test A.” *Id.* at S-6. The text just above it is redacted. *Id.* A second list, attributed to an “SIS Advisory, February 9, 2015,” gives the Test U result as “DARK BLUE or PURPLE.” *Id.*

It then states: “When using NIK Field Tests, staff should only report the test results.” *Id.* It closes: “REMEMBER: In Block 11 of the incident report, the substance should be referred to as unknown or unidentified and all NIK Field Test results should be detailed. Example incident reports are attached.” *Id.* at S-7. No attachments were released. Third Supp. Decl. ¶ 5.

The release letter describes the four pages as “4 additional pages” located in “[a]n additional search.” Ex. S at S-2. Petitioner cannot tell whether they are the four pages the Bureau withheld in full on May 28, 2026. Third Supp. Decl. ¶ 7; *see* ECF 74-2 at 8–9.

## II. WHAT THE ADVISORY ADDS TO THE RECORD

### A. The Test U label is in a Bureau advisory addressed to every institution.

The reply said the withheld record might show “a different practice,” with wording that “simply reflected independent applications of REV 0907,” or might show “a standardized instruction that materially governed how BOP reported the evidence.” ECF 74 at 24.

The released pages show that there was a standardized text, addressed to every institution. The technician’s memorandum reports that Test U “turned an immediate dark burgundy color, indicating Amphetamines.” ECF 12-6 at 2. The Advisory states that Test U “results are BURGANDY [sic] indicating positive for Amphetamine.” Ex. S at S-6. Within six months of the Advisory, an incident report at FCI Herlong stated that cards were tested “utilizing the NIK testing procedures outlined in an SIS ADVISORY dated March 27, 2017,” and recorded “the presence of Amphetamine by results turning burgundy in color.” ECF 69-16 at 2.

Whether that text "materially governed" the report in this case remains open. The Advisory is addressed to "SIS/All Insts," and the report in this case came from the SIS office at Lompoc. Ex. S at S-4; ECF 12-6 at 2. But Petitioner does not claim to know that the technician read it, and the technician's Test A wording tracks the manufacturer's sheet, not the Advisory. ECF 12-6 at 2, 4. As the reply said of the Herlong report, the resemblance "does not prove common source." ECF 74 at 22. A records custodian can now answer the question.

**B. The visible sequence does not state the manufacturer's condition.**

The manufacturer allows one route from a burgundy Test U result to an amphetamine-type inference, and the route is conditional. The chart requires that Test A first go "from orange to brown," and it warns: "Red in Test U alone does NOT indicate amphetamine-type compounds." ECF 37-3 at 2. That footnote is printed on the chart in the DHO's own exhibit. ECF 12-6 at 3; *see* ECF 73 at 9 (reproducing it). The insert's example begins with a Test A result that "sequences from orange to brown within 10 to 12 seconds," and continues: "A reddish-pink or negative result in Test U indicates an Amphetamine-type compound." ECF 37-3 at 3. Petitioner accepted that language in the reply and accepts it now. ECF 74 at 7, 36.

The Advisory's visible sequence also puts Test A before Test U. But the only Test A result the visible text states is a single color: "TAN." Ex. S at S-6. The manufacturer's amphetamine-type result in Test A is a change: "[a]n immediate orange color rapidly turning to a brown color." ECF 12-6 at 4. Even if tan is read as brown, a Test A result that is simply brown sends the user to a different test. *Id.* (Test I is "[u]sed after brown result in Test A"). If the redacted text states the orange-to-brown predicate, this point falls away, and Petitioner will say so. If it does not, the Advisory paired the amphetamine label with a Test A result that the manufacturer does not route to that inference.

This point concerns the instruction, not the test in this case: the technician reported an orange-to-brown change, and nothing in Exhibit S shows what he saw. ECF 12-6 at 2; ECF 74 at 8. It bears on the reply's argument that one conditional inference was presented to this Court as two independently positive tests. ECF 74 at 10–11, 36–37. The Advisory is a Bureau document whose Test U line calls the burgundy result "positive."

### C. The Advisory addresses K2, Spice, and designer drugs, which the Bureau's file associated with this package.

The incident report recites the SIS conclusion that Petitioner "was involved in the introduction and sale of designer drugs." ECF 12-2 at 1. The evidence photograph sheet states that he "had been anticipating the arrival of the package of Synthetic Marijuana also known as Spice." ECF 12-6 at 9. Both report the test result as amphetamines. *Id.*; ECF 12-2 at 1.

Ground Two of the 2019 petition alleged that Bureau staff were "using antiquated tests to try and detect newer, 'designer drugs' that the tests are not made for." ECF 1 at 7; *see* ECF 30 at 6. Respondent's witness restated that ground as a claim that "the kit is not designed to test for the drugs attributed to him: amphetamines," and answered from the manufacturer's sheet: "The NIK test clearly describes its use for testing amphetamines. *See* Ex. F at 4 (table Test B summary)." ECF 12 ¶ 22. That sheet lists Tests A through W, and none is described as a test for K2, Spice, or synthetic cannabinoids. ECF 12-6 at 4. The Bureau's own advisory on "NIK testing procedures, identification of K2/Spice and designer drugs" was not before the Court. Ex. S at S-4. For suspected ingestion of K2 or Spice, that advisory sends a urine sample "to the contract laboratory specifically requesting screening for particular metabolites." *Id.* at S-5.

Three visible facts bear on what the sequence is for. The Advisory states that "K2 incense is a synthetic form of marijuana." Ex. S at S-4. Its visible sequence begins with Test E, the marijuana test, which is where the manufacturer says testing of plant material begins; on "[a]ny

other color" it proceeds to Test A and then lists Test U. *Id.* at S-6; ECF 37-3 at 3. And at FCI Herlong, the cards tested under the "SIS ADVISORY dated March 27, 2017" came from a cell search that also found written instructions on how to saturate greeting cards with "a liquid form of K-2 spice"; the result recorded was amphetamine. ECF 69-16 at 2. Petitioner does not know whether the redacted text above the sequence ties it to K2 or Spice. The title also names "Designer Drugs-Cathinones," and the Lompoc reports record only Tests A and U. Ex. S at S-4; ECF 12-6 at 2; ECF 12-2 at 1. He asks the Court to read the page.

**D. The Advisory's reporting rule and the Lompoc reports.**

The Advisory's reporting rule is that "the substance should be referred to as unknown or unidentified." Ex. S at S-7. The January 2017 Advisory says the same. ECF 69-9 at 3. The Lompoc incident report refers to "narcotic soaked papers." ECF 12-2 at 1. The DHO told this Court under oath: "The pages were, indeed, heavily soaked with liquid narcotics." ECF 12 ¶ 15. The rule governs incident reports, not declarations. But it is the Bureau's own instruction on how to describe a field-tested substance, and the Court can weigh the sworn statement against it.

## III. HOW EXHIBIT S BEARS ON RULE 60(d)(3)

The standard is briefed, and it is demanding. ECF 69 at 8–11; ECF 74 at 19–21. Exhibit S does not resolve every element. It bears on four.

**Institutional source.** Evidence that does not "significantly change the picture already drawn by previously available evidence" adds little. *United States v. Estate of Stonehill*, 660 F.3d 415, 435 (9th Cir. 2011). Before November 13, the Court had a label in two reports and an inference about a common source. ECF 74 at 21–24. It now has the Bureau's document: dated before both reports, addressed to every institution, and using nearly the same label.

**Diligence.** Petitioner alleged this practice before judgment. ECF 1 at 7; ECF 54-1 at 15–16 (his December 18, 2019 letter to a United States Senator: staff "have made up a set of procedures to make it look as if they can detect these substances"). He asked for the Bureau's writings repeatedly. In discovery he sought all Bureau "writings of any sort regarding the agency's acquisition, storage, and use of narcotics identification tests," and its documents on "confirmatory laboratory testing." ECF 20 at 2–3 (Requests 7 and 10). Respondent objected, in part because he had "not established a prima facie case," and the Court denied discovery on the record then before it. ECF 24 at 9–10; ECF 30 at 11; ECF 39 at 2. In September 2019 the Bureau located four pages responsive to his FOIA request for NIK instructions, including the procedures for K2 and Spice, and withheld all four. ECF 45 at 97–98; ECF 54-1 at 9 ¶ 12. In May 2026 it withheld four pages responsive to a request that named this Advisory. ECF 74-1 ¶ 2; ECF 74-2 at 8–9. The Advisory, whose visible text addresses NIK testing procedures and laboratory reports, reached him on November 13, 2026, after he filed a FOIA action. Ex. S at S-4, S-5, S-7; Third Supp. Decl. ¶¶ 3–6. Evidence is not available through reasonable diligence when the movant asked for it before judgment and its custodian withheld it. ECF 74 at 19, 25.

**Knowledge.** This is the element that remains open. ECF 74 at 20. A party, and not only its lawyer, can commit fraud on the court. *In re Levander*, 180 F.3d 1114, 1119–20 (9th Cir. 1999). So can in-house counsel who does not appear but takes part in preparing what is filed. *Pumphrey v. K.W. Thompson Tool Co.*, 62 F.3d 1128, 1130–31 (9th Cir. 1995). But the claim requires "specific evidence" of what the responsible persons knew, *Pizzuto v. Ramirez*, 783 F.3d 1171, 1181 (9th Cir. 2015), and clear and convincing evidence that they knowingly took part in the deception, *Trendsettah USA, Inc. v. Swisher Int'l, Inc.*, 31 F.4th 1124, 1132–35

(9th Cir. 2022). The Advisory establishes what the Bureau's Intelligence Section told every institution. It does not establish who knew of it when ECF 12, 24, and 38 were prepared.

An official instruction may show that the technician acted in good faith. Petitioner has never needed to prove otherwise. The question under Rule 60(d)(3) is the presentation to this Court. Respondent has told the Court that the result follows from "the manufacturer instructions." ECF 73 at 9; *see* ECF 12 ¶ 22. ECF 12, ECF 24, ECF 38, and ECF 73 do not mention that the Bureau had issued an advisory of its own on the same tests. Respondent's response was filed eight weeks after the Bureau reported locating four pages responsive to the request for this Advisory. ECF 74-2 at 8–9; ECF 73 at 12. It cites "Exhibits B-E, I, L, N, and Q" together as "manufacturer" materials and discusses neither Advisory. ECF 73 at 8–9; *see* ECF 69-9 (Exhibit I, the January 2017 Advisory). Petitioner does not suggest that counsel who signed it had seen the Advisory. He does not know. The answer is in Respondent's records.

**Reach.** The Advisory was addressed to every institution in the Bureau. Ex. S at S-4. It may help explain why the same label recurs in other reported decisions. ECF 69 at 28–30. As the reply said of those decisions, they do not prove "that one centrally directed scheme caused every report." ECF 74 at 13. Nor does the Advisory. As Respondent's own response recognizes, fraud on the court "involves 'far more than an injury to a single litigant.'" ECF 73 at 7 (quoting *Stonehill*, 660 F.3d at 444). Petitioner still "asks this Court to review no other proceeding and disturb no other judgment." ECF 74 at 13. The reach of the instruction is a reason for this Court to read all of it before ruling on its own judgment.

## IV. THE NARROWED REQUEST

If the Court concludes that the record, with Exhibit S, is clear and convincing, it should grant ECF 69. If it concludes that a question of actor or intent remains, Petitioner asks for one

paper step before any ruling that turns on what the redacted text says. *See* ECF 74 at 7, 34. He asks the Court to direct Respondent to:

1. lodge with the Clerk in paper, for in camera review under LR 5-5, the unredacted March 27, 2017 SIS Advisory, the "[e]xample incident reports" attached to it, Ex. S at S-7, and any message that transmitted the Advisory to the institutions; and
2. file a declaration from a knowledgeable Bureau records custodian stating (a) whether the four pages released on November 13, 2026 are the four pages withheld on May 28, 2026 (Request 2026-05140), whether they are the four pages withheld on September 27, 2019 (Request 2019-06228), and, if not, what those pages are; and (b) whether the Advisory was distributed to FCI Lompoc as addressed, including its SIS office and its Discipline Hearing Officer, and whether it was in effect on December 5, 2017.

Each item is drawn from what the motion and the reply already requested. ECF 69 at 32–33 (Requests 1, 4, and 8); ECF 74 at 34. The released pages already answer several of the reply's Stage One questions as to this record. Ex. S at S-4–S-7. Petitioner does not now ask for the transmittal and access records the reply placed in Stage Two. ECF 74 at 35. Whether they are needed will depend on the answers to (a) and (b).

The Court's power to inquire whether its judgment was obtained by fraud is settled. *Universal Oil Prods. Co. v. Root Refining Co.*, 328 U.S. 575, 580 (1946). FOIA exemptions govern disclosure to the public; they are not evidentiary privileges, and in camera review is the accepted way to test a governmental claim of privilege. ECF 74 at 34–35 (citing *Kerr v. U.S. Dist. Court*, 511 F.2d 192, 197–98 (9th Cir. 1975), *aff'd on other grounds*, 426 U.S. 394, 405–06 (1976)). Good cause exists because the "specific allegations" *Bracy* requires now rest on the

Bureau's own document. *Bracy v. Gramley*, 520 U.S. 899, 908–09 (1997). In camera lodging discloses nothing to Petitioner or the public, and it asks this Court to decide no question under FOIA. Whether the redactions are proper under FOIA is for the Eastern District of California. Third Supp. Decl. ¶ 6. Lodging here would waive nothing there. If the unredacted text bears on the merits, the reply's next step would let both sides be heard. ECF 74 at 35. Respondent can make most of this unnecessary by lodging the unredacted Advisory with its response.

Respondent also relies on evidence other than the tests. ECF 73 at 9–12. The reply answered that point, ECF 74 at 16–18, and Exhibit S does not change it.

## CONCLUSION

Petitioner asks the Court to consider Supplemental Exhibit S with ECF 69 and to grant that motion. In the alternative, he asks the Court to order the in camera lodging and the custodian declaration described in Part IV before it decides any question on which the redacted text, or the distribution of the Advisory, may bear.

Dated: November 17, 2026.

Respectfully submitted,

Billy F. Steffey
Petitioner, Self-Represented
455 Capitol Mall, Suite 802
Sacramento, California 95814
Telephone: (916) 955-6332
Email: bsteffey@mac.com